William R. Baldiga, Esquire
R. Benjamin Chapman, Esquire
BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036
(212) 209-4800

*Proposed Counsel for the*
*Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| AEREO, INC., | : | Case No. 14-_____(___) |
| Debtor. | : | |

**MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR
ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105(a),
363(b), 507(a)(4) AND 507(a)(5) OF THE BANKRUPTCY CODE AND FEDERAL RULE
OF BANKRUPTCY PROCEDURE 6003: (A) AUTHORIZING, BUT NOT
DIRECTING, THE DEBTOR TO (1) PAY CERTAIN ACCRUED PRE-PETITION
WAGES AND RELATED ITEMS, (2) PAY EMPLOYEES' PRE-PETITION
REIMBURSABLE BUSINESS EXPENSES, (3) MAKE ACCRUED PRE-PETITION
CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS, AND (4) CONTINUE
EMPLOYEE BENEFIT PLANS; (B) AUTHORIZING, BUT NOT DIRECTING, THE
RELEASE OF WITHHELD TAXES AND EMPLOYEE CONTRIBUTIONS; AND
(C) AUTHORIZING APPLICABLE BANKS AND OTHER FINANCIAL
INSTITUTIONS TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS
PRESENTED FOR PAYMENT AND TO HONOR ALL FUND TRANSFER
REQUESTS MADE BY THE DEBTOR RELATING TO THE FOREGOING**

Aereo, Inc., as debtor and debtor-in-possession (the "Debtor") in the above-captioned

Chapter 11 case, hereby moves (the "Motion") this Court for entry of an order (the "Order"),

substantially in the form attached hereto as Exhibit A (a) authorizing, but not directing, the

Debtor to (i) pay certain accrued pre-petition wages, salaries, overtime pay, incentive pay,

contractual compensation and other accrued compensation of Employees (as defined herein), (ii)

(iii) pay Employees' pre-petition reimbursable business expenses, (iv) make accrued pre-petition

contributions to employee benefit plans, and (v) continue employee benefit plans post-petition;

(b) authorizing, but not directing, the release of withheld taxes and employee contributions; and

(c) authorizing applicable banks and other financial institutions to receive, process, honor and

pay checks presented for payment, and to honor all fund transfer requests made by the Debtor

relating to the foregoing.  In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1.       The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this

proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.       The statutory bases for the relief requested herein are sections 105(a), 363(b),

507(a)(4) and 507(a)(5) of title 11 of the United States Code (the "Bankruptcy Code") and

Federal Rule of Bankruptcy Procedure 6003.

## BACKGROUND

3.       On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for

relief with the Court under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate

its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No request for the appointment of a trustee or examiner has been made in this chapter 11

case, and, as of the date of the filing of this Motion, no official committees have been appointed.

### A.       The Debtor's Business

4.       As more particularly described in the *Declaration of Ramon A. Rivera, Secretary,*

*Treasurer, and Chief Financial Officer of Aereo, Inc. in Support of First-Day Pleadings* (the

"Rivera Declaration")[1] filed contemporaneously herewith, the Debtor is a privately-held New

York corporation with headquarters in Boston, Massachusetts.  The Debtor is a technology

---

[1] All capitalized terms herein that are not otherwise defined shall have the meaning ascribed to them in
the Rivera Declaration.

2

company founded in 2010 that provided subscribers with the ability to record and watch live or "time-shifted" local over-the-air broadcast television on internet-connected devices, such as personal computers, tablet devices, and "smartphones."

5.      The Debtor provided to each subscriber access via the internet to individual remote micro-antennas and a cloud-based digital video recorder ("DVR") that enabled a subscriber to receive and store local television programming broadcast over public airwaves. Subscribers could designate which television programs to record by logging into the Debtor's website and selecting the programming they wanted to record and watch live or later.

6.      In contrast to traditional cable antennas and DVR boxes, which are located in subscribers' homes, the Debtor's individual antennas and hard disks are located in the Debtor's facilities within the local market and were individually made available to subscribers, who could then, using an internet browser, access local broadcast programming with an individual antenna and record it to disk.  The Debtor's subscribers could then watch their recordings live or save them for later viewing.  Essentially, the Debtor's technology provided a modern, easy-to-use option for consumers to watch over-the-air television without having to install cumbersome home equipment or subscribe to cable packages and bundles.  The Debtor's technology also includes a user interface, social networking features, and other features designed to create a compelling consumer experience.

### B.      Events Leading to Chapter 11

7.      Beginning in March 2012, various major television broadcasting networks, including, among others, ABC, CBS, NBC (collectively, the "Broadcasters")[2], commenced

---

[2] The Broadcasters include: American Broadcasting Companies, Inc., Disney Enterprises, Inc., CBS Broadcasting, Inc., CBS Studios, Inc., NBCUniversal Media, LLC, NBC Studios, LLC, Universal Network Television, LLC, Telemundo Network Group, LLC, and WNJU-TV Broadcasting, LLC (the "ABC Plaintiffs"), as well as WNET, Thirteen, Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, WPIX, Inc., Univision Television Group, Inc., the Univision Network Limited

actions in the United States District Court for the Southern District of New York (the "District
Court") seeking to enjoin the Debtor from allowing consumers to stream to themselves over-the-
air broadcast content while the show was still airing solely on the asserted grounds that such
transmissions were public performances in violation of the Broadcasters' under the Copyright
Act. After an evidentiary hearing, the District Court denied the preliminary injunction. See Am.
Broad. Co., Inc. v. Aereo, Inc., 874 F. Supp. 2d 373 (S.D.N.Y. 2012). The Second Circuit
affirmed the District Court's holding. WNET v. Aereo, Inc., 712 F.3d 676 (2d Cir. 2013), reh'g
en banc denied, 722 F.3d 500 (2d Cir. 2013).[3]

8.     The Broadcasters appealed to the Supreme Court, which reversed the decisions of
the Second Circuit and District Court, holding that the Debtor, in transmitting live broadcasts,
was essentially performing as a traditional cable network for the purposes of the Copyright Act.
Am. Broad. Co., Inc. v. Aereo, Inc., 573 U.S. __, 134 S. Ct. 2498 (2014).

9.     On remand, the District Court granted the Broadcasters' request for a nationwide
preliminary injunction preventing use of the Debtor's system for playback while the underlying

Partnership and Public Broadcasting Service (the "Fox Plaintiffs"). On May 6, 2013, the Debtor filed a
declaratory judgment action against CBS Studios Inc.; CBS Television Licenses, L.L.C. d/b/a WSBK-
TV, WBZ-TV, WJZ-TV; Atlanta Television Station WUPA, Inc. d/b/a WUPA-TV; CBS Television
Stations, Inc. d/b/a WFOR-TV, KCNC-TV; Miami Television Station WBFS, Inc. d/b/a WBFS-TV; CBS
Broadcasting Inc. d/b/a WBBM-TV, WWJ-TV, WCCO, KDKA-TV, KYW-TV; CBS Stations Group of
Texas, Inc. d/b/a KTVT-TV; Television Station KTXA, Inc. d/b/a KTXA-TV; CBS Operations, Inc. d/b/a
WTOG-TV; Detroit Television Station WKBD, Inc. d/b/a WKBD-TV; Pittsburgh Television Station
WPCW, Inc. d/b/a WPCW-TV; Philadelphia Television Station WPSG, Inc. d/b/a WPSG-TV.

[3] On July 9, 2013, Hearst Stations, Inc. d/b/a WCVB-TV filed an action against the Debtor in the United
States District Court for the District of Massachusetts (13-cv-11649-NMG), alleging copyright
infringement (including public performance, reproduction, distribution and derivative work claims) and
seeking a preliminary and permanent injunction, declaration of infringement, injunctive relief, damages
and attorneys' fees. A hearing on the motion for a preliminary injunction, which concerned all of the
asserted claims, was heard on September 18, 2013 and the motion was denied on October 8, 2013. The
plaintiffs appealed to the United States Court of Appeals for the First Circuit ("First Circuit"). That
appeal was stayed during the Supreme Court proceedings. Upon the parties' agreement, all claims in the
Hearst case were dismissed without prejudice on August 7, 2014. In February, 2013, the Debtor was
enjoined from operating within the 10th Circuit by the United States District Court in Salt Lake City
Utah. Community Television of Utah, LLC et al. v. Aereo, Inc., No. 2:13CV910DAK (D. Utah 2013).
The Debtor appealed that injunction and that appeal remains pending. KSTU LLC, et al. v. Aereo, Inc.,
No. 14-4020 (10th Cir. 2014).

program was still airing.  See Am. Broad. Co., Inc. v. Aereo, Inc., No. 12-cv-1540, slip op. at 15

(S.D.N.Y. Oct. 23, 2014).  The Debtor has complied with the injunction and stopped permitting

any transmissions while the underlying program is airing.  In fact, as a result of the Supreme

Court decision, the Debtor, in its business judgment, decided to suspend offering its technology

to consumers.  Since then, the Debtor has had no material source of revenue and its business

operations have been devoted towards defending against lawsuits by the Broadcasters seeking

further and permanent injunctive relief, damages and penalties for alleged copyright

infringement.  The Debtor has also been formulating new legal strategies and potential new

business models consistent with the Supreme Court's decision.

10.    A number of legal and regulatory issues relating to the Debtor's business may

soon be resolved favorably in terms of the ability of the Debtor to use its technology in a viable

business opportunity.  First, the Debtor has taken the position that it is entitled to a "compulsory"

statutory license under Section 111 of the Copyright Act based on remarks by the Supreme Court

during oral argument that the Debtor's operation is essentially identical to that of a cable

network.  Thus, the Debtor has filed documents and payments with the United States Copyright

Office seeking such a license as a compulsory licensee, which, if accepted, would result in there

being no copyright infringement claims against the Debtor.  See 17 U.S.C. § 111(c)(1).

11.    Second, as recently as October 28, 2014, Tom Wheeler, Chairman of the Federal

Communications Commission ("FCC"), proposed rule changes that would give internet-based

broadcasters like the Debtor the same classification as cable companies.[4]  Also, on November 4,

2014, in a speech to  the Mid-Atlantic Venture Association Chairman Wheeler stated:

> "Two weeks ago I proposed to my colleagues that we require of cable operators
> and broadcasters the same thing that spurred the growth of the satellite video
> business in the mid-1990s – that competitors should be able to negotiate in good

---

[4] Tom Wheeler, Tech Transitions, Video, and the Future, OFFICIAL FCC BLOG (Oct. 28, 2014, 1:48
PM), http://www.fcc.gov/blog/tech-transitions-video-and-future.

faith for video content, even if it is owned by cable companies and broadcasters . .
. . As you know, a startup called Aereo has already proposed doing this [being an
over-the-top video competitor], but the broadcasters were able to stop it in court,
in part because of the old rules of the FCC. Aereo wasn't the reason for the new
rules, but the idea that entrepreneurs should be able to assemble programs to offer
consumers choices is something that shouldn't be hindered by the FCC."

See http://www.broadcastingcable.com/news/washington/wheeler-old-fcc-rules-shouldn-t-

impede-services-aereo/135351 (last visited Nov. 11, 2015).

12.     If the FCC changes its position, as Chairman Wheeler previewed, then it may also

be likely that the U.S. Copyright Office's position regarding compulsory license eligibility for

providers of linear broadcast programming via the Internet would shift in the Debtor's favor.  If

the FCC elects to permit internet transmission of local linear broadcast channels, then the Debtor,

assuming its continued viability, expects to be able to operate within that framework.

13.     However, even though the legal and regulatory framework is shifting in the

Debtor's favor, the timing of a decision from the FCC is ultimately uncertain. Thus, during the

several months since the Supreme Court's decision, the Debtor undertook a concerted effort to

attract new capital or to effect a sale of its business.  Those efforts have not been successful, in

significant part due to the over-hang of the Broadcasters' litigation and potential damage claims.

Without current customers or the ability to provide services, the Debtor also dramatically

reduced its operational overhead.  On November 12, 2014, the Debtor laid off a majority of its

workforce and closed down its business operations in Boston.  As of the Petition Date, the

Debtor's reported assets at book value were approximately $20.5 million, and its aggregate

recognized liabilities were approximately $4.2 million.

**RELIEF REQUESTED**

14.     The Debtor seeks the relief requested herein to minimize the personal hardships

its current and former employees will suffer if their pre-petition claims are not paid, to maintain

6

the employees' morale during this critical time of the Debtor's Chapter 11 case, and to prevent

employee attrition at a time when the Debtor's business is particularly vulnerable.

15.      By this Motion, the Debtor seeks authority to satisfy certain employee obligations

(the "Employee Obligations")[5] including, but not limited to, (a) unpaid compensation; (b)

medical, dental, and vision benefits, as well as a flexible spending account (collectively, the

"Health Benefits"); (c) life insurance, accidental death and dismemberment insurance, short term

disability and long term disability benefits (collectively, "Employee Insurance Benefits"); (d)

employee assistance programs; (e) a 401(k) retirement program; (f) reimbursement of business

expenses; and (g) severance benefits.   In addition, the Debtor requests that the Court confirm its

right to continue satisfying the Employee Obligations in the ordinary course of business during

the pendency of this Chapter 11 Case in the manner and to the extent that such Employee

Obligations were satisfied immediately prior to the filing of these Chapter 11 Cases and to make

payment in connection with the expenses incurred in connection with the administration of any

Employee Obligation.

16.      In addition, the Debtor seeks confirmation that it is permitted to pay in the

ordinary course of its business any and all local, state, and federal withholding and payroll-

related taxes relating to pre-petition and post-petition periods.  Finally, the Debtor seeks entry of

an order authorizing all banks and other financial institutions to receive, process, honor, and pay

any and all checks drawn on the Debtor's payroll or general operating accounts or fund transfer

requests with respect to payments authorized pursuant to this Motion, whether presented before

or after the Petition Date, upon receipt by each bank and financial institution of notice of such

authorization, provided that sufficient funds are on deposit in the applicable accounts to cover

such payments.

---

[5] The Employee Obligations have been calculated, or estimated where necessary, as of the close of business
on November 17, 2014.

17.     By this Motion, the Debtor seeks only the authority to make the payments described herein related to the Employee Obligations, but not the obligation to do so.  Further, the Debtor is not assuming any administrative, pre-petition, or post-petition liabilities with respect to Employee Obligations and is not seeking to assume any executory contracts.

## I.     The Debtor Requests Authority to Pay its Employee Obligations

18.     Currently, the Debtor employs fourteen (14) employees, all of whom are full-time salaried employees (collectively, the "Retained Employees").  On November 12, 2014, the Debtor laid off 74 employees (collectively, the "Terminated Employees").  The Terminated Employees, under the terms of their termination, are eligible to continue receiving certain benefits for four months after their termination (the "Severance Period").  As the Debtor owes Employee Obligations to both Retained and Terminated Employees for the extent of the Severance Period, the term "Employees" is used to refer to both of these groups for that four-week duration.

19.     The Retained Employees perform a variety of critical functions for the Debtor's business, including management, accounting, administration, information technology, operations, finance, and legal work.  The Retained Employees' skills and their specialized knowledge and understanding of the Debtor's infrastructure and operations, as well as their relationships with vendors, and other third parties, are essential to the Debtor achieving its objectives in this Chapter 11 Case of consummating a sale of substantially all of its assets to the best and highest bidder, recapitalizing, or performing some other restructuring transaction for the benefit of its creditors and shareholders.  The Debtor believes that failing to honor its Employee Obligations would harm morale and discourage Employee retention.  If the Retained Employees were to cease providing services to the Debtor (even for a short time), the Debtor would face immediate and irreparable harm to its businesses prospects that could potentially jeopardize its

ability to maximize the value of its assets.    Thus, the Debtor seeks authority to continue to honor its Employee Obligations.

### A.    <u>Unpaid Compensation</u>

20.    Payroll is paid through the Debtor's payroll department after it is processed by Automatic Data Processing, Inc. ("<u>ADP</u>").  All Employees are paid by direct deposit transfers from the Debtor's account at Boston Public Bank and Trust (the "<u>Operating Account</u>"). Retained Employees are paid biweekly, every other Friday for the two weeks prior to the payroll date.

21.    The Debtor estimates that as of the Petition Date, approximately $43,000 in wages, salaries, and benefits that accrued during payment periods prior to the Petition Date remains unpaid (collectively, and including any checks tendered to Employees on account of such items that have not cleared the Payroll Account, the "<u>Unpaid Compensation</u>").  Amounts due to any one Employee in unpaid wages and benefits do not exceed $12,475.  Items of Unpaid Compensation were due and owing on the Petition Date because, *inter alia*:

> ➢ the chapter 11 petitions were filed during the Debtor's regular and customary payroll periods;

> ➢ some payroll checks issued to Employees from the Payroll Account prior to the Petition Date may not have been presented for payment or cleared the banking system and, accordingly, have not been honored and paid as of the Petition Date;

> ➢ Retained Employees have not yet been paid all their salaries and wages for services performed prior to the Petition Date on behalf of the Debtor.

22.    The Debtor also employs ADP to assist with the administration of the payroll. Without the assistance of ADP, it is likely that the Debtor would experience disruption in its payroll services.  The Debtor pays ADP a processing fee of $350 every two weeks.  As of the Petition Date, the Debtor believes that it owes no money to ADP.  Out of an abundance of caution, however, the Debtor requests authority, but not direction, to pay any amounts owed to

ADP as of the Petition Date, and to continue to pay ADP for payroll administration in the ordinary course of its business.

23.    The Debtor requests: (a) authority to pay and honor payments made on account of the Unpaid Compensation; and (b) authority to pay amounts owed to ADP.

### B.    Health Benefits

24.    Employees who work thirty or more hours per week, and in some instances, their dependents, are entitled to group health insurance.  Group health insurance is funded by the Debtor and administered through Blue Cross Blue Shield of Massachusetts ("BCBS").  Dental insurance is also funded by the Debtor and administered through Delta Dental of Massachusetts ("Delta Dental").  Employees can elect vision insurance under a vision service plan with Nationwide Vision Service Plan (the "VSP").  All of the Health Benefits are administered by Choice Strategies, Inc. ("Choice").

25.    The cost of the premiums for the Health Benefits is paid by the Debtor.  During the Severance Period for the Terminated Employees, the Debtor estimates that it will pay approximately $90,000 per month related to Health Benefits costs.  After the Severance Period ends, the Debtor estimates that Health Benefits costs will be approximately $18,000 per month. The Health Benefits costs for November 2014 have already been paid as of the Petition Date. The administrative costs of the Health Benefits are paid when invoiced by Choice.

26.    Employees are also entitled to participate in self-funded pre-tax flexible spending accounts, health reimbursement accounts, transit and parking expense accounts, and dependent care accounts (each an "FSA") administered by Choice.  The Debtor deducts the Employee contributions to the FSA from the Employees' paychecks.  The Debtor also pays Choice $950 per month to administer the FSAs, and has not yet paid for November 2014.  The Debtor thus requests authority, but not direction, to pay any amounts owed to Choice as of the Petition Date.

27.     The Debtor estimates that, as of the Petition Date, approximately $11,584 is due and owing with respect to pre-tax withholdings that have not been reimbursed to Employees for FSAs.  The Debtor requests the Court to authorize the Debtor to pay any amounts outstanding as of the Petition Date in regards to the Health Benefits or administration of the FSAs in the ordinary course of business, and to continue to maintain such programs for Retained Employees in the ordinary course of business.

## C.     **Employee Insurance Benefits**

28.     The Debtor provides the Retained Employees with basic life insurance equal to such Retained Employee's annual base salary.  Additionally, for those cases not involving the loss of life but dismemberment of a Full-Time Employee (such as the loss of a hand or foot, or the total loss of sight in an eye), the Debtor also provides an Accidental Death and Dismemberment Policy ("AD&D") equal to an Employee's annual base salary.

29.     The Debtor provides, at its own cost, short-term disability ("STD") coverage for Retained Employees who work at least 30 hours per week, if the Employee is unable to work due to serious illness or injury.  The STD benefit provides an Employee with a continuation of that Employee's weekly earnings at sixty percent (60%) of such earnings, up to a maximum weekly benefit of $2000.  STD coverage begins on the eighth consecutive day of disability.  The Debtor also provides, at its own cost, to Retained Employees who have been disabled for at least ninety (90) days with long-term disability ("LTD") coverage. The LTD benefit provides an Employee with sixty percent (60%) of that Retained Employee's monthly earnings, to a maximum of $10,000 per month.

30.     The Debtor pays Choice approximately $3,300 per month for life insurance, AD&D, STD, and LTD.  The Debtor has not yet received an invoice from Choice for November, 2014, but the amount for November will be due December 1.  The Debtor seeks authority, in the

ordinary course of its business, to continue to pay the foregoing insurance premiums through
Choice in the ordinary course of business, including, for all such programs, paying amounts due
as of the Petition Date, and continuing such programs going forward for the Retained
Employees.  Any failure to pay these amounts would be detrimental to employee welfare,
morale, and expectations, which, in turn, would result in immediate and irreparable harm to the
Debtor and the Retained Employees.

      **D.**    **Employee Assistance Programs**

    31.    The Debtor provides, at its own cost, an Employee Assistance Program ("EAP")
that is administered by UNUM LifeBalance.  This program provides Employees with counseling
services to help Employees manage day-to-day challenges or problems associated with home or
work, including Life Care Referral Services, Financial and Legal Counseling Services, and
Budget and Debt Counseling. Employees can receive up to three free counseling sessions per
issue. The Debtor believes that no outstanding EAP amounts are due.

    32.    The Debtor also provides, at its own cost, an Employee Travel Assistance plan
("ETA") that is administered by UNUM.  This program provides Employees with worldwide
emergency travel assistance, including emergency medical evacuations, medical repatriation, and
legal and interpreter referrals. ETA premiums are paid when Employee expense reports are
received, usually one week after the end of each month in which there was relevant Employee
travel.  There are no outstanding Employee travel expense reports.

    33.    Out of an abundance of caution, the Debtor seeks authority, in the Debtor's
discretion, to pay UNUM and UNUM LifeBalance any amounts due as of the Petition Date in on
its Employee Assistance programs, and to continue such programs going forward for the
Retained Employees in the ordinary course of business.  Any failure to pay these amounts would

be detrimental to employee welfare, morale, and expectations, which, in turn, would result in immediate and irreparable harm to the Debtor and the Employees.

### E.    **Retirement Benefits**

34.    In the ordinary course of its business, the Debtor also maintains a 401(k) plan (the "401(k) Plan") for its Employees, which is administered by Guardian Insurance and Annuity Company ("Guardian"). The 401(k) Plan is a defined contribution plan in accordance with Section 401(k) of the Internal Revenue Code. An eligible Employee may contribute a portion of his or her compensation on a pre-tax basis, through voluntary deductions, to the 401(k) Plan, up to a maximum of $17,000 per year for Employees under the age of 50, and up to a maximum of $23,000 for Employees age 50 or over. These contributions are deducted from the paychecks of participating Employees and contributed by the Debtor to the 401(k) Plan.

35.    The 401(k) Plan allows, but does not require, the Debtor to make discretionary matching contributions, as well as discretionary profit-sharing contributions for those Employees who worked at least 1000 hours during the Plan year. The Debtor has never made any matching contributions in the past and will not make any matching contributions going forward. As of the Petition Date, the average quarterly administration costs historically owed to Guardian for the 401(k) Plan have been approximately $500. These costs have been paid through the third quarter of 2014, and the fourth quarterly bill will arrive at the end of the fourth quarter. The Debtor respectfully requests permission to pay Guardian the actual costs of administering the 401(k) Plan until the wind down of the Plan.

36.    Once a decision has been made regarding a sale of the Debtor's assets, the Debtor intends to move to wind down its 401(k) Plan in short order to avoid concentrating the cost of the Plan among the small number of Employees. The Debtor's estate proposes to and requests authority to bear the costs of terminating this program in the ordinary course of business. To the

extent that winding down the 401(k) Plan requires the Debtor to retain qualified professionals to assist in these efforts, the Debtor will seek appropriate relief to do so.

37.    Out of an abundance of caution, the Debtor seeks authority to pay any pre-petition amounts accrued and owing to participating Retained Employees or to Guardian on account of the 401(k) Plan, and to continue to make payments to Retained Employees pursuant to such programs to the extent that such obligations accrue post-petition.

### F.    Reimbursable Expenses

38.    The Debtor regularly reimburses Employees for amounts paid by the Employees for business expenses incurred in the ordinary course of the Debtor's business (the "Reimbursable Expenses").  To the extent that any amounts are outstanding, the Debtor seeks the authority to reimburse Employees for all such Reimbursable Expenses.  The Debtor estimates that pre-filing amounts due for any one Employee do not exceed approximately $5,500 as of the Petition Date.

39.    Reimbursable Business Expenses are all incurred on the Debtor's behalf and with the understanding that the Employees will be reimbursed in the normal course of business.  The Debtor submits that such authority is necessary to avoid the immediate and irreparable harm that could result to the Employees if they are not paid for Reimbursable Expenses incurred on behalf of the Debtor for which they expected to be reimbursed.  The Debtor thus requests authority, to be exercised in its sole discretion, to (a) continue paying Reimbursable Business Expenses in accordance with pre-petition practices, (b) modify its pre-petition policies relating thereto as it deems appropriate, and (c) pay all Reimbursable Business Expenses that relate to the pre-petition period and are submitted to the Debtor post-petition.

G. **Severance Benefits**

40.     Prior to the Petition Date, the Debtor maintained a severance policy (the "Severance Policy"), pursuant to which full-time employees typically received a severance payment of approximately four weeks of salary plus Health Benefits under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") for the duration of the Severance Period.  On November 14, the Debtor paid in full the severance payments owing to the Terminated Employees under the Severance Policy, but is still responsible for paying for the Terminated Employees' COBRA Health Benefits under the Severance Policy for the duration of the Severance Period or until those Employees obtain other health insurance.  Because the Debtor is paying for such benefits through COBRA, the total amount due for Health Benefits is likely to decrease through the duration of this Chapter 11 Case.

41.     The Severance Policy was and is a critical component of the Retained Employees' compensation, and the Debtor believes that Retained Employee morale would be severely impacted if the Debtor were not permitted to continue such policy in the ordinary course of its business.  By this Motion, the Debtor requests authority, in its sole discretion and pursuant to an order granting this Motion (the "Order"), to continue in the ordinary course of its business the Severance Policy for the benefit of both Terminated and Retained Employees, and to continue making Benefit Payments for the Terminated Employees during the Severance Period and to provide any eligible Retained Employee severance benefits in the event a Retained Employee is terminated post-petition.

II.     **The Debtor Requests Authority for Banks and Other Financial Institutions to Honor Checks Issued and Funds Transfer Requests Relating to Employee Obligations, Reimbursable Expenses and Severance Benefits**

42.     Finally, the Debtor requests that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment

and to honor all funds transfer requests made by the Debtor related to Employee Obligations, Reimbursable Expenses and Severance Benefits, whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date.  The Debtor anticipates that it will have sufficient cash to satisfy all Employee Obligations, Reimbursable Expenses and Severance Benefits to the extent described herein, on an ongoing basis and in the ordinary course of its businesses.

## BASIS FOR RELIEF REQUESTED

### I.    Ample Cause Exists for the Court to Authorize the Debtor to Pay Employee Wages and Honor Employee Benefits Programs

43.    Pursuant to sections 105(a), 363(b), 507(a)(4) and 507(a)(5) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6003, the Debtor seeks authority to honor the Employee Obligations and obligations for Reimbursable Expenses and Severance Benefits to Employees in the ordinary course of business without regard to whether such obligations accrued before or after the Petition Date and to continue such programs on a post-petition basis.

44.    Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Courts, in turn, frequently apply section 105(a) to authorize relief in chapter 11 cases, similar to that sought herein, where the debtor has a large workforce that is important to the preservation of its business.  See In re Chateaugay Corp., 80 B.R. 279, 287 (S.D.N.Y. 1987) (affirming a bankruptcy court order authorizing the debtor to pay pre-bankruptcy wages, salaries, employee benefits, reimbursements and workers' compensation claims and premiums); see also In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (reasoning that because debtor-in-possession has fiduciary duties it must meet, it is logical that the bankruptcy court may "authorize satisfaction of the pre-petition claim in aid of preservation

or enhancement of the estate" under section 105(a)); In re Gulf Air, Inc., 112 B.R. 152, 154 (Bankr. W.D. La. 1989) (authorizing the debtor to pay current employees' pre-bankruptcy wages, salaries, medical benefits and business expense claims); In re Ionosphere Clubs, Inc., 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989) (same).

45.    In so holding, courts typically rely on the "necessity of payment" doctrine, first enunciated by the Supreme Court in Miltenberger v. Logansport Ry. Co., 106 U.S, 286 (1882), by which courts may authorize a debtor to make post-petition payments with respect to pre-petition claims where such payments are necessary for the preservation of the estate.  See, e.g., In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1989) (noting that, under the necessity of payment doctrine, "if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is out of corpus [of the estate]").

46.    The Court may also grant the relief requested herein pursuant to section 363 of the Bankruptcy Code which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  In order to do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors."  In re Ionosphere Clubs, Inc., 98 B.R. at 175.

47.    Federal Rule of Bankruptcy Procedure 6003 permits the Court to grant relief within twenty days after the filing of the petition regarding a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate "to the extent that relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.

48.    The Debtor's request to pay pre-petition amounts related to Employee Obligations, Reimbursable Expenses and Severance Benefits easily meets the preceding standards.  The failure to grant such relief, even for a brief amount of time, could result in

immediate and irreparable harm to the reorganization efforts of the Debtor's business, and would run afoul of the rehabilitative purposes of the Bankruptcy Code.

49.     The Debtor believes that if it is unable to honor Employee Obligations and Reimbursable Expenses for even a short time, Employee morale and loyalty will be jeopardized at a time when Employee support is most critical.  Regardless of the duration of this chapter 11 case, the Employees will be exposed to significant financial and health-related hardships if the Debtor is not permitted to pay the unpaid Employee Obligations and Reimbursable Expenses in the ordinary course of business.

50.     For example, if the Debtor is not authorized to pay the Employee Obligations and Reimbursable Expenses, then many of the Employees may not have their medical benefits claims paid or have their payments reimbursed.  In addition, certain Employees may become primarily obligated for the payment of such claims where health care providers have not been reimbursed, and may face termination of their health services.  The Debtor believes such uncertainty will cause significant anxiety at precisely the time the Debtor needs the Employees to perform their jobs at peak efficiency.  Moreover, in addition to (and/or as a result of) the foregoing, Employees may be forced, or may choose, to seek alternative employment if the Debtor is unable to timely satisfy the Employee Obligations.

51.     Courts in this District and other districts have approved the payment of pre-petition claims of employees for wages, salaries, expenses and benefits on the grounds that the payment of such claims was necessary to effectuate a successful reorganization.  See In re Dana Corp., Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. March 3, 2006); In re Musicland Holding Corp., Case No. 06-10064 (SMB) (Bankr. S.D.N.Y. Feb. 1, 2006); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Dec. 21, 2005); In re Delphi Corp., Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 13, 2005); In re Delta Air Lines, Case No. 05-17923 (PCB)

(Bankr. S.D.N.Y. Sept. 16, 2005); In re Choice One Communications, Inc., Case No. 04-16433
(RDD) (Bankr. S.D.N.Y. Oct. 5, 2004); In re Cornerstone Propane, L.P., Case No. 04-13856
(RDD) (Bankr. S.D.N.Y. June 4, 2004); In re NRG Energy, Inc., Case No. 03-13024 (PCB)
(Bankr. S.D.N.Y. May 19, 2003); In re Allegiance Telecom, Inc., Case No. 03-13057 (RDD)
(Bankr. S.D.N.Y. May 15, 2003); In re Worldcom, Inc., Case No. 02-13533 (AJG) (Bankr.
S.D.N.Y. July 22, 2002); In re Adelphia Communications Corp., Case No. 02-41729 (REG)
(Bankr. S.D.N.Y. June 26, 2002); In re Global Crossing Ltd., Case No. 02-40188 (REG) (Bankr.
S.D.N.Y. Jan 28, 2002); see also In re Enesco Group, Inc., Case No. 07-00565 (ABG) (Bankr.
N.D. Ill. Jan. 12, 2007); In re DURA Automotive Systems, Inc., Case No. 06-11202 (KJC)
(Bankr. D. Del. Oct. 31, 2006).

52.     The Debtor also believes that all of the amounts related to wages, salaries,
commissions, and benefits that it seeks to pay pursuant to this Motion are entitled to priority
status under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code and do not exceed $12,475
for any individual Employee. The Debtor would therefore be required to pay these claims in full
to confirm a plan of reorganization. See 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain
allowed priority claims for wages, salaries, and commissions, and certain allowed unsecured
claims for contributions to an employee benefit plan).

53.     In addition, the Debtor should be authorized to pay pre-petition amounts owed to
third parties for, among other things, administering the Debtor's programs and performing
services for Employees related to the Employee Obligations, Reimbursable Expenses and
Severance Benefits. The failure to pay any such amounts to third parties would most likely
disrupt the services the various third parties provide to the Debtor's Employees, which could also
result in immediate and irreparable harm to the Debtor's business.

54.     The Debtor's request for authorization to continue to honor and remit Employee Deductions, including payroll taxes, should be approved for the following additional reasons. Such amounts principally represent Employee earnings that governments (in the case of taxes), Employees (in the case of voluntarily withheld amounts), and judicial authorities (in the case of involuntarily withheld amounts) have designated for deduction from Employees' paychecks. The failure to pay these benefits could result in hardship to certain Employees as well as administrative problems for the Debtor. Indeed, the Debtor would expect numerous and frequent inquiries from garnishors regarding the Debtor's failure to submit, among other things, child support and alimony payments that are not the Debtor's property, but, rather, have been withheld from Employees' paychecks on such other parties' behalf. Moreover, if the Debtor cannot remit these amounts, the Employees may face legal action due to the Debtor's inability to submit such payments.

55.     The failure to remit payroll taxes and other withheld amounts may subject the Debtor and its Directors and officers to federal or state liability. See City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.), 41 F.3d 92, 94-96 (3d Cir. 1994) (state law requiring debtor to withhold city income tax from its employees' wages created trust relationship between debtor and city for payment of withheld taxes); DuCharmes & Co. v. Michigan (In re DuCharmes), 852 F.2d 194, 195 (6th Cir. 1988) (noting the special liabilities for failure to pay trust fund taxes). Furthermore, because such funds do not constitute property of the Debtor's estate, the funds are not subject to the normal bankruptcy prohibitions against payment. See Begier v. IRS, 496 U.S. 53, 67 (1990) (Debtor's payment of employee withholding for federal income and FICA taxes not a preferential transfer because withholding held in trust for taxing authority and not a part of Debtor's estate); Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron), 155 F.3d 718, 721 (4th Cir. 1998).

56.     The Debtor therefore requests authority to transmit such withheld amounts to the proper parties and authorities in the ordinary course of business.  Courts in this District have previously approved the same or substantially similar relief as requested herein.  See In re Dana Corp., Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. March 3, 2006); In re Musicland Holding Corp., Case No. 06-10064 (SMB) (Bankr. S.D.N.Y. Feb. 1, 2006); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Dec. 21, 2005); In re Delphi Corp., Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 13, 2005).

57.     The Debtor believes that payment of the amounts requested in this Motion and continuing to honor the Employee Obligations, Reimbursable Expenses and Severance Benefits on a post-petition basis are in the best interests of all parties.  The Employees have an intimate knowledge of the operation of the Debtor's business and any deterioration in Employee morale and welfare at this critical time undoubtedly would adversely impact the Debtor, the value of its assets and businesses, and ultimately its ability to effectuate a sale of all or substantially all of its assets in one or more transactions, a recapitalization, or other similar restructuring transaction (any of these a "Qualified Transaction").  Accordingly, the relief sought by this Motion will allow the Debtor to continue to operate its business with minimal disruption and preserve the value of its estates while it pursues an appropriate course of action.

58.     Finally, the Debtor does not to seek to assume any executory contracts or obligations at this time, and therefore, nothing contained in this Motion should be deemed to be an assumption or adoption of any policy, procedure or executory contract that may be described or referenced herein.  Also, the Debtor will retain the discretion to not make the payments contemplated by this Motion for particular Employees, and nothing in this Motion will, in and of itself, constitute a promise or guarantee of any payment to any Employee.

59.    For the foregoing reasons, the Debtor believes that granting the relief requested herein is appropriate and in the best interests of all parties in interest.

## RESERVATION OF RIGHTS

60.    Notwithstanding anything in this Motion or the Order to the contrary, the payment of any claims pursuant to the Order (if entered by the Court) and other honoring of the Employee Obligations, Reimbursable Expenses and Severance Benefits shall neither (i) make such obligations administrative expenses of the estates entitled to priority status under sections 503 and 507 of the Bankruptcy Code nor (ii) constitute approval by this Court of any employee plan or program, including any Bonus Plans and Stock Plans, under any section of the Bankruptcy Code, including section 503(c).  Also, to the extent the Debtor seeks to assume any Employee programs, including Bonus Plans and Stock Plans, prior to the confirmation of any plan of reorganization, the Debtor will seek such authority by separate motion.

## NOTICE

61.    No trustee, examiner or creditors' committee has been appointed in the chapter 11 cases.  The Debtor has provided notice of this Motion to: (a) the United States Trustee; and (b) the creditors listed on the Debtor's list of 40 largest unsecured creditors, as filed with the chapter 11 petition.  In light of the nature of the relief requested, the Debtor submits that no further notice is required or needed under the circumstances.

## NO PRIOR REQUEST

62.    No prior motion for the relief requested herein has been made to this Court or any other Court.

## <u>WAIVER OF MEMORANDUM OF LAW</u>

63.    In accordance with Local Bankruptcy Rule 9013-1(b) for the Southern District of

New York, no separate memorandum of law is necessary as all authorities relied on in support of

this Motion are set forth herein.

WHEREFORE, the Debtor respectfully requests entry of an order, substantially in the

form attached hereto, granting the relief requested herein, and granting the Debtor such other and

further relief as may be equitable and just.

Dated:  November 20, 2014
    New York, New York                    Respectfully submitted,


                            By: /s/ William R. Baldiga
                                William R. Baldiga, Esquire
                                R. Benjamin Chapman, Esquire
                                BROWN RUDNICK LLP
                                Seven Times Square
                                New York, NY 10036
                                (212) 209-4800

                                *Proposed Counsel for the*
                                *Debtor and Debtor-in-Possession*

## **EXHIBIT A**

## **INTERIM AND FINAL ORDERS**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| AEREO, INC., | : | Case No. 14-_____(___) |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |

**INTERIM ORDER GRANTING MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a), 363(b), 507(a)(4), AND 507(a)(5) OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 6003: (A) AUTHORIZING, BUT NOTDIRECTING, THE DEBTOR TO (1) PAY CERTAIN ACCRUED PRE-PETITION WAGES AND RELATED ITEMS, (2) PAY EMPLOYEES' PRE-PETITION REIMBURSABLE BUSINESS EXPENSES, (3) MAKE ACCRUED PRE-PETITION CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS, AND (4) CONTINUE EMPLOYEE BENEFIT PLANS; (B) AUTHORIZING, BUT NOT DIRECTING, THE RELEASE OF WITHHELD TAXES AND EMPLOYEE CONTRIBUTIONS; AND (C) AUTHORIZING APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS PRESENTED FORPAYMENT AND TO HONOR ALL FUND TRANSFER REQUESTS MADE BY THE DEBTOR RELATING TO THE FOREGOING**

Upon the motion (the "Motion")[1] of the above-captioned Debtor and Debtor-in-possession (the "Debtor") seeking entry of an order of this Court, pursuant to sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6003: (a) authorizing, but not directing, the Debtor to (i) pay certain accrued pre-petition wages, salaries, overtime pay, incentive pay, contractual compensation and other accrued compensation of the Employees, (ii) pay the Employees' pre-petition reimbursable business expenses, (iii) make accrued pre-petition contributions to employee benefit plans, and (iv) continue employee benefit plans post-petition; (b) authorizing, but not directing, the release of withheld taxes and employee contributions; and (c) authorizing applicable banks and other

---

[1] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Motion.

financial institutions to receive, process, honor and pay checks presented for payment and to honor all fund transfer requests made by the Debtor relating to the foregoing; and it appears that (i) the Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Motion is warranted and is in the best interests of the Debtor, its estate, and its creditors; (iv) the relief granted hereby is necessary to avoid immediate and irreparable harm; and (v) proper and adequate notice of the Motion and the hearing thereon has been given under the circumstances and no other or further notice is necessary; and it appears that upon the record herein, after due deliberation thereon, good and sufficient cause exists for the granting of relief as set forth herein, it is hereby:

1.    ORDERED that the Motion is granted on an interim basis as set forth herein.

2.    ORDERED that the Debtor is authorized, but not directed, to satisfy the Employee Obligations in accordance with the Debtor's stated policies and in the ordinary course of the Debtor's business.

3.    ORDERED that the Debtor is authorized, but not directed, to pay Reimbursable Expenses in accordance with the Debtor's stated policies.

4.    ORDERED that the Debtor is authorized, but not directed, to forward the Employee Deductions to the appropriate parties.

5.    ORDERED that the Debtor is authorized, but not directed, to pay the Additional Work Force Costs.

6.    ORDERED that the Debtor is authorized to pay all processing fees associated with the payment of Employee Obligations.

7.     The Debtor is authorized, but not directed, to make payments with respect to Severance Benefits payable to Employees (other than Employees who are officers or former officers of the Debtor), including any amounts that may be attributed to the period prior to the Petition Date, in the ordinary course of business.

8.     In accordance with this Interim Order and any other order of this Court, each of the banks and financial institutions at which the Debtor maintains accounts is authorized to honor checks presented for payment and to honor all funds transfer requests made by the Debtor related to the satisfaction of the Debtor's Employee Obligations, Reimbursable Expenses and Severance Benefits, to the extent that sufficient funds are on deposit in such accounts.

9.     The relief granted herein shall not constitute or be deemed an assumption or an authorization to assume any executory contract or agreement, including, but not limited to, any benefit plans, employment agreements, or severance agreements to which the Debtor is a party.

10.     Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtor to accelerate any payments not otherwise due during the first 21 days of this Chapter 11 case.

11.     ORDERED that any objection granting the relief requested in the Motion on a final basis shall be filed with the Court on or before [_____], 2014 (the "Objection Deadline"), and served (with a copy to the Court's chambers) so as to be received by the Objection Deadline, upon (a) the U.S. Trustee, 201 Varick Street Suite 1006, New York, NY 10014; and (b) (i) the Debtor, c/o Ramon A. Rivera, Secretary, Treasurer, and Chief Financial Officer, 280 Summer St., Boston MA 02210 and (c) Brown Rudnick, LLP, Seven Times Square, New York, NY  10036 (Attn: William R. Baldiga, Esq.).

3

12.     ORDERED that if no objections are timely filed and served as set forth herein, the

Debtor shall, on or after the Objection Deadline, submit to the Court a final order substantially in

the form of the Final Order attached to the Motion, which Order may be entered with no further

notice or opportunity to be heard afforded to any party.

13.     The Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation of this Interim Order.

Dated:  November ___, 2014

_____
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
                                        :
In re:                                  :        Chapter 11
                                        :
AEREO, INC.,                            :        Case No. 14-_____(___)
                                        :
                                        :
                    Debtor.             :
———————————————————————  :

**FINAL ORDER GRANTING MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION
FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a), 363(b), 507(a)(4), AND
507(a)(5) OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY
PROCEDURE 6003: (A) AUTHORIZING, BUT NOTDIRECTING, THE DEBTOR TO
(1) PAY CERTAIN ACCRUED PRE-PETITION WAGES AND RELATED ITEMS, (2)
PAY EMPLOYEES' PRE-PETITION REIMBURSABLE BUSINESS EXPENSES, (3)
MAKE ACCRUED PRE-PETITION CONTRIBUTIONS TO EMPLOYEE BENEFIT
PLANS, AND (4) CONTINUE EMPLOYEE BENEFIT PLANS; (B) AUTHORIZING,
BUT NOT DIRECTING, THE RELEASE OF WITHHELD TAXES AND EMPLOYEE
CONTRIBUTIONS; AND (C) AUTHORIZING APPLICABLE BANKS AND OTHER
FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS
PRESENTED FORPAYMENT AND TO HONOR ALL FUND TRANSFER
<u>REQUESTS MADE BY THE DEBTOR RELATING TO THE FOREGOING</u>**

Upon the motion (the "<u>Motion</u>")[1] of the above-captioned Debtor and Debtor-in-

possession (the "<u>Debtor</u>") seeking entry of an order of this Court, pursuant to sections 105(a),

363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code and Federal Rule of Bankruptcy

Procedure 6003: (a) authorizing, but not directing, the Debtor to (i) pay certain accrued pre-

petition wages, salaries, overtime pay, incentive pay, contractual compensation and other

accrued compensation of the Employees, (ii) pay the Employees' pre-petition reimbursable

business expenses, (iii) make accrued pre-petition contributions to employee benefit plans, and

(iv) continue employee benefit plans post-petition; (b) authorizing, but not directing, the release

of withheld taxes and employee contributions; and (c) authorizing applicable banks and other

financial institutions to receive, process, honor and pay checks presented for payment and to

_____
[1] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Motion.

honor all fund transfer requests made by the Debtor relating to the foregoing; and it appears that (i) the Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Motion is warranted and is in the best interests of the Debtor, its estate, and its creditors; (iv) the relief granted hereby is necessary to avoid immediate and irreparable harm; and (v) proper and adequate notice of the Motion and the hearing thereon has been given under the circumstances and no other or further notice is necessary; and it appears that upon the record herein, after due deliberation thereon, good and sufficient cause exists for the granting of relief as set forth herein, it is hereby:

1.      ORDERED that the Motion is granted.

2.      ORDERED that the Debtor is authorized, but not directed, to satisfy the Employee Obligations in accordance with the Debtor's stated policies and in the ordinary course of the Debtor's business.

3.      ORDERED that the Debtor is authorized, but not directed, to pay Reimbursable Expenses in accordance with the Debtor's stated policies.

4.      ORDERED that the Debtor is authorized, but not directed, to forward the Employee Deductions to the appropriate parties.

5.      ORDERED that the Debtor is authorized, but not directed, to pay the Additional Work Force Costs.

6.      ORDERED that the Debtor is authorized to pay all processing fees associated with the payment of Employee Obligations.

7.      The Debtor is authorized, but not directed, to make payments with respect to Severance Benefits payable to Employees (other than Employees who are officers or former

officers of the Debtor), including any amounts that may be attributed to the period prior to the Petition Date, in the ordinary course of business.

8.      In accordance with this Order and any other order of this Court, each of the banks and financial institutions at which the Debtor maintains accounts is authorized to honor checks presented for payment and to honor all funds transfer requests made by the Debtor related to the satisfaction of the Debtor's Employee Obligations, Reimbursable Expenses and Severance Benefits, to the extent that sufficient funds are on deposit in such accounts.

9.      The relief granted herein shall not constitute or be deemed an assumption or an authorization to assume any executory contract or agreement, including, but not limited to, any benefit plans, employment agreements, or severance agreements to which the Debtor is a party.

10.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated:  November ___, 2014

_____
UNITED STATES BANKRUPTCY JUDGE

61805923

3