William R. Baldiga, Esquire
R. Benjamin Chapman, Esquire
BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036
(212) 209-4800

*Proposed Counsel for the*
*Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AEREO, INC. | : | Case No. 14-_____(___) |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |

**MOTION FOR ORDER PURSUANT TO SECTIONS 105(A), 327, 328, AND 330 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(A) AUTHORIZING THE
DEBTOR TO RETAIN, EMPLOY, AND PAY CERTAIN PROFESSIONALS IN THE
ORDINARY COURSE OF ITS BUSINESS**

Aereo, Inc., as debtor and debtor-in-possession (the "Debtor") in the above-captioned

Chapter 11 case, hereby moves (the "Motion"), by and through its proposed undersigned

counsel, for entry of an order substantially in the form attached hereto as Exhibit A, authorizing

the Debtor's retention, employment, compensation, and reimbursement of expenses for certain

professionals used in the ordinary course of the Debtor's business.  In support of this Motion, the

Debtor relies on the *Declaration of Ramon A. Rivera, Secretary, Treasurer, and Chief Financial*

*Officer of Aereo, Inc. in Support of First Day Pleadings* (the "Rivera Declaration"), which is

being filed contemporaneously herewith, and respectfully states as follows:

## JURISDICTION AND VENUE

1.        This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.        The statutory bases for the relief requested herein are sections 105(a), 327, 328, 329, and 330 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq*., as amended (the "Bankruptcy Code").

## BACKGROUND

1.        On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and, as of the date of the filing of this Motion, no official committees have been appointed.

### The Debtor's Business

2.        As more particularly described in the Rivera Declaration, the Debtor is a privately-held New York corporation with headquarters in Boston, Massachusetts.  The Debtor is a technology company founded in 2010 that provided subscribers with the ability to record and watch live or "time-shifted" (*i.e.*, delayed) local over-the-air broadcast television on internet-connected devices, such as personal computers, tablet devices, and "smartphones."

3.        The Debtor provided to each subscriber access via the internet to individual remote micro-antennas and a cloud-based digital video recorder ("DVR") that enabled a subscriber to receive and store local television programming broadcast over public airwaves.  Subscribers could designate which television programs to record by logging into the Debtor's website and selecting the programming they wanted to record and watch live or later.

4.     In contrast to traditional cable antennas and DVR boxes, which are located in subscribers' homes, the Debtor's individual antennas and hard disks are located in the Debtor's facilities within the local market and were individually made available to subscribers, who could then, using an internet browser, access local broadcast programming with an individual antenna and record it to disk.   The Debtor's subscribers could then watch their recordings live or save them for later viewing.   Essentially, the Debtor's technology provided a modern, easy-to-use option for consumers to watch over-the-air television without having to install cumbersome home equipment or subscribe to cable packages and bundles.   The Debtor's technology also includes a user interface, social networking features, and other features designed to create a compelling consumer experience.

**Events Leading to Chapter 11**

5.     Beginning in March 2012, various major television broadcasting networking, including, among others, ABC, CBS, NBC, (collectively, the "Broadcasters"),[1] commenced actions in the United States District Court for the Southern District of New York (the "District Court") seeking to enjoin the Debtor from allowing consumers to stream to themselves over-the-air broadcast content while the show was still airing solely on the asserted grounds that such transmissions were public performances  under the Copyright Act.   After an evidentiary hearing,

---

[1]   The Broadcasters include: American Broadcasting Companies, Inc., Disney Enterprises, Inc., CBS Broadcasting, Inc., CBS Studios, Inc., NBCUniversal Media, LLC, NBC Studios, LLC, Universal Network Television, LLC, Telemundo Network Group, LLC, and WNJU-TV Broadcasting, LLC (the "ABC Plaintiffs"), as well as WNET, Thirteen, Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, WPIX, Inc., Univision Television Group, Inc., the Univision Network Limited Partnership and Public Broadcasting Service (the "Fox Plaintiffs").   On May 6, 2013, the Debtor filed a declaratory judgment action against CBS Studios Inc.; CBS Television Licenses, L.L.C. d/b/a WSBK-TV, WBZ-TV, WJZ-TV; Atlanta Television Station WUPA, Inc. d/b/a WUPA-TV; CBS Television Stations, Inc. d/b/a WFOR-TV, KCNC-TV; Miami Television Station WBFS, Inc. d/b/a WBFS-TV; CBS Broadcasting Inc. d/b/a WBBM-TV, WWJ-TV, WCCO, KDKA-TV, KYW-TV; CBS Stations Group of Texas, Inc. d/b/a KTVT-TV; Television Station KTXA, Inc. d/b/a KTXA-TV; CBS Operations, Inc. d/b/a WTOG-TV; Detroit Television Station WKBD, Inc. d/b/a WKBD-TV; Pittsburgh Television Station WPCW, Inc. d/b/a WPCW-TV; Philadelphia Television Station WPSG, Inc. d/b/a WPSG-TV.

the District Court denied the preliminary injunction, finding that the Debtor's technology, which enabled consumer transmission via individual antennas and DVR recordings, did not constitute a public performance under the Copyright Act.  See Am. Broad. Co., Inc. v. Aereo, Inc., 874 F. Supp. 2d 373 (S.D.N.Y. 2012).   The Second Circuit affirmed the District Court's holding. WNET v. Aereo, Inc., 712 F.3d 676 (2d Cir. 2013), reh'g en banc denied, 722 F.3d 500 (2d Cir. 2013).[2]

6.     The Broadcasters appealed to the Supreme Court, which reversed the  Second Circuit, holding that the Debtor, in transmitting live broadcasts, was essentially performing as a traditional cable network for the purposes of the Copyright Act.  Am. Broad. Co., Inc. v. Aereo, Inc., 573 U.S. __, 134 S. Ct. 2498 (2014).

7.     On remand, the District Court granted the Broadcasters' request for a nationwide preliminary injunction preventing use of the Debtor's system for playback while the underlying program was still airing.  See Am. Broad. Co., Inc. v. Aereo, Inc., No. 12-cv-1540, slip op. at 15 (S.D.N.Y. Oct. 23, 2014).   The Debtor has complied with the injunction and stopped permitting any transmissions while the underlying program is airing.  In fact, as a result of the Supreme Court decision, the Debtor, in its business judgment, decided to suspend offering its technology to consumers.  Since then, the Debtor has had no material source of revenue and its business

---

[2]  On July 9, 2013, Hearst Stations, Inc. d/b/a WCVB-TV filed an action against the Debtor in the United States District Court for the District of Massachusetts (13-cv-11649-NMG), alleging copyright infringement (including public performance, reproduction, distribution and derivative work claims) and seeks a preliminary and permanent injunction, declaration of infringement, injunctive relief, damages and attorneys' fees.  A hearing on the motion for a preliminary injunction, which concerned all of the asserted claims, was heard on September 18, 2013 and the motion was denied on October 8, 2013.  The plaintiffs appealed to the United States Court of Appeals for the First Circuit ("First Circuit").  That appeal was stayed during the Supreme Court proceedings.  Upon the parties' agreement, all claims in the Hearst case were dismissed without prejudice on August 7, 2014.  In February, 2013, the Debtor was enjoined from operating within the 10th Circuit by the United States District Court in Salt Lake City Utah.  Community Television of Utah, LLC et al. v. Aereo, Inc., No. 2:13CV910DAK (D. Utah 2013).  The Debtor appealed that injunction and that appeal remains pending. KSTU LLC, et al. v. Aereo, Inc., No. 14-4020 (10th Cir. 2014).

operations have been devoted towards defending against lawsuits by the Broadcasters seeking further and permanent injunctive relief, damages and penalties for alleged copyright infringement.   The Debtor has also been formulating new legal strategies and potential new business models consistent with the Supreme Court's decision.

8.      A number of legal and regulatory issues relating to the Debtor's business may soon be resolved favorably in terms of the ability of the Debtor to use its technology in a viable business opportunity.  First, the Debtor has taken the position that it is entitled to a "compulsory" statutory license under Section 111 of the Copyright Act based on remarks by the Supreme Court during oral argument that the Debtor's operation is essentially identical to that of a cable network.  Thus, the Debtor has filed documents and payments with the United States Copyright Office seeking such a license as a compulsory licensee, which, if accepted, would result in there being no copyright infringement claims against the Debtor.  See 17 U.S.C. § 111(c)(1).

9.      Second, as recently as October 28, 2014, Tom Wheeler, Chairman of the Federal Communications Commission ("FCC"), proposed potential rule changes that would give internet-based broadcasters such as the Debtor the same classification as cable companies.[3] Also, on November 4, 2014, in a speech to the Mid-Atlantic Venture Association Chairman Wheeler stated:

> "Two weeks ago I proposed to my colleagues that we require of cable operators and broadcasters the same thing that spurred the growth of the satellite video business in the mid-1990s – that competitors should be able to negotiate in good faith for video content, even if it is owned by cable companies and broadcasters . . . . As you know, a startup called Aereo has already proposed doing this [being an over-the-top video competitor], but the broadcasters were able to stop it in court, in part because of the old rules of the FCC. Aereo wasn't the reason for the new

---

[3]  Tom Wheeler, Tech Transitions, Video, and the Future, Official FCC Blog (Oct. 28, 2014, 1:48 PM), http://www.fcc.gov/blog/tech-transitions-video-and-future.    It appears from the Chairman's public comments that a Notice of Proposed Rule Making ("NPRM") on this subject is imminent.

rules, but the idea that entrepreneurs should be able to assemble programs to offer consumers choices is something that shouldn't be hindered by the FCC."

See http://www.broadcastingcable.com/news/washington/wheeler-old-fcc-rules-shouldn-t-impede-services-aereo/135351 (last visited Nov. 11, 2015).

10.     If the FCC changes its position, as Chairman Wheeler previewed, then it may also be likely that the U.S. Copyright Office's position regarding compulsory license eligibility for providers of linear broadcast programming via the Internet would shift in the Debtor's favor. If the FCC elects to permit internet transmission of local linear broadcast channels, then the Debtor, assuming its continued viability, expects to be able to operate within that framework.

11.     However, even though the legal and regulatory framework is shifting in the Debtor's favor, the timing of a decision from the FCC is ultimately uncertain. Thus, during the several months since the Supreme Court's decision, the Debtor undertook a concerted effort to attract new capital or to effect a sale of its business. Those efforts have not been successful, in significant part due to the over-hang of the Broadcasters' litigation and potential damage claims. Without current customers or the ability to provide services, the Debtor also dramatically reduced its operational overhead. On November 6, 2014, the Debtor laid off a majority of its workforce and closed down its business operations in Boston. As of the Petition Date, the Debtor's reported assets at book value were approximately $20.5 million, and its aggregate recognized liabilities were approximately $4.2 million.

### RELIEF REQUESTED

12.     In the ordinary course of its business, the Debtor employs certain professionals (collectively, the "Ordinary Course Professionals") including various attorneys, advisors, and consultants. The Ordinary Course Professionals provide services which are unrelated to the administration of this Chapter 11 case, but are nevertheless important to the day-to-day operation

of the Debtor's business.  Pursuant to this Motion, the Debtor requests authority to continue to

retain, employ and compensate the following Ordinary Court Professionals – each a law firm –

for the specific and limited non-bankruptcy purpose identified:[4]

13.    *Fish & Richardson P.C.* – As explained above and further in the Rivera

Declaration, the Debtor is subject to extensive copyright litigation commenced by the

Broadcasters seeking to collect damages for purposed violations of copyright law.  In connection

with the copyright litigation, prior to the Petition Date the Debtor retained Fish & Richardson to

advise it in connection with, among other things, its document retention and storage obligations

resulting from the Broadcasters' litigation claims.  Those lawsuits are still pending in District

Court and, as such, the Debtor's document and equipment retention obligations arguably

continue.  The Debtor estimates that it will spend no more than approximately $25,000 per

month in professional fees to be paid to Fish & Richardson.  Fish & Richardson will not be

rendering any legal advice relating to these Chapter 11 proceedings.

14.    *Houston & Associates* – Also as explained further in the Rivera Declaration, the

Debtor's assets are comprised of, among other things, micro-antenna technology and its

intellectual property portfolio.  Prior to the Petition Date, the Debtor retained in the ordinary

course of its business Houston & Associates to perform routine and ongoing services in

connection with domestic and foreign patent applications and maintenance efforts to ensure the

Debtor's patents do not lapse.  These services are critical to the Debtor's technology-based

---

[4]  The Debtor reserves the right to remove and/or retain additional Ordinary Course Professionals in their
sole discretion from time to time during this case by filing with the Court and serving on the Notice
Parties (as defined below) a list of such additional professionals subject to the same retention and
compensation procedures set forth herein.  Further, the inclusion of any person or entity on Exhibit B to
the Proposed Order as an Ordinary Course Professional is not intended to be, and should not be deemed,
an admission by the Debtor that such person or entity is a "professional" within the meaning of section
327 of the Bankruptcy Code.

business and the value of its assets.  The Debtor estimates that it will spend no more than approximately $25,000 per month in professional fees to be paid to Houston & Associates. Houston & Associates will not be rendering any legal advice relating to these Chapter 11 proceedings.

15.     _Constantine Cannon, LLP_ – The Debtor retained Constantine Cannon prior to the Petition Date to provide specific advice regarding the Debtor's activities involving, and matters before, the FCC.  As described further in the Rivera Declaration, the FCC is currently re-evaluating its position regarding internet-based broadcasters such as the Debtor, and any new position may significantly alter the Debtor's rights and business viability.  The services of Constantine Cannon are critical for the Debtor in connection with interfacing with and lobbying the FCC in efforts to protect its business interests and, in turn, the interests of its estate, creditors and shareholders.  The Debtor estimates that it will spend no more than approximately $25,000 per month in professional fees paid to Constantine Cannon.  Constantine Cannon will not be rendering any legal advice related to these Chapter 11 proceedings.

16.     _Womble Carlyle Sandridge & Rice, LLP_ – Prior to the Petition Date, the Debtor retained Womble Carlyle Sandridge & Rice to provide specific advice regarding the Debtor's statutory license filings with the United States Copyright Office and with respect to regulatory matters with the FCC.  As the FCC is currently re-evaluating its position regarding internet-based broadcasters such as the Debtor, and any new position may significantly alter the Debtor's rights, the services of Womble Carlyle are critical to protect the interests of the Debtor's estate, creditors, and shareholders.  The Debtor estimates that it will spend no more than approximately $25,000 per month in professional fees paid to Womble Carlyle.  Womble Carlyle will not be rendering any legal advice related to these Chapter 11 proceedings.

17.    _Durie Tangri, LLP_ – Prior to the Petition Date, the Debtor retained Durie Tangri to provide specific advice regarding the Debtor's defense of copyright litigation and the development of the Debtor's business.  The legal landscape has changed in the context of ongoing litigation and the prospect of additional regulatory changes at the FCC, all of which may significantly alter the Debtor's rights.  Thus, the services of Durie Tangri are critical to protect the interests of the Debtor's estate, creditors and shareholders. The Debtor estimates that it will spend no more than approximately $25,000 per month in professional fees paid to Durie Tangri. Durie Tangri will not be rendering any legal advice related to these Chapter 11 proceedings.

18.    In order to ensure that the Debtor's business can continue to operate without interruption following the commencement of this Chapter 11 case, the Debtor seeks authority to continue to employ the Ordinary Course Professionals in the same manner and for the same purposes as they were retained prior to the Petition Date.  The Ordinary Course Professionals are intimately familiar with the Debtor's business and with the particular matters with respect to which the Ordinary Course Professionals have been retained, and they have institutional knowledge about the Debtor's operations.

19.    The Ordinary Course Professionals represent and advise the Debtor on several key aspects of the Debtor's business, including in regards to intellectual property.  As the Debtor is a technology company, and as intellectual property constitutes one of the Debtor's major assets, the uninterrupted services provided by these Ordinary Course Professionals are crucial to the Debtor's ability to retain the value of its estate for its creditors and shareholders.  Because the Ordinary Course Professionals are an integral part of the Debtor's business (and may be unwilling to provide services to the Debtor post-petition if not paid on a regular basis or if required to adhere to the formal retention and fee requirements), the Debtor believes that their

continued employment and compensation subject to the procedures set forth herein is in the best interests of the Debtor's estate, creditors and shareholders. By this Motion, the Debtor seeks to retain and employ the Ordinary Course Professionals without the need to file formal retention or fee applications under sections 327, 328, 329, and 330 of the Bankruptcy Code.  Given the significant costs associated with the preparation of these applications in relation to the Ordinary Course Professionals' fees, the Debtor believes that the process set forth herein will be more efficient and less costly for the Debtor's estate.  The Debtor will be relieved of the administrative burden of applying separately to the Court for approval of each Ordinary Course Professional's retention and the Court will be relieved of reviewing and approving each such professional's application for compensation and reimbursement of expenses.

## PROPOSED PROCEDURES

21.     The Debtor proposes that it be authorized to pay, without formal application to the Court by any Ordinary Course Professional, 100% of the fees and expenses of each Ordinary Course Professional upon the submission to the Debtor of an appropriate invoice setting forth in reasonable detail the nature of the services rendered after the Petition Date (the "Invoice"), provided that such fees and expenses do not exceed for each Ordinary Course Professional on Exhibit B to the Proposed Order, a total of $25,000 per month (the "OCP Limit").  Should the payment of fees and expenses to any one Ordinary Course Professional exceed the OCP Limit, such Ordinary Course Professional shall be required to apply to the Court for allowance of compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

Southern District of New York (the "Local Rules"), the Fee Guidelines promulgated by the Executive Office of the United States Trustee, and any applicable orders of the Court.

22.     Each Ordinary Course Professional shall file with the Court, and serve on the (i) the Office of the United States Trustee, 33 Whitehall St., Suite 2100, New York, New York 10044; (ii) the Debtor, c/o Aereo Inc., Attn: Ramon A. Rivera, Secretary, Treasurer, and Chief Financial Officer, 280 Summer St., Boston, MA  02210; (iii) counsel to the Debtor, Brown Rudnick LLP, Seven Times Square, New York, NY  10036 Attn: William R. Baldiga, Esq; and (iv) the persons or entities listed on the List of Creditors Holding the 40 Largest Unsecured Claims) (collectively, the "Notice Parties") a verified statement made pursuant to Rule 2014 of the Bankruptcy Rules, substantially in the form attached as Exhibit C to the Proposed Order (the "Rule 2014 Statement").   The Rule 2014 Statement shall set forth the Ordinary Course Professional's connections with the Debtor, the Debtor's creditors, and any other party-in-interest, including their respective attorneys and accountants.

23.     The Notice Parties shall have thirty (30) days after service of each Ordinary Course Professional's Rule 2014 Statement to object to the retention of such Ordinary Course Professional (the "Objection Deadline"), which objection shall be served upon the respective Ordinary Course Professional and the Notice Parties on or before the Objection Deadline.  If any of the Notice Parties objects to the payment of the additional fees sought in a Rule 2014 Statement, it shall serve a written statement of its objection to the Ordinary Course Professional and the other Notice Parties so that it is received by the Objection Deadline.  If any such objection cannot be resolved within thirty (30) days of its receipt, then the Ordinary Course Professional will be required to submit a formal application to this Court for the additional compensation or waive its right to any monthly fees in excess of the OCP Limit.  If no objection

is received from the Notice Parties by the Objection Deadline with respect to any particular Ordinary Course Professional, the Debtor shall be deemed authorized but not required to pay the compensation sought.

24.     Notwithstanding the thirty-day Objection Deadline, upon entry of an Order approving this Motion, the Debtor shall be permitted to make payments to an Ordinary Course Professional that has filed its respective Rule 2014 Statement and that has submitted its Invoice to the Debtor, so long as no objection to the retention of the Ordinary Course Professional has been received at the time of payment.[5]   Should any such payments be made to an Ordinary Course Professional prior to the Objection Deadline, and a timely objection is served after such payment is made and such objection cannot be resolved within fifteen (15) days, the matter shall be scheduled for hearing before the Court at the next regularly scheduled omnibus hearing date or on such other date otherwise agreeable to the parties.   In the event that the Court does not authorize the retention of the Ordinary Course Professional, such professional shall be required to disgorge any payments received from the Debtor for post-petition services.

25.     The Debtor also requests that it be authorized and empowered to employ and retain additional Ordinary Course Professionals during this case should the need arise, without having to file individual retention or compensation applications for each, by filing with the Court and serving on the Notice Parties a supplement to Exhibit B to the Proposed Order and without the need for any further hearing or notice to any other party.   Any such additional Ordinary Course Professional shall be subject to the same procedures set forth herein, including the requirement to file and serve a Rule 2014 Statement.

_____

[5]   The Debtor proposes to expedite payment to the Ordinary Course Professionals in order to avoid the undue hardship that will result to such professionals that have been providing post-petition services to the Debtor but remain unpaid.

## BASIS FOR RELIEF REQUESTED

26. The retention of "professionals" is governed by section 327 of the Bankruptcy Code. In determining whether a person or entity is a "professional" within the meaning of section 327 (and therefore whether their retention must be approved by the Court), courts consider the following factors (although not exclusively):

a. whether the entity controls, manages, administers, invests, purchases, or sells assets that are significant to the Debtor's reorganization;

b. whether the entity is involved in negotiating the terms of a plan of reorganization;

c. whether the entity is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

d. whether the entity is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate;

e. the extent of the entity's involvement in the administration of the debtor's estate; and

f. whether the entity's services involve some degree of special knowledge or skill, such that it can be considered a "professional" within the ordinary meaning of the term.

In re First Merchants Acceptance Corp., No. 97-1500, 1997 WL 873551, at *2-3 (Bankr. D. Del. December 15, 1997).

27. Consistent with these factors, other courts have held that only those professionals intimately involved with administration of the debtor's estate or the actual reorganization of the debtor's business must obtain prior court approval for their retention under section 327 of the Bankruptcy Code. See, e.g., In re Johns-Manville Corp., 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986) (finding that only those professionals involved in the actual reorganization effort, rather than the debtor's ongoing business, require approval under section 327); In re That's Entm't Mktg. Group, Inc., 168 B.R. 226, 230 (N.D. Cal. 1994) (holding that only the retention of

professionals whose duties are central to the administration of the estate require prior court approval under Section 327 of the Bankruptcy Code).

28.    Based on these considerations, the Debtor does not believe that the Ordinary Course Professionals are "professionals" within the meaning of section 327 of the Bankruptcy Code because their services are not directly related to the administration of the Debtor's Chapter 11 Case, but rather are connected to the Debtor's ongoing business operations.  These services are ordinarily provided by such professionals and would have continued to be provided regardless of the Debtor's bankruptcy filing.  However, in an abundance of caution given the essential nature of the Ordinary Course Professionals' services to the Debtor's business, the Debtor seeks the relief requested in this Motion to establish procedures for their retention and payment to avoid any subsequent controversy with respect thereto.  The Court is authorized to grant such relief under section 105(a) of the Bankruptcy Code.

29.    Further, the Debtor's request to establish these procedures is not unusual and courts in this district and others have granted the same or similar relief in other chapter 11 cases. See, e.g., In re Steve & Barry's Manhattan LLC, et al., Case No. 08-12579 (ALG) (Bankr. S.D.N.Y. 2008); In re Sharper Image Corp. et al., Case No. 08-10322 (KG) (Bankr. Del. 2008); In re Lexington Precision Corp. et al., Case No. 08-11153 (MG) (Bankr. S.D.N.Y. 2008); In re New York Racing Assoc. Inc., Case No. 06-12618 (JMP) (Bankr. S.D.N.Y. 2006); In re Parmalat USA Corp., Case No. 04-11139 (RDD) (Bankr. S.D.N.Y. 2004); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. 2002); In re Bethlehem Steel Corp., et al., Case Nos. 01-15228 through 01-15302, 01-15308 through 01-15315 (BRL) (Bankr. S.D.N.Y. 2001); In re Rhythms Netconnections Inc., et al., Case Nos. 01-14283 through 01-14287 (BRL) (Bankr. S.D.N.Y. 2001); In re Sunbeam Corp., Case No. 01-40291 (AJG) (Bankr. S.D.N.Y. 2001).

30.     Moreover, given the number of Ordinary Course Professionals and the costs associated with preparing retention applications for each such professional in relation to their fees, the Debtor believes that it would be inefficient and expensive for the Debtor and their counsel to file individual applications for each Ordinary Course Professional.   Further, the Ordinary Course Professionals may be unwilling to continue to provide services to the Debtor if they are only able to be paid through the formal application process.   Their continued retention is essential because of their unparalleled understanding of the Debtor's business, its employees, and the particular areas and matters for which they were responsible prior to the Petition Date, including global protection of the Debtor's intellectual property.   Although some of the Ordinary Course Professionals may hold unsecured pre-petition claims against the Debtor in connection with services rendered pre-petition, the Debtor does not believe that any of the Ordinary Course Professionals have an interest materially adverse to the Debtor with respect to the particular matters for which they are being retained as Ordinary Course Professionals, and in any event, the Ordinary Course Professionals will be required to attest to this before being compensated in their Rule 2014 Statement.

31.     Without the Ordinary Course Professionals' services, the Debtor would incur additional and unnecessary expenses because they would be forced to retain other professionals who lack the Ordinary Course Professionals' background and expertise.   Therefore, the Debtor believe that it is in the best interest of the Debtor's estate, the Debtor's creditors, and all other parties in interest to retain and compensate the Ordinary Course Professionals in accordance with the procedures set forth herein to prevent any disruption in the services that are required for the Debtor's day-to-day operations.

## NOTICE

32.     Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) those creditors listed on the Debtor's List of Creditors Holding the 40 Largest Unsecured Claims; (iii) the Ordinary Course Professionals included on Exhibit B; and (iv) those additional persons that have requested notice pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

33.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto, authorizing, but not requiring, the Debtor to retain, employ, compensate and reimburse the Ordinary Course Professionals and granting such other and further relief as is just and proper.

Dated: November 20, 2014
      New York, New York                    Respectfully submitted,

                                            BROWN RUDNICK LLP

                                            By:  /s/ William R. Baldiga
                                            William R. Baldiga, Esquire
                                            R. Benjamin Chapman, Esquire
                                            Seven Times Square
                                            New York, NY 10036
                                            (212) 209-4800

                                            *Proposed Co-Counsel for the Debtor and the Debtor-in-Possession*

**EXHIBIT A**

**PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| AEREO, INC. | : | Case No. 14-_____(___) |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |

### ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT
### OF PROFESSIONALS USED IN THE ORDINARY COURSE OF BUSINESS

Upon the motion (the "Motion") of the above-captioned Debtor and Debtor-in-possession (the "Debtor") seeking entry of an order, pursuant to sections 105(a), 327, 328, 329, and 330 of the Bankruptcy Code, authorizing the Debtor to retain, employ, compensate, and reimburse expenses of certain professionals used in the ordinary course of the Debtor's business, and due and sufficient notice of the Motion having been given; and it appearing that the relief requested by the Motion is in the best interest of the Debtor's estate, the Debtor's creditors, and other parties-in-interest; and the Court having jurisdiction to consider the Motion and the relief requested therein; and the Court having reviewed the Motion and considered the arguments made at the hearing; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Debtor is hereby authorized to retain and pay the Ordinary Course Professionals[1] listed on Exhibit B attached hereto, in the ordinary course of their business, and to modify such list without the need for any further notice, hearing, or order of the Court as set forth below.

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

3.      Each Ordinary Course Professional shall file with the Court, and serve on (i) the Office of the United States Trustee, 33 Whitehall St., Suite 2100, New York, New York 10044; (ii) the Debtor, c/o Aereo Inc., Attn: Ramon A. Rivera, Secretary, Treasurer, and Chief Financial Officer, 280 Summer St., Boston, MA  02210; (iii) counsel to the Debtor, Brown Rudnick LLP, Seven Times Square, New York, NY  10036 Attn: William R. Baldiga, Esq; and (iv) the persons or entities listed on the List of Creditors Holding the 40 Largest Unsecured Claims) (collectively, the "Notice Parties") a verified statement made pursuant to Rule 2014 of the Bankruptcy Rules, substantially in the form attached as Exhibit C to the Proposed Order (the "Rule 2014 Statement"). The Rule 2014 Statement shall set forth the Ordinary Course Professional's connections with the Debtor, the Debtor's creditors, and any other party-in-interest, including their respective attorneys and accountants.

4.      The Notice Parties shall have thirty (30) days after service of each Ordinary Course Professional's Rule 2014 Statement to object to the retention of such Ordinary Course Professional (the "Objection Deadline"), which objection shall be served upon the respective Ordinary Course Professional and the Notice Parties on or before the Objection Deadline.  If any of the Notice Parties objects to the payment of the additional fees sought in a Rule 2014 Statement, it shall serve a written statement of its objection to the Ordinary Course Professional and the other Notice Parties so that it is received by the Objection Deadline.  If any such objection cannot be resolved within thirty (30) days of its receipt, then the Ordinary Course Professional will be required to submit a formal application to this Court for the additional compensation or waive its right to any monthly fees in excess of the OCP Limit.

5.      If no objection is received from the Notice Parties by the Objection Deadline with respect to any particular Ordinary Course Professional, the Debtor shall be deemed authorized but not required to pay the compensation sought.

6.      Notwithstanding the thirty-day Objection Deadline, upon entry of an Order approving this Motion, the Debtor shall be permitted to make payments to an Ordinary Course Professional that has filed its respective Rule 2014 Statement and that has submitted its Invoice to the Debtor, so long as no objection to the retention of the Ordinary Course Professional has been received at the time of payment.  Should any such payments be made to an Ordinary Course Professional prior to the Objection Deadline, and a timely objection is served after such payment is made and such objection cannot be resolved, the matter shall be scheduled for hearing before the Court at the next regularly scheduled omnibus hearing date or on such other date otherwise agreeable to the parties.  In the event that the Court does not authorize the retention of the Ordinary Course Professional, such professional shall be required to disgorge any payments received from the Debtor for post-petition services.

7.      The Debtor shall not make any payments to an Ordinary Course Professional until such professional has filed their respective Rule 2014 Statement.  Upon satisfaction of the foregoing, and upon receipt of a reasonably detailed invoice from any such Ordinary Course Professional describing the services rendered post-petition in accordance with the parties' customary billing practices, the Debtor is authorized, but not directed to pay for each Ordinary Course Professional listed on Exhibit B up to a total of $25,000 per month.  The Debtor shall retain the right to dispute the amount of any invoices received from any Ordinary Course Professional, and if the parties are unable to resolve their dispute within fifteen (15) days, the

matter shall be scheduled for hearing before the Court at the next regularly scheduled omnibus

hearing date or on such other date otherwise agreeable to the parties.

8.      Should the payment of fees and expenses to any Ordinary Course Professional

exceed the limits set forth herein for any one month, such Ordinary Course Professional shall file

a fee application for the applicable month in which its fees and expenses exceed the limits set

forth above pursuant to sections 330 and 331 of the Bankruptcy Code, the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the Southern District of New York (the

"Local Rules"), the Fee Guidelines promulgated by the Executive Office of the United States

Trustee, and any applicable orders of the Court.

9.      The Debtor is authorized and empowered to employ and retain additional

Ordinary Course Professionals during this Chapter 11 Case should the need arise, without having

to file individual retention or compensation applications for each, by filing with the Court and

serving on the Notice Parties a supplement to Exhibit B attached hereto without the need for any

further hearing or notice to any other party.  Any such additional Ordinary Course Professional

shall be subject to the same procedures set forth herein, including the requirement to file and serve

a Rule 2014 Statement in a form substantially similar to that attached to this Order as Exhibit C.

10.     This Order shall not apply to any professional retained by the Debtor pursuant to a

separate order of the Court.

11.     The Debtor is authorized and empowered to take such actions as may be

necessary and appropriate to implement the terms of this Order.

12.     This Court shall retain jurisdiction with respect to all matters relating to the

interpretation or implementation of this Order.

13.     Notwithstanding Bankruptcy Rule 6004(g), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.


Dated: _____, 2014


_____
UNITED STATES BANKRUPTCY JUDGE

# **Exhibit B**

LIST OF ORDINARY COURSE PROFESSIONALS
SUBJECT TO $25,000 PER MONTH CAP

| Name | Services Provided |
|---|---|
| Houston & Associates, LLP | Patent Litigation Counsel |
| Fish & Richardson, P.C. | Document Retention |
| Constantine Cannon, LLP | FCC and Regulatory Advice |
| Womble Carlyle Sandridge & Rice, LLP | United States Copyright Office Advice |
| Durie Tangri, LLP | Copyright Litigation Counsel |

# **Exhibit C**

RULE 2014 STATEMENT

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| AEREO, INC., | : | Case No. 14-_____(___) |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |

**VERIFIED STATEMENT OF _____[COMPANY] PURSUANT TO**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014**

I, _____ declare under penalty of perjury:

      a.    I am the _____[title] of _____ [company] located at _____ (the "<u>Company</u>").

      b.    The Company has been retained by the above-captioned Debtor and Debtor-in-possession (the "<u>Debtor</u>") pursuant to this Court's Order dated _____ authorizing the Debtor to retain, employ, compensate, and reimburse the expenses of certain professionals used in the ordinary course of the Debtor's business (the "<u>Ordinary Course Professionals</u>") to provide: _____[description] services to the Debtor.

      c.    Pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure, the Company hereby confirms that, to the best of its knowledge and belief, and except as may be set forth on an exhibit attached hereto, other than in connection with this case, the Company does not have any connection with the Debtor, the Debtor's creditors, or any other party in interest, or their respective attorneys or accountants, with an actual or potential interest in this chapter 11 case. The Company hereby confirms that it does not represent any interest adverse to the Debtor or the Debtor's estate in the matters upon which it is engaged.

      d.    The Company may have performed services in the past, may currently perform services, and may perform services in the future, in matters unrelated to this chapter 11 case for persons that are parties in interest in this chapter 11 case. The Company does not perform services for any such person in connection with this chapter 11 case or have a relationship with any such person or their attorneys or accountants that would be adverse to the Debtor or the Debtor's estate.

      e.    Neither I nor any principal, partner, director, officer etc. of or professional employed by the Company has agreed to share or will share any portion of the compensation to be received from the Debtor with any other person other than the principals and regular employees of the Company.

f.      Neither I nor any principal, partner, director, officer etc. of or professional employed by the Company, insofar as I have been able to ascertain, holds, or represents any interest adverse to the Debtor or the Debtor's estate with respect to the matters on which the Company is to be employed.

g.      The Debtor owes the Company $[_____] for pre-petition services.

h.      If during the course of the Company's employment, the Company should discover any facts bearing on the matters described herein, the Company will supplement the information contained in this statement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____, 2014            [COMPANY NAME]

                                              _____
                                              [DECLARANT]

61810080

3