UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 14-13200 (SHL) |
| AEREO, INC., | : | |
| _Debtor._ | : | |

-------------------------------------------------------------------------X

## BROADCASTERS' MOTION FOR RELIEF FROM STAY
## PURSUANT TO 11 U.S.C. § 362(d) AND MEMORANDUM OF LAW

Patrick J. Trostle
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Tel:    (212) 891-1600
Fax:    (212) 891-1699

Catherine L. Steege (_pro hac vice_
application to be filed)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60613
Tel:    (312) 222-9350
Fax:    (312) 527-0484

Richard L. Stone (_pro hac vice_
application to be filed)
Julie A. Shepard (_pro hac vice_
application to be filed)
Amy M. Gallegos (_pro hac vice_
application to be filed)
JENNER & BLOCK LLP
633 West Fifth Street
Los Angeles, CA 90071
Tel:    (213) 239-5100
Fax:    (213) 239-5199

_Counsel for WNET; THIRTEEN; Fox
Television Stations, Inc.; Twentieth
Century Fox Film Corporation; WPIX,
LLC; Univision Television Group, Inc.;
The Univision Network Limited
Partnership; and Public Broadcasting
Service_

Bruce P. Keller
M. Natasha Labovitz
Michael Potenza
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel:    (212) 909-6000
Fax:    (212) 909-6836

_Counsel for American Broadcasting
Companies, Inc.; Disney Enterprises,
Inc.; CBS Broadcasting Inc.; and CBS
Studios Inc._

Michael V. Blumenthal
Jennifer A. Christian
THOMPSON & KNIGHT LLP
900 Third Avenue
20th Floor
New York, NY 10022-4728
Tel: (212) 751-3001
Fax: (212) 751-3113

_Counsel for NBCUniversal Media, LLC;
NBC Studios, LLC; Universal Network
Television, LLC; Telemundo Network
Group LLC; and WNJU-TV
Broadcasting LLC_

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ........................................................................................1

II.    BACKGROUND ........................................................................................3

III.   THE STAY SHOULD BE LIFTED. ........................................................................6

A.    Relief Would Result In A Complete Resolution Of Issues...................................................8

B.    The Copyright Litigation Will Not Interfere With The Bankruptcy Case...........................9

C.    The Court Has Special Expertise In Copyright Law And Detailed
Knowledge About This Case. ............................................................................10

D.    Resolving The Copyright Litigation Will Not Prejudice Other Creditors........................10

E.    Judicial Economy Favors An Expeditious Resolution Of The Copyright
Litigation.......................................................................................11

F.    The Parties Are Ready For Final Adjudication In The Other Proceeding.........................14

G.    The Balance Of Harms Favors Lifting The Stay. ............................................................14

H.    Broadcasters' Likelihood of Success On The Merits Of The Underlying Copyright
Action Supports Lifting The Stay. ..................................................................................15

IV.   CONCLUSION........................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
874 F. Supp. 2d 373 (S.D.N.Y. 2012) .................................................................15

*Am. Broad. Cos. v. Aereo, Inc.*,
134 S. Ct. 2498 (2014) ("*Aereo III*") .............................................................2, 4, 5

*Audiofidelity Enters., Inc. v. Conrad Music (In re Audiofidelity Enters., Inc.)*,
103 B.R. 544 (Bankr. D.N.J. 1989) .................................................................12

*Busch v. Busch (In re Busch)*,
294 B.R. 137 (B.A.P. 10th Cir. 2003) ...............................................................7

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
536 F.3d 121 (2d Cir. 2008) ("*Cablevision*") ..............................................4

*In re Consol. Distribs.*,
2013 WL 3929851 .........................................................................................7, 10

*In re Dapontes*,
364 B.R. 866 (Bankr. D. Conn. 2007) .............................................................12

*In re Enron Corp.*,
306 B.R. 465 (Bankr. S.D.N.Y. 2004) ...............................................................8

*In re MacInnis*,
235 B.R. 255 (S.D.N.Y. 1998) ..........................................................................7

*In re Project Orange Assocs., LLC*,
432 B.R. 89 (Bankr. S.D.N.Y. 2010) ...............................................................10

*In re SCO Group, Inc.*,
395 B.R. 852 (Bankr. D. Del. 2007) ................................................................15

*In re Score Board., Inc.*,
238 B.R. 585 (D.N.J. 1999) ...............................................................................7

*Int'l Bus. Machs. v. Fernstrom Storage and Van Co. (In re Fernstrom Storage and Van Co.)*,
938 F.2d 731 (7th Cir. 1991) ......................................................................15, 16

*Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atl. Handling Sys., LLC)*,
304 B.R. 111 (Bankr. D.N.J. 2003) ..................................................................11

*Mazzeo v. Lenhart (In re Mazzeo),*
    167 F.3d 139 (2d Cir. 1999)..............................................................................................8

*Murray Indus., Inc. v. Aristech Chem. Corp. (In re Murray Indus.),*
    121 B.R. 635 (Bankr. M.D. Fla. 1990) .......................................................................7, 12

*Musso v. Hirsch,*
    Nos. 08-cv-4735 (CBA), 08-cv-4532 (CBA), 2011 WL 4543225 (E.D.N.Y. Sept. 29,
    2011) ...................................................................................................................................9

*Packerland Packing Co. v. Griffith Brokerage Co. (In re Kemble),*
    776 F.2d 802 (9th Cir. 1985) ........................................................................................7, 11

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),*
    907 F.2d 1280 (2d Cir. 1990)...........................................................................................8

## STATUTES

11 U.S.C. § 362(d)(1) ...........................................................................................1, 6, 7, 16

11 U.S.C. § 502 .........................................................................................................13

11 U.S.C. § 503(b)(9) ...............................................................................................13

11 U.S.C. § 1129(a)(3)....................................................................................2, 11, 12

11 U.S.C. § 1129(a)(11)...............................................................................................2

11 U.S.C. § 5011(a) ...................................................................................................14

17 U.S.C. § 504(c) .....................................................................................................13

28 U.S.C. § 1338........................................................................................................10

Broadcasters,[1] pursuant to 11 U.S.C. § 362(d)(1) of the Bankruptcy Code, move for an order modifying the automatic stay imposed when Aereo, Inc. ("Aereo" or "Debtor") filed its petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court, Southern District of New York (the "Bankruptcy Court"), Case No. 14-13200 (the "Bankruptcy Case").  The automatic stay should be modified to allow the pending copyright infringement case, *American Broadcasting Companies, Inc., et al. vs. Aereo, Inc.*, Case No. 12 Civ. 1540 (AJN) (the "Copyright Case"), to proceed to final judgment, including determination of the appropriate scope of permanent injunctive relief and damages.  Broadcasters request that this Motion be heard and decided by the District Court, pursuant to the Motion to Withdraw Reference filed concurrently with this Motion.

## I.    PRELIMINARY STATEMENT

This Court should grant relief from the automatic stay in the Copyright Case because the District Court has already presided over nearly three years of expensive and time consuming litigation, including extensive motion practice, voluminous discovery, and appeals culminating in a Supreme Court decision in Broadcasters' favor.  The District Court, not the Bankruptcy Court, is in the best position to efficiently render a final judgment on Broadcasters' copyright infringement claims against Aereo and assess the appropriate statutory damages.  Final determination of the issues in the pending Copyright Case is necessary:  Aereo admits that it filed bankruptcy to "deal with the [copyright] litigation,"[2] and has expressly stated that it seeks to keep open the option of reorganizing and staying in the business of retransmitting broadcast

---

[1] Broadcasters are WNET, THIRTEEN, Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, WPIX, LLC, Univision Television Group, Inc., The Univision Network Limited Partnership, Public Broadcasting Service, American Broadcasting Companies, Inc., Disney Enterprises, Inc., CBS Broadcasting Inc., CBS Studios Inc., NBCUniversal Media, LLC, NBC Studios, LLC, Universal Network Television, LLC, Telemundo Network Group LLC, and WNJU-TV Broadcasting LLC.

[2] Declaration of Natasha Labovitz ("Labovitz Decl."), Ex. A (Bloomberg Trans. at 21-22.)

television programs.[3]  Alternatively, Aereo intends to sell its technology, which it admits was intended "only very specifically to broadcast TV" to a third party.[4]  This raises the specter that the asset buyer could attempt to use Aereo's technology to engage in the same infringing conduct as Aereo, forcing Broadcasters to sue the purchaser and relitigate the very same issues that are ripe for adjudication in the District Court right now.  Relitigating these issues in a new case would be a tremendous waste of judicial resources.

The Supreme Court held, in no uncertain terms, that Aereo's business model infringes Broadcasters' copyrights.  *See Am. Broad. Cos. v. Aereo, Inc*., 134 S. Ct. 2498 (2014) ("*Aereo III*").  Yet Aereo contends that it can avoid infringing by waiting to retransmit Broadcasters' programs until after they air live, and it still contends that it is entitled to a compulsory statutory license under Section 111 of the Copyright Act, even though the District Court has already expressly rejected this claim.  *See, e.g.,* Dist. Dkt. No. 341 at 4-9.[5]  The District Court was poised to address the delayed retransmission issue on summary judgment, having set a briefing schedule to resolve that issue right before Aereo filed for bankruptcy.  Dist. Dkt. No. 352.  That issue must be addressed if Aereo is going to reorganize because the Bankruptcy Court cannot approve a plan in which the debtor uses the assets in a way that violates the law.  *See* 11 U.S.C. § 1129(a)(3).  If Aereo's proposed business model is illegal, such a plan also could not possibly qualify as feasible.  *See* 11 U.S.C. § 1129 (a)(11).  Thus, any reorganization plan that involves Aereo continuing to offer a retransmission service – including, specifically, the time-delayed retransmission service Aereo claims it can legally offer – cannot be approved if it would infringe Broadcasters' copyrights.  And even if Aereo sells its assets, its liability for both near-live and

---

[3]  Declaration of Ramon Rivera dated November 20, 2014 ("Rivera Decl."), ¶¶ 27, 30 (stating reorganization could allow Aereo to continue "to be able to operate profitably").
[4]  Labovitz Decl., Ex. A, at 30.
[5]  "Dist. Dkt." refers to the docket in *American Broadcasting Companies, Inc., et al. vs. Aereo, Inc*., Case No. 12 Civ. 1540 (AJN).

delayed retransmissions must be finally adjudicated so that Broadcasters' statutory damage claims can be liquidated.

It is well-settled that the automatic bankruptcy stay may be modified to allow pending litigation to conclude – especially where, as here, it would be far more efficient to do so since the litigation is substantially advanced and the unresolved copyright issues are casting a shadow over the bankruptcy case.  Leaving these issues unresolved casts doubt on, among other things, whether Aereo can reorganize, what business a reorganized Aereo could legally engage in, and the amount of Broadcasters' claims.  Allowing the parties to file summary judgment motions and obtain a final judgment on the merits of Broadcasters' copyright claims and Aereo's defenses will provide needed clarity in the bankruptcy case.  It will also serve the interests of judicial economy because the scope of Aereo's liability – including liability for live and delayed retransmissions – will need to be litigated one way or another before Aereo emerges from bankruptcy.  All relevant issues are purely controlled by copyright law, which necessitates rulings by an Article III Court.  Further, granting this relief now will avoid later claims by Aereo, once it decides on its bankruptcy exit strategy, that its proposed plan cannot wait for these issues to be addressed.  As detailed below, all of the relevant factors the Second Circuit considers in deciding whether to lift a stay weigh in favor of such relief here.  Broadcasters therefore respectfully request that this Court allow the litigation to proceed so the District Court can render a final judgment and determine the appropriate permanent injunction.

## II.    **BACKGROUND**

The Copyright Case began nearly three years ago when Aereo announced that it had invented a new technology that supposedly would allow it to retransmit Broadcasters' copyrighted broadcast television programs over the Internet to paying Aereo subscribers without first obtaining a copyright license.  Specifically, Aereo contended that its system – a collection of

mini-antennas, transcoders, and computer components – fell within a loophole in the Copyright Act created by the Second Circuit's decision in *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) ("*Cablevision*"). The District Court denied Broadcasters' preliminary-injunction motion because it found itself bound by the Second Circuit's interpretation of the relevant provision of the Copyright Act in the *Cablevision* case. *See* Dist. Dkt. No. 109 at 18-19.

As the parties continued to litigate over the next several years, Aereo continued to retransmit Broadcasters' programs – 24 hours a day, seven days a week – to consumers who paid a subscription fee, expanding its initial New York service into Boston, Cincinnati, Denver, Detroit, and other locations across the country. While it was in operation, Aereo retransmitted thousands of copyrighted programs to its subscribers without authorization, on both a near-live and time-delayed basis.

In June of 2014, the Supreme Court held that Aereo was infringing Broadcasters' copyrights by publicly performing their programs, and it rejected the notion that Aereo's technology, based principally on mini-antennas and playback from subscriber-associated copies of television programs, shielded it from liability. *Aereo III*, 134 S. Ct. at 2506-10. The Supreme Court was also clear that Aereo publicly performed the programs when it transmitted those programs to its subscribers and *regardless of when its subscribers watched them*. Observing that "Aereo's subscribers may receive the same programs at different times," the Supreme Court held that this "does not help Aereo . . . [because] the Transmit Clause expressly provides that an entity may perform publicly 'whether the members of the public capable of receiving the performance . . . receive it in the same place or in separate places and at the same time or at *different times*.'" *Id.* at 2510 (emphasis added) (quoting 17 U.S.C. § 101).

Consistent with the Supreme Court's ruling, on October 23, 2014, the District Court issued an order preliminarily enjoining Aereo from publicly performing Broadcasters' programs without authorization, and rejected Aereo's after-the-fact Section 111 and DMCA defenses.[6] Because Broadcasters had originally only sought to preliminarily enjoin Aereo from retransmitting their programs while the programs were still airing, the preliminary-injunction order did not cover Aereo's delayed retransmissions. *See* Dist. Dkt. No. 341 at 15. The District Court was clear, however, that given the long history of this litigation and extensive discovery that had already occurred, it intended to render judgment on the merits and resolve all disputes about the scope of the permanent injunction on an expedited basis on summary judgment. *See id.* at 15, 16. Broadcasters requested that summary judgment motions be filed as early as November 26, but because Aereo professed to want to engage in additional expert discovery, the Court set a discovery deadline of January 16, 2015, and a deadline for summary-judgment and Daubert motions of February 16, 2015. Dist. Dkt. No. 352.

However, less than one week after the District Court issued its schedule, Aereo filed for bankruptcy, invoking the protections of the automatic stay. Almost immediately, Aereo moved the Bankruptcy Court to approve an auction sale of substantially all of its assets. Aereo's Sale Motion states that it intends not only to elicit bids for its assets, but also for "alternative proposals for reorganization" including "the ability to consummate a transaction that would permit the Debtor, in its business discretion, to decide to sponsor a plan of reorganization that permits the successful bidder to acquire all of the stock in the reorganized Debtor as an alternative to purchasing the Debtors' assets." Sale Motion, pp. 8-9, ¶ 19.

---

[6] Specifically, Aereo claimed that it was entitled to a statutory license under Section 111 of the Copyright Act, and that its conduct fell within certain "safe harbor" provisions contained in the Digital Millennium Copyright Act. *See* Dist. Dkt. 341, pp. 4-11.

Aereo has emphasized in the media that it may "end up deciding to restructure the company and attracting new capital." Labovitz Decl., Ex. A (Bloomberg Trans. at 22). It insists under oath that it may be able to continue some or all aspects of its retransmission business. Rivera Decl., ¶¶ 27, 30 (stating that resolution of "legal and regulatory issues relating to" Aereo's business may allow Aereo to continue "to be able to operate profitably"). And it has sought permission to continue paying its lobbyists. *See* Aereo's Motion for Order Authorizing the Debtor to Retain, Employ, and Pay Certain Professionals in the Ordinary Course of Its Business (Nov. 20, 2014, Bk. Dkt. 10). Aereo also continues to argue that its service is legal, both as to delayed retransmissions as well as near-live retransmissions. Although the District Court has already held that Aereo is not entitled to a Section 111 license, Aereo avers in its Sale Motion that it "has taken the position that it is entitled to a 'compulsory' statutory license under Section 111 of the Copyright Act" and "has filed documents and payments with the United States Copyright Office which, if accepted, would result in there being no copyright infringement claim against the debtor." Sale Motion at 6-7.

Aereo has been open about the fact that it is using the bankruptcy to evade the rulings already made in the litigation so that it can either keep operating or sell its technology to a third party to pick up where Aereo left off. Aereo's Kanojia has publically stated "it was clear that we had to deal with the litigation in some way, shape or form," and therefore "it made sense to look at Chapter 11 as kind of a way to deal with the litigation issues and at least unencumber the assets, which are truly valuable." *See* Labovitz Decl., Ex. A (Bloomberg Trans. at 22).

## III.    <u>THE STAY SHOULD BE LIFTED.</u>

Section 362(d) of the Bankruptcy Code expressly permits a court to modify the automatic stay to allow pending litigation to proceed in a forum other than the bankruptcy court "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11

U.S.C. § 362(d)(1).  The Code does not define "cause," but it is viewed by courts as a "broad and flexible concept." *In re Score Board., Inc.*, 238 B.R. 585, 593 (D.N.J. 1999).

It is well-settled that relief from the stay may be granted when it is appropriate to permit litigation to be concluded in another forum, particularly if the non-bankruptcy suit is ready for trial, or other dispositive resolution, as this case is here.  *See, e.g., Packerland Packing Co. v. Griffith Brokerage Co. (In re Kemble)*, 776 F.2d 802, 807 (9th Cir. 1985) (in lifting the automatic stay, the "district court may properly consider the factor of judicial economy," along with the "extensive preparation" for trial and debtor's "dilatory behavior"); *accord Busch v. Busch (In re Busch)*, 294 B.R. 137, 143 (B.A.P. 10th Cir. 2003) (no abuse of discretion where bankruptcy court deferred to the state court who "was in a better position to interpret its own rulings," "particularly in light of the uncertainty of [the debtor's] rights under [state] law"); *Murray Indus., Inc. v. Aristech Chem. Corp. (In re Murray Indus.)*, 121 B.R. 635, 637 (Bankr. M.D. Fla. 1990) (appropriate to lift the stay despite "some hardship" to the debtors, where "to begin this litigation anew in this bankruptcy court would result in more of a hardship to the [m]ovant and would certainly result in a waste of judicial resources"); *In re Consol. Distribs., Inc.*, Case No. 13-40350 (NHL), 2013 WL 3929851, at *10-11 (Bankr. E.D.N.Y. July 23, 2013) (stay lifted where continuation of district court action would "completely resolve the uncertainty" of the debtor's interest in a trademark and  "the resolution of the trademark claims is critical to the progress of the bankruptcy case"); *In re MacInnis*, 235 B.R. 255, 259-62 (S.D.N.Y. 1998) (district court overturned bankruptcy court's denial of relief from the stay on basis that litigation had progressed to an advanced state).

Indeed, the legislative history to Section 362(d)(1) expressly supports this conclusion:

> **It will often be more appropriate to permit proceedings to continue in their place of origin**, when no great prejudice to the

bankruptcy estate would result, in order to leave the parties to their chosen forum and **to relieve the bankruptcy court from many duties that may be handled elsewhere**.

S. Rep. No. 95-989, at 50 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5836 (emphasis added).

In the Second Circuit, courts consider twelve specific factors to determine whether to allow pending litigation to proceed outside of bankruptcy court. *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990). Not all of the factors will be implicated in every case. *See Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999); *In re Enron Corp.*, 306 B.R. 465, 476 (Bankr. S.D.N.Y. 2004). In this case, the relevant factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (4) whether litigation in another forum would prejudice the interests of other creditors; (5) the interests of judicial economy and the expeditious and economical resolution of litigation; (6) whether the parties are ready for trial in the other proceeding; and (7) the impact of the stay on the parties and the balance of harms. *See Sonnax*, 907 F.2d. at 1286-87. Application of the relevant factors makes clear that lifting the stay is not only appropriate but essential here.

### A.    Relief Would Result In A Complete Resolution Of Issues.

The first factor involves whether relief would result in the complete resolution of the issues to be adjudicated. Here, a decision on the merits of Broadcasters' copyright claims will resolve once and for all whether Aereo's time-delayed retransmissions constitute an infringing public performance. Resolution of this issue will determine whether Aereo can continue to operate in some fashion in a reorganized state or, if its technology is sold, the limits on how that technology can be used. If these issues are not resolved expeditiously, they will cause delays

-8-

later in the bankruptcy case.  The bankruptcy court and the creditors (and Aereo itself) will not know whether a reorganized Aereo legally can conduct business, and potential bidders for Aereo's assets will not know how, if at all, Aereo's technology can legally be used.  This factor therefore weighs in favor of granting relief from the stay.  *See Musso v. Hirsch*, Nos. 08-cv-4735 (CBA), 08-cv-4532 (CBA), 2011 WL 4543225, at *10 (E.D.N.Y. Sept. 29, 2011) (finding that the first factor favored relief from the stay because it would allow the parties to "generate a final, appealable resolution of these issues, which have loomed over [the debtor]'s bankruptcy for too long" and that "granting relief from the stay w[ould] substantially advance resolution of the bankruptcy proceedings").

### B.     The Copyright Litigation Will Not Interfere With The Bankruptcy Case.

This factor examines potential interference between the non-bankruptcy action and the bankruptcy case.  Far from interfering, resolving the liability and remedies issues is critical to the bankruptcy case, since such resolution will determine (i) whether Aereo, in a reorganized state, or a purchaser of Aereo's assets, can operate a delayed retransmission service or whether doing so violates Broadcasters' public performance rights; and (ii) the appropriate amount of a statutory damages and fee award necessary to quantify Broadcasters' claims.

Moreover, it is important to resolve these issues now.  Once the debtor decides on its preferred exit strategy, it is likely to argue (as many debtors do) that it is imperative that the bankruptcy court approve what it wants to do on an expedited basis.  Waiting to modify the stay for purposes of addressing the delayed retransmission and other copyright issues will inevitably result in Aereo claiming that there is no time to give the Broadcasters their day in court.  For example, Aereo's Sale Motion asks the Court to approve bidding procedures for an asset sale or alternative transaction (such as a reorganization) that give creditors less than one day to object to the proposed transaction.  Sale Motion, p. 8, ¶ 17(b) and (c).  By modifying the stay now, and

allowing the briefing to proceed on the District Court's current schedule (or some modified, expedited schedule if Aereo wants that), the Court ensures that the Broadcasters' interests are protected while allowing Aereo's case to move expeditiously.

## C. The Court Has Special Expertise In Copyright Law And Detailed Knowledge About This Case.

This factor considers any specialized experience possessed by the non-bankruptcy court. Copyright cases involve an area of law in which district courts not only have particular expertise, but exclusive original jurisdiction. *See* 28 U.S.C. § 1338. Copyright law is outside the Bankruptcy Court's core jurisdiction and expertise. Moreover, the District Court has presided over this case for nearly three years and is intimately familiar with the copyright infringement issues and Aereo's antenna and transcoding technology. In *Consolidated Distributors*, for example, the bankruptcy court modified the automatic stay where, as here, the pending trademark infringement litigation concerned the "application and interpretation of federal and state intellectual property law" and the district court judge was "already well-versed with the facts, issues and parties in that action." *In re Consol. Distribs.*, 2013 WL 3929851, at *11; *accord In re Project Orange Assocs., LLC,* 432 B.R. 89, 112 (Bankr. S.D.N.Y. 2010) (lifting the stay to allow resolution of litigation in state court where the judge had already "familiarized himself with many of the issues and evidence" in the case).

## D. Resolving The Copyright Litigation Will Not Prejudice Other Creditors.

This factor addresses whether creditors would be prejudiced by continuation of the non-bankruptcy litigation. Broadcasters are in aggregate Aereo's largest set of creditors. Permitting this litigation to proceed to its conclusion will not prejudice Aereo's other creditors. To the contrary, the resolution of this litigation will provide needed certainty in the bankruptcy proceedings because Aereo cannot continue as a going concern if its business plan depends upon

-10-

infringing Broadcasters' copyrights.  *See* 11 U.S.C. § 1129(a)(3) (requiring that any chapter 11 plan of reorganization be consistent with applicable law).  Additionally, fixing the amount of Broadcasters' damages with the statutory range will provide needed certainty for all creditors, and the District Court, having proceeded over three years of litigation, is in the best position to assess the appropriate amount of statutory damages.  *See Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atl. Handling Sys., LLC)*, 304 B.R. 111, 130-31 (Bankr. D.N.J. 2003) (finding that this factor weighed in favor of lifting the stay because "resolution of the issues before the state court must be addressed and damages, if any, fixed so that the extent of creditors' claims are known").  Moreover, in the event Aereo decides to sell its assets, certainty as to how Aereo's technology can legally be used could help, rather than hinder, a sale.

> ### E.      Judicial Economy Favors An Expeditious Resolution Of The Copyright Litigation.

The District Court has presided over this litigation for nearly three years and is now on the verge of issuing a final judgment that conclusively will determine the scope of a permanent injunction, whether Aereo's time-delayed retransmissions infringe Broadcasters' copyright interests, any additional remaining copyright issues, and the relief to which Broadcasters are entitled.  Judicial economy clearly favors lifting the stay and allowing the District Court and the parties to resolve the remaining liability issues.  *See, e.g., In re Consol. Distribs.*, WL 3929851, at *11 (holding that judicial economy warranted lifting the stay to resolve trademark infringement litigation that had  been pending in the district court for two years);  *see also In re Kemble*, 776 F.2d at 807 (stating that relief from the stay would be justified on the grounds of promoting judicial economy alone);  *In re Mid-Atl. Handling Sys.*, 304 B.R. at 131 ("[T]he notion of judicial economy compels this Court to conclude that the stay should be lifted so as to permit the litigation to proceed in state court.  Simply stated, the substantial time, effort, and

resources already expended by the parties, [the state court judge], and the Discovery Master in moving this case closer to trial should not be interfered with by this Court."); *In re Murray Indus.*, 121 B.R. at 637 (appropriate to lift the stay despite "some hardship" to the debtors, where "to begin this litigation anew in this bankruptcy court would result in more of a hardship to the [m]ovant and would certainly result in a waste of judicial resources").

The copyright infringement issues will have to be decided one way or the other.  The question is only whether they will be decided now or later.  Any reorganization or restructuring that depends upon Aereo's ability to offer a time-delayed retransmission service will require resolution of copyright issues.  Indeed, just a few months ago, Aereo specifically stated in its opposition to Broadcasters' preliminary injunction motion that it intended to offer a time-delayed retransmission service.  Dist. Dkt 325, at 22-25.  This will require a determination of whether Aereo's proposed business activities comply with the law.  *See* 11 U.S.C. § 1129(a)(3) (the court shall confirm a plan only if "[t]he plan has been proposed in good faith and not by any means forbidden by law"); *In re Dapontes*, 364 B.R. 866, 867-68 (Bankr. D. Conn. 2007) (holding that debtor could not propose plan where plan provisions would be contrary to federal common law).

Moreover, it is axiomatic that any purchaser of Aereo's assets would be required to comply with the law.  And courts have declined to approve asset sales where, as here, the assets are used to infringe a party's copyrights.  *See, e.g.*, *Audiofidelity Enters., Inc. v. Conrad Music (In re Audiofidelity Enters., Inc.)*, 103 B.R. 544 (Bankr. D.N.J. 1989) (declining to approve sale of tapes and records that infringed copyright).  Aereo has admitted as recently as last week that its technology is "only very specifically to broadcast TV."  Labovitz Decl., Ex. A (Bloomberg Trans. at 31); *see also id.*, Ex. B (Aereo patent describing Aereo technology as a "method and system for capturing, storing, and streaming over the air broadcasts").  If Aereo is permitted to

sell its technology before the legality of Aereo's service is fully resolved, Broadcasters may be forced to expend substantial financial resources suing the purchaser and re-litigating the issues that are ripe for adjudication before the District Court.  Thus, a final determination of whether Aereo's business model for its assets and technology – retransmitting broadcast television programs, over the Internet, on a time-delayed basis without Broadcasters' authorization – is viable or, instead, unlawful and subject to a permanent injunction would benefit all parties. Given that the parties and the Court have invested substantial time and resources in litigating the scope of Aereo's infringement, and given that the issue was on the brink of being decided when Aereo filed bankruptcy, the logical and efficient course is for this Court to lift the stay and let this matter proceed to a judgment.

Additionally, Broadcasters' proof of claim will reflect the amount of statutory damages arising from Aereo's infringement of their rights that they sought in the District Court, a determination within a broad statutory range.  *See* 11 U.S.C. § 502; 17 U.S.C. § 504(c).[4]  This determination is based upon a number of factors that the District Court can best assess based upon its extensive involvement with this case.   Under Section 502(a) of the Bankruptcy Code, Aereo can object to the liquidated damage claim by motion, which it will undoubtedly do.  For example, even though the District Court has rejected Aereo's argument, Aereo has continued in its bankruptcy filings to assert Section 111 as a defense and thus has signaled that it will contest that its simultaneous transmissions infringed Broadcasters' rights.  *E.g.*, Rivera Decl. ¶ 28. Because Aereo is continuing to raise defenses to Broadcasters' copyright claims in an effort to avoid liability, Broadcasters will need to seek to move the reference of Aereo's objection to their

---

[4] Aereo has filed a motion to set a schedule for proofs of claim to be submitted with a proposed bar date of February 6, 2015. Proposed Order Establishing Deadline for Filing Proofs of Claim (Including Any Claims Under Section 503(b)(9) of the Bankruptcy Code) and Approving the Form and Manner of Notice Thereof 1.

liquidated damage claims to the District Court so that it could resolve the infringement issues that underlie the statutory damage claims.  *See* 11 U.S.C. § 5011(a).   Resolving this issue now will avoid a delay later.

### F.       The Parties Are Ready For Final Adjudication In The Other Proceeding.

This factor strongly favors lifting the stay.  After nearly three years of litigation including voluminous discovery, substantial motion practice, and a trip to the Supreme Court and back, the parties were only a few weeks away from completing very limited discovery and filing summary judgment motions pursuant to the District Court's schedule.  *See* Dist. Dkt. No. 352.  That would have allowed the parties to obtain a final adjudication from the District Court on Aereo's liability for infringing Broadcasters' public performance rights and the appropriate scope of permanent relief.

### G.       The Balance Of Harms Favors Lifting The Stay.

This factor also favors lifting the stay.  Aereo will suffer no undue prejudice should the Copyright Case go forward because, as noted, the copyright issues must be resolved before any plan to reorganize can be ruled upon.  And, any incidental delay is of Aereo's own making.  On June 24, 2014, the Supreme Court found Aereo's service to be infringing.  Rather than seek bankruptcy protection then, Aereo chose to assert new defenses to see if they would fly.  When they did not, and the District Court signaled it was going to rule against the entirety of Aereo's service, Aereo filed for bankruptcy protection to avoid an unfavorable outcome.

In any event, resolving the copyright litigation will not impede Aereo's ability to move forward with the  bankruptcy case, but rather may facilitate the process by clarifying whether Aereo can reorganize and establish the limitations on how Aereo's technology can be used by a purchaser.   By contrast, allowing Aereo to use its bankruptcy to delay a final resolution of this litigation – especially now, after the Supreme Court has already adjudicated Aereo an infringer –

will severely prejudice Broadcasters who, like all owners of intellectual property, have a strong interest in assuring that their rights are not infringed. *See, e.g.*, *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 404 (S.D.N.Y. 2012) (citing *WPIX, Inc. v. ivi, Inc.*, No. 10–cv–07415(NRB), 2011 WL 1533175, at \*4 (S.D.N.Y. Apr. 19, 2011) ("The programming that defendants wish to make available to the public is not a natural resource that may be exploited by whomever obtains access. It is proprietary material that plaintiffs spend millions of dollars to develop and protect. The public is served by enjoining those who seek to illegally exploit the statutory rights of copyright holders.").    After three years, Broadcasters are entitled to a final decision on the legality of the entirety of Aereo's service.

### H.    Broadcasters' Likelihood of Success On The Merits Of The Underlying Copyright Action Supports Lifting The Stay.

In addition to the factors addressed above, courts have also considered the plaintiffs' likelihood of success on the merits in determining whether to lift the stay to allow existing litigation to conclude.  For example, in *In re SCO Group, Inc.*, 395 B.R. 852 (Bankr. D. Del. 2007), the bankruptcy court granted relief from the stay where a copyright plaintiff demonstrated a reasonable probability of success on the merits.  It noted that "[e]ven a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case."  395 B.R. at 859.  Similarly, in *In re Fernstrom Storage and Van Co.*, the mere fact that the creditor's insurance company had made a payment on the claim from which the creditor's action arose demonstrated to the court that the action was "not frivolous" and weighed in favor of relief from the stay.  *Int'l Bus. Machs. v. Fernstrom Storage and Van Co. (In re Fernstrom Storage and Van Co.)*, 938 F.2d 731, 737 (7th Cir. 1991).

Here, based on the Supreme Court's ruling in *Aereo III*, the District Court has already ruled that the Broadcasters have demonstrated a likelihood of success on the merits of their

-15-

public-performance claims, and has issued a nationwide preliminary injunction with respect to retransmissions of Broadcasters' copyrighted programming while those programs are airing based upon the Supreme Court's ruling in *Aereo*.   The District Court also indicated that it was prepared to rule regarding a permanent injunction not only with respect to retransmissions during the broadcast window, but also on retransmissions thereafter.   In *Aereo III*, the Supreme Court rejected Aereo's primary defenses.   The District Court then rejected Aereo's post-remand defenses (*e.g.*, Section 111 of the Copyright Act and the Digital Millennium Copyright Act) when it granted Broadcasters' motion for a preliminary injunction.   It also recognized that Broadcasters "have a viable argument that even Aereo's fully time-shifted retransmission of Broadcasters' copyrighted works violates Broadcasters' public performance right."  Dist. Dkt. No. 341 at 15; *see also id.* at 14 ("Plaintiffs may have a valid argument that the Supreme Court's reasoning casts doubt on any distinction between near-simultaneous and fully time-shifted retransmission of copyrighted works for the purposes of determining whether Aereo performs publicly").   In short, Broadcasters have a likelihood of success, and none of Aereo's recent maneuverings changes that assessment.

## IV.    <u>CONCLUSION</u>

Allowing Broadcasters to pursue and resolve the remaining claims and remedies (which involve pure copyright issues) in the District Court will best serve the interest of judicial economy and expedite the resolution of the litigation and this bankruptcy case.  For this reason, and those set forth above, Broadcasters respectfully request that this Court enter an order: granting the present motion, finding that cause exists under 11 U.S.C. § 362(d)(1) to modify the automatic stay, permitting this litigation to proceed on its current schedule through judgment (but not collection of any monetary amounts) and awarding appropriate remedies to Broadcasters, and granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ *Patrick J. Trostle*

Patrick J. Trostle
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Tel:    (212) 891-1600
Fax:    (212) 891-1699

Catherine L. Steege (*pro hac vice*
application to be filed)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60613
Tel:    (312) 222-9350
Fax:    (312) 527-0484

Richard L. Stone (*pro hac vice*
application to be filed)
Julie A. Shepard (*pro hac vice*
application to be filed)
Amy M. Gallegos (*pro hac vice*
application to be filed)
JENNER & BLOCK LLP
633 West Fifth Street
Los Angeles, CA 90071
Tel:    (213) 239-5100
Fax:    (213) 239-5199

*Counsel for WNET; THIRTEEN; Fox
Television Stations, Inc.; Twentieth
Century Fox Film Corporation; WPIX,
LLC; Univision Television Group, Inc.;
The Univision Network Limited
Partnership; and Public Broadcasting
Service*

Dated:     December 11, 2014
               New York, New York

/s/ *Bruce P. Keller*

Bruce P. Keller
M. Natasha Labovitz
Michael Potenza
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel:    (212) 909-6000
Fax:    (212) 909-6836

*Counsel for American Broadcasting
Companies, Inc.; Disney Enterprises,
Inc.; CBS Broadcasting Inc.; and CBS
Studios Inc.*

/s/ *Michael V. Blumenthal*

Michael V. Blumenthal
Jennifer A. Christian
THOMPSON & KNIGHT LLP
900 Third Avenue
20th Floor
New York, NY 10022-4728
Tel: (212) 751-3001
Fax: (212) 751-3113

*Counsel for NBCUniversal Media, LLC;
NBC Studios, LLC; Universal Network
Television, LLC; Telemundo Network
Group LLC; and WNJU-TV
Broadcasting LLC*