UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                                                                 :
In re:                                                           :     Chapter 11
                                                                                   :     Case No. 14-13200 (SHL)
AEREO, INC.,                                                 :
                                                                                   :
               *Debtor.*                                            :
-----------------------------------------------------------------------X

**BROADCASTERS' MOTION TO STAY OR CONTINUE SALE MOTION,
OR ALTERNATIVELY, OBJECTION TO THE SALE MOTION**

| | |
|---|---|
| Patrick J. Trostle<br>JENNER & BLOCK LLP<br>919 Third Avenue<br>New York, NY 10022<br>Tel:   (212) 891-1600<br>Fax:  (212) 891-1699<br><br>Catherine Steege (*pro hac vice* pending)<br>JENNER & BLOCK LLP<br>353 North Clark Street<br>Chicago, IL 60613<br>Tel:   (312) 222-9350<br>Fax:  (312) 527-0484<br><br>Richard L. Stone (*pro hac vice* pending)<br>Julie A. Shepard (*pro hac vice* pending)<br>Amy M. Gallegos (*pro hac vice* pending)<br>JENNER & BLOCK LLP<br>633 West Fifth Street<br>Los Angeles, CA 90071<br>Tel:   (213) 239-5100<br>Fax:  (213) 239-5199<br><br>*Counsel for WNET; THIRTEEN; Fox Television Stations, Inc.; Twentieth Century Fox Film Corporation; WPIX, LLC; Univision Television Group, Inc.; The Univision Network Limited Partnership; and Public Broadcasting Service; KSTU LLC; Fox Broadcasting Company; and KUTV Licensee, LLC* | Bruce P. Keller<br>M. Natasha Labovitz<br>Michael Potenza<br>DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, NY 10022<br>Tel:   (212) 909-6000<br>Fax:  (212) 909-6836<br><br>*Counsel for American Broadcasting Companies, Inc.; Disney Enterprises, Inc.; CBS Broadcasting Inc.; and CBS Studios Inc.*<br><br>Michael V. Blumenthal<br>Jennifer A. Christian<br>THOMPSON & KNIGHT LLP<br>900 Third Avenue<br>20th Floor<br>New York, NY 10022-4728<br>Tel: (212) 751-3001<br>Fax: (212) 751-3113<br><br>*Counsel for NBCUniversal Media, LLC; NBC Studios, LLC; Universal Network Television, LLC; Telemundo Network Group LLC; and WNJU-TV Broadcasting LLC* |

i

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................4

ARGUMENT .........................................................................................................................6

I. THE SALE MOTION SHOULD BE STAYED OR CONTINUED PENDING
RESOLUTION OF BROADCASTERS' WITHDRAWAL MOTION. .............................6

 A. Broadcasters Are Likely To Succeed On The Merits Of Their Withdrawal
Motion. ................................................................................................................. 7

 B. Relative Harm To The Parties And The Public Interest. ....................................... 8

II. IF THE COURT PROCEEDS TO SET A SCHEDULE FOR THE SALE OF
AEREO'S ASSETS, OR OTHERWISE APPROVE THE PROPOSED BIDDING
PROCEDURES, THOSE PROCEDURES SHOULD BE MODIFIED TO
PROTECT BROADCASTERS' INTERESTS. ................................................................10

III. IF THE COURT PROCEEDS TO SET A SCHEDULE FOR THE SALE OF
AEREO'S ASSETS, OR OTHERWISE APPROVE THE PROPOSED BIDDING
PROCEDURES, THE COURT SHOULD REQUIRE AEREO TO PROVIDE
INFORMATION TO THE BROADCASTERS ABOUT THE SALE PROCESS. ..........13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
　134 S. Ct. 2498 (2014) ................................................................................................5

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
　Case No. 12 Civ. 1540 (AJN) .................................................................................2, 4

*Audiofidelity Enters., Inc. v. Conrad Music (In re Audiofidelity Enters., Inc.)*,
　103 B.R. 544 (Bankr. D.N.J. 1989) .......................................................................3, 10

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
　536 F.3d 121 (2d Cir. 2008) .......................................................................................4

*In re Dana Corp.*,
　No. 06-10354 (BRL), 2007 WL 2908221 (Bankr. S.D.N.Y. Oct. 3, 2007) ................7

*Miller v. Vigilant Ins. Co. (In re Eagle Enters., Inc.)*,
　259 B.R. 83 (Bankr. E.D. Pa. 2001) ...........................................................................8

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
　478 F.3d 452 (2d Cir. 2007) .....................................................................................14

*Murphy v. Wadash P'ship (In re Murphy)*,
　34 B.R. 78 (Bankr. D. Md. 1983) .............................................................................11

**STATUTES**

11 U.S.C. § 1129(a)(3), (11) ..............................................................................................3

17 U.S.C. § 111 ..................................................................................................................5

17 U.S.C. § 512(a) .............................................................................................................5

28 U.S.C. § 157(d) .........................................................................................................7, 9

**OTHER AUTHORITIES**

Federal Rule of Bankruptcy Procedure 5011(c) ................................................................7

Broadcasters[1] respectfully submit their Objection to, and Motion to Stay or Continue, Aereo, Inc.'s ("Aereo") November 21, 2014 Motion to Approve Debtor's Motion for Entry of an Order (i) Approving Bidding Procedures in Connection with the Proposed Sale(s) of Certain or Substantially All of the Debtor's Assets and Other Potential Transactions; (ii) Establishing Certain Related Deadlines; and (iii) Granting Related Relief (Bankr. Dkt. 15, the "Sale Motion").

### INTRODUCTION

On December 11, 2014, Broadcasters filed a Motion to Withdraw the Reference of the Sale Motion. (Dkt. 48, the "Withdrawal Motion," attached hereto as Exhibit A.) On December 12, 2014, the Withdrawal Motion was assigned to District Court Judge Nathan who is also hearing Broadcasters' pending infringement action against Aereo (the "Copyright Litigation"). Broadcasters asked Aereo on December 12, 2014 if it would agree, as is Judge Nathan's practice, to the submission of an agreed briefing schedule on the Withdrawal Motion and also asked Aereo to continue, if necessary, the Sale Motion to allow the District Court to address the Withdrawal Motion. Aereo responded at the close of business that it would not continue the Sale Motion, but would agree to file its response to the Withdrawal Motion one day before the District Court sets a hearing on that Motion. Broadcasters have communicated that position to the District Court and are waiting for the District Court to schedule a hearing date. Because

---

[1] Broadcasters are WNET, THIRTEEN, Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, WPIX, LLC, Univision Television Group, Inc., The Univision Network Limited Partnership, Public Broadcasting Service, American Broadcasting Companies, Inc., Disney Enterprises, Inc., CBS Broadcasting Inc., CBS Studios Inc., NBCUniversal Media, LLC, NBC Studios, LLC, Universal Network Television, LLC, Telemundo Network Group LLC, WNJU-TV Broadcasting LLC, KSTU, LLC, KUTV Licensee, LLC and Fox Broadcasting Company.

Aereo will not agree, Broadcasters request that this Court defer the hearing on the Sale Motion until the District Court has ruled on the Withdrawal Motion.

As described below, and in the Withdrawal Motion, Aereo's bankruptcy case and Broadcasters' Copyright Litigation are substantially intertwined. Until the United States Supreme Court ruled this past June, Aereo had been retransmitting the Broadcasters' programs without their authorization in violation of the United States Copyright Act. On October 23, 2014, the District Court presiding over the Copyright Litigation issued a nationwide preliminary injunction enjoining Aereo from retransmitting the Broadcasters' programs while they were still airing and on November 14, 2014, entered an order establishing a summary judgment briefing schedule to decide, among other things, whether the injunction should be made permanent and extended to cover delayed retransmissions. *See Am. Broad. Cos., Inc. v. Aereo, Inc.*, Case No. 12 Civ. 1540 (AJN) at Dist. Dkt. Nos. 341, 352.

Less than a week later, Aereo filed its chapter 11 case and its Chief Executive Officer, Chaitanya Kanojia, publicly stated "it was clear that we had to deal with the litigation in some way, shape or form," and therefore "it made sense to look at Chapter 11 as kind of a way to deal with the litigation issues and at least unencumber the assets, which are truly valuable." *See* Ex. A to Withdrawal Motion (Bloomberg Trans. at 22). The same day it filed for bankruptcy, Aereo filed its Sale Motion in which it stated that it was both simultaneously seeking a buyer for its assets and considering possible restructuring transactions.

Both alternatives require resolution of the Broadcasters' Copyright Litigation. If Aereo enters into a restructuring transaction dependent on continued operations, the delayed retransmission issue must be addressed to ensure that Aereo's post-confirmation operations do not violate the law and to demonstrate that its plan is feasible, as required by applicable plan

confirmation standards.  *See* 11 U.S.C. § 1129(a)(3), (11).  If Aereo elects to sell its assets, Aereo should not be allowed to use the automatic stay to evade resolution of the issue as to the lawfulness of time-delayed retransmissions.  If allowed to do so, Aereo would, in effect, be using the automatic stay as a device to obtain option value from a prospective purchaser willing to gamble on whether time-delayed retransmissions are infringing.  The integrity of the sale process and of the bankruptcy court will only suffer if that occurs.  *See Audiofidelity Enters., Inc. v. Conrad Music (In re Audiofidelity Enters., Inc.)*, 103 B.R. 544 (Bankr. D.N.J. 1989) (recognizing the rights of copyright holders and declining to approve a section 363 sale of copyright infringing assets).

For these reasons, substantial copyright issues still need to be resolved before any court can decide whether Aereo should be allowed to sell assets that have only one apparent use – to infringe the Broadcasters' copyrighted works.  Prior to the bankruptcy, the District Court had already indicated that it intended to render judgment on the merits and resolve all disputes about the scope of the permanent injunction on an expedited basis.  *See* Dist. Dkt. No. 341 at 15, 16 (order setting schedule).  Given that Aereo has no stalking horse bidder or other transaction that is ready for approval, and has not even disclosed any marketing plan for the assets, a short delay to allow the District Court to decide the Withdrawal Motion is not likely to have any adverse effect on the estate.

If the Court nonetheless elects to proceed, Broadcasters request that the procedures be modified as set forth below.  Further, nothing approved as part of the bidding procedures should impact the Broadcasters' ability to object to any proposed sale.  Moreover, in the event the sale process proceeds, Broadcasters request that the Court order Aereo to provide regular updates

3

regarding the sale process to ensure that it is proceeding in a legitimate and appropriate manner, including that Aereo must immediately disclose any insider-related bids or plan proposals.

## BACKGROUND

The dispute between Broadcasters and Aereo arose nearly three years ago, when Aereo announced that it had invented a new technology that allegedly would allow it to retransmit Broadcasters' copyrighted television programs over the Internet to paying Aereo subscribers without first obtaining a license. Specifically, Aereo contended that its system – a collection of mini-antennas, transcoders, and computer components – fell within a loophole in the Copyright Act created by the Second Circuit's decision in *Cartoon Network LP, LLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) ("*Cablevision*"). The District Court denied Broadcasters' preliminary-injunction motion because it found itself bound by the Second Circuit's interpretation of the relevant provision of the Copyright Act in the *Cablevision* case. *See Am. Broad. Cos., Inc., v. Aereo, Inc.*, Case No. 12 Civ. 1540 (AJN), Dist. Dkt. No. 109 at 18-19.

As the parties continued to litigate over the next several years, Aereo continued to retransmit Broadcasters' programs – 24 hours a day, seven days a week – to consumers who paid a subscription fee, expanding its initial New York service into Boston, Cincinnati, Denver, Detroit, and other locations across the country. While it was in operation, Aereo retransmitted thousands of copyrighted programs to its subscribers without authorization, both while they were being broadcast and on a time-delayed basis.

In June of 2014, the Supreme Court held that Aereo was infringing Broadcasters' copyrights by publicly performing their programs, and it rejected the notion that Aereo's technology based principally on mini-antennas and playback from subscriber-associated copies of television programs, shielded it from liability. The Supreme Court was also clear that Aereo publicly performed the programs when it transmitted those programs to its subscribers *regardless*

4

*of when its subscribers watched them*. Observing that "Aereo's subscribers may receive the same programs at different times," the Supreme Court held that this "does not help Aereo . . . [because] the Transmit Clause expressly provides that an entity may perform publicly 'whether the members of the public capable of receiving the performance . . . receive it in the same place or in separate places and at the same time or at *different times*.'" *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2510 (2014) (emphasis added) (quoting 17 U.S.C. § 101).

Consistent with the Supreme Court's ruling, on October 23, 2014, the District Court issued an order preliminarily enjoining Aereo from publicly performing Broadcasters' programs without authorization, and rejected Aereo's after-the-fact Section 111 and DMCA defenses.[2] Because Broadcasters had originally only sought to preliminarily enjoin Aereo from retransmitting their programs while the programs were still airing, the preliminary-injunction order did not cover Aereo's delayed retransmissions. *See* Dist. Dkt. No. 341 at 15. The District Court was clear, however, that given the long history of this litigation and extensive discovery that had already occurred, it intended to render judgment on the merits and resolve all disputes about the scope of the permanent injunction on an expedited basis on summary judgment. *See id.* at 15, 16. Broadcasters requested that summary judgment motions be filed as early as November 26, but because Aereo professed to want to engage in additional expert discovery, the Court set a discovery deadline of January 16, 2015, and a deadline for summary judgment and Daubert motions of February 16, 2015. Dist. Dkt. No. 352.

However, less than one week after the District Court issued its schedule, Aereo filed for bankruptcy. On the same day as its bankruptcy petition, Aereo filed its Sale Motion. In it, Aereo

---

[2] Specifically, Aereo claimed that it was entitled to a statutory license under Section 111 of the Copyright Act (17 U.S.C. § 111), and that its conduct fell within a "safe harbor" provision of the Digital Millennium Copyright Act (17 U.S.C. § 512(a)). *See* Dist. Dkt. No. 341 at 4-11.

seeks to establish certain procedures (the "Bidding Procedures") that could allow it to sell "certain or substantially all" of its assets free and clear of all claims and interests, but also allows it to pursue "alternative proposals for reorganization" including any other transactions suggested by potential buyers or investors. Aereo states that alternative proposals might include, but are not limited to, a potential reorganization transaction in which a new money investment would result in the ongoing operation of Aereo's business as a going concern (collectively defined, along with the potential sale of assets, as a "Transaction"). (*See* Sale Motion ¶19.)

In its request for approval of an as-yet undefined Transaction free and clear of claims and interests, Aereo stated that among those "claims" it seeks to strip from the assets that are being sold are "all claims that may be asserted by the Broadcasters … as that term is used in the Bankruptcy Code" – the very claims at issue in the District Court Litigation. (*See* Declaration of Ramon A. Rivera, Secretary, Treasurer, and Chief Financial Officer of Aereo, Inc. in Support of First Day Pleadings, Dkt. 7, ¶26.)

On December 11, 2014, Broadcasters moved to withdraw the reference of the Sale Motion to the District Court so that the District Court can resolve the copyright issues inherent in the Sale Motion. (Dkt. 48.) On December 12, 2014, the Withdrawal Motion was assigned to Judge Nathan, who is also hearing the Copyright Litigation.

## ARGUMENT

**I.    THE SALE MOTION SHOULD BE STAYED OR CONTINUED PENDING RESOLUTION OF BROADCASTERS' WITHDRAWAL MOTION.**

Aereo's Sale Motion should be stayed or continued pending resolution of Broadcasters' Withdrawal Motion. A short continuance to allow the District Court to hear the Withdrawal Motion will not harm Aereo because, as explained below, it has no stalking horse bidder and is not seeking a sale hearing until February.

6

The Motion also should be stayed. Under Federal Rule of Bankruptcy Procedure 5011(c), "[t]he filing of a motion for withdrawal of a case or proceeding . . . shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion." Fed. R. Bankr. P. 5011(c). The standard for issuance of a stay pending decision on a motion to withdraw the reference is the same as the standard for the issuance of a stay in other circumstances. *In re Dana Corp.*, No. 06-10354 (BRL), 2007 WL 2908221, at *1 (Bankr. S.D.N.Y. Oct. 3, 2007). The court must consider and balance four factors: (1) the likelihood of succeeding on the merits of the motion to withdraw the reference, (2) that the movant will suffer irreparable harm if the stay is denied, (3) that Aereo will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay. *Id.* (citing *In re Issa Corp.*, 142 B.R. 75, 77 (Bankr. S.D.N.Y. 1992)).

### A.   Broadcasters Are Likely To Succeed On The Merits Of Their Withdrawal Motion.

Here the Broadcasters have a likelihood of success on the merits because they are entitled to both mandatory withdrawal of the reference and withdrawal "for cause" under 28 U.S.C. § 157(d). See *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991) (Section 157(d) requires withdrawal of the reference of any proceeding that involves "significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."); *Crown Heights Jewish Cmty. Council, Inc. v. Fischer* (*In re Fischer*), 202 B.R. 341, 354 (E.D.N.Y. 1996) (withdrawing reference to allow district court to decide motion to lift the stay as to pending lawsuit where lawsuit had been pending in the district court for more than four years). As discussed in detail in the Broadcasters' Withdrawal Motion, the requirements for mandatory withdrawal are met because the resolution of the Sale Motion requires significant

7

interpretation of substantive issues of copyright law. Moreover, permissive withdrawal should be granted because the Copyright Litigation has already proceeded for three years and there can be no doubt that withdrawal of the reference would promote the goals of efficiency and uniformity.

A likelihood of success should be found and a stay pending a motion to withdraw should be granted, where, like here, there is another pending court proceeding involving the same parties, facts and law at issue. *See Miller v. Vigilant Ins. Co. (In re Eagle Enters., Inc.)*, 259 B.R. 83, 88 (Bankr. E.D. Pa. 2001). In *Eagle Enterprises,* the court stayed an adversary proceeding pending a motion to withdraw where the district court would "likely withdraw . . . on the grounds that judicial economy would be served by trying both cases at the same time." *Id.* The court in *Eagle Enterprises* found that withdrawal would likely be granted because it would "prevent forum shopping and reduce the risk of inconsistent outcomes." *Id.* So too here. Here, the District Court's knowledge and experience with both the copyright issues and the history of the dispute between the parties make it particularly well suited to determine how best to address the Sale Motion in light of the pending Copyright Litigation. Broadcasters submit that a ruling on the Copyright Litigation is necessary before any Transaction should be approved and the District Court is in the best position to sequence and address those issues.

Moreover, Aereo should not be permitted to use its bankruptcy case to forum shop and avoid the District Court's near-term ruling on the Broadcasters' motion for summary judgment and for the entry of a permanent injunction. Broadcasters submit, therefore, that they are likely to be successful on the Withdrawal Motion.

### B. Relative Harm To The Parties And The Public Interest.

The remaining factors the Court must balance when deciding whether to stay argument on, and resolution of, the Sale Motion pending resolution of the Withdrawal Motion also weigh

8

heavily in the Broadcasters' favor for several reasons. *First*, Aereo is unlikely to suffer any real harm if the Court defers consideration of the Sale Motion. Aereo does not have a "stalking horse" transaction in hand. Thus, Aereo is not at risk of forgoing a transaction if the Sale Motion is deferred. Instead, all that will occur if the Court grants a stay is that the Court will not now be setting a date to approve a transaction that does not yet even exist. Aereo is likely to claim that setting a schedule now allows it to move its chapter 11 case forward, but granting a stay will not prevent Aereo from continuing to search for a legitimate buyer for its assets, assuming there is a use of the assets that complies with applicable law. Indeed, Aereo's Sale Motion suggests that even Aereo is not sure it can meet the February auction date and therefore "has purposely built in flexibility into the proposed Bidding Procedures so that all possibilities can be considered." (Sale Motion ¶19.) Given this admission, there is simply no reason (perhaps other than to preempt a decision by the District Court), and Aereo has offered none in its moving papers, why it needs to schedule a February sale hearing date now without any indication of the structure of the Transaction.

*Second*, Broadcasters will suffer harm if the Court approves the Sale Motion. Resolution of the Copyright Litigation is necessary to determine if a restructuring proposal is possible and to clarify for potential bidders whether there is any use of Aereo's mini-antennas and other principal technology assets that is non-infringing. Under Section 157(d), only the District Court can decide these copyright law issues. Broadcasters have moved, and are prepared to continue to move quickly, to ensure that these questions can be decided so that there is minimal disruption to Aereo's bankruptcy case. Finally, the determination – under copyright law – of whether and how Aereo's principal assets and technology may or may not be used will facilitate the sale or reorganization process.

9

For that same reason, the public interest is better served by granting a stay. For the public to have confidence in bankruptcy court sales, it must have confidence in the sale process. A rushed sale process that seeks to strip Broadcasters of their rights under federal copyright law which would thereby lay the groundwork for post-bankruptcy copyright infringement litigation does not promote confidence in the sale process or the bankruptcy system. By contrast, a short delay so that the District Court can determine how best to resolve the Broadcasters' claims, does just that.

Thus, Broadcasters respectfully request that the Court stay any action on the Sale Motion until the District Court can decide the Withdrawal Motion.

II. **IF THE COURT PROCEEDS TO SET A SCHEDULE FOR THE SALE OF AEREO'S ASSETS, OR OTHERWISE APPROVE THE PROPOSED BIDDING PROCEDURES, THOSE PROCEDURES SHOULD BE MODIFIED TO PROTECT BROADCASTERS' INTERESTS.**

Broadcasters have a number of objections to the Bidding Procedures and the sale process.

*First*, and foremost, the Sale Motion is remarkably vague about the type of transaction that Aereo wants the Court to approve. While Aereo does not yet have a buyer, it could have attached a proposed Asset Purchase Agreement or other term sheet that would lay out the conditions of any sale. It did not do that. The lack of any detail about the terms and conditions of a proposed sale leaves wide open the possibility that Aereo may propose a restructuring transaction or sale that continues to contemplate unauthorized retransmissions of the Broadcasters' programs in violation of copyright law. The case law makes clear that bankruptcy courts have declined to approve asset sales, where, as here, the assets to be sold are used to infringe on a party's copyrights. *Audiofidelity Enters.*, 103 B.R. at 546 (court found it "must balance the rights of the copyright holders under title 17 of the United States Code versus the rights of the debtor and creditors that come before [it] under title 11 of the United States Code").

10

Simply put, "[i]t would be improvident for [a] court to approve an illegal transaction." *Murphy v. Wadash P'ship (In re Murphy)*, 34 B.R. 78, 80 (Bankr. D. Md. 1983).

Because Aereo has not provided any substantive information about the terms and conditions of a proposed Transaction, Broadcasters will need sufficient time to review any proposed Transaction to assure that the sale does not represent a mere subterfuge to skirt the preliminary injunction. Under the current schedule set forth in the Sale Motion, however, Broadcasters will be required to object to a proposed transaction on the same day as the auction (and even before the 36 hours expires during which Aereo and the successful bidder are documenting the transaction). (*See* Sale Motion and Proposed Order, ¶5, 23(i).) This is not sufficient time for objections under normal circumstances, particularly where the terms of the Transaction will, by the very terms of the procedures, not even be finalized at the time the objection is due. The timing is wholly inappropriate in this case; it fails to provide sufficient time for Broadcasters to understand any proposed transaction and determine how it might impact their rights and whether the sale should be barred due to an infringing purpose. Accordingly, Broadcasters object to the proposed schedule and submit that objections should not be due until after Aereo provides sufficient notice of the Transaction documents and sufficient opportunity to study those documents. At a minimum, any objection deadline should be at least ten business days following the service of the Transaction documents upon parties-in-interest, including Broadcasters.

*Second*, Broadcasters are very concerned that Aereo and a buyer/sponsor of a restructuring transaction will attempt to build arbitrary deadlines into their agreements in an effort to run rough-shod over the Broadcasters' rights and, in particular, the Broadcasters' rights in having the retransmission issues (including whether delayed retransmissions are infringing)

11

finally resolved. Broadcasters have promptly taken action to seek to have the District Court resolve the necessary issues on an expeditious timetable; it would not be appropriate for Aereo to design a transaction process that could result in a hearing presenting those issues in a timeframe earlier than the District Court could consider them. To ensure that this does not happen, if this Court declines to stay the Sale Motion, the Bidding Procedures should, at a minimum, (a) place bidders on notice of the Broadcasters' claims and efforts to resolve the copyright issues promptly; (b) prohibit the inclusion in proposals for any Transaction of arbitrary closing deadlines that would be inconsistent with the timeframe for resolution of the Broadcasters' rights in the District Court; and (c) delay a hearing on – or, at the very least, the closing of – any proposed Transaction until after the District Court decides the copyright issues.

*Finally*, Broadcasters are concerned about the form of any proposed sale order. Aereo has not submitted a proposed form of sale approval order. Although any buyer would be bound by the copyright laws and could not use Aereo's assets in a manner that would violate those laws, Aereo's Chief Executive Officer has publicly suggested, contrary to the law, that it wants "to unencumber the assets" from the Copyright Litigation and to make arguments related to use of the assets that were rejected previously in the preliminary injunction context. *See* Ex. A to Withdrawal Motion (Bloomberg Trans. at 22). Broadcasters submit that, in light of these statements, it is appropriate for the Court to make clear now that a sale of Aereo's assets will not relieve the purchaser of the obligation to comply with copyright laws, including as set forth in the Supreme Court's decision and the District Court's rulings. Any order approving the sale should also so provide. In addition, to the extent that the delayed retransmission issue is not resolved by the District Court (or this Court) in advance of the Sale, the Bidding Procedures and any order approving a Transaction should make clear that Broadcasters contend that delayed

12

retransmissions of broadcast television programming are infringing and nothing in any proposed order will immunize any buyer from future infringement claims by Broadcasters should the buyer engage in such conduct.

Broadcasters reserve the right to raise additional objections to any transaction (or related order) when ultimately disclosed.

### III.    IF THE COURT PROCEEDS TO SET A SCHEDULE FOR THE SALE OF AEREO'S ASSETS, OR OTHERWISE APPROVE THE PROPOSED BIDDING PROCEDURES, THE COURT SHOULD REQUIRE AEREO TO PROVIDE INFORMATION TO THE BROADCASTERS ABOUT THE SALE PROCESS.

Aereo's Bidding Procedures fail to provide for information, updates and disclosures that are routinely provided to the most significant creditors in a chapter 11 case. Thus, Broadcasters request that the Court order Aereo to provide regular information and updates to Broadcasters regarding the sale process as it proceeds, to ensure that the process is proceeding in a legitimate and appropriate manner, including but not limited to information regarding bidders, including bidders who are not considered, and the right to attend any auction. This is particularly appropriate considering the importance to Broadcasters of how Aereo's assets will be used.

Moreover, it appears that insiders of Aereo may attempt to use the sale as a means to not only protect its assets from the substantial liability likely to result from the Copyright Litigation, but also work out an insider deal. In its Sale Motion, Aereo notes that it has a "so-called net loss carryover for Federal tax purposes of approximately $90 million to $100 million." (Sale Motion ¶16.) Aereo describes this "tax attribute" as an "asset that some parties would find of significant value in connection with a reorganization or other transaction that would preserve the future use of that attribute under applicable law." (*Id*.). Thus, Aereo's proposed sale process appears to be designed in a way that will allow the insiders to retain control of the company and to take advantage of the net loss carryover. Accordingly, if any bid or plan proposal is an insider

13

transaction, any order approving the Bidding Procedures should provide that Aereo must immediately disclose any insider involvement and no sale pursuant to section 363 should be allowed until the District Court makes its final rulings in the Copyright Litigation. Aereo should not be permitted to manipulate a section 363 sale to lock in a deal with insiders. Rather, any insider transaction should be vetted through a plan confirmation process. *See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 466 (2d Cir. 2007) (section 363 sales are prohibited when they constitute a *sub rosa* plan of liquidation that "in effect, 'short circuit the requirements of [C]hapter 11 for confirmation of a reorganization plan'").

WHEREFORE, for the reasons set forth herein, Broadcasters respectfully request that the Court stay Aereo's Sale Motion pending resolution of the Broadcasters' Withdrawal Motion, or in the alternative, deny it and grant such other relief as may be just and proper.

Respectfully submitted,

/s/ *Patrick J. Trostle*

Patrick J. Trostle
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Tel:   (212) 891-1600
Fax:   (212) 891-1699

Catherine Steege (*pro hac vice* pending)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60613
Tel:   (312) 222-9350
Fax:   (312) 527-0484

Richard L. Stone (*pro hac vice* pending)
Julie A. Shepard (*pro hac vice* pending)
Amy M. Gallegos (*pro hac vice* pending)
JENNER & BLOCK LLP
633 West Fifth Street
Los Angeles, CA 90071
Tel:   (213) 239-5100
Fax:   (213) 239-5199

*Counsel for WNET; THIRTEEN; Fox Television Stations, Inc.; Twentieth Century Fox Film Corporation; WPIX, LLC; Univision Television Group, Inc.; The Univision Network Limited Partnership; and Public Broadcasting Service; KSTU LLC; Fox Broadcasting Company; and KUTV Licensee, LLC*

Dated:    December 15, 2014
              New York, New York

/s/ *Bruce P. Keller*

Bruce P. Keller
M. Natasha Labovitz
Michael Potenza
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel:   (212) 909-6000
Fax:   (212) 909-6836

*Counsel for American Broadcasting Companies, Inc.; Disney Enterprises, Inc.; CBS Broadcasting Inc.; and CBS Studios Inc.*

/s/ *Michael V. Blumenthal*

Michael V. Blumenthal
Jennifer A. Christian
THOMPSON & KNIGHT LLP
900 Third Avenue
20th Floor
New York, NY 10022-4728
Tel: (212) 751-3001
Fax: (212) 751-3113

*Counsel for NBCUniversal Media, LLC; NBC Studios, LLC; Universal Network Television, LLC; Telemundo Network Group LLC; and WNJU-TV Broadcasting LLC*

15