William R. Baldiga, Esq.
R. Benjamin Chapman, Esq.
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Proposed Counsel for the
Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------X
In re:                                          :          Chapter 11 Case
                                                :
AEREO, INC.,                                    :          Case No. 14-13200 (SHL)
                                                :
            *Debtor.*                           :
---------------------------------------------------X

**DEBTOR'S RESPONSE AND OPPOSITION TO THE BROADCASTERS' MOTION TO
STAY OR OBJECTION TO BIDDING PROCEDURES MOTION**

Aereo, Inc., debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby files this reply (the "Response and Opposition") in support of its *Motion for an Order (I) Approving Bidding Procedures In Connection With The Proposed Sale(s) Of Certain Or Substantially All Of The Debtor's Assets; (II) Establishing Certain Related Deadlines; And (III) Granting Related Relief* [Docket No. 15] (as amended by [Docket No. 62], the "Bidding Procedures Motion") and in opposition to the *Broadcasters' Motion To Stay Or Continue Sale Motion, Or Alternatively, Objection To The Sale Motion*, filed on December 15, 2014, [Docket No. 60] (the "Stay Motion"). In support of this Response and Opposition, the Debtor respectfully represents as follows:

# I. INTRODUCTION

The moving Broadcasters'[1] motion to stay the proceedings on the Bidding Procedures Motion is part of the Broadcasters' strategy to bleed the Debtor of its remaining assets by continuing prepetition litigation and/or to seek advisory opinions from the District Court related to how some hypothetical but yet unknown purchaser of the Debtor's assets may someday engage in some hypothetical unlawful conduct. That campaign also includes motions to withdraw the reference and for relief from the automatic stay to force the Debtor to continue prepetition litigation for hypothetical purposes. The Debtor has made clear that it does not intend to reorganize or resume any operations and is proceeding solely to a sale of its assets under Section 363. The Broadcasters' efforts to use the out-of-business Debtor and the limited resources of its estate to pursue an advisory litigation campaign against the universe of potential buyers – to the detriment of other creditors – should not be permitted, particularly in light of the limited resources available for conducting a value-maximizing sale.[2]

### A. The District Court Proceedings

As this Court is aware, in addition to filing their instant Stay Motion seeking to prevent the Debtor from obtaining authorization to proceed with an orderly and value-enhancing sale process, the Broadcasters also filed a motion asking the District Court to withdraw the reference (the "Withdrawal Motion") [Docket No. 48] from this Court and decide both (a) the Bidding Procedures Motion, and (b) a motion for relief from the automatic stay (the "Relief From Stay Motion") [Docket No. 47], all in a concerted effort to force the Debtor to continue litigating the prepetition copyright litigation in the District Court. The Broadcasters' Withdrawal Motion was docketed with the District

---

[1] The Moving Broadcasters here are WNET, THIRTEEN, Fox Television Stations, Inc., Twentieth Century Fox Film Corporation, WPIX, LLC, Univision Television Group, Inc., The Univision Network Limited Partnership, Public Broadcasting Service, American Broadcasting Companies, Inc., Disney Enterprises, Inc., CBS Broadcasting Inc., CBS Studios Inc., NBCUniversal Media, LLC, NBC Studios, LLC, Universal Network Television, LLC, Telemundo Network Group LLC, WNJU-TV Broadcasting LLC, KSTU, LLC, KUTV Licensee, LLC and Fox Broadcasting Company.

[2] See In re Martin, 817 F.2d 175, 183 (1st Cir. 1987) (a creditor's "horrible imaginings alone cannot be allowed to carry the day.").

Court on December 12, 2014, and assigned to Judge Nathan on December 15, 2015 (the Broadcasters' copyright claims are pending before Judge Nathan).  See In re Aereo, Inc., No. 14-cv-09829 (AJN) (S.D.N.Y. 2014) (the "Withdrawal Case"); No. 12-cv-01540 (AJN) (S.D.N.Y. 2012) (the "Copyright Litigation").

On December 15, 2014, the Broadcasters and the Debtor each filed letters with the District Court requesting an expedited hearing on the Withdrawal Motion to occur any day before December 19, 2014, given that this Court is scheduled to hear and decide the Bidding Procedures Motion on that date.  See [No. 14-cv-09829; Docket Nos. 7, 8].  On December 16, 2014, the Debtor filed with the District Court its Objection to the Broadcasters' Withdraw Motion (the "Withdrawal Objection"), and submitted its declaration from Lawton W. Bloom, the Debtor's Chief Restructuring Officer ("CRO"), and Joseph Lipowski, the Debtor's Chief Technology Officer ("CTO"), in support thereof.  See [No. 14-cv-09829; Docket Nos. 14-15].

On December 16, the District Court issued a memorandum endorsement (the "Memo Endorsement") denying the Broadcasters' request for an expedited hearing, concluding that "No showing has been made necessitating a hearing or expedited review."  See Memo Endorsement [No. 14-cv-09829; Docket No. 16].  The District Court ordered the Broadcasters' to submit reply papers, if any, by December 23, 2014, and informed the parties that it would indicate at a later time if oral argument is required.  Id.

### B. The Instant Motion to Stay Bidding Procedures

The circumstances here weigh strongly in favor of the Court proceeding to decide the Bidding Procedures Motion at the hearing scheduled for this Friday, December 19, and denying the Broadcasters' request for a stay pending the District Court deciding their Withdrawal Motion because:

- First, The Broadcasters are unlikely to succeed on the merits of their Withdrawal Motion because: (i) they cannot show "cause" exists for the District Court to withdraw and decide the Bidding Procedures Motion, which requests relief that is squarely within this Court's "core" jurisdiction and expertise; and (ii) the District

> Court is not required to withdraw the Bidding Procedures Motion because it does not require interpreting or applying any Federal laws beyond title 11.
>
> - Second, approval of the procedures to govern the sale process in this Chapter 11 Case in no way poses any harm to the Broadcasters because their rights as creditors are in no way implicated by granting the procedural relief requested therein.
>
> - Third, any material delay in the sale process to permit the Broadcasters to continue litigating against every hypothetical use of the Debtor's assets further depletes the Debtor's already limited resources with the serious threat that the Debtor will be unable to consummate a value-enhancing transaction for the benefit of all of its creditors, including the Broadcasters.  See Declaration of Lawton W. Bloom In Support Of The Response And Opposition, dated December 17, 2014, filed herewith (the "Bloom Declaration") ¶ 9.
>
> - Finally, there is no threat to the public interest by proceeding with the sale process because nothing about a sale of assets under Section 363, or approval of the procedures governing such sale, would permit any potential purchaser to violate any law.

Accordingly, the Broadcasters' request to stay consideration of the Bidding Procedures Motion should be denied.

Knowing their request for a stay of consideration of the Bidding Procedures Motion is unjustified, the Broadcasters also assert, in the alternative, various objections and demands in relation to the Bidding Procedures Motion, including:

> - Objection to a purported lack of information regarding the terms and conditions of any proposed transaction or reorganization, and demand for an objection deadline of at least ten business days following notice of the terms of a proposed transaction prior to conducting any hearing for transaction approval.  See Stay Motion at 10-11.
>
> - Objection to any transaction that purports to compromise the Broadcasters' copyrights, and demand to (a) place bidders on notice of the District Court litigation and its desire to continue it, and (b) require that any form of proposed sale order must indicate that a sale will not relieve a purchaser of complying with copyright laws. See id. at 11-12.
>
> - Objection to anticipated lack of ongoing access to information about the sale process as it proceeds, and demand for continuing updates from the Debtor, including specifically as it relates to the identity of bidders.  See id. at Parts II & III.

These objections are unfounded and the Broadcasters' demands are well beyond anything to which a creditor in a chapter 11 bankruptcy proceeding is entitled in a Section 363 sale process. Nevertheless, the Debtor has been and continues to be willing to work with the Broadcasters to

-4-

address their concerns in a reasonable and constructive manner. Specifically, the Debtor has taken, or is willing to take, the following actions to address the Broadcasters' concerns:

- First, as set forth in the revised Bidding Procedures filed with the Court on December 16, 2014 (see [Docket No. 62]), the Debtor's Objection to the Broadcasters' Withdrawal Motion filed in the District Court on December 16, 2014 (No. 14-cv-09829 (AJN); [Docket No. 14]),[3] and the Bloom Declaration, the Debtor has confirmed that it does not intend to reorganize or in any way resume operation of its business. See, e.g., Bloom Dec. ¶¶ 4, 12. Thus any concern that the Broadcasters might have regarding the Debtor's hypothetical resumption of operations is unfounded.

- Second, to address the Broadcasters' concerns that any sale or approval of the Bidding Procedures would somehow affect the Broadcasters' future rights against a purchaser, the Debtor explicitly set forth in the revised Bidding Procedures Order the obvious point that nothing about approval of the Bidding Procedures or the fact of a Section 363(b) sale of its assets would authorize any potential purchaser to violate any applicable law, including Federal copyright law.

- Third, to ensure that all parties have notice of the Broadcasters' claims, the Debtor is willing to place in the Debtor's due diligence data room accessed by potential buyers a copy of the Supreme Court's June 2014 decision. A copy of the preliminary injunction entered by the District Court is already in the data room.

- Fourth, in an effort to provide the Broadcasters with additional transparency as to the sale process, the Debtor is willing to provide to the Broadcasters reasonable updates concerning the sale process as may be appropriate within the context of promoting a competitive and value-enhancing Section 363 sale, including by announcing, immediately before the start of the auction whether any bidder at the auction is an insider of the Debtor.

- Fifth, the Debtor is willing to agree to provide up to three (3) days between the close of the auction to file an objection to the proposed sale transaction prior to holding a hearing to consider and approve such sale.

These measures go above and beyond what is required to address the Broadcasters' objections, while still permitting the Debtor to proceed with the sale process within a timeframe its resources allow. Accordingly, the Court should continue to exercise its jurisdiction and allow this Chapter 11 case to progress on a responsible path, which is necessary to avoid irreparable harm to the Debtor and its creditors – and deny the Broadcasters' request to stay and enter the Bidding Procedures Order.

---

[3] A copy of the Debtor's Objection to the Broadcasters' Objection filed in the District Court, as well as the *Declaration of Lawton W. Bloom* and *Declaration of Joe Lipowski* in support of the Response and Opposition, are attached hereto as Exhibit A.

## II. ARGUMENT

The Court should not stay its consideration and approval of the Bidding Procedures Motion, currently set to be considered at the December 19 hearing. The Bankruptcy Court is best equipped to efficiently run a sale process and to consider the significant harm the Debtor, its creditors and shareholders would face if the sale process is delayed. Resolution of the Bidding Procedures Motion does not require consideration of any non-Bankruptcy Federal law and, furthermore, the Broadcasters' fear that a sale would permit purchasers to violate applicable Federal law is baseless. In addition the Debtor is willing to take additional steps to address the Broadcasters' concerns regarding the sale process. For these reasons, the Court should deny the Broadcasters' Stay Motion.

### A. THE COURT SHOULD NOT STAY APPROVAL OF THE BIDDING PROCEDURES

This Court retains jurisdiction over the Bidding Procedures Motion even while the Broadcasters' Withdrawal Motion is pending in the District Court, see FED. R. BANKR. PROC. 5011, and the circumstances here weigh heavily in favor of this Court proceeding to consider the Bidding Procedures Motion. The Broadcasters now ask this Court to refuse to exercise such jurisdiction. However, the Court should not delay approval of the Bidding Procedures Motion because the Broadcasters cannot satisfy any of the four factors required to support a stay:

1) the Broadcasters are unlikely to succeed on the merits, because neither mandatory nor permissive withdrawal of the reference is proper under 28 U.S.C. § 157(d);

2) the Broadcasters will not suffer irreparable harm from approval of the Bidding Procedures, because an asset sale under 11 U.S.C. § 363 does not give purchasers the right to use those assets to violate any laws;

3) the Debtor will be substantially harmed if the § 363 sale is delayed, because the Debtor's ability to carry out a value-enhancing sale for the benefit of its creditors and shareholders will be severely hindered; and

4) the public interest will be harmed if one creditor group is permitted to seek advisory opinions as to how a purchaser of the Debtor's assets may hypothetically use those assets, thereby depleting the Debtor's estate to the detriment of all other creditors.

See In re Dana Corp., No. 06-10354 (BRL), 2007 WL 2908221, at *1 (Bankr. S.D.N.Y. Oct. 3, 2007).  The Broadcasters' Stay Motion fails to meet this exacting standard, and therefore must be denied.

> **1. The Broadcasters Will Not Succeed On The Merits Because Neither Permissive Nor Mandatory Withdrawal Of The Reference Is Required**

A District Court "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or timely motion of any party, for cause shown."  28 U.S.C. § 157(d).  The Second Circuit has instructed District Courts to examine the following factors in determining whether "cause" exists:

    1.    whether the claim or proceeding is core or non-core;

    2.    whether the claim or proceeding is legal or equitable;

    3.    considerations of efficiency;

    4.    prevention of forum-shopping; and

    5.    uniformity in the administration of bankruptcy law.

Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993).  The moving Broadcasters cannot satisfy any of the Orion factors, and therefore cannot make any showing of cause to withdraw the reference.  Nor have the Broadcasters established that mandatory withdrawal is required to interpret any Federal law beyond title 11, and thus they cannot succeed on the merits of their Withdrawal Motion.

Withdrawing the reference under Section 157(d) should be sparingly applied in only the most compelling of circumstances.  See In re Argo Commc'ns Corp., No. 91 Civ. 7226, 1992 WL 75144, at *2 (S.D.N.Y. March 30, 1991) (Section 157(d) "has been interpreted to be of limited scope, with withdrawal being the exception rather than the rule."); In re Onyx Motor Car Corp., 116 B.R. 89, 91 (S.D. Ohio 1990) ("[W]ithout truly exceptional and compelling circumstances, a motion for withdrawal of reference will not be well received by [the] Court.").  No such compelling circumstances exist here.

### a. Cause Does Not Exist To Withdraw the Reference Because The Bankruptcy Court's Expertise In Core Matters Makes It The Most Efficient Forum To Hear The Bidding Procedure Motion And Apply Bankruptcy Law Uniformly

The Debtor's request to establish procedures to govern the sale of its assets is squarely within the Court's "core" bankruptcy jurisdiction (first Orion factor), as it stems from the bankruptcy process itself and relief that the Court is expressly authorized to grant by statute. See 11 U.S.C. § 363(b); In re Carl, 5 F. Supp. 215, 216 (M.D. Pa. 1933) ("[T]he bankruptcy court is fully equipped with all machinery and all the processes and powers necessary for the sale and conversion of the bankrupt's estate into cash.").[4]  This Court's expertise in conducting asset sales under Section 363 makes it well suited to do so in an efficient and expedient manner (third Orion factor) that will take into consideration the rights of all parties involved, and to determine whether the proposed Bidding Procedures that will govern the sale of the Debtor's assets meet the many requirements for asset sales pursuant to Section 363(b) and applicable rules.  This Court's determination as to the appropriate Bidding Procedures also will ensure uniform administration of the Debtor's bankruptcy estate for the benefit of all creditors involved, including the Broadcasters.

Moreover, establishment of customary procedures for the sale of a defunct debtor's assets is well within this Court's expertise as it does not require any interpretation of Federal law beyond the requirements of Section 363(b) of the Bankruptcy Code, and associated Bankruptcy Rules and the Local Rules related thereto.  Thus, the uniform administration of bankruptcy law (fifth Orion factor) would be served by leaving the Bidding Procedures Motion in this Court to decide.  In re Magnesium Corp. of Am., No. 01-B-14312 (REG), 04-cv-1357 (PKC), 2004 WL 1161172, at *2 (S.D.N.Y. May

---

[4]  See, e.g., In re Fortunoff Fine Jewelry & Silverware, LLC, No. 08-10353 (JMP), 2008 WL 618986, at *1 (Bankr. S.D.N.Y. Feb. 15, 2008) (holding that motion to approve bid procedures for the sale of the debtor's assets was a core proceeding under § 157); In re Innkeepers USA Trust, No. 10-13800 (SCC), 2011 WL 874502, at *1 (Bankr. S.D.N.Y. Mar. 11, 2011) (same); In re Saint Vincents Catholic Med. Ctrs. of New York, No. 10-11963 (CGM), 2010 WL 3638139, at *1 (Bankr. S.D.N.Y. Aug. 20, 2010) (same); In re Steve & Barry's Manhattan LLC, No. 08-12579 (ALG), 2008 WL 8168312, at *1 (Aug. 5, 2008) (same); see also In re Millennium Seacarriers, Inc., 458 F.3d 92, 95 (2d Cir. 2006) ("'[O]rders approving the sale of property' constitute core proceedings" under § 157(b)(2)(N)); In re Motors Liquidation Co., 428 B.R. 43, 56-57 (S.D.N.Y. 2010) ("It is well-settled that bankruptcy courts have core jurisdiction to approve section 363 sales . . .").

24, 2004) ("[A]llowing the bankruptcy court the first opportunity to address core matters promotes the uniform administration of the bankruptcy code."). Accordingly, considerations of efficiency and uniform administration of the bankruptcy process weigh heavily in favor of the District Court denying the Withdrawal Motion. See In re Quebecor World (USA), No. 12-cv-0888 (AJN), 2012 WL 11088343, at *2 (S.D.N.Y. Jul. 6, 2012) (where bankruptcy court's "knowledge and expertise" makes it "particularly well-situated to rule on the outstanding motions," efficiency dictates that withdrawal of the reference be denied).

> **b. Cause Does Not Exist to Withdraw the Reference Because Delaying the § 363 Sale Would be Inefficient and Endangers the Possibility of a Value-Enhancing Sale**

Moreover, as discussed further below, if the sale process were to be delayed by any material period of time, the Debtor will likely run out of cash and will not be able to complete what the Bankruptcy Code requires: that it convert its assets to as much cash as possible and to pay that cash to creditors to the full extent of all valid claims (and, if there is anything left over after that, to its shareholders). See Bloom Dec. ¶ 9. The Broadcasters Withdrawal Motion is an attempt to exhaust the limited resources of the Debtor's estate – to the detriment of other creditors – by forcing the Debtor to continue the Copyright Litigation. They do this because, they argue, they are concerned that *someone* might *someday* use the Aereo technology in an unlawful manner that may potentially infringe their rights. But as noted in Part B, infra, and more extensively in the Lipowski Declaration, ¶¶ 14-19, there are a number of uses for the Debtor's assets that have nothing to do with the Broadcasters, their claims, or their copyrighted works. Permitting the Broadcasters to continue with additional months of costly, complex and ultimately advisory copyright litigation concerning speculative uses by potential purchasers who are not even before the District Court would significantly delay the proceedings before this Court (third Orion factor), and likely deliver a severe blow to the Debtor's efforts to maximize the value of its assets for the benefit of all creditors (including the Broadcasters) and its

shareholders. Thus, this factor weighs in favor of the District Court declining to withdraw the reference.

### c. *Cause Does Not Exist to Withdraw the Reference Because Forum-Shopping Concerns Are Not Implicated Here*

The continued Copyright Litigation has significantly drained the Debtor's resources, costing the Debtor over $10 million in prepetition litigation costs. Bloom Dec. ¶ 9. The Debtor is in bankruptcy *because of* the costs of the Copyright Litigation and is seeking to sell all of its assets in order to realize any value it can achieve in a fair and open process, for the benefit of all of its creditors and shareholders. Nothing in the Bidding Procedures Motion asks the Bankruptcy Court to provide relief from Broadcasters' copyright claims. In fact, the Debtor is well aware (as are the Broadcasters) that any prepetition claims they have against the Debtor will eventually be liquidated. The Debtor is not asking to expunge those claims in the Bidding Procedures Motion. Additionally, the Debtor did not enter bankruptcy to seek relief from this Court to allow it to operate. Indeed, the Debtor has made clear that it does not intend to operate now or in the future, so any claim that Broadcasters could make that they need injunctive relief to prevent the Debtor from operating some or all of its business are unfounded.

The Debtor is also working to ensure that the Broadcasters' rights as creditors with contingent and unliquidated claims are not compromised by the sale process, as evidenced by the revisions to the Bidding Procedures Order allowing the Broadcasters to "inspect, measure, survey, photograph and perform any final testing with respect to, and to download and copy any data located on (collectively, "Inspection"), the Debtor's Production Servers and Equipment . . . in its current form and as it exists in any of the Debtor's Facilities," Bidding Procedures Order at ¶ 7(a). There simply is no basis for a claim that Debtors have engaged in any forum shopping.

-10-

   *d. There is No Basis for Mandatory Withdrawal of the Reference
   Because the Court Need Not Consider Non-Bankruptcy Federal Law*

Mandatory withdrawal under Section 157(d) "is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." In re Ionosphere Clubs, Inc., 103 B.R. 416, 418-19 (S.D.N.Y. 1989). Because this Court need not consider any Federal law beyond title 11 of the Bankruptcy Code to resolve the Bidding Procedures Motion, there is no basis for a mandatory withdrawal of the reference. Requests to approve sale procedures are routinely decided by bankruptcy judges in chapter 11 cases, including in those cases involving businesses subject to Federal laws beyond the Bankruptcy Code. See, e.g., In re A123 Systems, Inc., Case No. 12-12529 (Bankr. D. Del. 2013) (no withdrawal of the reference where there were challenges to the necessary federal approval of the sale before the Federal Committee on Foreign Investment in the United States); In re Beacon Power Corp., Case No. 11-13540 (Bankr. D. Del. 2011) (no withdrawal of the reference even when the United States objected to a sale arguing that the proposed sale procedures violated the rights of the United States under certain Federal statutes and regulation); Tedesco v. Mishkin, 53 B.R. 120, 123 (S.D.N.Y. 1985) ("Although plaintiffs allege that the sale of property may implicate other federal laws, this court does not find that considerations of other non-Bankruptcy federal statutes are necessary for the resolution of the issue whether the bankruptcy judge may order sale of the property."). Nothing is unique about this case in this regard, and nothing in the Bid Procedures Motion requires this Court to address any matters of copyright law. Therefore, there is no basis for mandatory withdrawal of the reference.

   **2. The Stay Should Be Denied Because the Broadcasters Will Not Suffer Any Harm if the Bidding Procedures Motion is Decided Now**

The Broadcasters' concern that a Section 363 sale would "strip [them] of their rights under federal copyright law" are unfounded for two reasons. First, a Section 363 sale does not authorize purchasers of assets to use those assets to violate the law. Nothing in the Bidding

-11-

Procedures Motion asks this Court to provide relief from the Broadcasters' copyright claims. Indeed, the Debtor has made very clear that it does not intend to operate now or in the future, thereby eliminating any possible need for any injunctive or other immediate relief. The Debtor also is working to ensure that the Broadcasters' rights as creditors with contingent and unliquidated claims are not compromised by the sale process, as evidenced by the revisions to the Bidding Procedures Order that would allow the Broadcasters to "inspect, measure, survey, photograph and perform any final testing with respect to, and to download and copy any data located on (collectively, "Inspection"), the Debtor's Production Servers and Equipment . . . in its current form and as it exists in any of the Debtor's Facilities." Bidding Procedures Order at ¶ 7(a).

Second, as addressed herein and in the revised Bidding Procedures, the Debtor is taking appropriate steps to address the Broadcasters' concerns, including by permitting them fair participation in the sale process. But, the Debtor is NOT willing to sacrifice what is best for all constituents to allow the Broadcasters to cause unreasonable cost and delay, which benefits no one, by litigating hypothetical issues to obtain an advisory opinion related to parties not before the Court (or the District Court) over something those parties may or may not do at some indeterminate time, in some unknown way and possibly in some other country.

**3. Staying Consideration of the Bidding Procedures Will Inflict Irreparable Harm on the Debtor and its Other Creditors and Shareholders**

The Debtor's resources will not support a material delay of the sale process. The Debtor is currently directing all of its efforts to a sale of its assets in the most orderly, efficient and cost-effective means possible, for the highest possible price, in order to maximize the value of its assets for the benefit of its creditors and shareholders. See Bloom Dec. ¶ 4. This includes the ability to seek and select a stalking horse bidder to set a baseline value for the Debtor's assets and setting customary procedures and a definitive timeline for doing so, in compliance with the

Bankruptcy Code.  In the Debtor's business judgment, being able to select a stalking horse bidder, which the Debtor has not yet been granted authority to do, would foster a robust sale process and maximize the value of the estate.  See, e.g., In re Remedial (Cyprus) Public Company Ltd., No. 10-10782 (REG), 2010 WL 2881418, at *1 (Bankr. S.D.N.Y. May 27, 2010) (authorizing Debtor to sell assets to stalking horse bidder finding it "in the best interests of the Debtor, its creditors and bankruptcy estate"); In re Steve & Barry's Manhattan LLC, No. 08-12579 (ALG), 2008 WL 8168312, at *2 (Bankr. S.D.N.Y. Aug. 5, 2008) (authorizing entry into stalking horse agreement and finding the stalking horse protections "provide a benefit to the Debtors' estates and creditors").

Immediate approval of the Bidding Procedures and Bidding Procedures Order is essential to the Debtor's efforts to conduct a sale process that hopefully will see significant value returned to creditors and shareholders, particularly in light of the Debtor's significant budget and staffing constraints.  See Bloom Dec. ¶ 9.  If the sale process proposed in the Bidding Procedures is materially delayed, the Debtor will likely run out of cash necessary to conduct the sale, and/or lose access to its current employees who are critical to the operation or understanding of the Debtor's technology.  Id.  The Debtor is in bankruptcy precisely because it could no longer afford to engage in the costly Copyright Litigation with the Broadcasters.  Id. ¶ 11.  If the Debtor is forced to divert its scant resources to advisory litigation in the District Court over things that may or may not happen in the future, as to hypothetical conduct that might be committed by parties other than the Debtor and not before the Court, it will run out of cash and face the threat of being unable to consummate a sale, which will cause irreparable harm to all of its creditors.  Id.  As such, the delay that would result from postponing the sale process and continuing the Copyright Litigation decidedly militates against withdrawing the reference.

B. **THE BROADCASTERS' OBJECTIONS TO THE BIDDING PROCEDURES ARE UNFOUNDED AND DO NOT JUSTIFY DELAYING THE SALE PROCESS**

The Broadcasters' objections to the Bidding Procedures are unfounded for the following reasons:

**First**, contrary to the Broadcasters' unfounded fears, the Debtor is not proposing that a sale (much less a sale process, which is the only thing that the Bidding Procedures Motion requests to establish) of its assets would permit any party to violate applicable law, including Federal Copyright law. While it is true that a Bankruptcy Court should not approve a sale of an asset that has no permissible use,[5] the Debtor's assets can be used in myriad ways that do not bear on or concern any issue in the Copyright Ligation before the District Court, including, but not limited to, the following:

- The Debtor's system could be used to provide access to licensed cable television channels in much the same way that Bloomberg's cable television channel was previously accessible through the Debtor's system. The Bloomberg channel was ingested into a transcoder and sent to the remote DVR and streamer using a direct licensed feed, not through any remote antennas. Other licensed cable television broadcasts could be ingested into the Debtor's system and accessed by users. See Declaration of Joseph Lipowski in Support of Debtor's Response and Opposition, dated December 17, 2014, filed herewith (the "Lipowski Declaration"),¶ 15.

- Video could also be obtained through live broadcasts from the web cams of members of the public. That video could be ingested into the Debtor's system through the Internet rather than through antennas and recorded and accessed through the remote DVR and streamer. Id. ¶ 16.

- The remote DVR and streamer could also be used to stream licensed content, such as movies and television programs, saved on the Debtor's system's hard drives. Such a service would be similar in concept to the current service provided by Netflix. Id. ¶ 17.

- The antennas could be adapted for other uses, such as to receive radio signals, weather signals, and navigation signals. Id. ¶ 18.

---

[5] The Broadcasters' reliance on Audiofidelity Enters., Inc. v. Conrad Music (In re Audiofidelity Enters., Inc.), 103 B.R. 544 (Bankr. D.N.J. 1989) is misplaced. In Audiofidelity, the Bankruptcy Court was faced with approving the 363 sale of illegal goods – recordings – that could not possibly be used in any way that did not infringe on the plaintiffs' copyrights in violation of a stipulated consent order. Here, there are many uses of the Debtor's assets that would in no way concern any of the Broadcasters or their claims. Audiofidelity is therefore inapposite to the facts present here.

-14-

- The Aereo system including the antennas could also be implemented internationally in jurisdictions that do not have the same laws as the United States and use the same standard for digital over-the-air broadcasts. Id. ¶ 19.

- The remote DVR and streamer are capable of recording and streaming video from myriad other sources as long as the video signal is coded using a standard codec. Id. ¶ 15. As such, the Aereo system's transcoders and the remote DVR and streamer could be configured to permit users to access a limitless amount of other video content that has nothing to do with these broadcasters and their claims. Id.

Furthermore, the Debtor's revised Bidding Procedures Order, and other filings in this Court and the District Court, highlight the fact that nothing about a Section 363 sale, or the procedures governing it, can authorize any potential buyer to violate applicable law. In addition, in order to ensure all potential purchasers have notice of the Broadcasters' claims, the Debtor is willing to place in the Debtor's data room, used by potential buyers conducting due diligence of the Debtor's assets, copies of the Supreme Court's June 2014 decision, as well as the District Court's preliminary injunction order.

**Second**, the Debtor is prepared to provide the Broadcasters with additional transparency as to the sale process in order to address any concern that the Broadcasters are unaware of the terms of the proposed sale. Specifically, the Debtor is willing to provide the Broadcasters with reasonable updates concerning the sale process as it proceeds as may be appropriate within the context of promoting a competitive and value-enhancing Section 363 sale, including by announcing immediately before the start of the auction whether any bidder is an insider of the Debtor.

**Third**, the Debtor is willing to agree to provide the Broadcasters with up to three (3) days following the close of the auction to file an objection to the proposed sale transaction prior to holding a hearing to consider and approve such sale. The Debtor believes this brief objection period is more than sufficient for the Broadcasters to submit their objections to the proposed sale. The Debtor also believes that any further amount of time would inappropriately chill bidding due to the Debtor's fiduciary obligation to consider, at any time prior to the closing of a sale, subsequent overbids submitted after the auction. Under applicable law, the Court may be required to consider better and higher offers submitted in a Section 363 sale even after an agreement for sale has been reached and

the auction concluded. See In re Fairfield Sentry Ltd., 768 F.3d 239, 247 (2d Cir. 2014) (instructing a bankruptcy court in context of Section 363 sale to consider the increase in value between the time the transaction was entered into by the estate and the time the bankruptcy court is considering approval); see also Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (requiring the Debtor to notify the Court of a change in circumstances, including a subsequent overbid, that no longer makes a prior agreed-to transaction within the best interests of the Debtor's creditors). Too long of a period between the close of bids and the sale approval hearing is, in the Debtor's business judgment, potentially chilling and value-eroding.

The Debtor submits that these protections are more than satisfactory to address the Broadcasters' concerns regarding this Court's approval of the Bidding Procedures. Accordingly, the Court should exercise its jurisdiction and proceed to consider and approve the Bidding Procedures at the hearing scheduled for this Friday, December 19.

### III. CONCLUSION

Because the moving Broadcasters have not shown that a stay of this Court's consideration of the Bidding Procedures is appropriate, and because the Debtor has undertaken extensive steps to address the Broadcasters' concerns with the Bidding Procedures, the Court should proceed to consider and approve the Bidding Procedures at the hearing scheduled for this Friday, December 19.

Dated: December 17, 2014
New York, New York

                BROWN RUDNICK LLP

                By:/s/ William R. Baldiga
                   William R. Baldiga, Esq.
                   R. Benjamin Chapman, Esq.
                   7 Times Square
                   New York, NY 10036
                   Telephone: (212) 209-4800
                   Facsimile: (212) 209-4801

                *Proposed Counsel for the*
                *Debtor and Debtor-in-Possession*