William R. Baldiga, Esq.
R. Benjamin Chapman, Esq.
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone:  (212) 209-4800
Facsimile:  (212) 209-4801

*Proposed Counsel for the*
*Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------X
In re:                                                      :
                                                               :
AEREO, INC.,                                         :
                                                               :
                        *Debtor.*                      :
-------------------------------------------------X

Chapter 11 Case

Case No. 14-13200 (SHL)

**DEBTOR'S OMNIBUS RESPONSE TO OBJECTIONS**
**TO BIDDING PROCEDURES MOTION**

Aereo, Inc., debtor and debtor-in-possession (the "<u>Debtor</u>") in the above-captioned

chapter 11 case (the "<u>Chapter 11 Case</u>"), hereby files this omnibus response (the "<u>Omnibus</u>

<u>Response</u>") in further support of its *Motion for an Order (I) Approving Bidding Procedures In*

*Connection With The Proposed Sale(s) Of Certain Or Substantially All Of The Debtor's Assets;*

*(II) Establishing Certain Related Deadlines; And (III) Granting Related Relief* [Docket No. 15]

(as amended by [Docket No. 62], the "<u>Bidding Procedures Motion</u>") and in opposition to respond

to (a) the *Broadcasters' Motion To Stay Or Continue Sale Motion, Or Alternatively, Objection*

*To The Sale Motion*, filed on December 15, 2014 [Docket No. 60] (the "<u>Broadcaster Procedures</u>

<u>Objection</u>"), and (b) the Limited Objection of the Ad Hoc Committee of Unsecured Creditors to

the Debtor's Bid Procedures Motion [Docket No. 82] (the "<u>Limited Trade Creditor Objection</u>"),

as follows:

1.      Since the Debtor filed its Bidding Procedures Motion on November 21, 2014, it has had continuing and good faith discussions with its Creditor constituencies and the Office of the United States Trustee to address all formal and informally communicated concerns.

2.      To address certain concerns expressed by the so-called Broadcasters, the Debtor filed on December 15, 2014 its Notice of Filing of Revised Bidding Procedures Order (the "First Revised Procedures Order").  By such First Revised Procedures Order, the Debtor hoped to satisfy all such concerns.

3.      The Broadcasters then filed their Broadcaster Procedures Objection, and certain trade creditors thereafter filed their Limited Trade Creditor Objection.

4.      The Debtor has continued to attempt to satisfy all such concerns and objections. Attached hereto as Exhibit A is a chart of all filed objections, and the Debtor's responses.

5.      Attached as Exhibit B is a further revised Bidding Procedures Order, in which:

- the Debtor accommodates the Trade Creditors' request for auction consultation rights, but not to the full extent requested, because the Debtor believes that additional auction consulting rights could be bid-chilling and go beyond those customarily provided even to an official committee; and

- the Debtor addresses and, it believes, satisfies, most, but perhaps not all, of the remaining Broadcaster concerns.  The Debtor believes that some of the Broadcasters' requests and objections would amount to the continuation of a lengthy, massive and extremely costly prepetition document production in the stayed litigation over historic infringement claims.  The Debtor does, as explained more fully in the Response Chart attached hereto as Exhibit A, propose to give immediate and complete access to all of its data contained on Production Servers to the Broadcasters on reasonable terms, notwithstanding that fact discovery had closed in that litigation.

Dated: December 18, 2014
New York, New York

BROWN RUDNICK LLP

By: /s/ William R. Baldiga
    William R. Baldiga, Esq.
    R. Benjamin Chapman, Esq.
    7 Times Square
    New York, NY 10036
    Telephone:  (212) 209-4800
    Facsimile:  (212) 209-4801

*Proposed Counsel for the*
*Debtor and Debtor-in-Possession*

# EXHIBIT A

## EXHIBIT A: RESPONSES TO OBJECTIONS

**A.**    **Response To Broadcasters Objections Bidding Procedures**

| | Broadcasters' Concerns | Proposed Response |
|---|---|---|
| 1. | • Objection to a purported lack of information regarding the terms and conditions of any proposed transaction or reorganization, and demand for an objection deadline of at least ten business days following notice of the terms of a proposed transaction prior to conducting any hearing for transaction approval. See Stay Motion at 10-11. | • The Debtor has confirmed that it does not intend to reorganize or in any way resume operation of its business. See Notice of Revised Bidding Procedures Order [D.I. 62]; Bloom Dec. ¶¶ 4, 12.<br><br>• The Debtor is willing to agree to provide up to three (3) days between the close of the auction and holding a hearing to consider and approve such sale to permit time to file an objection to the proposed sale transaction. |
| 2. | • Objection to any transaction that purports to compromise the Broadcasters' copyrights, and demand to (a) place bidders on notice of the District Court litigation and its desire to continue it, and (b) require that any form of proposed sale order must indicate that a sale will not relieve a purchaser of complying with copyright laws. See Stay Objection at 11-12. | • The Debtor has placed in the due diligence data room accessed by potential buyers a copy of the preliminary injunction entered by the District Court.<br><br>• The Debtor is willing to also place in the data room a copy of the Supreme Court's June 2014 decision.<br><br>• The Debtor has explicitly stated in the revised Bidding Procedures Order, among other places, that nothing about approval of the Bidding Procedures or the fact of a Section 363(b) sale of its assets would authorize any potential purchaser to violate any applicable law, including Federal copyright law. See Revised Bidding Procedures Order [D.I. 62] ¶ 9. The Debtor is willing to include the same representation in any order approving a sale. |
| 3. | • Objection to anticipated lack of ongoing access to information about the sale process as it proceeds, and demand for continuing updates from the Debtor, including specifically as it relates to the identity of bidders. See Stay Objection at 13-14. | • The Debtor is willing to provide to the Broadcasters reasonable updates concerning the sale process as may be appropriate within the context of promoting a competitive Section 363 sale, and by announcing immediately before the start of the auction whether any bidder at the auction is an insider of the Debtor. |
| 4. | • Destruction of data on Production Servers (to permit sale) that contain the production databases that house a record/log of all Aereo customer activities, including what customers viewed and when, and information concerning whether the customer was in the local viewing area when watching a broadcast. See Supplemental Objection at 3. | • The data in the production database is stored in "the cloud," and so erasing data on the Production Servers will not delete the data in the production database.<br><br>• As a redundant protection and accommodation, the Debtor has also stated in the Revised Bidding Procedures that it is willing to give the Broadcasters full access to the Production Servers for them to inspect, measure, survey, photograph and perform any final testing with respect thereto, including copying any or all of the production database. See Revised Bidding Procedures ¶ 7(a). |
| 5. | • Erasing of Recording Hard Drives, which contain legacy recordings from customers 'activity as they were at the moment in time when the Debtor turned off consumer access to the Aereo system. See Supplemental Objection at 3. | • A list of the recordings that were made is available in the production database. The legacy recordings on the Recording Hard Drives, which contain approximately 26 petabytes of data, are only the remaining legacy version of recordings that were routinely deleted by customers in the ordinary course of their use of the Aereo system. The only "legacy recordings" currently available are those that were on the system at the moment Aereo shut it down following suspension of its operations. Information relating to the |

| | Broadcasters' Concerns | Proposed Response |
|---|---|---|
| | | content of the legacy recording and a customers' viewing usage of the recording using the Aereo system is preserved on the production database. Thus, the Broadcasters do not need to preserve the content on the Recording Hard Drives. |
| | | • The legacy recordings on the Recording Hard Drives should be erased prior to any sale of the Debtor's Production Servers and Equipment so that the Recording Hard Drives do not contain any potentially copyrighted material or confidential customer data when transferred to a purchaser. |
| | | • The Debtor has also stated in the Revised Bidding Procedures that it is willing to give the Broadcasters full access to the Production Servers for them to inspect, measure, survey, photograph and perform any final testing with respect thereto, including copying the Recording Hard Drives. See Revised Bidding Procedures ¶ 7(a), (d). |
| 6. | • Powering down and moving the Production Servers could result in the destruction of data. | • Powering down and moving the Production Servers and Equipment from certain locations was done for important business purposes following the Supreme Court decision on June 25, 2014, in a commercially responsible manner, to conserve costs and to protect the Debtor's Production Servers and Equipment from, among other things, potential seizure by landlords and vandalism. |
| | | • All of the Aereo Production System, in all locations was powered down months ago, following the Supreme Court's June 2014 decision. |
| | | • Any time a hard drive or any other computer, such as a personal computer, is powered down and turned on in the ordinary course of its operation, there is always the risk that data or information will be lost. Here, however, each of the Debtor's Production Servers had a redundant array to protect against the loss of data. |
| | | • In any event, all of the Debtor's Production Servers and Equipment is still available, and the Debtor has stated in the Revised Bidding Procedures that the Broadcasters may have full access to inspect, measure, survey, photograph and perform any final testing with respect thereto. See Revised Bidding Procedures ¶ 7(a). |
| | | • The Debtor anticipates that the process of extracting data from the Production Servers likely could be done by a dedicated team of 3-4 individuals working full time for about 2-4 weeks, if in fact the Broadcasters wish to do what the Debtor believes would be a completely unnecessary task given the present cloud storage of the Production Databases. |
| 7. | • Concern that the Broadcasters would not be able to copy data from the Production Servers during any inspection. | • The Revised Bidding Procedures expressly permit this. See ¶ 7(a). |
| 8. | • Broadcasters claim that the Debtor is in a better position to collect and produce relevant data on the Production Servers because the Broadcasters do not | • The Debtor will provide the Broadcasters with all necessary passwords and access to the facilities to inspect, measure, survey, photograph and perform any final testing with |

| | Broadcasters' Concerns | Proposed Response |
|---|---|---|
| | have user names and passwords.  See Supplemental Objection at 7. | respect to the Production Servers and Equipment. |
| 9. | • Broadcasters claim that the Debtor is in a better position to collect and produce relevant data on the Production Servers because they do not know the organization of information in its system.  See Supplemental Objection at 6-7. | • The Broadcasters have ready access to experts in the field who understand common Linux search methodology to find any information on the servers, none of which requires the Debtor's special knowledge. |
| 10. | • The Broadcasters prefer the Debtor, or a vendor paid for by the Broadcasters, to do the work of collecting and producing the data on the Production Servers and Equipment.  See Supplemental Objection at 7. | • The Debtor does not have resources, including manpower, to provide the Broadcasters with the additional information they demand, while also conducting a value-maximizing sale process |
| 11. | • The Broadcasters claim they have had insufficient notice of the Debtor's intent to preserve data and proceed to sell or destroy the Production Servers and Equipment | • The Bidding Procedures Motion was filed on November 21, 2014.  All changes since to the proposed order allowing such Motion have been to accommodate the Broadcasters' concerns.<br><br>• The Debtor's counsel provided the Broadcasters' counsel with the Revised Bidding Procedures Order on December 11, 2014, and sought to have discussions regarding what additional measures may be warranted to preserve their rights.<br><br>• The Broadcasters did not attempt at any point to engage in any such discussions until after they filed the Supplemental Objection on the eve of the December 19 hearing.  As of the submission of this response, the parties have been able to resolve many of the Broadcasters' objections. |

## B.    Response To The Limited Objection Of The Ad Hoc Group Of Creditors

| | | |
|---|---|---|
| 1. | • The Ad Hoc Group of Creditors has asked for various consultation rights in connection with the sale process and an ultimate sale.  See Limited Objection Of The Ad Hoc Group Of Unsecured Creditors To The Debtor's bid Procedures Motion [D.I. 82]. | • The Debtor is willing to provide the following consultation rights to the Ad Hoc Group in connection with the bidding and sale process:<br><br>   o Determination as to whether a Bid constitutes a Qualified Bid;<br><br>   o Determination as to whether to cancel the Auction;<br><br>   o Determination of the sufficiency of any incremental Bid submitted at the Auction;<br><br>   o Selection of Successful Bidder and determination of Successful Bid; and<br><br>   o Determination and selection of Backup Bids. |

61831803

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| _____ | : |  |
| In re: | : | Chapter 11 |
|  | : |  |
| AEREO, INC., | : | Case No. 14-13200 (SHL) |
|  | : |  |
| Debtor. | : |  |
| _____ | : |  |

**[PROPOSED SECOND REVISED FORM OF] ORDER (I) APPROVING** ~~ORDER (I) APPROVING~~ **BIDDING PROCEDURES; (II) ESTABLISHING CERTAIN RELATED DEADLINES; AND (III) GRANTING RELATED RELIEF**

Upon consideration of the *Debtor's Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Proposed Sale(s) of Certain or Substantially All of the Debtor's Assets; (II) Establishing Certain Related Deadlines; and (III) Granting Related Relief* (the "Motion"),[1] all as more fully set forth in the Motion; and the Court finding that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (iii) notice of the Motion was sufficient under the circumstances and that no other or further notice need be provided; the Court having determined that the legal and factual bases set forth in the Motion and upon the record created at the hearing on the Motion and the entire record and proceedings in this case, establish just cause for the relief granted herein; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtor's estate, creditors and other

---

[1]    Capitalized terms not otherwise defined in this Order shall bear the meaning ascribed thereto in the Motion or the Bidding Procedures, as applicable.

parties-in-interest; and after due deliberation and sufficient cause appearing therefore, it is

**HEREBY ORDERED THAT**:

1.     The Motion is **GRANTED** to the extent provided herein, and all objections thereto have been resolved or over-ruled in the manner set forth herein.

2.     The Debtor may conduct a sale of all or substantially all of its assets, pursuant to Section 363 of the Bankruptcy Code (the "Sale"), as an entirety or in one or more lots, in accordance with the procedures described herein and in the Bidding Procedures attached hereto.  No other transactions are authorized by this Order.

3.     All objections to the Motion that have not been withdrawn, waived, settled or specifically addressed in this Order and all reservations of rights included in such objections, are overruled in all respects on the merits and denied.

4.     The Bidding Procedures attached hereto as **Exhibit 1** are hereby approved.

5.     If no objections to a Stalking Horse Notice are timely received, the Stalking Horse and Stalking Horse Bid referred to therein, including payment of any Break Up Fee referred to therein, shall be deemed approved by the Court without need for further Court order.

6.     The following dates and deadlines, as described in more detail in the Bidding Procedures  and as may be modified at the discretion of the Debtor, in consultation with the Court as to hearing dates only, are set by the Court in connection with the Motion (all times are prevailing Eastern Time):

    a.     Final Bid Deadline of February ~~13~~17, 2015 at 5:00 pm.

    b.     Auction on February ~~17~~19, 2015 at 10:00 a.m.

    c.     Sale Objection Deadline of February ~~17~~23, 2015 at ~~5:00~~1:00 p.m.

d.      Hearing to approve Sale on February ~~2025~~, 2015 at _____ a.m./p.m.

7.      The following provisions of this Order (collectively, the "Inspection Provisions") are for the benefit of certain holders of disputed, unliquidated claims (collectively, the "Broadcasters") in this case on account of claims asserted by them in civil actions that had been filed prior to the commencement of this case in the United States District Court for the Southern District of New York (C.A. No. 12-1540) (AJN) (the "SDNY Litigation") and in the United States District Court for the District of Utah (C.A. No. 2:13-CV-910 (DAK) (together with all related appellate proceedings and all other actions pending between the Debtor and any other broadcaster parties in any forum, collectively, the "Broadcaster Prepetition Claim Litigations"):

a.      The Broadcasters, or any of them, may, at any time on or before January 15, 2015 (the "Inspection Period"), and at such dates and times as shall be reasonably convenient to the Debtor and any requesting Broadcaster (and with all parties making best efforts to coordinate all such requests and activities so that there is no duplication of effort or unreasonable inconvenience to any party or unreasonable cost to or burden on the Debtor and its estate), inspect, measure, survey, photograph and perform any final testing with respect to, and to download and copy any data located on (collectively, "Inspection"), the Debtor's Production Servers and Equipment (as that term is defined below), in its current form and as it exists in any of the Debtor's Facilities (as that term is defined below). The Debtor shall provide to the Broadcasters all necessary user names and passwords to complete the Inspection.

b.      Each owner(s) or landlord(s) (each an "Owner") of any colocation center, data center or leased premises where any of the Production Equipment is located (each the "Debtor's Facility" and collectively, the "Debtor's Facilities"), including those located at (i) 470 Vanderbilt Avenue, Brooklyn, New York; (ii) C7 Data Centers, Inc., 14944 Pony Express Road, Bluffdale, Utah; (iii) 1033 Jefferson Street, Atlanta, Georgia 30318-8024; and (iv) 1050 Hull Street Baltimore, Maryland 21230-5342, shall, after receiving payment from the Debtor for any post-petition amount owed by the Debtor under an agreement for the Debtor's lease or use of the Debtor's Facilities (each such agreement or lease, an "Agreement"), provide the Debtor with all access and services to which the Debtor is entitled under such Agreement, and shall permit and enable any requesting Broadcaster to access, as monitored by the

Debtor, the Production Servers and Equipment at the Debtor's Facilities solely for the purposes of performing the Inspection at such dates and times as shall be reasonably convenient to the Debtor and any requesting Broadcaster and any respective Owner of the Debtor's Facility to be accessed (and with all parties making best efforts to coordinate all such requests and activities so that there is no duplication of effort or unreasonable inconvenience to any party or unreasonable cost to or burden on the Debtor and its estate).

c.      Any such Inspection shall be at the Broadcasters' sole expense and the requesting Broadcasters shall immediately upon receipt provide to the Debtor, at such Broadcasters' sole expense, copies of any data or other information that is obtained as a result of such Inspection (collectively, "Inspection Data").    The Debtor may monitor all such Inspection activities.   No Inspection is permitted that would destroy, mutilate or otherwise impair the value or merchantability of any Production Servers or Equipment, including that the antenna cards shall not be removed from their chassis.    The Debtor shall not be obligated to start up, operate, or otherwise use or deploy any of the Production Servers and Equipment in connection with the Inspection, but shall provide access to the Production Servers and Equipment as they are kept in the ordinary course of the Debtor's business as of the commencement of this case.

d.      For confidentiality purposes, all Inspection Data shall be deemed "Highly Confidential" "Discovery Material," as those terms are defined in the Amended Stipulated Protective Order (the "Protective Order") entered in the SDNY Litigation (Docket No. 35).

e.      During the Inspection Period the Debtor shall maintain from the Production Servers and Equipment all hard drives containing legacy recordings (the "Recording Hard Drives") and, following the Inspection Period, shall permanently erase from the Production Servers and Equipment all such Recording Hard Drives.[2]   The Debtor may remove and shall maintain from the Development and Staging Servers and Equipment (as that term is defined below) the hard drives that contain logs and related data (the "Logging Hard Drives"), and may remove and erase other files and data from the Development and Staging Servers and Equipment.   The Debtor may use certain of the Development and Staging Servers and Equipment for purposes of providing demonstrations to parties that may be interested in purchasing its assets in connection with a Sale , including moving such Development and

---

[2]    The parameters of any recording made using the Debtor's technology, including the content and length of the recording and playback, can be determined from the databases and logs contained on the related servers.

Staging Servers and Equipment to its leased premises in Boston, Massachusetts or replicating hard drives to create a demonstration system.

f.     In no event shall any requirement for Inspection provided by this Order survive a Sale of the assets of the Debtor's estate.  Following the Inspection Period, the Debtor may sell, transfer and dispose of (i) the Production Servers and Equipment and (ii) the Development and Staging Servers and Equipment in accordance with this Order and the Bidding Procedures free and clear of all interests in or claims of the Broadcasters relating in any way to the Production Servers and Equipment and the Development and Staging Servers and Equipment (including without limitation as to any further claim or argument asserting a right to any additional inspection or testing thereof or any access thereto).

g.     The inclusion of these Inspection Provisions in this Order shall not be deemed to constitute the consent of any party to the taking of discovery in any of the Broadcaster Prepetition Claim Litigations or a waiver by any party therein of any claims or arguments asserted in those Broadcaster Prepetition Claim Litigations.

h.     As used herein, the term "Production Servers and Equipment" shall mean the computer servers and equipment used in Debtor's prepetition production computing environment that is property of the Debtor's chapter 11 estate and as to which the Debtor has an ownership, lessee or legal possessory interest, including the (i) production database servers, (ii) antenna servers, (iii) streaming servers, (iv) antenna cards, (v) transcoders, (vi) interconnectivity equipment, (vii) application servers, (viii) central logging servers, (ix) any other servers that were part of the Debtor's prepetition production environment, and (x) any data contained on any of the foregoing.  "Production Servers and Equipment" shall not include (i) intangible information or data not located on the Production Servers and Equipment, or (ii) laptops and other communications devices used by the Debtor's current or former employees (as the Debtor does not intend to offer the same for Sale pursuant to the Bidding Procedures).

i.     As used herein, the term "Development and Staging Servers and Equipment" shall mean the computer servers and other equipment that were used in the Debtor's prepetition development and staging computing environments for Debtor's research, development, demonstration and testing purposes that are the property of the Debtor's chapter 11 estate and as to which the Debtor has an ownership, lessee or legal possessory interest, and includes the following computers and equipment used in the Debtor's prepetition development and staging computing environment: (i) the database servers, (ii) antenna servers, (iii) streaming servers, (iv) antenna cards, (v) transcoders, (vi)

5

interconnectivity equipment, (vii) application servers, (viii) central logging servers, (ix) any other servers that were part of the Debtor's research, development and staging prior to production activities, and (x) any data contained on any of the foregoing.

j.      Nothing in this Order or in the Debtor's consent to the Inspection or the delivery of Inspection Data or the retention of the Logging Hard Drives shall constitute a waiver by any party of any attorney-client attorney work product or other privilege or similar rights and protections.

8.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

9.      Nothing in this Order shall be construed as authorizing any party, including the Debtor or any purchaser of its assets, to take any action that is in violation of the United States Copyright Act or any other applicable law.

10.     Under the circumstances, notice of the Motion, any Supplemental Disclosure or other disclosure required under and as set forth in this Order or the Motion is sufficient and good notice pursuant to Federal Rules of Bankruptcy Procedure 2002 and 6004 or otherwise. Further, the form of the Notice of Intended Sale and Bidding Procedures is approved and service of the Notice of Intended Sale and Bidding Procedures is deemed sufficient and good notice pursuant to Federal Rules of Bankruptcy Procedure 2002 and 6004 or otherwise.

11.     Notwithstanding Federal Rule of Bankruptcy Procedure 6004 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

12.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: December 18, 2014
       New York, New York

_____

United States Bankruptcy Judge
The Honorable Sean H. Lane

## **Exhibit 1**

**Bidding Procedures**

William R. Baldiga, Esquire
R. Benjamin Chapman, Esquire
BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036
(212) 209-4800

*Proposed Counsel for the*
*Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| AEREO, INC., | : | Case No. 14-13200 (SHL) |
| | : | |
| Debtor. | : | |
| | : | |

**BIDDING PROCEDURES FOR CERTAIN OR SUBSTANTIALLY ALL**
**OF THE DEBTOR'S ASSETS AND OTHER PROPOSALS**

Set forth below are the bidding procedures (the "Bidding Procedures") that shall govern the Section 363 sale (the "Sale") of certain or substantially all of the assets owned and operated by the debtor in the above-captioned case (the "Debtor").[1]

I.      Assets to be Sold

The assets (the "Assets") to be offered for sale, as an entirety or in one or more lots, consist of certain or substantially all of the estate's assets, including, without limitation, all intellectual property, inventory, equipment, interests in contracts or leases, accounts and payment intangibles associated with any of the Assets.

II.      Consideration of Bids

Without limiting the foregoing, the Assets will be offered for sale in one or more combinations and as a whole. The Debtor may consider bids or other proposals (each, a "Bid") for (i) all of the Assets in a single bid from a single bidder or multiple bids from multiple bidders for Assets in any combination, and (ii) any alternative sale. The Debtor, in its business judgment, and after consultation with a representative of the Ad Hoc Committee of Unsecured Creditors (the "Ad Hoc Committee"), shall determine the Successful Bidder (as

---

[1]      Capitalized terms not defined herein have the meaning ascribed in the *Debtor's Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Proposed Sale(s) of Certain or Substantially All of the Debtor's Assets; (II) Establishing Certain Related Deadlines; and (III) Granting Related Relief.*

defined below) based on, among other things, but not limited to, the number of Assets purchased, the assumption of certain liabilities, the purchase price for the Assets, the bidder's ability to close and the value to the Debtor's estate of the proposed Sale.

The Assets that are offered for sale shall be sold pursuant to section 363 of the Bankruptcy Code free and clear of all liens and other interests in such Assets with certain exceptions which exceptions are to be assumed under any asset purchase agreement or satisfied at closing from the cash proceeds received in connection with the purchase of such Assets, provided, however, that any valid and perfected liens shall attach to the proceeds of the Assets with the same validity, force and effect.

III.    Marketing Process and Due Diligence

The Debtor, pursuant to its business judgment, has and will continue to provide confidential information regarding the Assets and the Debtor to potential purchasers and proponents (the "Initial Information").  Before receiving Initial Information, each potential purchaser or proponent must execute a confidentiality agreement, in a form satisfactory to the Debtor.  The Debtor may, but is not obligated to, furnish any due diligence information after the Bid Deadline (as defined below) for Qualified Bids (as defined below) or to any party that the Debtor determines.

IV.    Bid Deadlines

Final Bids:  All Bids must be served upon and actually received by the Debtor and Debtor's counsel on or before 5:00 p.m., prevailing Eastern Time, on February 1317, 2015 (the "Bid Deadline").  Bids must be sent to: (i) the Debtor, Attn: Brenda Cotter, Esq., Aereo, Inc., 280 Summer Street, 4th Floor, Boston, MA 02210; (ii) the Debtor's CRO, Lawton Bloom, Argus Management Corporation, 234 Fifth Avenue, 5th Floor, New York, NY 10001; and (iii) counsel to the Debtor, Brown Rudnick LLP, Attn: William R. Baldiga, Seven Times Square, New York, NY  10036.  The Debtor may extend the Bid Deadline for the delivery of Bids once or successively, without further notice and for one or more bidders, as the case may be.

V.    Qualified Bid Requirements

The Debtor will determine, subject to the Bidding Procedures and the requirements below, and after consultation with the Ad Hoc Committee, whether a Bid is a Qualified Bid and, ultimately, a Successful Bid (as those terms are defined below).  The Debtor may, in its business judgment, modify any Bidding Procedures before the commencement of the Sale Hearing in order to maximize the benefit to the estate of the Sale process as a whole.

Any party that desires to submit a Bid must do so in writing as follows:

a.    A Bid must clearly set forth any conditions for closing and state that the Bid is irrevocable as set forth below;

b.    A Bid must constitute a good faith, bona fide offer to enter into a Sale;

2

c.      A Bid must clearly set forth the consideration to be paid;

d.      A Bid must identify with particularity each and every condition to closing;

e.      A Bid must identify with particularity (i) the executory contracts and unexpired leases for which assumption and assignment is required, and (ii) the liabilities and accruals to be assumed;

f.      A Bid must be "as is where is" and not be conditioned on any contingency, including, but not limited to, obtaining or completing any of the following: (i) a due diligence investigation; (ii) any material adverse change; (iii) financing; (iv) shareholder, board of directors or other approval; and (v) regulatory approvals of any kind;

g.      A Bid must include evidence, including financial statements (or such other form of financial disclosure and credit-quality support or enhancement reasonably acceptable to the Debtor) sufficient in the Debtor's business judgment to establish the financial wherewithal of the bidder to complete the contemplated Sale and, to the extent the bidder will rely upon the financial wherewithal of an affiliate, bid partner, or other sponsor (each, a "Sponsor"), evidence sufficient to establish the financial wherewithal and intent of the Sponsor to provide appropriate financial support;

h.      A Bid must contain such financial and/or other information that will allow the Debtor to make a reasonable determination as to the bidder's financial and other capabilities to consummate the Sale contemplated, including such financial information and other information setting forth adequate assurance of future performance under section 365 of the Bankruptcy Code in a form requested by the Debtor to allow the Debtor to serve on counterparties to any contracts or leases being assigned in connection with the proposed sale that have requested, in writing, such information;

i.      A Bid must disclose the identity of the bidder's organization, including confirmation that the Bid is made as principal for the bidder's account and, if not, the basis upon which the bidder is acting and the identities of all other participants (if any);

j.      A Bid must include evidence of authorization and approval from the bidder's shareholders, board of directors or any other necessary approval with respect to the submission, execution, delivery and closing of the Sale;

k.      A Bid must include a cashier's check or be accompanied by a wire transfer payable or delivered to the Debtor, Debtor's counsel or other agreed upon escrow agent, in an amount equal to ten percent (10%) of the consideration to be paid as a good-faith deposit (the "Deposit");

3

l.      A Bid must state that the bidder is willing to consummate and fund the proposed Sale by no later than five (5) business days after the Sale Hearing;

m.     A Bid must state that it remains irrevocable until (a) the first business day following the consummation of the Sale and (b) the twentieth (20th) day after entry of an order by the Bankruptcy Court approving a Sale; and

n.     A Bid must disclose any agreements or understanding between the bidder and any third party with respect to the subject Assets or with respect to any possible Sale involving the Debtor.

Notwithstanding anything to the contrary in these procedures, the Debtor shall have the right, in its business judgment, and after consultation with the Ad Hoc Committee, to consider Bids that do not conform to one or more of the requirements set forth in these procedures and to deem such Bids as Qualified Bids (as defined below).

Notwithstanding anything to the contrary in these procedures, the Bid of the Successful Bidder (as defined below) must remain irrevocable in accordance with the terms of the Sale documents executed by the Successful Bidder.  All other Bids must be irrevocable until the earlier to occur of (i) twenty five (25) days after entry of a Sale Order (as defined below) and (ii) closing of the Sale in accordance with the Successful Bid (as defined below).

Notwithstanding anything to the contrary in these procedures, the Debtor also reserves the right, in its business judgment, to reject any and all Bids, including Qualified Bids.

VI.    Evaluation of Qualified Bids

Pursuant to its business judgment, the Debtor may request additional information from a potential bidder to better evaluate the bidder's ability to consummate a Sale and to fulfill its obligations in connection therewith, and such bidder shall be obligated to provide such information as a pre-condition to selecting a bidder as a Qualified Bidder (as defined below) or allowing such bidder to continue to participate in the Auction (as defined below).

The sufficiency of any submitted Bid will be at the discretion of the Debtor in accordance with the exercise of his business judgment.  The Debtor shall promptly as practicable notify each bidder which has (i) returned a signed confidentiality agreement; (ii) timely submitted the information and documentation listed above in section V(a)-(m); and (iii) financial qualifications satisfactory to the Debtor whether or not it has been selected as a qualified bidder (each, a "Qualified Bidder") and whether or not its Bid is a "Qualified Bid."

The submission of the information and documentation listed above in section V(a)-(m) will be deemed to be the bidder's consent for the Debtor and its advisors to share any information submitted by the bidder to any landlord with respect to a nonresidential real property lease and any non-debtor party to an executory contract to be assigned to such bidder. Any bidders submitting Bids will bear their own expenses in connection with the Sale, regardless of whether the Sale is approved, in accordance with the terms of the Sale documents, subject to the Debtor's right to designate a Stalking Horse (as defined below)."

4

VII.    Stalking Horse Bids

The Debtor reserves the right to enter into one or more asset purchase or other agreements with any interested party for certain or substantially all of the Assets and designate that party as a stalking horse (the "Stalking Horse") subject to the terms herein.  The Debtor may offer a break up fee (the "Break Up Fee") to the Stalking Horse.  The Debtor is under no obligation to choose a Stalking Horse or offer a Break Up Fee for any of the Assets.  There may not be more than one Stalking Horse for any particular estate Asset.

In the event the Debtor selects a Stalking Horse, the Debtor may offer bid protections, including a Break Up Fee not to exceed three percent (3.0%) of the total value of the Stalking Horse Bid, plus expenses incurred not to exceed $500,000.  If the Debtor designates a Stalking Horse, and after consultation with the Ad Hoc Committee, the Debtor will file a supplemental notice (the "Stalking Horse Notice") with the Court identifying the Stalking Horse and the term of the Stalking Horse Bid, including the terms and conditions for payment of any Break Up Fee and submitting the asset purchase or other agreement entered into with the Stalking Horse (the "APA").  Any party wishing to object to the Debtor's designation of the Stalking Horse shall have five (5) days from the filing of the Stalking Horse Notice (but in any event not later than the Sale Objection Deadline) to file an objection (the "Objection") with the Court and serve the same on the Debtor and its counsel and other parties as required by the Court or applicable law.  In the event an Objection is filed and such Objection cannot be resolved consensually, the Debtor will seek to schedule a hearing with the Court for approval of the Stalking Horse and the Stalking Horse Bid, including payment of any Break Up Fee.  If no Objections to the Stalking Horse Notice are filed and served, the Stalking Horse and Stalking Horse Bid, including payment of any Break Up Fee, shall be deemed approved by the Court, without the need for further Court order.

In the event that the Debtor designates a Stalking Horse, the Stalking Horse Bid will be a Qualified Bid.

In the event that the Debtor designates a Stalking Horse, before or after the Bid Deadline, the Debtor reserves the right, in its business judgment, to require any other bidders to submit an executed asset purchase or other agreement blacklined to show changes from the APA as a pre-condition to selecting a bidder as a Qualified Bidder or allowing such bidder to continue to participate in the Auction.

VIII.    Auction

The auction (the "Auction") will be conducted for the Assets on February 17, 2015 at 10:00 a.m., prevailing Eastern Time, (the "Auction Date") at the offices of Brown Rudnick LLP, Seven Times Square, New York, NY  10036.  The Assets shall be sold free and clear of all liens, claims and encumbrances to the fullest extent allowed under section 363(f) of the Bankruptcy Code, provided, however, that any valid and perfected liens shall attach to the proceeds of the Assets with the same validity, force and effect.

The Debtor, in accordance with its business judgment, may conduct the Auction in any manner and upon any terms and conditions the Debtor believes will achieve the maximum

value for the Debtor's estate.  If an auction is held, the Debtor shall promulgate rules regarding any such action as it deems appropriate, including, but not limited to, rules governing minimum starting bids, minimum overbids and subsequent bids.

Only Qualified Bidders may bid at the Auction.  If multiple Qualified Bids are received, each Qualified Bidder (or its duly authorized representative) shall have the right to continue to improve its Qualified Bid at the Auction.

If a Stalking Horse is selected and no Qualified Bids are received for the Assets (or no Stalking Horse is selected and only one Qualified Bid is received for the Assets), the Debtor may determine, after consultation with the Ad Hoc Committee, that the Stalking Horse Bid or the Qualified Bid, as applicable, is the Successful Bid (as defined below) and seek Court approval of the relevant Sale documents without conducting the Auction.  If the Debtor determines that there is no Successful Bid for a particular Asset, the Debtor may decide, after consultation with the Ad Hoc Committee, to not sell that Asset at the Auction.

The Auction may be adjourned or (after consultation with the Ad Hoc Committee) cancelled as the Debtor deems appropriate in its business judgment.  Reasonable notice of such adjournment and the time and place for the resumption of the Auction or cancellation shall be given to all bidders.

IX.    Selection of Successful Bid or Bids

At the conclusion of the Auction, after consultation with the Ad Hoc Committee, and subject to Court approval following the Auction, the successful Bid or Bids shall be selected and announced by the Debtor (the "Successful Bid or Bids") and the backup Bid or Bids, if any, shall be selected and announced by the Debtor (the "Backup Bid or Bids").

Within thirty-six (36) hours of completion of the Auction, the parties that made the Successful Bid or Bids (each, a "Successful Bidder") and the parties that made the Backup Bid or Bids, if any, shall complete and sign all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid or Bids and the Backup Bid or Bids, if any, were made.

The Debtor reserves the right to base the selection of the Successful Bid and Backup Bid on the following factors, among others: (i) the number of Assets purchased, (ii) the assumption of certain liabilities, (iii) the purchase price for the Assets, (iv) the bidder's ability to close, and (v) the value to the Debtor's estate of the proposed Sale.

The Debtor, in accordance with its business judgment, may (i) reject any Bid (including a Stalking Horse Bid) that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of sale, or (c) contrary to the best interests of the Debtor, its estate and creditors; and/or (ii) refuse to consider any Bid that fails to comply with the Bidding Procedures or any other procedures established by the Debtor.

X.    Backup Bids

If the Successful Bidder fails to consummate the Sale, breaches the executed agreement or otherwise fails to perform, and after consultation with the Ad Hoc Committee, the Debtor may consummate the proposed Sale with the next highest or best bid(s) received (such bid or bids, the "Backup Bid" and the party(ies) submitting the Backup Bid, the "Backup Bidder(s)", which hereafter shall be included in the definition of "Successful Bidder") without the need for further Court approval.  The Backup Bid(s) shall remain open until the earlier of (a) the first business day following the consummation of the Sale and (b) the twentieth (20th) day after entry of an order by the Bankruptcy Court approving a Sale.

XI.    Damages for Failure to Close

If the Successful Bidder fails to consummate the Sale in accordance with the terms of its Successful Bid and applicable Sale documents: (i) the Debtor will retain the Deposit of such bidder, to the extent provided by the applicable Sale documents, and (ii) the Debtor will maintain the right to pursue all available remedies against such bidder.

Notwithstanding anything to the contrary in these procedures, the Deposit of the Successful Bidder will be retained by the Debtor in accordance with the terms of the Sale documents executed by the Successful Bidder.  Deposits of all other bidders will be retained by the Debtor until the earlier to occur of (i) twenty-five (25) days after entry of a Sale Order (as defined below) and (ii) closing of the Sale in accordance with the Successful Bid.

XII.    Supplemental Disclosure and Sale Hearing

Upon the selection of one or more Successful Bidders, the Debtor will file a supplemental disclosure (the "Supplemental Disclosure") to describe the particular Sale or Sales for which the Debtor seeks the Court's approval.  The Debtor will seek to have the Court set (i) a hearing for approval of the Successful Bids for February 2025, 2015, or as soon thereafter as the Court's calendar permits) (the "Sale Hearing"); and (ii) an objection deadline in connection with the Successful Bids and the contemplated SalesSale(s) of on or before 5:00 p.m., prevailing Eastern Time, on February 1723, 2015 (the "Sale Objection Deadline").  At the Sale Hearing, the Debtor will request that the Court enter an order (the "Sale Order"): (i) approving (a) the Successful Bid(s), (b) the applicable Sale documents, and (c) the proposed assumption and assignment of any assumed contract; and (ii) authorizing the Debtor to consummate the proposed Sale(s).  At the Sale Hearing, the Court shall also determine any ancillary issues to any proposed Sale pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of any executory contracts or unexpired leases.

XIII.    "As Is, Where Is"

The proposed transfer of any of the Debtor's Assets will be on an "as is, where is" basis and without representations and warranties of any kind, nature or description by the Debtor, the Debtor's estate or any of its agents or representatives, except to the extent set forth in the applicable Sale documents of each Successful Bidder as executed by the Debtor and approved by the Court.  Except as otherwise provided in the applicable Sale documents of

each Successful Bidder as executed by the Debtor and approved by the Court, all of the Debtor's right, title and interest in and to the respective Asset will be transferred free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests in accordance with section 363 of the Bankruptcy Code.  Any other claim, lien or encumbrance, as set forth in the applicable Sale documents of each Successful Bidder as executed by the Debtor and approved by the Court, will attach to the net proceeds of the sale of the particular Asset.

Each bidder will be deemed to acknowledge and represent that it (i) has had an opportunity to conduct such due diligence regarding the Debtor and the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any information or documents, including, without limitation, executory contracts and unexpired leases in making its Bid; and (iii) did not rely upon or receive any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, with respect to the Sale, or to the completeness of any information provided in connection with the Sale or the Auction, except as expressly stated in the applicable Sale documents.

XIV.    Reservation of Rights

Notwithstanding the Debtor's determination of a Stalking Horse and/or receipt of any Qualified Bids for any particular Sale, the Debtor may continue to negotiate and solicit Bids. The Debtor reserves the right to enter into agreements for the sale of any of the Assets, either individually or as part of a package prior to an Auction, without further notice to any party, which agreements, if any, will be subject to higher or otherwise better Bids at the Auction (including evaluation on a package or individual basis).   The Debtor retains the right to withdraw one or more Assets from the sale, including in connection with a package offer, up to the date of the Auction or Sale Hearing.  Formal approval of a Bid will not occur unless and until the Court enters an order approving and authorizing the Debtor to consummate the contemplated Sale pursuant to such Bid.  The Debtor reserves the right to reject all Bids and to request no approvals of any kind by the Court or to any Sale at such time.

The Debtor reserves the right to implement additional procedural rules provided that such additional rules are not inconsistent with these Bidding Procedures.

61830516_v2 WorksiteUS-032210/000161830516_v3-WorkSiteUS-032210/0001