# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |   |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| AEREO, INC., | : | Case No. 14-13200 (SHL) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

### SUPERSEDING ORDER (I) APPROVING BIDDING PROCEDURES; (II) ESTABLISHING CERTAIN RELATED DEADLINES; AND (III) GRANTING RELATED RELIEF

Upon consideration of the *Debtor's Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Proposed Sale(s) of Certain or Substantially All of the Debtor's Assets; (II) Establishing Certain Related Deadlines; and (III) Granting Related Relief* (the "Motion"),[1] all as more fully set forth in the Motion; and the Court finding that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (iii) notice of the Motion was sufficient under the circumstances and that no other or further notice need be provided; the Court having determined that the legal and factual bases set forth in the Motion and upon the record created at the ~~hearing~~hearings on the Motion **on December 19, 2014 (the "December Hearing") and January 27, 2015 (the "January** Hearing"), including the agreements of the parties reached at ~~that Hearing~~those Hearings,** and the entire record and proceedings in this case, establish just cause for the relief granted in the *Order Approving Bidding Procedures, (II) Establishing Certain Related Deadlines; and (III) Granting Related Relief* (the "Original Order") on December 24, 2014 [Docket No. 110] and herein; and the Court having determined that the relief

---

[1] Capitalized terms not otherwise defined in this Order shall bear the meaning ascribed thereto in the Motion ~~or~~, the Bidding Procedures, or the Original Order, as applicable.

~~61848553 v1~~2332602.1

sought in the Motion and granted in the Original Order is in the best interests of the Debtor's estate, creditors and other parties-in-interest; and after due deliberation and sufficient cause appearing therefore, it is **HEREBY ORDERED THAT**:

1.  The Motion is **GRANTED** to the extent provided herein, and all objections thereto have been resolved or overruled in the manner set forth herein.

2.  The Debtor may conduct an auction for all or substantially all of its assets, pursuant to Section 363 of the Bankruptcy Code (the "Sale"), as an entirety or in one or more lots, in accordance with the procedures described herein and in the Bidding Procedures attached hereto.

3.  All objections to the Motion that have not been withdrawn, waived, settled or specifically addressed in this Order, are overruled in all respects on the merits and denied. All of the Broadcasters' rights to object to any proposed Sale are expressly preserved in the manner set forth more fully below.

4.  The Bidding Procedures attached hereto as **Exhibit 1** are hereby approved.

5.  The Debtor retains the right to seek approval of a Stalking Horse and Stalking Horse Bid consistent with the Bidding Procedures, including payment of any Break Up Fee referred to therein.

6.  The following dates and deadlines, as described in more detail in the Bidding Procedures (subject to modification at the request of the Debtor by motion duly served on the parties requesting notice in this Chapter 11 Case and as so ordered by the Court) are set by the Court in connection with the Motion (all times are prevailing Eastern Time):

    a.  Final Bid Deadline of February 20, 2015 at 5:00 p.m.
    b.  Auction on February 24, 2015 at 10:00 a.m.
    c.  Sale Objection Deadline of March 9, 2015 at 3:00 p.m.

        d.        Hearing to approve Sale on March 11, 2015 at 10:00 a.m.

7.     The following provisions of this Order shall apply to all holders of claims (collectively, the "<u>Broadcasters</u>") in this case on account of claims asserted by them in civil actions that had been filed prior to the commencement of this case in the United States District Court for the Southern District of New York (C.A. No. 12-1540) (AJN) (the "<u>SDNY Litigation</u>") and in the United States District Court for the District of Utah (C.A. No. 2:13-CV-910) (DAK) (together with all related appellate proceedings ***and all other actions pending between the Debtor and Broadcasters in any forum***, collectively, the "<u>Broadcaster Prepetition Claim Litigations</u>"), the Committee of Unsecured Creditors (the "<u>Committee</u>")[2] and all parties in interest:

    a.    Beginning on December 29, 2014, and each week thereafter until the close of the Auction, the Debtor shall provide an update to the Broadcasters and the Committee regarding the status of the sale process (the "<u>Weekly Update</u>"), which shall state, among other things, which of the Debtor's assets are being made available for sale to Bidders and how many persons or entities have signed non-disclosure agreements in connection with the sale process.

    b.    The Debtor shall provide to any Broadcaster and Committee member who executes a form of non-disclosure agreement mutually acceptable to such Broadcaster/Committee member and the Debtor a copy of or access to the documents in the data room that the Debtor uses to market its assets to potential purchasers (the "<u>Marketing Materials</u>"); <u>provided</u>, <u>however</u>, that the Debtor reserves the right to designate certain Marketing Materials as restricted (the "<u>Restricted Marketing Materials</u>") and not produce such designated Marketing Materials to the Broadcasters and the Committee; <u>provided further</u>, <u>however</u>, that if the Debtor does so it will provide a general description of such Restricted Marketing Materials to the Broadcasters and the Committee and the Broadcasters and Committee reserve the right to request that the Court resolve any dispute as to the Debtor's designation of any document as Restricted Marketing Materials. The Marketing Materials are also designated as "<u>Confidential</u>" under the Protective Order (as defined below).

---

[2]    In all instances, the term "<u>Committee</u>" shall include both the *Ad Hoc* Committee of Unsecured Creditors as well as any Official Committee of Unsecured Creditors that may be appointed in this Chapter 11 case.

3

    c.    The Debtor shall provide the Broadcasters and the Committee with a copy of (i) any Qualified Bid that is designated by the Debtor as the highest and best bid ("High Bid") for the Auction, promptly upon such designation, and (ii) any subsequent Overbid(s) selected by the Debtor as a higher and better bid.

    d.    The Broadcasters, the Committee, and each of their counsel are permitted to attend the Auction.

    e.    Following the conclusion of the Auction, the Debtor shall, immediately upon receipt by the Debtor, provide the Broadcasters and the Committee with a copy of the Successful Bid, including a copy of any asset purchase agreement and other documents that evidence such Successful Bid.

    f.    On or before December 23, 2014, the Debtor shall provide to the Broadcasters, in .SQL format, a true and accurate copy of the Debtor's entire *production database (the "Production Database"), see Transcript of Hearing, dated Dec. 19, 2014, at 128:1-132:25, 143:7-145:3*; provided, however, that the Debtor shall first remove or scrub from such copy any personally identifying customer information and information that is subject to the attorney-client or work product privileges; provided further, however, that the Debtor will not remove or scrub the Internet Protocol ("IP") addresses from the Production Databases (the "Delivered Material"). The Debtor shall not challenge the authenticity *of such cloud copy of the Production Database or* the validity of the Delivered Material that the Debtor provides to the Broadcasters.

    g.    Other than as set forth in paragraph 7(f) regarding the Debtor's waiver of any objection based on authenticity or validity of Delivered Materials, tThe Parties expressly reserve all objections to the admissibility of data that any party may seek to introduce in any proceeding.

    h.    The Debtor believes that it has provided its entire Production Databases. The Broadcasters do not agree that all Production Databases have been provided. As such, the Court resolves this dispute as follows: in accordance with the Debtor's proposal, the Debtor shall carve out from the Auction and preserve in Brown Rudnick, LLP's offices the hard drives containing the Production Databases that are housed in the Debtor's physical Production Database Servers, as well as one physical Production Database Server setup, into which the hard drives can be inserted thereby enabling the data thereon to be extractable (the "Excluded Assets"), and shall not sell or otherwise dispose of the Excluded Assets without notice to the Court and the Broadcasters and further order of this Court. Nothing herein absolves or expands any discovery or preservation obligation of any party. See Transcript of Hearing, dated Dec. 19, 2014, at 55:16-56:20.

    i.    **[Intentionally Omitted.]**

4

g. ~~On or before January 2, 2015 at 5:00 p.m. (with a correspondingly reasonable period of delay if the Debtor has not provided the Delivered Material in accordance with the deadline set at paragraph 7(f) above), the Broadcasters shall provide the Debtor with a written statement of any gaps or other deficiencies in the quality or completeness of the Delivered Material (*the "Defects"*).~~

h. ~~On or before January 6, 2015, at 3:00 p.m., the Broadcasters and the Debtor shall file with the Court, jointly or separately, a written report (the "Report") fully describing the detail of any Defects and suggested means to cure the same, and if the Broadcasters do not identify any Defects as provided herein, the Broadcasters shall so state in their written report to the Court.~~

i. ~~*At* the hearing scheduled for January 7, 2015, the Court shall resolve any disputes as to whether there are any Defects and, if there are, how the same shall be addressed.~~

j. ~~The Debtor shall maintain the status quo and shall not move or destroy any equipment, including the Production Servers or Equipment and/or the Development and Staging Servers and Equipment or any data contained therein until such time as the *Broadcasters agree in writing that the entire Production Database has been fully produced; following such agreement*~~ Except for the Excluded Assets, *the Debtor may sell, transfer and/or dispose of the Production Servers and Equipment, the Development and Staging Servers and Equipment, and all of its other assets in accordance with this Order and the Bidding Procedures free and clear of all interests in and rights or claims of the Broadcasters or any others including those relating in any way to any additional inspection or testing thereof or any access thereto, including any data therein. See Transcript of Hearing, dated Dec. 19, 2014, at 128:1-132:25, 143:7-145:3.* ~~*If the Debtor and the Broadcasters do not agree as to whether the entire Production Database has been fully produced, the Court will promptly address the issue of how to resolve any such dispute and any data preservation obligations relating to the Production Database and other items to be sold, mindful that resolution of that issue will be informed by any preservation and discovery obligations in pending litigation between the Broadcasters and the Debtor. See Transcript of Hearing, dated Dec. 19, 2014, at 55:16-56:20 ("I'm not doing anything to absolve anybody of discovery obligations or preservation obligations that they have, but I certainly am not doing anything to expand them either.")*~~ Notwithstanding the foregoing, the Broadcasters shall have the right to raise any and all other objections to the Sale on or before the Sale Objection Deadline., and all such objections are reserved. *See* Transcript of Hearing, dated Dec. 19, 2014, 120:20-121:7; *accord, id.* at 122:10-13.

5

j.k.  For confidentiality purposes, all Delivered Material shall be deemed "Highly Confidential" "Discovery Material," as those terms are defined in the Amended Stipulated Protective Order (the "<u>Protective Order</u>") entered in the SDNY Litigation (Docket No. 35).

k.l.  The inclusion of these provisions in this Order shall not be deemed to constitute the consent of any party to the taking of discovery in any of the Broadcaster Prepetition Claim Litigations or, except as to the relief specifically set forth herein, a waiver by any party therein of any claims, defenses or arguments asserted in those Broadcaster Prepetition Claim Litigations.

l.m.  As used herein, the term "<u>Production Servers and Equipment</u>" shall mean the computer servers and equipment used in Debtor's prepetition production computing environment that is property of the Debtor's chapter 11 estate and as to which the Debtor has an ownership, lessee or legal possessory interest, including the (i) production database servers, (ii) antenna servers, (iii) streaming servers, (iv) antenna cards, (v) transcoders, (vi) interconnectivity equipment, (vii) application servers, (viii) central logging servers, (ix) any other servers that were part of the Debtor's prepetition production environment, and (x) any data contained on any of the foregoing.  "Production Servers and Equipment" shall not include (i) intangible information or data not located on the Production Servers and Equipment, or (ii) laptops and other communications devices used by the Debtor's current or former employees (as the Debtor does not intend to offer the same for Sale pursuant to the Bidding Procedures).

m.n.  As used herein, the term "<u>Development and Staging Servers and Equipment</u>" shall mean the computer servers and other equipment that were used in the Debtor's prepetition development and staging computing environments for Debtor's research, development, demonstration and testing purposes that are the property of the Debtor's chapter 11 estate and as to which the Debtor has an ownership, lessee or legal possessory interest, and includes the following computers and equipment used in the Debtor's prepetition development and staging computing environment: (i) the database servers, (ii) antenna servers, (iii) streaming servers, (iv) antenna cards, (v) transcoders, (vi) interconnectivity equipment, (vii) application servers, (viii) central logging servers, (ix) any other servers that were part of the Debtor's research, development and staging prior to production activities, and (x) any data contained on any of the foregoing.

n.o.  Nothing in this Order or in the Debtor's consent to the delivery of the Delivered Material shall constitute a waiver by any party of any attorney-client, attorney work product, or other privilege or similar rights and protections.

8. The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

9. Nothing in this Order shall be construed as authorizing any party, including the Debtor or any purchaser of its assets, to take any action that is in violation of the United States Copyright Act or any other applicable law.

10. Under the circumstances, notice of the Motion, any Supplemental Disclosure or other disclosure required under and as set forth in this Order or the Motion is sufficient and good notice pursuant to Federal Rules of Bankruptcy Procedure 2002 and 6004 or otherwise. Further, the form of the Notice of Intended Sale and Bidding Procedures is approved and service of the Notice of Intended Sale and Bidding Procedures is deemed sufficient and good notice pursuant to Federal Rules of Bankruptcy Procedure 2002 and 6004 or otherwise.

11. Notwithstanding Federal Rule of Bankruptcy Procedure 6004 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

12. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

13. This Order supersedes and replaces the Original Order in its entirety.

Dated: ~~December 24, 2014~~January __, 2015
        New York, New York

                                  */s/ Sean H. Lane*
                                  United States Bankruptcy Judge
                                  The Honorable Sean H. Lane

7

~~61848553 v1~~2332602.1

**Exhibit 1**

**Bidding Procedures**

61848553 v12332602.161848608 v1

William R. Baldiga, Esquire
R. Benjamin Chapman, Esquire
BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036
(212) 209-4800

*Proposed Counsel for the
Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| AEREO, INC., | : | Case No. 14-13200 (SHL) |
|  | : |  |
| Debtor. | : |  |

**BIDDING PROCEDURES FOR CERTAIN OR SUBSTANTIALLY ALL
OF THE DEBTOR'S ASSETS AND OTHER PROPOSALS**

Set forth below are the bidding procedures (the "Bidding Procedures") that shall govern the Section 363 sale (the "Sale") of certain or substantially all of the assets owned and operated by the debtor in the above-captioned case (the "Debtor").[1]

I.    Assets to be Sold

The assets (the "Assets") to be offered for sale, as an entirety or in one or more lots, consist of certain or substantially all of the estate's assets, including, without limitation, all intellectual property, inventory, equipment, interests in contracts or leases, accounts and payment intangibles associated with any of the Assets.

II.    Consideration of Bids

Without limiting the foregoing, the Assets will be offered for sale in one or more combinations and as a whole. The Debtor may consider bids or other proposals (each, a "Bid") for (i) all of the Assets in a single bid from a single bidder or multiple bids from multiple bidders for Assets in any combination, and (ii) any alternative sale. The Debtor, in its business judgment, and after consultation with a representative of the Committee of Unsecured Creditors

---

[1] Capitalized terms not defined herein have the meaning ascribed in the *Debtor's Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Proposed Sale(s) of Certain or Substantially All of the Debtor's Assets; (II) Establishing Certain Related Deadlines; and (III) Granting Related Relief*.

(the "Committee")[2] and with the Broadcasters, shall determine the Successful Bidder (as defined below) based on, among other things, but not limited to, the number of Assets purchased, the assumption of certain liabilities, the purchase price for the Assets, the bidder's ability to close and the value to the Debtor's estate of the proposed Sale.

The Assets that are offered for sale shall be sold pursuant to section 363 of the Bankruptcy Code free and clear of all liens and other interests in such Assets with certain exceptions which exceptions are to be assumed under any asset purchase agreement or satisfied at closing from the cash proceeds received in connection with the purchase of such Assets, provided, however, that any valid and perfected liens shall attach to the proceeds of the Assets with the same validity, force and effect.

III.    Marketing Process and Due Diligence

The Debtor, pursuant to its business judgment, has and will continue to provide confidential information regarding the Assets and the Debtor to potential purchasers and proponents (the "Initial Information").  Before receiving Initial Information, each potential purchaser or proponent must execute a confidentiality agreement, in a form satisfactory to the Debtor.  The Debtor may, but is not obligated to, furnish any due diligence information after the Bid Deadline (as defined below) for Qualified Bids (as defined below) or to any party that the Debtor determines.

IV.    Bid Deadlines

Final Bids:  All Bids must be served upon and actually received by the Debtor and Debtor's counsel on or before 5:00 p.m., prevailing Eastern Time, on February 20, 2015 (the "Bid Deadline").  Bids must be sent to: (i) the Debtor, Attn: Brenda Cotter, Esq., Aereo, Inc., 280 Summer Street, 4th Floor, Boston, MA 02210; (ii) the Debtor's CRO, Lawton Bloom, Argus Management Corporation, 234 Fifth Avenue, 5th Floor, New York, NY 10001; and (iii) counsel to the Debtor, Brown Rudnick LLP, Attn: William R. Baldiga, Seven Times Square, New York, NY 10036.  The Debtor may extend the Bid Deadline for the delivery of Bids once or successively, without further notice and for one or more bidders, as the case may be.

V.    Qualified Bid Requirements

The Debtor will determine, subject to the Bidding Procedures and the requirements below, and after consultation with the Committee and the Broadcasters, whether a Bid is a Qualified Bid and, ultimately, a Successful Bid (as those terms are defined below).  The Debtor may, in its business judgment, modify any Bidding Procedures before the commencement of the Sale Hearing in order to maximize the benefit to the estate of the Sale process as a whole.

Any party that desires to submit a Bid must do so in writing as follows:

---

[2]    In all instances, the term "Committee" shall include both the *Ad Hoc* Committee of Unsecured Creditors as well as any Official Committee of Unsecured Creditors that may be appointed in this Chapter 11 case.

2

a. A Bid must clearly set forth any conditions for closing and state that the Bid is irrevocable as set forth below;

b. A Bid must constitute a good faith, bona fide offer to enter into a Sale;

c. A Bid must clearly set forth the consideration to be paid;

d. A Bid must identify with particularity each and every condition to closing;

e. A Bid must identify with particularity (i) the executory contracts and unexpired leases for which assumption and assignment is required, and (ii) the liabilities and accruals to be assumed;

f. A Bid must be "as is, where is" and not be conditioned on any contingency, including, but not limited to, obtaining or completing any of the following: (i) a due diligence investigation; (ii) any material adverse change; (iii) financing; (iv) shareholder, board of directors or other approval; and (v) regulatory approvals of any kind;

g. A Bid must include evidence, including financial statements (or such other form of financial disclosure and credit-quality support or enhancement reasonably acceptable to the Debtor) sufficient in the Debtor's business judgment to establish the financial wherewithal of the bidder to complete the contemplated Sale and, to the extent the bidder will rely upon the financial wherewithal of an affiliate, bid partner, or other sponsor (each, a "Sponsor"), evidence sufficient to establish the financial wherewithal and intent of the Sponsor to provide appropriate financial support;

h. A Bid must contain such financial and/or other information that will allow the Debtor to make a reasonable determination as to the bidder's financial and other capabilities to consummate the Sale contemplated, including such financial information and other information setting forth adequate assurance of future performance under section 365 of the Bankruptcy Code in a form requested by the Debtor to allow the Debtor to serve on counterparties to any contracts or leases being assigned in connection with the proposed sale that have requested, in writing, such information;

i. A Bid must disclose the identity of the bidder's organization, including confirmation that the Bid is made as principal for the bidder's account and, if not, the basis upon which the bidder is acting and the identities of all other participants (if any);

j. A Bid must include evidence of authorization and approval from the bidder's shareholders, board of directors or any other necessary approval with respect to the submission, execution, delivery and closing of the Sale;

k. A Bid must include a cashier's check or be accompanied by a wire transfer payable or delivered to the Debtor, Debtor's counsel or other agreed upon escrow

<p style="padding-left: 40px;">

agent, in an amount equal to ten percent (10%) of the consideration to be paid as a good-faith deposit (the "<u>Deposit</u>");

l.    A Bid must state that the bidder is willing to consummate and fund the proposed Sale by no later than five (5) business days after the Sale Hearing;

m.    A Bid must state that it remains irrevocable until (a) the first business day following the consummation of the Sale and (b) the twentieth (20th) day after entry of an order by the Bankruptcy Court approving a Sale; and

n.    A Bid must disclose any agreements or understanding between the bidder and any third party with respect to the subject Assets or with respect to any possible Sale involving the Debtor.

Notwithstanding anything to the contrary in these procedures, the Debtor shall have the right, in its business judgment, and after consultation with the Committee and the Broadcasters, to consider Bids that do not conform to one or more of the requirements set forth in these procedures and to deem such Bids as Qualified Bids (as defined below).

Notwithstanding anything to the contrary in these procedures, the Bid of the Successful Bidder (as defined below) must remain irrevocable in accordance with the terms of the Sale documents executed by the Successful Bidder. All other Bids must be irrevocable until the earlier to occur of (i) twenty five (25) days after entry of a Sale Order (as defined below) and (ii) closing of the Sale in accordance with the Successful Bid (as defined below).

Notwithstanding anything to the contrary in these procedures, the Debtor also reserves the right, in its business judgment, to reject any and all Bids, including Qualified Bids.

VI.    <u>Evaluation of Qualified Bids</u>

Pursuant to its business judgment, the Debtor may request additional information from a potential bidder to better evaluate the bidder's ability to consummate a Sale and to fulfill its obligations in connection therewith, and such bidder shall be obligated to provide such information as a pre-condition to selecting a bidder as a Qualified Bidder (as defined below) or allowing such bidder to continue to participate in the Auction (as defined below).

The sufficiency of any submitted Bid will be at the discretion of the Debtor in accordance with the exercise of his business judgment. The Debtor shall as promptly as practicable notify each bidder which has (i) returned a signed confidentiality agreement; (ii) timely submitted the information and documentation listed above in section V(a)-(m); and (iii) financial qualifications satisfactory to the Debtor whether or not it has been selected as a qualified bidder (each, a "<u>Qualified Bidder</u>") and whether or not its Bid is a "<u>Qualified Bid</u>."

The submission of the information and documentation listed above in section V(a)-(m) will be deemed to be the bidder's consent for the Debtor and its advisors to share any information submitted by the bidder with any landlord with respect to a nonresidential real property lease and any non-debtor party to an executory contract to be assigned to such bidder. Any bidders submitting Bids will bear their own expenses in connection with the Sale, regardless

of whether the Sale is approved, in accordance with the terms of the Sale documents, subject to the Debtor's right to designate a Stalking Horse (as defined below).

VII.   Stalking Horse Bids

The Debtor reserves the right to enter into one or more asset purchase or other agreements with any interested party for certain or substantially all of the Assets and designate that party as a stalking horse (the "Stalking Horse") subject to the terms herein.  The Debtor may seek to offer a break up fee (the "Break Up Fee") to the Stalking Horse.  The Debtor is under no obligation to choose a Stalking Horse or offer a Break Up Fee for any of the Assets.  There may not be more than one Stalking Horse for any particular estate Asset.

In the event the Debtor selects a Stalking Horse, the Debtor may seek to offer bid protections, including a Break Up Fee not to exceed three percent (3.0%) of the total value of the Stalking Horse Bid, plus expenses incurred not to exceed $500,000.  If the Debtor designates a Stalking Horse, and after consultation with the Committee and the Broadcasters, the Debtor will file a supplemental notice (the "Stalking Horse Notice") with the Court identifying the Stalking Horse and the term of the Stalking Horse Bid, including the terms and conditions for payment of any Break Up Fee and submitting the asset purchase or other agreement entered into with the Stalking Horse (the "APA").  Any party wishing to object to the Debtor's designation of the Stalking Horse shall have five (5) days from the filing of the Stalking Horse Notice (but in any event not later than the Sale Objection Deadline) to file an objection (the "Objection") with the Court and serve the same on the Debtor and its counsel and other parties as required by the Court or applicable law.  The Debtor will seek to schedule a hearing with the Court for approval of the Stalking Horse and the Stalking Horse Bid, including payment of any Break Up Fee.

In the event that a Stalking Horse is approved, the Stalking Horse Bid will be a Qualified Bid.

In the event that the Debtor designates a Stalking Horse, before or after the Bid Deadline, the Debtor reserves the right, in its business judgment, to require any other bidders to submit an executed asset purchase or other agreement blacklined to show changes from the APA as a pre-condition to selecting a bidder as a Qualified Bidder or allowing such bidder to continue to participate in the Auction.

VIII.   Auction

The auction (the "Auction") will be conducted for the Assets on February 24, 2015 at 10:00 a.m., prevailing Eastern Time, (the "Auction Date") at the offices of Brown Rudnick LLP, Seven Times Square, New York, NY  10036.  The Assets shall be sold free and clear of all liens, claims and encumbrances to the fullest extent allowed under section 363(f) of the Bankruptcy Code, provided, however, that any valid and perfected liens shall attach to the proceeds of the Assets with the same validity, force and effect.

The Debtor, in accordance with its business judgment, may conduct the Auction in any manner and upon any terms and conditions the Debtor believes will achieve the maximum value for the Debtor's estate.  If an auction is held, the Debtor shall promulgate rules regarding any

5

such action as it deems appropriate, including, but not limited to, rules governing minimum starting bids, minimum overbids and subsequent bids.

Only Qualified Bidders may bid at the Auction. If multiple Qualified Bids are received, each Qualified Bidder (or its duly authorized representative) shall have the right to continue to improve its Qualified Bid at the Auction.

If a Stalking Horse is selected and no Qualified Bids (other than the Stalking Horse Bid) are received for the Assets (or no Stalking Horse is selected and only one Qualified Bid is received for the Assets), the Debtor may determine, after consultation with the Committee and the Broadcasters, that the Stalking Horse Bid or the Qualified Bid, as applicable, is the Successful Bid (as defined below) and seek Court approval of the relevant Sale documents without conducting the Auction. If the Debtor determines that there is no Successful Bid for a particular Asset, the Debtor may decide, after consultation with the Committee and the Broadcasters, to not sell that Asset at the Auction.

The Auction may be adjourned or (after consultation with the Committee and the Broadcasters) cancelled as the Debtor deems appropriate in its business judgment. Reasonable notice of such adjournment and the time and place for the resumption of the Auction or cancellation shall be given to all bidders.

IX.    Selection of Successful Bid or Bids

At the conclusion of the Auction, after consultation with the Committee and the Broadcasters, and subject to Court approval following the Auction, the successful Bid or Bids shall be selected and announced by the Debtor (the "Successful Bid or Bids") and the Backup Bid or Bids (as defined below), if any, shall be selected and announced by the Debtor.

Within thirty-six (36) hours of completion of the Auction, the parties that made the Successful Bid or Bids (each, a "Successful Bidder") and the parties that made the Backup Bid or Bids, if any, shall complete and sign all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid or Bids and the Backup Bid or Bids, if any, were made.

The Debtor reserves the right to base the selection of the Successful Bid and Backup Bid on the following factors, among others: (i) the number of Assets purchased, (ii) the assumption of certain liabilities, (iii) the purchase price for the Assets, (iv) the bidder's ability to close, and (v) the value to the Debtor's estate of the proposed Sale.

The Debtor, in accordance with its business judgment, may (i) reject any Bid (including a Stalking Horse Bid) that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of sale, or (c) contrary to the best interests of the Debtor, its estate and creditors; and/or (ii) refuse to consider any Bid that fails to comply with the Bidding Procedures or any other procedures established by the Debtor.

6

X.   Backup Bids

If the Successful Bidder fails to consummate the Sale, breaches the executed agreement or otherwise fails to perform, and after consultation with the Committee and the Broadcasters, the Debtor may consummate the proposed Sale with the next highest or best bid(s) received (such bid or bids, the "Backup Bid or Bids" and the party(ies) submitting the Backup Bid, the "Backup Bidder(s)", which hereafter shall be included in the definition of "Successful Bidder") without the need for further Court approval.  The Backup Bid(s) shall remain open until the earlier of (a) the first business day following the consummation of the Sale and (b) the twentieth (20th) day after entry of an order by the Bankruptcy Court approving a Sale.

XI.  Damages for Failure to Close

If the Successful Bidder fails to consummate the Sale in accordance with the terms of its Successful Bid and applicable Sale documents: (i) the Debtor will retain the Deposit of such bidder, to the extent provided by the applicable Sale documents, and (ii) the Debtor will maintain the right to pursue all available remedies against such bidder.

Notwithstanding anything to the contrary in these procedures, the Deposit of the Successful Bidder will be retained by the Debtor in accordance with the terms of the Sale documents executed by the Successful Bidder.  Deposits of all other bidders will be retained by the Debtor until the earlier to occur of (i) twenty-five (25) days after entry of a Sale Order (as defined below) and (ii) closing of the Sale in accordance with the Successful Bid.

XII. Supplemental Disclosure and Sale Hearing

Upon the selection of one or more Successful Bidders, the Debtor will file a supplemental disclosure (the "Supplemental Disclosure") to describe the particular Sale or Sales for which the Debtor seeks the Court's approval.  The Debtor will seek to have the Court set (i) a hearing for approval of the Successful Bids for March 11, 2015 at 10:00 a.m. (the "Sale Hearing"); and (ii) an objection deadline in connection with the Successful Bids and the contemplated Sale(s) of on or before 3:00 p.m., prevailing Eastern Time, on March 9, 2015 (the "Sale Objection Deadline").  At the Sale Hearing, the Debtor will request that the Court enter an order (the "Sale Order"): (i) approving (a) the Successful Bid(s), (b) the applicable Sale documents, and (c) the proposed assumption and assignment of any assumed contract; and (ii) authorizing the Debtor to consummate the proposed Sale(s).  At the Sale Hearing, the Court shall also determine any ancillary issues to any proposed Sale pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of any executory contracts or unexpired leases.

XIII. "As Is, Where Is"

The proposed transfer of any of the Debtor's Assets will be on an "as is, where is" basis and without representations and warranties of any kind, nature or description by the Debtor, the Debtor's estate or any of its agents or representatives, except to the extent set forth in the applicable Sale documents of each Successful Bidder as executed by the Debtor and approved by the Court.  Except as otherwise provided in the applicable Sale documents of each Successful Bidder as executed by the Debtor and approved by the Court and subject to any objections, all of

7

the Debtor's right, title and interest in and to the respective Asset will be transferred free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests in accordance with section 363 of the Bankruptcy Code.  Any other claim, lien or encumbrance, as set forth in the applicable Sale documents of each Successful Bidder as executed by the Debtor and approved by the Court, will attach to the net proceeds of the sale of the particular Asset.

Each bidder will be deemed to acknowledge and represent that it (i) has had an opportunity to conduct such due diligence regarding the Debtor and the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any information or documents, including, without limitation, executory contracts and unexpired leases in making its Bid; and (iii) did not rely upon or receive any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, with respect to the Sale, or to the completeness of any information provided in connection with the Sale or the Auction, except as expressly stated in the applicable Sale documents.

XIV.    Reservation of Rights

These bidding procedures are in all respects subject to the *Order (I) Approving Bidding Procedures; (ii) Establishing Certain Related Deadlines; And (III) Granting Related Relief* entered by the Bankruptcy Court.

Notwithstanding the Debtor's determination of a Stalking Horse and/or receipt of any Qualified Bids for any particular Sale, the Debtor may continue to negotiate and solicit Bids.  The Debtor reserves the right to enter into agreements for the sale of any of the Assets, either individually or as part of a package prior to an Auction, without further notice to any party, which agreements, if any, will be subject to higher or otherwise better Bids at the Auction (including evaluation on a package or individual basis).  The Debtor retains the right to withdraw one or more Assets from the sale, including in connection with a package offer, up to the date of the Auction or Sale Hearing.  Formal approval of a Bid will not occur unless and until the Court enters an order approving and authorizing the Debtor to consummate the contemplated Sale pursuant to such Bid.  The Debtor reserves the right to reject all Bids and to request no approvals of any kind by the Court or to any Sale at such time.

The Debtor reserves the right to implement additional procedural rules provided that such additional rules are not inconsistent with these Bidding Procedures.

9

61848553 v12332602.1

| Summary report: Litéra® Change-Pro TDC 7.5.0.125 Document comparison done on 1/23/2015 1:01:44 PM ||
|---|---|
| **Style name:** Standard ||
| **Intelligent Table Comparison:** Active ||
| **Original filename:** Order Entered 12_24_14 (I) Approving Bidding Procedures_ (II) Establishing Certain Related Deadlines.DOC ||
| **Modified DMS:** iw://WORKSITE/WorksiteUS/61848608/1 ||
| **Changes:** ||
| Add | 23 |
| Delete | 17 |
| Move From | 2 |
| Move To | 2 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 44 |