## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- :
In re: : Chapter 11
: 
AEREO, INC., : Case No.  14-13200 (SHL)
: 
              Debtor.[1] :
----------------------------------------------------------- :

## <u>DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF AEREO, INC.</u>

**BROWN RUDNICK, LLP**
William R. Baldiga, Esq.
R. Benjamin Chapman, Esq.
7 Times Square
New York, NY  10036
(212) 209-4800

*Counsel for the Debtor*
*and Debtor-in-Possession*

Dated:  February 27, 2015

---

[1]       The last four digits of the Debtor's federal tax identification number are 2838.  The Debtor's mailing address is c/o Aereo, Inc., 280 Summer Street, Boston, Massachusetts 02210.

<u>**IMPORTANT INFORMATION FOR YOU TO READ**</u>

THE DEBTOR IS PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR THE PURPOSE OF SOLICITING VOTES TO ACCEPT THE CHAPTER 11 PLAN OF AEREO, INC. (THE "<u>PLAN</u>"). NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY PERSON OR ENTITY FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.

THIS DISCLOSURE STATEMENT CONTAINS "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "BELIEVE," "PREDICTS," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD LOOKING STATEMENTS. THE LIQUIDATION ANALYSIS, FINANCIAL PROJECTIONS AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY. THE TIMING AND AMOUNT OF ACTUAL DISTRIBUTIONS TO AND RECOVERIES BY HOLDERS OF ALLOWED CLAIMS, AND IF ALL ALLOWED CLAIMS ARE PAID IN FULL WITH INTEREST, ALLOWED INTERESTS, MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED. FACTORS THAT COULD CAUSE ACTUAL RESULTS TO BE MATERIALLY DIFFERENT FROM EXPECTATIONS INCLUDE THOSE FACTORS DESCRIBED IN PART VI HEREIN TITLED "RISK FACTORS." THEREFORE, ANY ANALYSIS, ESTIMATES OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULE OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH THE FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "<u>SEC</u>"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS OF AEREO, INC., IN THIS CASE SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

NO LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE DEBTOR URGES EACH HOLDER OF A CLAIM OR AN INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED DISTRIBUTIONS AND OTHER ACTIONS CONTEMPLATED THEREBY.

THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION OR WAIVER. RATHER, THIS DISCLOSURE STATEMENT SHALL CONSTITUTE A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR ESTATE CAUSE OF ACTION OR PROJECTED OBJECTION TO A PARTICULAR CLAIM OR INTEREST IS, OR IS NOT, IDENTIFIED IN THIS DISCLOSURE STATEMENT, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN A FINAL ORDER OF THE BANKRUPTCY COURT. THE DEBTOR, PRIOR TO THE EFFECTIVE DATE, OR THE LIQUIDATION TRUSTEE, AFTER THE EFFECTIVE DATE, MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE ANY ESTATE CAUSES OF ACTION OR OBJECTIONS TO CLAIMS AND INTERESTS, AND MAY DO SO AFTER THE CONFIRMATION DATE OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES SUCH ESTATE CAUSES OF ACTION OR OBJECTIONS.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN ANTICIPATED EVENTS IN THE DEBTOR'S CHAPTER 11 CASE AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE. ALTHOUGH THE DEBTOR BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY CONFLICT, INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN AND CONTROL FOR ALL PURPOSES. EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED, THE FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR'S MANAGEMENT OR PROFESSIONALS. THE DEBTOR DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION. ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN

ARE ENCOURAGED TO REVIEW THE DISCLOSURE STATEMENT AND PLAN, INCLUDING ALL EXHIBITS ATTACHED HERETO AND THERETO, IN THEIR ENTIRETY BEFORE CASTING THEIR VOTES TO ACCEPT OR REJECT THE PLAN.

THE DEBTOR'S MANAGEMENT HAS REVIEWED THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT. ALTHOUGH THE DEBTOR HAS USED ITS REASONABLE GOOD FAITH EFFORTS TO ENSURE THE ACCURACY OF THIS FINANCIAL INFORMATION, THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED (UNLESS EXPRESSLY PROVIDED HEREIN).

THE DEBTOR IS GENERALLY MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTOR MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTOR HAS NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DATE OF THE DISCLOSURE STATEMENT OR SUCH EARLIER DATE AS MAY BE SPECIFICALLY NOTED. THE DEBTOR HAS NOT AUTHORIZED ANY PERSON OR ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTOR HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTOR, THE PLAN OR THE VALUE OF ITS PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE DEBTOR AND THEIR OWN ANALYSIS OF THE TERMS OF THE PLAN IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. IMPORTANTLY, PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD REVIEW THE PLAN IN ITS ENTIRETY AND CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT AND ANY EXHIBITS HERETO, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL IN PART VI HEREIN TITLED "RISK FACTORS."

THE VOTING DEADLINE IS 5:00 P.M. EASTERN TIME ON MAY 8, 2015, UNLESS THE DEBTOR, WITH CONSENT OF THE CREDITOR'S COMMITTEE, EXTENDS THE VOTING DEADLINE.

TO BE COUNTED AS A VOTE TO ACCEPT OR REJECT THE PLAN, THE VOTING AGENT MUST ACTUALLY RECEIVE YOUR BALLOT ON OR BEFORE THE VOTING DEADLINE.

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................1
    A.    purpose of disclosure statement .................................................. 1
    B.    OVERVIEW OF THE PLAN ...................................................... 3
    C.    SUMMARY OF PLAN CLASSIFICATION, TREATMENT AND VOTING RIGHTS ................................................................... 4
    D.    SUMMARY OF ESTIMATED ALLOWED CLAIMS ....................... 7
    E.    VOTING INSTRUCTIONS ...................................................... 13
    F.    CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT ........... 15

II.    BACKGROUND OF THE DEBTOR ...............................................15
    A.    THE DEBTOR ....................................................................... 15
    B.    CORPORATE GOVERNANCE AND MANAGEMENT ................... 16
        1.    Board of Directors ........................................................ 16
        2.    Executive Management .................................................. 16
    C.    PRE-PETITION EQUITY FINANCING ...................................... 17
    D.    SUMMARY OF CERTAIN LIABILITIES .................................... 17
    E.    EVENTS LEADING TO CHAPTER 11 ....................................... 18

III.    THE CHAPTER 11 CASE ..............................................................19
    A.    COMMENCEMENT OF THE CHAPTER 11 CASE ...................... 19
    B.    RETAINED PROFESSIONALS .................................................. 19
    C.    FIRST DAY ORDERS ............................................................. 19
    D.    APPOINTMENT OF CREDITORS' COMMITTEE ........................ 19
    E.    SALE OF ASSETS ................................................................. 20
        1.    Sale Efforts and Retention of Chief Restructuring Officer ....... 20
        2.    Bidding Procedures Order ............................................... 21
        3.    The Auction and Sale .................................................... 22
    F.    THE CLAIMS PROCESS ......................................................... 25
    G.    DISPOSITION OF EXECUTORY CONTRACTS AND UNEXPIRED | LEASES ............................................................................. 26

IV.    CHAPTER 11 PLAN ....................................................................26
    A.    PLAN OVERVIEW ................................................................ 26

| | | | |
|---|---|---|---|
| B. | | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 27 | |
| | 1. | Treatment of Unclassified Claims Under the Plan ................... 27 | |
| | 2. | Treatment Of Classified Claims And Interests ......................... 29 | |
| C. | | THE LIQUIDATION TRUST ............................................................ 33 | |
| | 1. | Creation and Purpose of the Liquidation Trust ........................ 33 | |
| | 2. | General Powers of the Liquidation Trustee ............................. 33 | |
| | 3. | Federal Tax ............................................................................. 34 | |
| | 4. | Funding And Operation of the Liquidation Trust .................... 34 | |
| | 5. | Dissolution of the Debtor and Wind Down of the Chapter 11 Case ........ 35 | |
| | 6. | Prosecution and Resolution of Estate Causes of Action .......... 35 | |
| | 7. | Monthly and Quarterly Reporting and Payment of Fees ......... 36 | |
| D. | | DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS AND INTERESTS ............................................................................... 36 | |
| | 1. | Objections to Claims and Interests .......................................... 36 | |
| | 2. | Estimation, Amendment and Settlement of Claims or Interests ............ 37 | |
| | 3. | No Recourse ............................................................................. 38 | |
| E. | | DISTRIBUTIONS UNDER THE PLAN ............................................. 38 | |
| | 1. | Delivery of Distributions ........................................................ 38 | |
| | 2. | Disputed Claims Reserves ....................................................... 39 | |
| | 3. | Setoff ....................................................................................... 39 | |
| | 4. | Withholding and Reporting Requirements ............................... 40 | |
| | 5. | Post-Petition Interest on Claims .............................................. 40 | |
| | 6. | Transfers of Claims and Interest/Distribution Record Date .... 40 | |
| F. | | CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF PLAN ..................................................................................... 40 | |
| | 1. | Conditions to Confirmation ..................................................... 40 | |
| | 2. | Conditions To The Effective Date ........................................... 41 | |
| | 3. | Waiver of Conditions ............................................................... 41 | |
| | 4. | Termination Of The Plan For Failure To Become Effective .... 41 | |
| G. | | EFFECTS OF CONFIRMATION ...................................................... 42 | |
| H. | | RELEASES, EXCULPATION, INJUNCTION AND LIMITATION OF LIABILITY .................................................................................. 43 | |
| | 1. | Releases by Debtor .................................................................. 43 | |
| | 2. | Exculpation .............................................................................. 43 | |
| | 3. | Injunction ................................................................................ 44 | |
| I. | | RETENTION OF JURISDICTION .................................................... 45 | |
| J. | | NO ADMISSIONS, REVOCATION OF THE PLAN, SEVERABILITY OF PLAN PROVISIONS, ENTIRE AGREEMENT ................................ 47 | |
| K. | | EXEMPTION FROM CERTAIN TRANSFER TAXES ..................... 47 | |
| L. | | SUCCESSORS AND ASSIGNS ........................................................ 48 | |
| V. | | CONFIRMATION AND CONSUMMATION OF THE PLAN ..................... 48 | |
| | A. | SOLICITATION OF VOTES ............................................................ 48 | |

B.    CONFIRMATION PROCEDURES ................................................................ 48

C.    STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN .... 49

    1.    General Requirements ................................................................. 49
    2.    Best Interests Test ...................................................................... 49
    3.    Feasibility ................................................................................... 49
    4.    Acceptance by Impaired Classes ............................................... 49
    5.    Confirmation Without Acceptance By All Impaired Classes ................... 50
    6.    Consummation Of The Plan ....................................................... 51

VI.    RISK FACTORS ASSOCIATED WITH THE PLAN ........................................ 52

A.    CERTAIN BANKRUPTCY CONSIDERATIONS ........................................ 52

    1.    The Debtor May Amend, And Other Parties In Interest May Object To, The Amount, Classification And Treatment Of A Claim ......................... 52
    2.    The Debtor May Not Be Able To Secure Confirmation Of The Plan ...... 52
    3.    The Debtor May Fail To Meet All Conditions Precedent To Effectiveness Of The Plan ................................................................ 52
    4.    Distributions May Be Delayed Or May Be Less Than Anticipated ......... 53
    5.    Certain Risks Arise In Connection With The Liquidation Trust ............. 53

B.    DISCLOSURE STATEMENT DISCLAIMER .................................................... 54

    1.    The Information Contained Herein Is For Soliciting Votes Only ............. 54
    2.    This Disclosure Statement Was Not Approved By The SEC ................... 54
    3.    The Financial Information Contained In This Disclosure Statement Is Not Audited ........................................................................... 54
    4.    This Disclosure Statement Contains Forward Looking Statements ......... 54
    5.    No Legal Or Tax Advice Is Provided To You By This Disclosure Statement ................................................................................. 55
    6.    No Admissions Are Made By This Disclosure Statement ....................... 55
    7.    No Reliance Should Be Placed On Any Failure To Identify Causes Of Action Or Projected Objections ................................................. 55
    8.    Nothing Herein Constitutes A Waiver Of Any Right To Object To Claims Or Recover Transfers And Assets .................................... 55
    9.    The Information Used Herein Was Provided By The Debtor And Was Relied Upon By The Debtor's Professionals ............................. 55
    10.    The Potential Exists For Material Inaccuracies And The Debtor Has No Duty To Update .......................................................... 56
    11.    No Representations Made Outside The Disclosure Statement Are Authorized ......................................................................... 56

VII.    ALTERNATIVES TO THE PLAN .............................................................. 56

A.    ALTERNATIVE PLAN .......................................................................... 56

B.    CHAPTER 7 LIQUIDATION ................................................................. 57

C.    Dismissal .......................................................................................... 57

VIII.    CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS ............................... 57

A.    IN GENERAL ...................................................................................... 57

B.    U.S. FEDERAL INCOME TAX CONSEQUENCES TO THE DEBTOR .......... 58

C.     U.S. FEDERAL INCOME TAX CONSEQUENCES TO HOLDERS OF CLAIMS ............................................................................................................. 59

D.     U.S. FEDERAL INCOME TAX TREATMENT OF THE LIQUIDATION TRUST ..................................................................................................................... 60

E.     BACKUP WITHHOLDING AND INFORMATION REPORTING .................. 62

IX.    SOLICITATION AND VOTING PROCEDURES ............................................................ 62

     A.     PARTIES ENTITLED TO VOTE ......................................................................... 62

     B.     CLASSES ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ...... 63

     C.     WAIVERS OF DEFECTS, IRREGULARITIES, ETC. ...................................... 63

     D.     WITHDRAWAL OF BALLOTS; REVOCATION ............................................. 63

     E.     FURTHER INFORMATION; ADDITIONAL COPIES ..................................... 64

     F.     CONCLUSION AND RECOMMENDATION .................................................... 65

## EXHIBITS TO DISCLOSURE STATEMENT

Exhibit A      Chapter 11 Plan of Aereo, Inc.

Exhibit B      Liquidation Analysis
               [To Be Provided]

**DISCLOSURE STATEMENT FOR**
**THE CHAPTER 11 PLAN OF AEREO, INC.**

**I.     INTRODUCTION**

**A.     PURPOSE OF DISCLOSURE STATEMENT**

Aereo, Inc. ("Aereo"), a privately-held New York corporation with headquarters in Boston, Massachusetts (the "Debtor"), provides this Disclosure Statement (the "Disclosure Statement") to the Debtor's Impaired Creditors to permit such Creditors to make an informed decision in voting to accept or reject the Chapter 11 Plan of Aereo, Inc.  (the "Plan"), filed herewith and attached hereto as **Exhibit A**, in connection with the above-captioned case (the "Chapter 11 Case") pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").  Subject to certain restrictions and requirements set forth in Bankruptcy Code Section 1127 and Federal Bankruptcy Rule 3019, the Debtor expressly reserves the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

**Capitalized terms used herein but not otherwise defined have the meanings assigned to such terms in the Plan**.  To the extent of any conflict between the terms or conditions of this Disclosure Statement and the Plan, the terms and conditions of the Plan shall control and govern.  Whenever the words "include," "includes" or "including" are used in this Disclosure Statement, they are deemed to be followed by the words "without limitation."

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

The purpose of this Disclosure Statement is to provide sufficient information to enable the creditors of the Debtor entitled to vote on the Plan to make an informed decision on whether to accept or reject the Plan.  This Disclosure Statement includes information about:

- the Debtor's pre-Petition operating and financial history;

- the events leading to the filing of the Chapter 11 Case;

- events during the Chapter 11 Case;

- a summary of the terms and provisions of the Plan;

- the process for confirming the Plan;

- certain risk factors relating to the Debtor and confirmation and consummation of the Plan;

- certain tax consequences of the consummation of the Plan;

- alternatives to confirmation and consummation of the Plan; and

- the solicitation and voting procedures for the Plan.

The Disclosure Statement is based on information publicly available in filed pleadings, information provided by the Debtor's management, claims information provided by Prime Clerk LLC ("Prime Clerk"), the Debtor's Claims and Noticing Agent and Voting Agent, a liquidation analysis prepared by the Debtor's Chief Restructuring Officer (the "CRO"), Argus Management Corporation, and legal analysis by Brown Rudnick LLP ("Brown Rudnick"), counsel for the Debtor.

This Disclosure Statement and the Plan were filed on February 27, 2015. The Bankruptcy Court will hold a hearing on confirmation of the Plan beginning at 10:00 a.m. (Prevailing Eastern Time) on May 19, 2015, before the Honorable Sean H. Lane, United States Bankruptcy Judge, One Bowling Green, Room 703, New York, New York, 10004 (the "Confirmation Hearing"). At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the Debtor's creditors, and will review a ballot report concerning votes cast for acceptance or rejection of the Plan.

To obtain additional copies of this Disclosure Statement or of the Plan free of charge please contact Prime Clerk by telephone at 1.212.257.5459, by email at aereoinfo@primeclerk.com], or by First Class Mail at:

Prime Clerk LLC
830 Third Avenue, 9th Floor
New York, New York 10022

The Disclosure Statement and the Plan have been electronically filed with the Bankruptcy Court and may also be examined and inspected by interested parties by (i) accessing the Bankruptcy Court's website at www.nysb.uscourts.gov/, or (ii) accessing the website maintained by the Debtor in connection with its Chapter 11 Case at https://cases.primeclerk.com/aereo. Note that a PACER password is needed to access documents on the Bankruptcy Court's website.

In addition, a ballot for voting to accept or reject the Plan (the "Ballot") is enclosed with this Disclosure Statement for holders of Claims who are entitled to vote to accept or reject the Plan. If you are a holder of a Claim entitled to vote on the Plan and did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning the procedures for voting on the Plan, please promptly contact Prime Clerk.

**Each holder of a Claim entitled to vote on the Plan should read this Disclosure Statement, the Plan, the other appendices attached hereto and the instructions accompanying the Ballots in their entirety before voting on the Plan.** These documents contain important information concerning the classification of Claims for voting purposes and the tabulation of votes.

THIS INTRODUCTION IS BEING PROVIDED AS AN OVERVIEW OF THE MATERIAL ITEMS ADDRESSED IN THIS DISCLOSURE STATEMENT AND THE PLAN, WHICH IS QUALIFIED BY REFERENCE TO THE ENTIRE DISCLOSURE STATEMENT, THE PLAN AND THE LIQUIDATION TRUST AGREEMENT.  THIS INTRODUCTION SHOULD NOT BE RELIED UPON FOR A COMPREHENSIVE DISCUSSION OF THE DISCLOSURE STATEMENT AND/OR THE PLAN, OR IN LIEU OF REVIEWING THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY.

**B.**     **OVERVIEW OF THE PLAN**

The following is a brief summary of the treatment of Claims and Interests under the Plan. **The description of the Plan set forth below constitutes a summary only and is qualified, in its entirety, by the Plan and the Liquidation Trust Agreement.**  For a more detailed description of the terms and provisions of the Plan, see Part IV of this Disclosure Statement and the Plan itself, attached as **Exhibit A** hereto.  In the event of any inconsistency between this Disclosure Statement and the Plan, the Plan controls.

The Plan provides for the liquidation of Assets of the Estate, including investigation and prosecution of Estate Causes of Action, by a Liquidation Trust to be formed pursuant to the Plan and a Liquidation Trust Agreement.  The Plan defines "Assets" as (a) all Assets and properties of every kind, nature, character and description (whether real, personal, or mixed, whether tangible and intangible, including contract rights, wherever situated and by whomever possessed), including the goodwill related thereto, operated, owned or leased by the Debtor as of the Effective Date and that constitute property of the Estate within the purview of Bankruptcy Code Section 541 including, without limitation, any and all Claims, Estate Causes of Action or rights of the Debtor under federal, state, or foreign law, letters of credit issued for the benefit of the Debtor and the monies deposited to secure the performance of any contract or lease by the Debtor or any affiliate thereof; and (b) the proceeds, products, rents and profits of any of the foregoing.  For the avoidance of doubt, Assets include the rights of the Debtor under the Successful Bidder Asset Purchase Agreements and the Sale Orders.

The Liquidation Trust is to be managed by a Liquidation Trustee responsible for liquidating the Assets and making Distributions to holders of Allowed Claims and, if applicable, Allowed Interests, as well as all other administrative tasks necessary for ultimate resolution of the Chapter 11 Case, pursuant to the terms of the Plan and the Liquidation Trust Agreement.

The following is an overview of certain additional material terms of the Plan:

- The Debtor's Estate will be liquidated pursuant to the Plan and all liquid Assets, after deductions for overhead relating to the implementation of the Plan and the administration of the Liquidation Trust, will be available for Distributions in the order of priority discussed in the Plan.

- Claims and Interests are treated generally in accordance with the priorities established under the Bankruptcy Code.

- Holders of Allowed Administrative Claims, Fee Claims and Priority Tax Claims will be paid in full as required by the Bankruptcy Code, unless otherwise agreed by the holders of such Claims.

- Holders of Remaining Secured Claims, Priority Non-Tax Claims and Convenience Claims (which are all Unsecured Claims in an amount of [$1,000] or less, or which by agreement of the holder thereof have been reduced to [$1,000] or less as described in the Plan) will be paid in full.

- After payment in full of, or adequate reserve for, Claims entitled to payment in full, Allowed General Unsecured Claims will receive Distributions of Cash in an amount equal to their respective Pro Rata shares of the Available Cash. If there is sufficient Available Cash to pay these Claims in full, as well as Allowed Claims Subject to Subordination in full, the Plan also provides for postpetition interest payments to the holders of Claims in such Classes. Holders of Allowed General Unsecured Claims and Allowed Claims Subject to Subordination will be entitled to vote to accept or reject the Plan.

- In the event there is Cash remaining after payment in full of all Allowed General Unsecured Claims, Allowed Claims Subject to Subordination and postpetition interest thereon as provided in the Plan, the Plan provides that holders of Aereo Interests are entitled to share in such remaining Cash. Aereo Interests are deemed to reject the Plan and are not entitled to vote on the Plan.

- Aereo, Inc. stock will be cancelled.

- All executory contracts and unexpired leases will be rejected unless otherwise disposed of before the Effective Date.

- The Liquidation Trustee will be responsible for the dissolution of the Debtor on or after the Effective Date.

## C. SUMMARY OF PLAN CLASSIFICATION, TREATMENT AND VOTING RIGHTS

Under the Plan, Claims against and Interests in the Debtor are divided into Classes. A Claim or Interest may be bifurcated and classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. Certain Claims—in particular, Administrative Claims, Fee Claims, and Priority Tax Claims—remain unclassified in accordance with Bankruptcy Code Section 1123(a)(1). The Plan assigns to Classes all other Claims and Interests as described below.

**Class 1** consists of all Remaining Secured Claims, which are Secured Claims arising prior to the Petition Date against the Debtor, other than any Secured Claim satisfied pursuant to the Successful Bidder Sale Order. Except to the extent that the holder of an Allowed Remaining Secured Claim agrees to a different treatment of such Claim, on the later of the Effective Date and the date such Remaining Secured Claim becomes an Allowed Remaining Secured Claim, or

as soon thereafter as reasonably practicable, each holder of an Allowed Remaining Secured Claim shall receive, in complete settlement, satisfaction and discharge of its Class 1 Claim, at the Liquidation Trustee's election, (i) payment in full in Cash of such holder's Allowed Remaining Secured Claim, (ii) the Debtor's interest in the collateral securing such holder's Allowed Remaining Secured Claim or (iii) such other treatment rendering such holder's Allowed Remaining Secured Claim; provided, however, that if the holder of an Allowed Remaining Secured Claim holds Cash with a right of setoff, such holder shall be entitled to effect the setoff and thereby satisfy the Claim in lieu of receiving payment. Class 1 is Unimpaired by the Plan and the holders of Remaining Secured Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

**Class 2** consists of all Priority Non-Tax Claims, which are Claims or portions thereof for which priority is asserted under Bankruptcy Code Sections 507(a)(3), (4), (5), (6), or (7). Unless the holder of an Allowed Priority Non-Tax Claim agrees to receive other less favorable treatment, each holder of an Allowed Priority Non-Tax Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) the Initial Distribution Date for First Tier Claims or (ii) as soon as is reasonably practicable after the date such Claim becomes an Allowed Claim. Class 2 is Unimpaired by the Plan and the holders of Priority Non-Tax Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

**Class 3** consists of all Convenience Claims, which are all Unsecured Claims in an amount of [$1,000] or less, or which by agreement of the holder thereof have been reduced to [$1,000] or less. Each holder of an Allowed Convenience Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) the Initial Distribution Date for First Tier Claims or (ii) as soon as is reasonably practicable after the date such Claim becomes an Allowed Claim. Class 3 is Unimpaired by the Plan and the holders of Allowed Convenience Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

**Class 4** consists of all General Unsecured Claims, which are all Claims greater than [$1,000] and which are not an Administrative Claim, a Priority Tax Claim, a Fee Claim, a Remaining Secured Claim, a Priority Non-Tax Claim, a Convenience Claim, or a Claim Subject to Subordination. Unless the holder of an Allowed General Unsecured Claim agrees to receive other less favorable treatment, each holder of an Allowed General Unsecured Claim, in full satisfaction, settlement and release of and in exchange for all such Allowed Claims, shall be entitled to receive, commencing on the Initial Distribution Date for Second Tier Claims, one or more Distributions of Available Cash in an amount equal to its Pro Rata share of the Unsecured Allocation. Class 4 is Impaired by the Plan and the holders of General Unsecured Claims are entitled to vote on the Plan.

**Class 5** consists of all Claims Subject to Subordination, which are (a) for the purposes of classification and voting only: (i) any Claim asserted against the Debtor that is Allowed as a Claim subordinated in priority of payment to any General Unsecured Claim pursuant to Bankruptcy Code Section 510(b), Bankruptcy Code Section 510(c) or other applicable law; (ii) any Claim for any fine, penalty or forfeiture, or multiple, exemplary, statutory or punitive damages, to the extent that such fine, penalty, forfeiture or damage is not compensation for actual pecuniary loss suffered by the holder of such Claim, including, without limitation, any

such Claim based upon, arising from or relating to any cause of action whatsoever (including, without limitation, violation of law, intellectual property infringement, fraud, personal injury or wrongful death, whether secured or unsecured, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise), and any such claim asserted by a Governmental Unit in connection with a tax or other obligation owing to such unit; or (iii) any Claim asserted by a party against whom the Debtor has commenced a proceeding seeking to subordinate such Claim for any reason set forth in subsections (i) and (ii), including, without limitation, the Broadcaster Claims; (b) for the purposes of Distribution, any claim under subsection (a) for which an order has been entered by the Bankruptcy Court subordinating such Claim. To the extent that a Claim in Class 5 is determined not to be subordinated by order of the Bankruptcy Court or agreement between the holder of such Claim in Class 5 and the Debtor, such Claim in Class 5 shall be entitled to the same Pro Rata amount of all Distributions as received by General Unsecured Claims in Class 4. If, and only if, there is Available Cash remaining in the LT Distribution Account after payment in full of, or adequate reserve for, Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims, and all Allowed Claims or Disputed Claims in Classes 1 through 4, then each holder of an Allowed Claim Subject to Subordination, in full satisfaction, settlement and release of and in exchange for all such Allowed Claims, shall be entitled to receive, commencing on the Initial Distribution Date for Third Tier Claims, one or more Distributions of Available Cash in an amount equal to its Pro Rata share of such Available Cash remaining in the LT Distribution Account. Class 5 is Impaired by the Plan and the holders of Claims Subject to Subordination are entitled to vote on the Plan.

**Class 6** consists of all Aereo Interests, which are any equity security, within the meaning of Bankruptcy Code Section 101(16), issued by Aereo and outstanding prior to the Effective Date including, without limitation, any preferred stock, common stock, stock options or other right to purchase the stock of Aereo, together with any warrants, conversion rights, rights of first refusal, subscriptions, commitments, agreements, or other rights to acquire or receive any stock or other equity ownership interests in Aereo prior to the Effective Date. All Aereo Interests shall be cancelled as of the Effective Date. If, and only if, there is Available Cash remaining in the LT Distribution Account after payment in full of, or adequate reserve for, Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims and all Allowed Claims or Disputed Claims in Classes 1 through 5, then, in full satisfaction, settlement and release of and in exchange for all such Allowed Aereo Interests, each holder of an Allowed Aereo Interest shall be entitled to receive, on the Initial Distribution Date for Fifth Tier Interests, one or more Distributions of Available Cash in an amount equal to its allocated share of such Available Cash remaining in the LT Distribution Account as such allocated share shall be determined by the Bankruptcy Court upon motion of the Liquidation Trustee. If, however, there is no Available Cash remaining in the LT Distribution Account after payment in full of, or adequate reserve for, Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims and all Allowed Claims or Disputed Claims in Classes 1 through 5, then no holder of an Aereo Interest shall receive or retain any property under the Plan or the Liquidation Trust Agreement on account of such holder's Interest.

The Debtor believes that the Distributions under the Plan will provide Creditors of the Debtor at least the same recovery on account of Allowed Claims as would Distributions by a Chapter 7 trustee. However, Distributions under the Plan to Creditors of the Debtor would be

made more quickly than Distributions by a Chapter 7 trustee and a Chapter 7 trustee would charge a substantial fee, reducing the amount available for distribution on account of Allowed Claims.

## D.  SUMMARY OF ESTIMATED ALLOWED CLAIMS

Following are detailed, Class-by-Class summaries of the estimated Allowed Claims against the Debtor and the estimated Distribution to the Creditors of the Debtor on account of such Allowed Claims.

The Debtor calculated the total asserted Claims (other than Administrative Claims[2]) based on filed and scheduled Claims.  To the extent a Creditor filed a proof of claim that superseded a scheduled Claim, the amount in the filed proof of claim was utilized.  Proofs of claim filed in unliquidated amounts were disregarded.

The Debtor then reviewed all filed and scheduled Claims asserting Remaining Secured Claims, Priority Non-Tax Claims, Convenience Claims, General Unsecured Claims and Claims Subject to Subordination, and allocated such Claims to such categories.

The Debtor then determined a range of estimated Allowed Claims by reducing asserted Claim amounts for duplicate Claims, amended Claims, misclassified Claims, settled Claims, repaid Claims and Claims that lack merit.  For purposes of the analysis that follows the Debtor assumes the Effective Date will occur on or about May 26, 2015.

**THE TABLE BELOW SUMMARIZES THE TREATMENT OF, AND EXPECTED RECOVERIES FOR, ALL CLASSES OF CLAIMS AND INTERESTS (WHETHER UNCLASSIFIED OR CLASSIFIED) UNDER THE PLAN.  THE RECOVERY PERCENTAGES SET FORTH IN THE FOLLOWING TABLE ARE MERELY ESTIMATES.  THE ACTUAL AMOUNTS DISTRIBUTED TO HOLDERS OF ALLOWED CLAIMS UNDER THE PLAN MAY BE HIGHER OR LOWER THAN ESTIMATED.**

| SUMMARY OF TREATMENT AND EXPECTED RECOVERIES [TO BE UPDATED] (All capitalized terms used but not otherwise defined below will have the meanings set forth in the Plan.) | | | |
|---|---|---|---|
| **Class** | **Claim/Interest** | **Description, Treatment and Projected Recovery for Claim/Interest** | **Estimated Percentage Recovery** |
| N/A | **Administrative Claims** | An Administrative Claim is an obligation of the Debtor under Bankruptcy Code Section 503(b) entitled to priority in payment under Bankruptcy Code Section 507(a), including but not limited to: (a) a 503(b)(9) Claim; (b) the actual and necessary costs and expenses incurred after the Petition Date for preserving the Estate and/or operating the Debtor's businesses; (c) cure costs associated with the assumption or assumption and assignment of executory contracts and unexpired leases pursuant to Bankruptcy Code Section 365; and (d) all Statutory Fees.  As used herein, the | 100% |

---

[2]  Asserted Administrative Claims are based on filed, accrued and budgeted amounts.

| Class | Claim/Interest | Description, Treatment and Projected Recovery for Claim/Interest | Estimated Percentage Recovery |
|---|---|---|---|

| Class | Claim/Interest | Description, Treatment and Projected Recovery for Claim/Interest | Estimated Percentage Recovery |
|---|---|---|---|
|  |  | term "Administrative Claim" shall exclude Fee Claims. <br><br> The Plan provides that Administrative Claims are First Tier Claims. Subject to the terms set forth in the Plan, and unless the holder of an Allowed Administrative Claim agrees to receive other less favorable treatment, each holder of an Allowed Administrative Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) the Initial Distribution Date for First Tier Claims or (ii) as soon as reasonably practicable after the date such Claim becomes an Allowed Claim; provided, however, that Allowed Administrative Claims of the United States Trustee for Statutory Fees shall be paid on the Effective Date and thereafter, as such fees may thereafter accrue and be due and payable by the Liquidation Trustee pursuant to Section 6.05 of the Plan in accordance with the applicable schedule for payment of such fees. <br><br> Administrative Claims are not classified and are treated as required by the Bankruptcy Code. The holders of such Claims are not entitled to vote on the Plan. |  |
| N/A | **Fee Claims** | A Fee Claim is a Claim: (a) of a Professional retained by order of the Bankruptcy Court for compensation and/or reimbursement of expenses pursuant to Bankruptcy Code Sections 327, 328, 330, or 331 (other than ordinary course Professionals of the Debtor); and (b) of any Professional or other party in interest seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Bankruptcy Code Section 503(b). <br><br> The Plan provides that Fee Claims are First Tier Claims. Subject to the terms set forth in the Plan, and unless the holder of an Allowed Fee Claim agrees to receive other less favorable treatment, each holder of an Allowed Fee Claim shall be paid 100% of the unpaid amount of such Claim in Cash no later than five (5) Business Days after the date that such Claim is Allowed by order entered by the Bankruptcy Court. <br><br> Fee Claims are not classified and are treated as required by the Bankruptcy Code. The holders of such Claims are not entitled to vote on the Plan. | 100% |
| N/A | **Priority Tax Claims** | A Priority Tax Claim is a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code Section 507(a)(8). <br><br> The Plan provides that Priority Tax Claims are First Tier Claims. Subject to the terms set forth in the Plan, and unless the holder of an Allowed Priority Tax Claim agrees to receive other less | 100% |

| Class | Claim/Interest | Description, Treatment and Projected Recovery for Claim/Interest | Estimated Percentage Recovery |
|---|---|---|---|
| | | **SUMMARY OF TREATMENT AND EXPECTED RECOVERIES** [TO BE UPDATED] (All capitalized terms used but not otherwise defined below will have the meanings set forth in the Plan.) | |
| | | favorable treatment, each holder of an Allowed Priority Tax Claim shall be entitled to receive 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) the Initial Distribution Date for First Tier Claims or (ii) as soon as reasonably practicable after the date such Claim becomes an Allowed Claim. For the avoidance of doubt, Causes of Action Proceeds shall not be used to satisfy Allowed Priority Tax Claims. | |
| | | Priority Tax Claims are not classified and are treated as required by the Bankruptcy Code. The holders of such Claims are not entitled to vote on the Plan. | |
| 1 | **Remaining Secured Claims** | A Remaining Secured Claim is a Secured Claim arising prior to the Petition Date against the Debtor, other than any Secured Claim satisfied pursuant to the Successful Bidder Sale Order. | 100% |
| | | The Plan provides that Remaining Secured Claims are First Tier Claims. Except to the extent that the holder of an Allowed Remaining Secured Claim agrees to a different treatment of such Claim, on the later of the Effective Date and the date such Remaining Secured Claim becomes an Allowed Remaining Secured Claim, or as soon thereafter as reasonably practicable, each holder of an Allowed Remaining Secured Claim shall receive, in complete settlement, satisfaction and discharge of its Class 1 Claim, at the Liquidation Trustee's election, (i) payment in full in Cash of such holder's Allowed Remaining Secured Claim, (ii) the Debtor's interest in the collateral securing such holder's Allowed Remaining Secured Claim or (iii) such other treatment rendering such holder's Allowed Remaining Secured Claim, provided, however, that if the holder of an Allowed Remaining Secured Claim holds Cash with a right of setoff, such holder shall be entitled to effect the setoff and thereby satisfy the Claim in lieu of receiving payment. | |
| | | Remaining Secured Claims are Unimpaired. The holders of such Claims are deemed to accept the Plan and will not vote. | |
| 2 | **Priority Non-Tax Claims** | A Priority Non-Tax Claim is a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code Sections 507(a)(3), (4), (5), (6) or (7). | 100% |
| | | The Plan provides that Priority Non-Tax Claims are First Tier Claims. Subject to the terms set forth in the Plan and unless the holder of an Allowed Priority Non-Tax Claim agrees to receive other less favorable treatment, each holder of an Allowed Priority Non-Tax Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) Initial | |

| Class | Claim/Interest | Description, Treatment and Projected Recovery for Claim/Interest | Estimated Percentage Recovery |
|---|---|---|---|
| | | Distribution Date for First Tier Claims or (ii) as soon as is reasonably practicable after the date such Claim becomes an Allowed Claim.<br><br>Priority Non-Tax Claims are Unimpaired. The holders of such Claims are deemed to accept the Plan and will not vote. | |
| 3 | **Convenience Claims** | A Convenience Claim is an Unsecured Claim in an amount of [$1,000] or less, or which by agreement of the holder thereof has been reduced to [$1,000] or less.<br><br>The Plan provides that Convenience Claims are First Tier Claims. Each holder of an Allowed Convenience Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) Initial Distribution Date for First Tier Claims or (ii) as soon as is reasonably practicable after the date such Claim becomes an Allowed Claim.<br><br>Convenience Claims are Unimpaired. The holders of such Claims are deemed to accept the Plan and will not vote. | [TBD] |
| 4 | **General Unsecured Claims** | A General Unsecured Claim is a Claim greater than [$1,000] that is not an Administrative Claim, a Priority Tax Claim, a Fee Claim, a Remaining Secured Claim, a Priority Non-Tax Claim, a Convenience Claim or a Claim Subject to Subordination.<br><br>The Plan provides that General Unsecured Claims are Second Tier Claims. Subject to the terms set forth in the Plan, and unless the holder of an Allowed General Unsecured Claim agrees to receive other less favorable treatment, each holder of an Allowed General Unsecured Claim, in full satisfaction, settlement and release of and in exchange for all such Allowed Claims, shall be entitled to receive, commencing on the Initial Distribution Date for Second Tier Claims, one or more Distributions of Available Cash in an amount equal to its Pro Rata share of the Unsecured Allocation.<br><br>General Unsecured Claims are Impaired. The holders of such Claims are entitled to vote to accept or reject the Plan. | [TBD] |
| 5 | **Claims Subject to Subordination** | A Claim Subject to Subordination is (a) for the purposes of classification and voting only, (i) any Claim asserted against the Debtor that is Allowed as a Claim subordinated in priority of payment to any General Unsecured Claim pursuant to Bankruptcy Code Section 510(b), Bankruptcy Code Section 510(c) or other applicable law; (ii) any Claim for any fine, penalty or forfeiture, or multiple, exemplary, statutory or punitive damages, to the extent that such fine, penalty, forfeiture or | [TBD] |

damage is not compensation for actual pecuniary loss suffered by the holder of such Claim, including, without limitation, any such Claim based upon, arising from or relating to any cause of action whatsoever (including, without limitation, violation of law, intellectual property infringement, fraud, personal injury or wrongful death, whether secured or unsecured, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise), and any such Claim asserted by a Governmental Unit in connection with a tax or other obligation owing to such unit; or (iii) any Claim asserted by a party against whom the Debtor has commenced a proceeding seeking to subordinate such Claim for any reason set forth in subsections (i) and (ii), including, without limitation, the Broadcaster Claims; (b) for the purposes of Distribution, any claim under subsection (a) hereof for which an order has been entered by the Bankruptcy Court subordinating such claim.

The Plan provides that Claims Subject to Subordination are Third Tier Claims.  If, and only if, there is Available Cash remaining in the LT Distribution Account after payment in full of, or adequate reserve for, Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims and all Allowed Claims or Disputed Claims in Classes 1 through 4, then each holder of an Allowed Claim Subject to Subordination, in full satisfaction, settlement and release of and in exchange for all such Allowed Claims, shall be entitled to receive, commencing on the Initial Distribution Date for Third Tier  Claims, one or more Distributions of Available Cash in an amount equal to its Pro Rata share of such Available Cash remaining in the LT Distribution Account.

Additionally, after payment or adequate reserve for all First Tier Claims, Second Tier Claims and Third Tier Claims, on the Initial Distribution Date for Fourth Tier Claims, each eligible holder of an Allowed Claim Subject to Subordination shall be entitled to receive Available Cash from the Unsecured Interest Allocation on account of postpetition interest accrued through the Effective Date at one of the following interest rates:  (a) as to a Claim that is not based upon an agreement that provides for interest, at the Designated Rate or (b) as to a Claim that is based upon an agreement that provides for interest either (i) at the non-default interest rate provided for in such agreement or (ii) if no such rate is provided, then at the Designated Rate.  If, however, there is no Available Cash remaining in the LT Distribution Account after payment in full of, or adequate reserve for, the Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims and all Allowed Claims or Disputed Claims in

| Class | Claim/Interest | Description, Treatment and Projected Recovery for Claim/Interest | Estimated Percentage Recovery |
|---|---|---|---|
| | | Classes 1 through 4, then no holder of a Claim Subject to Subordination shall receive or retain any property under the Plan or the Liquidation Trust Agreement on account of such holder's Claim. To the extent that a Claim in Class 5 is determined by Final Order not to be subordinated, such Claim in Class 5 shall be entitled to the same Pro Rata treatment and Distributions afforded to General Unsecured Claims in Class 4.<br><br>Claims Subject to Subordination are Impaired. The holders of such Claims are entitled to vote to accept or reject the Plan. | |
| 6 | **Aereo Interests** | An Aereo Interest is any equity security, within the meaning of Bankruptcy Code Section 101(16), issued by Aereo and outstanding prior to the Effective Date including, without limitation, any preferred stock, common stock, stock options or other right to purchase the stock of Aereo, together with any warrants, conversion rights, rights of first refusal, subscriptions, commitments, agreements or other rights to acquire or receive any stock or other equity ownership interests in Aereo prior to the Effective Date.<br><br>The Plan provides that Aereo Interests are Fifth Tier Claims. All Aereo Interests shall be cancelled as of the Effective Date. If, and only if, there is Available Cash remaining in the LT Distribution Account after payment in full of, or adequate reserve for, Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims and all Allowed Claims or Disputed Claims in Classes 1 through 5, then, in full satisfaction, settlement and release of and in exchange for all such Allowed Interests, each holder of an Allowed Aereo Interest shall be entitled to receive, on the Initial Distribution Date for Fifth Tier Interests, one or more Distributions of Available Cash in an amount equal to its allocated share of such Available Cash remaining in the LT Distribution Account as such allocated share shall be determined by the Bankruptcy Court in accordance with the Debtor's corporate organizational documents and New York law applicable thereto, upon motion of the Liquidation Trustee and after notice to all holders of Class 6 Interests. If, however, there is no Available Cash remaining in the LT Distribution Account after payment in full of, or adequate reserve for, Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims and all Allowed Claims or Disputed Claims in Classes 1 through 5, then no holder of an Aereo Interest shall receive or retain any property under the Plan or the Liquidation Trust Agreement on account of such holder's Interest.<br><br>Aereo Interests are Impaired. The holders of such Interests are deemed to have rejected the Plan and will not vote. | 0% |

## E. VOTING INSTRUCTIONS

The Bankruptcy Code entitles only holders of impaired claims or equity interests who receive some distribution under a proposed plan to vote to accept or reject that plan. Holders of claims or equity interests that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on it. Holders of claims or equity interests that will receive no distributions under a proposed plan are conclusively presumed to reject that plan and, therefore, are also not entitled to vote on it. Under the Plan:

- The holders of Claims in Class 1, Class 2, and Class 3 are unimpaired under the Plan. Thus, pursuant to Bankruptcy Code Section 1126(f), the claimants in Class 1, Class 2, and Class 3 are deemed to have accepted the Plan and are not entitled to vote.

- The holders of Claims in Class 4 and Class 5 (each a "Voting Class" and collectively the "Voting Classes") will or may receive property under the Plan and may vote to accept or reject the Plan. The Debtor has enclosed Ballots with this Disclosure Statement to solicit the votes of the holders of Class 4 Claims and Class 5 Claims.

- The holders of Aereo Interests in Class 6 may not receive any Distribution under the Plan. Thus, pursuant to Bankruptcy Code Section 1126(g), holders of Interests in Class 6 are deemed to have rejected the Plan and such holders are not entitled to vote on the Plan.

A Ballot for acceptance or rejection of the Plan is being provided only to holders of the Class 4 Claims and the Class 5 Claims. Before voting, such holders should read this Disclosure Statement and its Exhibits, including the Plan and the Plan documents, in their entirety. **YOUR VOTE ON THE PLAN IS IMPORTANT**.

You should use the Ballot sent to you with this Disclosure Statement to cast your vote for or against the Plan. **You may not cast Ballots or votes orally, by email or by facsimile. In order for your Ballot to be considered by the Bankruptcy Court, it must be received at the address set forth on the Ballot by 5:00 p.m. (Prevailing Eastern Time) on May 8, 2015 (the "Voting Deadline").** If you are a claimant in Class 4 or Class 5 and you did not receive a Ballot with this Disclosure Statement, received a damaged Ballot or lost your Ballot, please contact Prime Clerk by telephone at 1.212.257.5459, by email at aereoinfo@primeclerk.com, or by First Class Mail at:

Prime Clerk LLC
830 Third Avenue, 9th Floor
New York, New York 10022

Only holders of Allowed Claims in Impaired Classes of Claims which are not deemed to reject the Plan are entitled to vote on the Plan. Any Ballot that is executed by such holder of an

Allowed Claim, but which does not indicate acceptance or rejection of the Plan, will be considered a vote to accept the Plan. Any Ballot not executed by the holder of an Allowed Claim will not be counted as a vote to accept or reject the Plan, although it may impact the approval of the Plan as immediately set forth below.

**An Impaired Class of Claims is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in the Class that actually vote are cast in favor of the Plan.** Whether or not a Creditor, Claimant or Interest holder votes on the Plan, such Person will be bound by the terms and treatment set forth in the Plan if the Plan is confirmed by the Bankruptcy Court. To be confirmed by the Bankruptcy Court, the Plan must be accepted by the requisite majorities of the holders of Claims in at least one of Class 4 or Class 5, and must satisfy Bankruptcy Code Section 1129(b) as to any Class that does not accept the Plan. In addition, the Bankruptcy Court must determine that each member of Class 4 and Class 5 will receive property of a value, as of the Effective Date, that is not less than the amount such Class member would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. Pursuant to the provisions of Bankruptcy Code Section 1126(e), the Bankruptcy Court may disallow any vote accepting or rejecting the Plan if such vote is not cast in good faith.

If a Ballot is received by the Voting Agent after the Voting Deadline, it will not be counted, unless the Debtor has granted, in its sole discretion, an extension of the Voting Deadline in writing with respect to such Ballot. Additionally, the following Ballots will **NOT** be counted:

- any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

- any Ballot cast by or on behalf of a Person or Entity that does not hold a Claim in one of the Voting Classes;

- any Ballot cast by or on behalf of a Disputed Claimant who has not timely filed a motion under Bankruptcy Rule 3018(a), or who has timely filed such a motion that was not granted by the Bankruptcy Court;

- any Ballot that is properly completed, executed and timely submitted, but (a) does not indicate an acceptance or rejection of the Plan, (b) indicates both an acceptance and rejection of the Plan, or (c) partially accepts and partially rejects the Plan; and/or

- any unsigned Ballot or Ballot that has a non-original signature.

The Debtor or other parties in interest may dispute proofs of claim that have been filed. Persons whose Claims are Disputed may vote on or otherwise participate in Distributions under the Plan only to the extent that the Bankruptcy Court allows their Claims. The Bankruptcy Court may temporarily allow a Claim for voting purposes only. Allowance of a Claim for voting purposes or disallowance of a Claim for voting purposes does not necessarily mean that all or a portion of that Claim will be Allowed or disallowed for Distribution purposes. Claims listed in the Schedules as Disputed are barred unless the holder filed a timely proof of claim. The

Debtor's Schedules listing Claims and whether such Claims are Disputed can be inspected online at https://cases.primeclerk.com/aereo/.

## F.   CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT

Once it is determined whether Class 4 and/or Class 5 has or has not accepted the Plan (not including any acceptances by "insiders" as defined in Bankruptcy Code Section 101(31)), the Bankruptcy Court will determine whether the Plan may be confirmed. However, as to the two (2) Voting Classes, the Bankruptcy Court may confirm the Plan even if one such Class does not accept the Plan if the Bankruptcy Court finds that all rejecting Classes are treated in accordance with Bankruptcy Code Section 1129(b) and that certain additional conditions are met. The Debtor will therefore request that the Bankruptcy Court confirm the Plan under Bankruptcy Code Section 1129(b) with respect to any non-accepting Class of Claims or Interests.

Bankruptcy Code Section 1129(b) is generally referred to as the "cramdown" provision. Pursuant to the cramdown provision, the Bankruptcy Court may confirm the Plan over the objection of a non-accepting Class (or deemed rejecting) Class of Unsecured Claims if the non-accepting claimants will receive the full value of their Claims, or, if the non-accepting claimants receive less than full value, if no Class of junior priority will receive anything on account of their pre-petition Claims or Interests. As to a non-accepting (or deemed rejecting) Class of Interests, the Bankruptcy Court may confirm the Plan if the holder of any Interest that is junior to the Interests of such Class will not receive or retain under the Plan any property on account of such junior Interest.

**THESE ARE COMPLEX STATUTORY PROVISIONS, AND THE PRECEDING PARAGRAPHS ARE NOT INTENDED TO BE A COMPLETE SUMMARY OF THE LAW.  IF YOU DO NOT UNDERSTAND THESE PROVISIONS, PLEASE CONSULT WITH AN ATTORNEY QUALIFIED TO PROVIDE ADVICE ON SUCH PROVISIONS.  BECAUSE CLASS 6 IS DEEMED TO HAVE REJECTED THE PLAN, THE DEBTOR INTENDS TO RELY UPON THE "CRAMDOWN" PROVISION OF BANKRUPTCY CODE SECTION 1129(b).**

The Plan provides for the liquidation of substantially all of the property of the Debtor's Estate, which consists primarily of Cash, intellectual property Assets, and Estate Causes of Action. Pursuant to Bankruptcy Code Section 1141(d)(3), confirmation of the Plan will not discharge the Debtor from any of its debts which arose prior to the Petition Date. However, Confirmation will make the Plan binding upon the Debtor, its Creditors, holders of Claims and Interests, the Liquidation Trust and other parties in interest regardless of whether they have accepted the Plan.

## II.   BACKGROUND OF THE DEBTOR

## A.   THE DEBTOR

The Debtor is a privately held corporation organized under the laws of the State of New York with headquarters in Boston, Massachusetts. The Debtor's Chief Executive Officer is Chaitanya "Chet" Kanojia. The Debtor was formed in 2010 as Bamboom-Entertainment Inc.

and subsequently changed its name to Aereo, Inc. in 2011. The Debtor has one wholly-owned subsidiary, Aereo Securities Corp. ("ASC"), which is not a co-debtor in this case.

The Debtor is a technology company that provided subscribers with the ability to watch live or "time-shifted" local over-the-air broadcast television on internet-connected devices, such as personal computers, tablet devices, and "smartphones." The Debtor provided to each subscriber access, via the internet, to individual remote or micro-antennas and a cloud-based DVR, which were maintained by the Debtor in facilities within the local market. The system was inactive unless a customer logged into the Debtor's website and selected a television program to record and watch live or later.

The Debtor's system was designed to replicate the traditional in- or on-home antenna and digital video recorder ("DVR") but to allow consumers the advantage of no installation, ease of use, and mobility. In contrast to traditional over-the-air antennas and DVR boxes, which are located in subscribers' homes, the Debtor's individual antennas and hard disks were located in the Debtor's facilities and individually made available to subscribers, who could then, using an internet browser, access local broadcast programming with an individual antenna and record it to disk. The Debtor's subscribers could then watch their recordings live or save them for later viewing. Essentially, the Debtor's technology provided a modern, easy-to-use option for consumers to watch over-the-air television without having to install cumbersome home equipment or subscribe to cable packages and bundles. The Debtor's technology also includes a user interface, social networking features and other features designed to create a compelling consumer experience.

## B.    CORPORATE GOVERNANCE AND MANAGEMENT

### 1.    Board of Directors

As of the Petition Date, the Board of Directors (the "Board") of the Debtor consisted of the following three members:

- Chaitanya "Chet" Kanojia, President and Chief Executive Officer of Aereo;

- Barry Diller, IAC/InterActive Corp.; and

- Amish Jani, Firstmark Capital LLP.

### 2.    Executive Management

As of the Petition Date, the Debtor's senior management team included:

- Chaitanya "Chet" Kanojia (President and Chief Executive Officer): Chet Kanojia is the president and chief executive officer of Aereo, Inc., as well as a member of Aereo's Board. As chief executive officer, Mr. Kanojia focuses on the company's strategic plans and priorities with the goal of maximizing Aereo's opportunities and long-term value of its stakeholders. Mr. Kanojia founded Aereo in 2010. Prior to founding Aereo, from 2000 until 2008, Mr. Kanojia served as founder and CEO of Navic Networks, and from 2008 until 2010 was the CEO of Navic

Networks at Microsoft. Mr. Kanojia holds a Master's degree in Computer Systems Engineering from Northeastern University, and a Bachelor's degree from the National Institute of Technology in Bhopal, India.

- Ramon A. Rivera (Secretary, Treasurer, and Chief Financial Officer): Ramon Rivera is the secretary, treasurer, and chief financial officer of Aereo, Inc. Mr. Rivera oversees the preparation of all financial reporting materials, and is responsible for all financial planning and analysis. Mr. Rivera has been at Aereo since 2011. Prior to his role at Aereo, Mr. Rivera served as Director of International Finance at LoJack Corporation. Mr. Rivera holds an LLM from the Boston University School of Law, as well as a JD and a Bachelor's of Business Administration from the Universidad de Puerto Rico.

- Alex Moulle-Berteaux (Chief Commercial Officer): Alex Moulle-Berteaux is the chief commercial officer for Aereo, Inc. Mr. Moulle-Berteaux manages the company's business marketing and consumer-facing function, including the company BI databases, and provides analysis of product performance and market potential in various applications and settings. Prior to joining Aereo in 2012, Mr. Moulle-Berteaux was the Global Head of Marketing and Public Relations at Rockstar Games. Mr. Moulle-Berteaux holds a Bachelor's degree from Boston College.

## C.    PRE-PETITION EQUITY FINANCING

In early 2012, the Debtor made its technology available to consumers in New York City. Over the next two years, the Debtor rolled out its services in thirteen other markets across the United States including, among others, Boston, Miami, Houston, and Atlanta. As the Debtor built its business, it raised approximately $95.6 million in venture equity. That funding came in two Seed Rounds and three Series Financings. The first Seed Round, on December 31, 2010, raised approximately $2 million. The second Seed Round, on June 30, 2011, raised approximately $2.5 million. The Series A equity tranche, on July 8, 2011, raised approximately $20.3 million. The Series B equity tranche, on November 14, 2012, raised approximately $37.2 million. Finally, the Series C equity tranche, on October 25, 2013, raised approximately $33.5 million.

The Debtor has no funded debt.

The Debtor was able to generate over $3 million in gross revenue from its customers before ceasing its operations in accordance with the preliminary injunction issued by the United States District Court for the Southern District of New York (the "District Court"), as further detailed below.

## D.    SUMMARY OF CERTAIN LIABILITIES

As of the Petition Date, the Debtor's total undisputed liabilities (primarily trade debt) were approximately $4.2 million. The Debtor has no secured debt. The Debtor's unsecured debts consist primarily of operational costs owed to vendors, suppliers, landlords, utilities,

employees and service providers. As discussed below, the Debtor also faces asserted liability in a contingent and unliquidated amount due to litigation being pursued by various television Broadcasters (as defined below) seeking damages for copyright infringement.

## E.   EVENTS LEADING TO CHAPTER 11

Beginning in March 2012, shortly after the Debtor began operating in New York, several major television broadcasting networks, including ABC, CBS, NBC and other broadcasters (collectively, the "Broadcasters"), commenced actions in the District Court seeking to enjoin the Debtor from allowing consumers to stream over-the-air broadcast content to themselves while the show was still airing solely on the asserted grounds that such transmissions were public performances under the Copyright Act. After an evidentiary hearing, the District Court denied the preliminary injunction, finding that the Debtor's technology, which enabled consumer transmission via individual antennas and DVR recordings did not constitute a public performance under the Copyright Act. See Am. Broad. Co., Inc. v. Aereo, Inc., 874 F. Supp. 2d 373 (S.D.N.Y. 2012). The Second Circuit affirmed the District Court's holding. See WNET v. Aereo, Inc., 712 F.3d 676 (2d Cir. 2013), reh'g en banc denied, 722 F.3d 500 (2d Cir. 2013).

On June 25, 2014, the United States Supreme Court reversed the Second Circuit and held that the Debtor, with respect to live or contemporaneous transmissions, was essentially performing as a traditional cable system under the Copyright Act. The Court held that the contemporaneous performances made using the Debtor's system were, therefore public performances under the Copyright Act. See Am. Broad. Co., Inc. v. Aereo, Inc., 573 U.S. __, 134 S. Ct. 2498 (2014).

The Supreme Court remanded the case to the District Court, which entered a preliminary injunction on October 23, 2014 preventing the use of the Debtor's system for playback while the underlying program was still airing. See Am. Broad. Co., Inc. v. Aereo, Inc., No. 12-cv-1540, slip op. at 15 (S.D.N.Y. Oct. 23, 2014). The Debtor has complied with the injunction and has stopped permitting any transmission while the underlying program is airing. In fact, as a result of the Supreme Court decision, the Debtor decided, in its business judgment, to suspend offering its technology to consumers on or about July 2014.

Without customers or a significant current source of revenue, the Debtor took significant steps to materially reduce its operational overhead. On November 12, 2014, the Debtor laid off 74 employees, a majority of its workforce, and closed down its operations centers in Boston. The only remaining employees are 14 individuals whose institutional knowledge and experience is necessary to achieving the Debtor's goal of conducting a successful sale of substantially all of its assets for the benefit of its creditors and shareholders.

After ceasing its services to customers, the Debtor's primary business operations have been devoted towards defending against lawsuits by the Broadcasters seeking further and permanent injunctive relief, damages, and penalties for alleged copyright infringement. Faced with mounting litigation costs and operational concerns, on November 14, 2014, the Debtor's board of directors determined that it would be in the best interests of the Debtor and its creditors and shareholders to commence this Chapter 11 Case in order to obtain necessary breathing room while it seeks to effectuate a sale of all or substantially all of its assets.

### III.    THE CHAPTER 11 CASE

### A.    COMMENCEMENT OF THE CHAPTER 11 CASE

On November 20, 2014 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor in the Chapter 11 Case is continuing in possession of its respective properties and businesses, as a debtor-in-possession, pursuant to Bankruptcy Code Sections 1107 and 1108.

The Chapter 11 Case is pending in the Bankruptcy Court before the Honorable Sean H. Lane located at the United States Bankruptcy Court, One Bowling Green, New York, NY 10004-1408.

### B.    RETAINED PROFESSIONALS

The Bankruptcy Court authorized the Debtor to retain certain Professionals to represent it and assist it in connection with the Chapter 11 Case.  Specifically, the Debtor has retained, and the Bankruptcy Court has approved the retention of, the following professionals: (a) Brown Rudnick LLP as counsel, (b) Lawton W.  Bloom of Argus Management Corporation as CRO, and Peter Sullivan and Scott Dicus as Assistant Restructuring Officers; and (c) Prime Clerk, as Claims and Noticing Agent (collectively, the "Debtor's Professionals").  In addition, the Bankruptcy Court authorized the Debtor to retain, employ, compensate and reimburse the expenses of certain Professionals who have rendered services to the Debtor unrelated to the Chapter 11 Case to assist with the operation of the Debtor's businesses in the ordinary course.

### C.    FIRST DAY ORDERS

On the Petition Date, the Debtor filed a number of motions seeking approval of certain so-called "first day orders."  The first day orders facilitated the transition between the Debtor's pre-Petition and post-Petition business operations by authorizing the Debtor to continue with certain regular business practices that may not be specifically authorized under the Bankruptcy Code, or for which the Bankruptcy Code requires prior court approval.  The first day orders in this Chapter 11 Case authorized, among other things, the following: (i) the waiver of the requirement to file a list of Creditors on the Petition Date and the adoption of certain procedures and the form of notice for notifying Creditors of the commencement of the Chapter 11 Case and the meeting of the Creditors under Section 341 of the Bankruptcy Code; (ii) the payment and honoring of pre-Petition wages, salaries, and benefits; (iii) the direction by the Bankruptcy Court to all financial institutions at which the Debtor maintained payroll and benefit accounts to honor pre-Petition checks for payment of all such pre-Petition obligations; (iv) payment of pre-Petition property, sales and excise taxes; and (v) the continued use of the Debtor's existing cash management system, bank accounts and business forms for a period of 30 days from the final order on such motion.

### D.    APPOINTMENT OF CREDITORS' COMMITTEE

On January 16, 2015, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee").  The Creditors' Committee consists of the following members: (i)

Level 3 Communications, LLC; (ii) Quality Investment Properties Metro, LLC; and (iii) C7 Data Centers, Inc. The Creditors' Committee has requested approval from the Bankruptcy Court to retain Stinson Leonard Street LLP ("SLS") as its counsel, and FTI Consulting, Inc. as its financial advisors (collectively, the "Creditors' Committee Professionals").

Since the formation of the Creditors' Committee, the Debtor has consulted with the Creditors' Committee and its Professionals concerning the administration of the Chapter 11 Case. The Debtor has kept the Creditors' Committee informed about its operations and various activities in this Chapter 11 Case.

### E.    SALE OF ASSETS

#### 1.    Sale Efforts and Retention of Chief Restructuring Officer

Directly following the Supreme Court's June 2014 decision the Debtor ceased providing its services to customers and devoted its business operations primarily towards defending against lawsuits seeking injunctive relief and damages (the "Copyright Litigation") commenced pre-Petition by the moving Broadcasters in the District Court. Without customers or a significant source of revenue, the Debtor undertook concerted efforts in the several months following the Supreme Court's decision to find a strategic investment partner or effectuate a sale of its business. These efforts were unsuccessful, in significant part due to the over-hang of the Copyright Litigation.

Faced with substantial administrative and legal costs, and with no significant source of revenue, in November 2014, the Board determined that it would be in the best interests of the Debtor to pursue a sale under Section 363 of the Bankruptcy Code of all or substantially all of its assets free and clear of all claims or other interests, including the Broadcasters' Claims, to one or more high bidders. On November 12, 2014, the Debtor engaged Lawton Bloom of Argus Management Corporation as its CRO to provide professional services to the Debtor during this Chapter 11 Case. After exploring the strategic alternatives available to it and based on an assessment of its remaining assets, the Debtor determined, in consultation with Brown Rudnick and the CRO, that the best course of action to maximize the value of its Estate for the benefit of its creditors is to seek a prompt conclusion to the Chapter 11 Case through an immediate sale of the Debtor's assets and prompt wind down of its affairs.

Upon being retained, the CRO, as directed by the Board, began an extensive marketing and sale process, canvassing the marketplace to locate entities interested in acquiring all or substantially all of the Debtor's assets. The CRO contacted over 100 potential buyers primarily in the media, telecommunications, and technology industries, and made available materials concerning the Debtor's technology and assets to them. Twenty-nine (29) of those parties executed mutual non-disclosure agreements and were granted access to a data room populated with information to continue conducting due diligence regarding the Debtor's assets. The post-petition marketing process did not result in the designation of a Stalking Horse Bidder.

2. **Bidding Procedures Order**

On November 21, 2014, the Debtor filed a motion (the "Bidding Procedures Motion")[3] to establish bidding procedures in connection with the Sale of substantially all of the Debtor's assets. The Broadcasters submitted various objections and other motions attempting to block the Court from granting the relief sought in the Bidding Procedures Motion, including, without limitation, objections based on the Broadcasters' views that (a) the Debtor's assets were inherently infringing and so could not be sold without approval from the District Court, (b) prior to any sale, the District Court would be required to rule on whether a permanent injunction should be issued against the Debtor with respect to its pre-Petition use of its assets to provide services to its customers, and (iii) the possibility that taking actions to prepare the Debtor's assets for sale could potentially result in destruction or loss of data that the Broadcasters claimed may be relevant evidence to the Copyright Litigation.

On December 24, 2015, the Bankruptcy Court entered an order approving, among other things, the Bidding Procedures Motion (such order, the "Original Bidding Procedures Order")[4]. At the December 19, 2015 hearing at which the Bankruptcy Court considered the Bidding Procedures Motion and the Broadcasters' objections thereto, the Bankruptcy Court found that there are numerous possible uses of the Debtor's assets that do not violate copyright law. See Tr. of Hr'g dated Dec. 19, 2014 (the "December 19 Transcript") at 121:10-122:7.

In response to the Broadcasters' objections based on possible loss or destruction of evidence, the Original Bidding Procedures Order provided that the Debtor was required to "maintain the status quo" with respect to its equipment, and not move, destroy or take other steps that could potentially result in any loss of data, until such time as (a) the Broadcasters confirmed that the Debtor had delivered its entire Production Database (as defined in the Original Bidding Procedures Order), or (b) upon further order of the Court. The Original Bidding Procedures Order also provided a timeline for the Debtor to provide its Production Database to the Broadcasters, and for the Broadcasters and the Debtor to file status reports of such efforts. To the extent any disagreement remained as whether the entire Production Database had been produced, the Original Bidding Procedures Order provided that the Bankruptcy Court would resolve such disagreements at a hearing on January 7, 2015, which hearing was subsequently rescheduled to January 13, 2015. At the January 13, 2015 hearing, the Court reserved ruling on remaining purported issues relating to the Debtor's providing its Production Database to the Broadcasters until January 27, 2015, to give the parties further time to mutually resolve any issues.

On January 23, 2015, after the Debtor made numerous deliveries of its Production Database to the Broadcasters in numerous formats, and following extensive and costly efforts to provide further data requested by the Broadcasters, the Broadcasters filed a Status Report stating that, although they did not agree that the Debtor had produced its entire Production Database,

---

[3]    See *Debtor's Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Proposed Sale(s) of Certain or Substantially All of the Debtor's Assets and Other Potential Transactions; (II) Establishing Certain Related Deadlines; and (III) Granting Related Relief* [Docket No. 15].

[4]    See *Order (I) Approving Bidding Procedures; (II) Establishing Certain Related Guidelines; and (III) Granting Related Relief* [Docket No. 110].

they would withdraw and agree not to object to the sale of the Debtor's Assets on grounds relating to potential destruction or loss of evidence. The Debtor, on the other hand, believes that it has produced the entirety of its Production Databases.

After extensive discussions, the Debtor and the Broadcasters agreed to a form of Superseding Bidding Procedures Order permitting the Debtor to proceed with a sale of all of its assets, including taking any steps to wipe, erase or destroy data contained therein, which the Court entered on January 28, 2015. See *Superseding Order (i) Approving Bidding Procedures; (ii) Establishing Certain Related Deadlines; and (iii) Granting Related Relief* [Docket No. 176] (the "Superseding Bidding Procedures Order" and, together with the Original Bidding Procedures Order, the "Bidding Procedures Order"). By entry of the Superseding Bidding Procedures Order, the Bankruptcy Court resolved or otherwise overruled the Broadcasters' objections to the Sale of the Debtor's Assets based on potential destruction or loss of evidence. The Superseding Bidding Procedures Order expressly provides that the Debtor is authorized to take all steps necessary to prepare its Assets for sale and to conduct an auction for all or substantially all of its Assets pursuant to Section 363 of the Bankruptcy Code.

3. **The Auction and Sale**

The Debtor received eleven (11) Qualified Bids on the Bid Deadline. The Bids generally fell into two categories: Bids for certain of the Debtor's tangible equipment (the "Equipment") and Bids for certain of the Debtor's intangible assets (the "Enterprise Assets"). The Debtor, in consultation with the Official Creditors' Committee, reviewed and evaluated these Qualified Bids, as well as the bidders' ability to move expeditiously to consummate the proposed sale transactions (the "Transactions"). None of the bidders for Equipment expressed interest in bidding on, or in fact bid on, any of the Enterprise Assets, and none of the bidders for Enterprise Assets expressed interest in bidding on, or in fact bid on, any of the Equipment.

Given the lack of overlap in interest for the Equipment and the Enterprise Assets, and based on its assessment of the various Qualified Bidders, the Debtor determined that it would be more efficient to conduct the Auction in two separate tracks: (i) conducting a live Auction for the Enterprise Assets; and (ii) conducting a telephonic Auction for the Equipment. The Debtor determined, in its business judgment and based on its view of the value of the two types of assets, that such process would provide flexibility and efficiency in the bidding process and permit the Debtor to focus on each Auction separately to ensure the best and highest price was obtained in connection with each Auction.

(a) Enterprise Assets Auction

Pursuant to the Bidding Procedures Order, the Debtor conducted the live Auction for the sale of its Enterprise Assets at the New York offices of Brown Rudnick LLP on February 24, 2015, at which four (4) Bidders participated in person. Prior to the commencement of the Auction, and in consultation with the Creditors' Committee and the moving Broadcasters (together, the "Consultation Parties"), the Debtor identified the Bid of TiVo, Inc. ("TiVo") in the amount of $1,000,000 for the Debtor's trademarks, domain names and customer lists as the best and highest Bid received.

At the commencement of the live Auction, the Debtor announced TiVo as the Designated High Bidder, and also announced certain Auction rules designed to spur bidding and to move the Auction process along quickly. Bidding at the Auction lasted for approximately three (3) rounds, during which the Debtor received additional Bids for other of its Enterprise Assets (including its patents). The Debtor did not receive any subsequent Overbids for the Enterprise Assets covered by the TiVo Bid. The Debtor engaged in extensive parallel, but individual, arm's-length, good faith negotiations with the Bidders and their counsel and advisors regarding the terms and conditions of each offer.

The Debtor, with the assistance of the CRO and its counsel, and in consultation with the Consultation Parties, conducted a side-by-side analysis of the proposals received. Following the third round of Bidding, the Debtor, in consultation with the Consultation Parties, provisionally announced the following Bids as the best and highest with respect to certain of the Debtor's Enterprise Assets:

- TiVo Inc. - $1,000,000 in consideration for the Debtor's trademarks, domain names, and customer lists; and

- RPX Corp. ("RPX") - $225,000 in consideration for the Debtor's patents.

After announcing these Bids as the best and highest, the Debtor, in consultation with the Consultation Parties, provisionally adjourned the Auction until February 25, 2015, so that it could continue to consider with the Consultation Parties the Equipment Bids.

(b) Equipment Auction

The Debtor received six (6) Qualified Bids covering various pieces of the Debtor's Equipment, with some overlap between such Bids as to the Equipment sought. On February 23, 2015, prior to the scheduled live Auction date, the Debtor informed the Equipment Bidders of the current high Bids received for each line item of equipment on a per-piece basis. The Debtor also notified the Equipment Bidders that it would be conducting a telephonic Auction for the Equipment and also provided a term sheet (the "Equipment Term Sheet") setting forth terms that the Debtor expected to be part of any purchase agreement for the Equipment, which were in addition to the terms set forth in the Bidding Procedures and Bidding Procedures Order.

On February 24, 2015 at 12:00 noon, the Debtor conducted a teleconference with all six (6) of the Equipment Bidders to provide introductory remarks and to answer questions. As provided in the Equipment Term Sheet, the Debtor invited the Equipment Bidders to submit

revised Bids by 3:00 p.m. on February 24, 2015. The Debtor reviewed the revised Equipment Bids and, because all such revised Bids were within 5% of the highest and best revised Bid, invited the Equipment Bidders to submit their best and final offers by February 25, 2015 at 2:00 p.m.

On February 25, 2015, the Debtor reviewed all best and final Bids received from the Equipment Bidders, in consultation with the Consultation Parties, selected the Bid submitted by Alliance Technology Solutions, Inc. ("Alliance") as the Successful Bid for the Equipment. The Bid submitted by Alliance provides that Alliance will pay to the Debtor approximately $320,000 in cash for certain of the Debtor's equipment. In addition, under Alliance's Bid, Alliance agreed to take the equipment for which it bid "as is, where is" and ensure its removal within 10 days from the approval of the Equipment Sale Order. Further, Alliance committed, at its sole cost, to remove certain additional equipment from the Debtor's premises – which has limited, if any, value and for which no party submitted a Bid – from the Debtor's premises, at the Debtor's direction and discretion, and to ensure the secure destruction of such equipment.

(c) Conclusion of the Auction

At 4:00 p.m. on February 25, 2015, the Debtor reconvened the Auction to confirm the best and highest Bids for the Enterprise Assets, to announce the best and highest Equipment Bids, and to close the Auction. The Debtor announced the Successful Bidders as TiVo, RPX and Alliance (collectively, the "Purchasers"). The Bids of the Purchasers, together with an earlier sale confirmed by the Order Approving Debtor's Expedited Motion for an Order Authorizing the Sale of Certain De Minimis Assets [Docket No. 224] provide for (a) payment of approximately $1.87 million in cash[5] (the "Sale Proceeds"), and (b) the assumption of certain assumed liabilities.

On February 26, 2015, the Debtor filed a motion (the "Sale Motion") seeking an order from the Bankruptcy Court approving and authorizing the Debtor to (i) enter into Purchase Agreements between each Purchaser and Debtor dated February 26, 2015 (collectively, the "APAs"), (ii) perform all obligations under the APAs, including selling the Included Assets to the Purchasers free and clear of all liens, claims, encumbrances and interests (including, without limitation, any injunctive relief obtained or sought by the Broadcasters with respect to the Debtor or any of its Assets), and (iii) granting any other relief as may be appropriate.

In accordance with the dates and deadlines established by the Original Bidding Procedures Order and the Superseding Bidding Procedures Order, objections to the Sale and Sale Motion are due (the "Sale Objection Deadline") on or before March 9, 2015 at 3:00 p.m. The

---

[5] Alliance Technology Solutions, Inc. ("Alliance") purchased certain de minimis assets of the Company pursuant to the Order Approving Debtor's Expedited Motion For An Order Authorizing the Sale of Certain De Minimis Assets [Docket No.224] and certain equipment of the Company as more fully set forth in the Motion Of The Debtor For Entry of Orders Approving And Authorizing (A) The Sale Of Certain Assets Of The Debtor Free And Clear Of All Claims, Liens, Liability, Rights, Interests, and Encumbrances; (B) The Debtor To Enter Into And Perform Its Obligations Under The Asset Purchase Agreements; And (C) Granting Related Relief [Docket No. __]. These sales to Alliance included line item quotes for specific assets. The final amounts paid by Alliance to the Debtor will depend on the exact volume of items that the Debtor is capable of producing to Alliance.

Court will hold a hearing to approve the Sale on March 11, 2015 at 10:00 a.m. (the "Sale Hearing")

## F.   THE CLAIMS PROCESS

The Bankruptcy Code provides a procedure for each entity with a claim against a debtor to assert such claim, so that such claimant can receive Distributions from the debtor's bankruptcy estate. The bankruptcy court establishes a "bar date" -- a date by which creditors must file their claims, or else such claims will not participate in the bankruptcy case or any distribution. After the filing of all claims, the debtor evaluates such claims and can, along with other parties in interest, raise objections to them. These claims objections allow the debtor to minimize claims against it, and thereby maximize the recovery to creditors with Allowed Claims.

By Order [Docket No. 109] dated December 24, 2015 ("Bar Date Order"), the Bankruptcy Court established 5:00 p.m. (Prevailing Eastern Time) on February 18, 2015 (the "General Bar Date") as the deadline for filing proofs of claim against the Debtor that arose on or prior to the Petition Date, including Section 503(b)(9) Claims (but excluding Administrative Claims and claims of Governmental Units.) The Bankruptcy Court established 5:00 p.m. (Prevailing Eastern Time) on May 19, 2015 as the deadline for filing proofs of claim by Governmental Units (the "Government Bar Date"). The Plan proposes the following deadline for filing Administrative Claims: for Administrative Claims arising after the Petition Date on the first Business Day that is at least thirty (30) days after the Effective Date or such other date ordered by the Bankruptcy Court.

The Debtor has been reviewing, analyzing and resolving Claims on an ongoing basis as part of the Claims reconciliation process. To date approximately 74 proofs of claim (including 503(b)(9) Claims) have been filed in the Debtor's Chapter 11 Case aggregating approximately $107,654,976. The Broadcasters have collectively filed 19 claims against the Debtor's Estate seeking approximately $99.96 million in statutory and punitive damages for purported infringement of their copyrights in violation of the Copyright Act, plus additional unliquidated amounts for attorneys' fees.

The Debtor, in consultation with the Creditors' Committee, has initiated a process by which, prior to the Effective Date, it will evaluate the filed Claims to determine whether objections to certain asserted Claims should be filed. After the Effective Date, the Liquidation Trustee will have the exclusive responsibility for reviewing and objecting to the Allowance of any Claim or Interest filed in the Chapter 11 Case. As an alternative, the Debtor, in consultation with the Creditors' Committee, as the case may be, may seek to negotiate and settle disputes as to asserted Claims as an alternative to filing objections to the asserted Claims.

Filed Claims in a significant dollar amount have not been resolved to date and the actual ultimate aggregate amount of Allowed Claims may differ significantly from the amounts used for the purposes of the Debtor's estimates. Additionally, the Debtor continues to review its Schedules and, upon the completion of such review, may amend such Schedules to account for certain additional Claims that have been satisfied or settled. Accordingly, the amount of the Pro Rata share that will ultimately be received by any particular holder of an Allowed Claim or Interest in Classes 4, 5 and/or 6 may be adversely affected by the outcome of the Claims

resolution process.  The Debtor intends to object before the Effective Date to all previously filed Disputed Claims.  With respect to Disputed Claims other than General Unsecured Claims, the Liquidation Trustee will be authorized to object, or pursue an objection, to Disputed Claims after the Effective Date; and with respect to Disputed General Unsecured Claims, including the Broadcaster Claims, the Liquidation Trustee will be authorized to object to such Claims.  The Liquidation Trustee will have discretion to Allow any Disputed Claims.

## G.    DISPOSITION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Plan provides that, to the extent an executory contract or unexpired lease of the Debtor that has not expired by its own terms prior to the Effective Date (a) has not been assumed, assumed and assigned, or rejected pursuant to such process or by order of the Bankruptcy Court during the Chapter 11 Case prior to the Effective Date, and (b) is not the subject of a motion to assume or a motion or permitted notice to assume and assign in each case filed as of the Effective Date, such executory contract or unexpired lease will be deemed rejected pursuant to Bankruptcy Code Section 365 as of the Effective Date.  Holders of Claims arising from the rejection of an executory contract or unexpired lease rejected pursuant to the Plan have until the date that is the next Business Day following thirty (30) days from the Effective Date to submit a proof of claim on account of such rejection damages.

## IV.    CHAPTER 11 PLAN

**THE FOLLOWING IS A BRIEF SUMMARY OF CERTAIN OF THE MORE SIGNIFICANT MATTERS CONTEMPLATED BY OR IN CONNECTION WITH THE CONFIRMATION OF THE PLAN.  THUS, THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A.  THIS SUMMARY ONLY HIGHLIGHTS CERTAIN SUBSTANTIVE PROVISIONS OF THE PLAN.  CONSIDERATION OF THIS SUMMARY WILL NOT, NOR IS IT INTENDED TO, YIELD A THOROUGH UNDERSTANDING OF THE PLAN.  SUCH CONSIDERATION IS NOT A SUBSTITUTE FOR A FULL AND COMPLETE READING OF THE PLAN.  ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO REVIEW THE PLAN CAREFULLY.  THE PLAN, IF CONFIRMED, WILL BE BINDING ON THE DEBTOR AND ALL HOLDERS OF CLAIMS AND INTERESTS.**

## A.    PLAN OVERVIEW

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business bankruptcies.  The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances so as to maximize recoveries to its creditors.  With this purpose in mind, businesses sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation.  Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and stockholders with respect to their claims against and equity interests in a debtor's bankruptcy estate.

The Plan contains three (3) types of unclassified Claims: Administrative Claims, Fee Claims, and Priority Tax Claims.  In addition, the Plan classifies Claims against and Interests in

the Debtor as follows: Class 1 (Remaining Secured Claims); Class 2 (Priority Non-Tax Claims); Class 3 (Convenience Claims); Class 4 (General Unsecured Claims); Class 5 (Claims Subject to Subordination); and Class 6 (Aereo Interests). Class 1, Class 2, and Class 3 are Unimpaired; Class 4, Class 5, and Class 6 are Impaired.

The Bankruptcy Code entitles only holders of impaired claims or equity interests who receive some distribution under a proposed plan to vote to accept or reject that plan. Holders of claims or equity interests that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on it. Holders of claims or equity interests that will receive no Distributions under a proposed plan are conclusively presumed to reject that plan and, therefore, are also not entitled to vote on it.

## B. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

As discussed above, Bankruptcy Code Section 1122 provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with Bankruptcy Code Section 1122, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than Administrative Claims, Fee Claims and Priority Tax Claims, which, pursuant to Bankruptcy Code Section 1123(a)(1), need not be classified). The Debtor is also required, under Bankruptcy Code Section 1122, to classify Claims against and Interests in the Debtor into Classes that contain Claims and Interests that are substantially similar to the other Claims and Interests in such Class. The Debtor believes that the Plan has classified all Claims and Interests in compliance with the provisions of Bankruptcy Code Section 1122 and applicable case law.

### 1. Treatment of Unclassified Claims Under the Plan

The unclassified Claims consist of Administrative Claims, Fee Claims, and Priority Tax Claims. These Claims shall be treated as follows:

(a) **Administrative Claims.** Subject to the terms set forth in the Plan, and unless the holder of an Allowed Administrative Claim agrees to receive other less favorable treatment, each holder of an Allowed Administrative Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) the Initial Distribution Date for First Tier Claims or (ii) as soon as reasonably practicable after the date such Claim becomes an Allowed Claim; provided, however, that Allowed Administrative Claims of the U.S. Trustee for Statutory Fees shall be paid on the Effective Date and thereafter, as such fees may thereafter accrue and be due and payable by the Liquidation Trustee pursuant to Section 6.05 of the Plan in accordance with the applicable schedule for payment of such fees.

Other than with respect to (a) Administrative Claims for which the Bankruptcy Court previously has established a Bar Date, (b) Fee Claims addressed in Section 3.02 of the Plan, and (c) Priority Tax Claims addressed in Section 3.03 of the Plan, any and all requests for payment or proofs of Administrative Claims must, no later than the applicable Administrative Claims Bar Date, be filed and served

on (i) with respect to requests for payment or proofs filed on or prior to the Effective Date, the Debtor and (ii) with respect to requests for payment or proofs filed after the Effective Date, the Liquidation Trustee. **The Administrative Claims Bar Date is for Administrative Claims arising on or after the Petition Date but prior to the Effective Date, the first business day that is at least thirty [30] days after the Effective Date or such other date ordered by the Bankruptcy Court.**

(b)     **Fee Claims**.  Subject to the terms set forth in the Plan, and unless the holder of an Allowed Fee Claim agrees to receive other less favorable treatment, each holder of an Allowed Fee Claim shall be paid 100% of the unpaid amount of such Claim in Cash no later than five (5) Business Days after the date that such Claim is Allowed by order entered by the Bankruptcy Court.

All final applications for payment of Fee Claims shall be filed with the Bankruptcy Court on or before the Fee Claims Bar Date.  The Fee Claims Bar Date is 5:00 p.m.  (Prevailing Eastern Time) on the date that is the first Business Day after the date that is thirty (30) days after the Effective Date.  Any Fee Claim that is not asserted in accordance with Plan Section 3.02(a) shall be deemed disallowed under the Plan and shall be forever barred against the Estate, the Liquidation Trust, or any of their Assets or property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(c)     **Priority Tax Claims**.  Subject to the terms set forth in the Plan, and unless the holder of an Allowed Priority Tax Claim agrees to receive other less favorable treatment, each holder of an Allowed Priority Tax Claim shall be entitled to receive 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) the Initial Distribution Date for First Tier Claims or (ii) as soon as reasonably practicable after the date such Claim becomes an Allowed Claim.  For the avoidance of doubt, Causes of Action Proceeds shall not be used to satisfy Allowed Priority Tax Claims.

To be eligible to receive Distributions under the Plan on account of a Priority Tax Claim, a Proof of Claim must be filed with the Claims Agent so as to be received on or before the Governmental Unit Bar Date.  Any Priority Tax Claim that is not asserted in accordance with Section 3.03(a) of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Estate, the Liquidation Trust, or any of their Assets or property and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

In accordance with the Bankruptcy Code, the Allowed Administrative Claims, Allowed Fee Claims, and Allowed Priority Tax Claims are not classified.  Therefore, the claimants holding the aforementioned Claims may not vote on the Plan.

2. **Treatment Of Classified Claims And Interests**

The treatment of and consideration to be received by holders of Allowed Claims and the treatment to be received by holders of Interests pursuant to Article IV of the Plan will be in full satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims against, or Interests in, the Debtor and the Debtor's Estate, except as otherwise expressly provided in the Plan or the Confirmation Order.

(a)     **Class 1 - Remaining Secured Claims**

    (i)     <u>Definition of Class 1</u>: Remaining Secured Claims are Secured Claims arising prior to the Petition Date against the Debtor, other than any Secured Claim satisfied pursuant to the Successful Bidder Sale Order.

    (ii)     <u>Treatment of Class 1</u>: Except to the extent that the holder of an Allowed Remaining Secured Claim agrees to a different treatment of such Claim, on the later of the Effective Date and the date such Remaining Secured Claim becomes an Allowed Remaining Secured Claim, or as soon thereafter as reasonably practicable, each holder of an Allowed Remaining Secured Claim shall receive, in complete settlement, satisfaction and discharge of its Class 1 Claim, at the Liquidation Trustee's election, (i) payment in full in Cash of such holder's Allowed Remaining Secured Claim, (ii) the Debtor's interest in the collateral securing such holder's Allowed Remaining Secured Claim or (iii) such other treatment rendering such holder's Allowed Remaining Secured Claim; <u>provided</u>, <u>however</u>, that if the holder of an Allowed Remaining Secured Claim holds Cash with a right of setoff, such holder shall be entitled to effect the setoff and thereby satisfy the Claim in lieu of receiving payment.

    (iii)     <u>Voting Status of Class 1</u>: Class 1 is Unimpaired by the Plan and is deemed to have accepted the Plan pursuant to Bankruptcy Code Section 1126(f). Thus, the claimants in Class 1 may not vote on the Plan.

(b)     **Class 2 - Priority Non-Tax Claims**

    (i)     <u>Definition of Class 2</u>: Priority Non-Tax Claims are Claims or portions thereof for which priority is asserted under Bankruptcy Code Sections 507(a)(3), (4), (5), (6), or (7).

    (ii)     <u>Treatment of Class 2</u>: Priority Non-Tax Claims are First Tier Claims under the Plan. Subject to the terms set forth in the Plan and unless the holder of an Allowed Priority Non-Tax Claim agrees to receive other less favorable treatment, each holder of an Allowed Priority Non-Tax Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) the Initial Distribution Date for First Tier Claims or (ii) as soon as is reasonably practicable after the date such Claim becomes an Allowed Claim.

<blockquote>
(iii) <u>Voting Status of Class 2</u>: Class 2 is Unimpaired by the Plan and is deemed to have accepted the Plan pursuant to Bankruptcy Code Section 1126(f). Thus, the claimants in Class 2 may not vote on the Plan.
</blockquote>

(c)     **Class 3 - Convenience Claims**

<blockquote>
(i) <u>Definition of Class 3</u>: Convenience Claims are all Unsecured Claims in an amount of [$1,000] or less, or which by agreement of the holder thereof have been reduced to [$1,000] or less.

(ii) <u>Treatment of Class 3</u>: Convenience Claims are First Tier Claims under the Plan. Each holder of an Allowed Convenience Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) the Initial Distribution Date for First Tier Claims or (ii) as soon as is reasonably practicable after the date such Claim becomes an Allowed Claim.

(iii) <u>Voting Status of Class 3</u>: Class 3 is Unimpaired by the Plan and is deemed to have accepted the Plan pursuant to Bankruptcy Code Section 1126(f). Thus, the claimants in Class 3 may not vote on the Plan.
</blockquote>

(d)     **Class 4 - General Unsecured Claims**

<blockquote>
(i) <u>Definition of Class 4</u>: General Unsecured Claims are all Claims against the Debtor in an amount greater than or equal to [$1,000], but excluding Administrative Claims, Priority Tax Claims, Fee Claims, Remaining Secured Claims, Priority Non-Tax Claims, Convenience Claims, and Claims Subject to Subordination; <u>provided</u>, <u>however</u>, that any General Unsecured Claim that is an Assumed Liability shall be satisfied in accordance with the APA and shall not receive Distributions pursuant to the Plan. For the avoidance of doubt, deficiency claims are General Unsecured Claims.

(ii) <u>Treatment of Class 4</u>: Subject to the terms set forth in the Plan, and unless the holder of an Allowed General Unsecured Claim agrees to receive other less favorable treatment, each holder of an Allowed General Unsecured Claim, in full satisfaction, settlement and release of and in exchange for all such Allowed Claims, shall be entitled to receive, commencing on the Initial Distribution Date for Second Tier Claims, one or more Distributions of Available Cash in an amount equal to its Pro Rata share of the Unsecured Allocation.

(iii) <u>Voting Status of Class 4</u>: Class 4 is Impaired by the Plan and the holders of Class 4 Claims are therefore entitled to vote in the Plan.
</blockquote>

(e)     **Class 5 - Claims Subject to Subordination**

    (i)    <u>Definition of Class 5</u>: Claims Subject to Subordination are (a) for the purposes of classification and voting only: (i) any Claim asserted against the Debtor that is Allowed as a Claim subordinated in priority of payment to any General Unsecured Claim pursuant to  Bankruptcy Code Section 510(b), Bankruptcy Code Section 510(c) or other applicable law; (ii) any Claim for any fine, penalty or forfeiture, or multiple, exemplary, statutory or punitive damages, to the extent that such fine, penalty, forfeiture or damage is not compensation for actual pecuniary loss suffered by the holder of such Claim, including, without limitation, any such Claim based upon, arising from or relating to any cause of action whatsoever (including, without limitation, violation of law, intellectual property infringement, fraud, personal injury or wrongful death, whether secured or unsecured, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise), and any such Claim asserted by a Governmental Unit in connection with a tax or other obligation owing to such unit; or (iii) any Claim asserted by a party against whom the Debtor has commenced a proceeding seeking to subordinate such Claim for any reason set forth in subsections (i) and (ii), including, without limitation, the Broadcaster Claims; (b) for the purposes of Distribution, any Claim under subsection (a) hereof for which an order has been entered by the Bankruptcy Court subordinating such claim.

    (ii)    <u>Treatment of Class 5</u>: Claims Subject to Subordination are Third Tier Claims under the Plan.  If, and only if, there is Available Cash remaining in the LT Distribution Account after payment in full of, or adequate reserve for, Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims and all Allowed Claims or Disputed Claims in Classes 1 through 4, then each holder of an Allowed Claim Subject to Subordination, in full satisfaction, settlement and release of and in exchange for all such Allowed Claims, shall be entitled to receive, commencing on the Initial Distribution Date for Third Tier  Claims, one or more Distributions of Available Cash in an amount equal to its Pro Rata share of such Available Cash remaining in the LT Distribution Account. Additionally, after payment or adequate reserve for all First Tier Claims, Second Tier Claims and Third Tier Claims, on the Initial Distribution Date for Fourth Tier Claims, each eligible holder of an Allowed Claim Subject to Subordination shall be entitled to receive Available Cash from the Unsecured Interest Allocation on account of post-Petition interest accrued through the Effective Date at one of the following interest rates:  (a) as to a Claim that is not based upon an agreement that provides for interest, at the Designated Rate or (b) as to a Claim that is based upon an agreement that provides for interest either (i) at the non-default interest rate provided for in such agreement or (ii) if no such rate is provided, then at the Designated Rate.  If, however, there is no Available Cash remaining in the

LT Distribution Account after payment in full of, or adequate reserve for, the Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims and all Allowed Claims or Disputed Claims in Classes 1 through 4, then no holder of a Claim Subject to Subordination shall receive or retain any property under the Plan or the Liquidation Trust Agreement on account of such holder's Claim. To the extent that a Claim in Class 5 is determined by Final Order not to be subordinated, such Claim in Class 5 shall be entitled to the same Pro Rata treatment and Distributions afforded to General Unsecured Claims in Class 4.

(iii)　<u>Voting Status of Class 5</u>: Class 5 is Impaired by the Plan and the holders of Class 5 Claims may therefore vote on the Plan.

(f)　**Class 6 - Aereo Interests**

(i)　<u>Definition of Class 6</u>: Aereo Interests are any equity security, within the meaning of Bankruptcy Code Section 101(16), issued by Aereo and outstanding prior to the Effective Date including, without limitation, any preferred stock, common stock, stock options or other right to purchase the stock of Aereo, together with any warrants, conversion rights, rights of first refusal, subscriptions, commitments, agreements, or other rights to acquire or receive any stock or other equity ownership interests in Aereo prior to the Effective Date.

(ii)　<u>Treatment of Class 6</u>: Aereo Interests are Fifth Tier Interests under the Plan. All Aereo Interests shall be cancelled as of the Effective Date. If, and only if, there is Available Cash remaining in the LT Distribution Account after payment in full of, or adequate reserve for, Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims and all Allowed Claims or Disputed Claims in Classes 1 through 5, then, in full satisfaction, settlement and release of and in exchange for all such Allowed Interests, each holder of an Allowed Aereo Interest shall be entitled to receive, on the Initial Distribution Date for Fifth Tier Interests, one or more Distributions of Available Cash in an amount equal to its allocated share of such Available Cash remaining in the LT Distribution Account as such allocated share shall be determined by the Bankruptcy Court in accordance with the Debtor's corporate organizational documents and New York law applicable thereto, upon motion of the Liquidation Trustee and after notice to all holders of Class 6 Interests. If, however, there is no Available Cash remaining in the LT Distribution Account after payment in full of, or adequate reserve for, Allowed Administrative Claims, Allowed Fee Claims, Allowed Priority Tax Claims and all Allowed Claims or Disputed Claims in Classes 1 through 5, then no holder of an Aereo Interest shall receive or retain any property under the Plan or the Liquidation Trust Agreement on account of such holder's Interest

(iii)    <u>Voting Status of Class 6</u>: Class 6 is Impaired.  However, because the holders of Aereo Interests in Class 6 are not expected to receive or retain any property under the Plan, they are deemed to have rejected the Plan pursuant to Bankruptcy Code Section 1126(g).  Consequently, holders of Aereo Interests in Class 6 may not vote on the Plan.

## C.    **THE LIQUIDATION TRUST**

### 1.    **Creation and Purpose of the Liquidation Trust**

The Liquidation Trust Agreement shall be substantially in the form filed by the Debtor no less than 10 days before the Confirmation Hearing and shall be reasonably acceptable to the Creditors' Committee.  On the Effective Date, the Debtor, on its own behalf and on behalf of the Beneficiaries of the Liquidation Trust, shall execute the Liquidation Trust Agreement and take all steps necessary to establish the Liquidation Trust.  The initial Liquidation Trustee shall be the Person designated jointly by the Debtor and the Creditors' Committee and identified in the Liquidation Trust Agreement as the trustee of the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement.

The Debtor and the Liquidation Trustee are creating the Liquidation Trust for the primary purpose of liquidating and distributing the Liquidation Trust Assets to the Beneficiaries of the Liquidation Trust in accordance with their respective entitlements, if any, under the Plan, the Confirmation Order, and applicable tax statutes, rules and regulations, and in an expeditious but orderly manner, with no objective to continue or engage in the conduct of a trade or business.  In particular, the Liquidation Trustee shall (a) make continuing efforts to collect and reduce the Liquidation Trust Assets to Cash, and (b) make timely Distributions and not unduly prolong the duration of the Liquidation Trust.

On the Effective Date, the Liquidation Trustee shall sign the Liquidation Trust Agreement and accept all Assets of the Estate on behalf of the Beneficiaries thereof, and be authorized to obtain, liquidate and collect all of the Assets of the Estate not in its possession and pursue all of the Estate Causes of Action.  The Liquidation Trust will then be deemed created and effective without any further action by the Bankruptcy Court or any party.  The Liquidation Trust shall be established for the sole purpose of liquidating its Assets, with no objective to continue or engage in the conduct of a trade or business and for making Distributions in accordance with the Plan and the Liquidation Trust Agreement.

### 2.    **General Powers of the Liquidation Trustee**

Under the Plan and the Liquidation Trust Agreement, the Liquidation Trustee has all authority and responsibility to:  (a) receive, manage, invest, supervise and protect Liquidation Trust Assets; (b) pay taxes or other obligations incurred by the Liquidation Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, Professionals and consultants to advise and assist in the administration, prosecution and distribution of Liquidation Trust Assets; (d) calculate and implement Distributions of Liquidation Trust Assets; (e) prosecute, compromise, and settle, in accordance with the specific

terms of the Liquidation Trust Agreement, Estate Causes of Action vested in the Liquidation Trust; (f) resolve issues involving Claims and Interests pursuant to Article IX of the Plan; (g) confirm the dismissal of the Related Action; and (h) undertake all administrative functions of the Chapter 11 Case, including the ultimate closing of the Chapter 11 Case. The Liquidation Trust is the successor to the Debtor, the Estate and the Debtor's rights to books and records.

3. **Federal Tax**

For federal income tax purposes, it is intended that the Liquidation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury regulations and that such trust be owned by its Beneficiaries (i.e., holders of Allowed Claims and/or Interests in Class 1, Class 2, Class 4, Class 5, and Class 6). Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a Distribution from the Estate of an undivided interest in each of the Assets of the Liquidation Trust and then contributed such interests to the Liquidation Trust. For all federal income tax purposes, all parties shall treat the transfer of Assets to the Liquidation Trust for the benefit of the holders of Allowed Claims and/or Interests in Class 1, Class 2, Class 4, Class 5, and Class 6, as (a) a transfer of the Assets of the Liquidation Trust directly to the holders of Allowed Claims or Interests in Class 1, Class 2, Class 4, Class 5, and Class 6, followed by (b) the transfer by such holders to the Liquidation Trust of the Assets of the Liquidation Trust in exchange for the beneficial interests in the Liquidation Trust. Accordingly, the holders of such Allowed Claims or Interests in Class 1, Class 2, Class 4, Class 5, and Class 6 shall be treated for federal income tax purposes as the grantors and owners of their respective share, if any, of the Assets of the Liquidation Trust. The Liquidation Trustee shall file returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Section. The Liquidation Trustee also shall annually send to each holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their federal income tax returns; provided, however, that no such statement need be sent to any Class that will not receive any Distribution from the Liquidation Trust. The Liquidation Trust's taxable income, gain, loss, deduction or credit will be allocated to holders of Allowed Claims or Interests in Class 1, Class 2, Class 4, Class 5, and Class 6 in accordance with their relative beneficial interests in the Liquidation Trust.

4. **Funding And Operation of the Liquidation Trust**

Following Confirmation and prior to the occurrence of the Effective Date, the then-current officers and directors of the Debtor shall continue in their respective capacities and the Debtor shall execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan. On and after the Effective Date, all such officers and directors shall be deemed to have resigned.

The Liquidation Trust will be funded, on the Effective Date, as provided for in the Plan, the Liquidation Trust Agreement and the Confirmation Order. Liquidation Trust Operating Expenses are the overhead and other operational expenses of the Liquidation Trust including, but not limited to, the reasonable professional costs related to the prosecution of Estate Causes of Action, objecting to Disputed Claims or Disputed Interests and reasonable compensation for the Liquidation Trustee.

5. **Dissolution of the Debtor and Wind Down of the Chapter 11 Case**

The Plan provides that, as soon as practicable after the Effective Date, the Debtor will be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; provided, however, that pursuant to Bankruptcy Code Section 1142(b), the Liquidation Trustee shall be authorized to file the Debtor's final tax returns, and the Liquidation Trustee shall be authorized to file and shall file with the official public office for keeping corporate records in the Debtor's state of incorporation a certificate of dissolution or equivalent document. Such a certificate of dissolution may be executed by the Liquidation Trustee without need for any action or approval by the shareholders or Board of the Debtor. From and after the Effective Date, the Debtor (a) for all purposes shall be deemed to have withdrawn its business operations from any state in which it was previously conducting, or is registered or licensed to conduct, its business operations, and shall not be required to file any document, pay any sum or take any other action in order to effectuate such withdrawal, (b) shall be deemed to have cancelled pursuant to the Plan all Interests and all Intercompany Claims, and (c) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

On the Effective Date, the Debtor's Chapter 11 Case, identified as Case No. 14-13200 (SHL), shall remain open and subject to the provisions of Section 6.07 of the Plan. Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Chapter 11 Case, when all Liquidation Trust Assets contributed to the Liquidation Trust in accordance with Section 6.01(d) of the Plan have been liquidated and converted into Cash (other than those Liquidation Trust Assets abandoned by the Liquidation Trust), and such Cash has been distributed in accordance with the Liquidation Trust Agreement and the Plan, the Liquidation Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

6. **Prosecution and Resolution of Estate Causes of Action**

Prosecution and settlement of all Estate Causes of Action, including Avoidance Actions, shall be the sole responsibility of the Liquidation Trustee, pursuant to the Plan, the Liquidation Trust Agreement and the Confirmation Order. From and on the Effective Date, the Liquidation Trustee shall have exclusive rights, powers and interests of the Estate to pursue, settle or abandon such Estate Causes of Action as the sole representative of the Estate pursuant to Bankruptcy Code Section 1123(b)(3). All Estate Causes of Action, including Avoidance Actions, are reserved and preserved to the extent set forth in the Plan.

Specifically, the Debtor preserves certain claims and counterclaims as to the holders of the Broadcaster Claims, as well as any claims against the Broadcasters for antitrust violations, tortious interference with economic advantage, and equitable subordination. The Debtor also preserves any other claims and counterclaims related to any other copyrights asserted in connection with the claims resolution process.

The Plan requires that settlement by the Liquidation Trust of any Estate Cause of Action will require: (i) approval only of the Liquidation Trustee, if the amount claimed by the Liquidation Trust against a defendant is less than one million dollars ($1,000,000); and (ii)

approval of the Liquidation Trustee and the Bankruptcy Court, if the amount claimed by the Liquidation Trust against a defendant equals or exceeds one million dollars ($1,000,000).

7. **Monthly and Quarterly Reporting and Payment of Fees**

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidation Trustee. All Statutory Fees with respect to the period prior to the Effective Date shall be paid by the Debtor in Cash on the Effective Date or other required payment date. With respect to the period after the Effective Date, the Liquidation Trustee shall be obligated to pay quarterly Statutory Fees to the Office of the U.S. Trustee and such obligation shall continue until such time as the Chapter 11 Case is closed, dismissed or converted.

**D.** **DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS AND INTERESTS**

1. **Objections to Claims and Interests**

The Claims/Interest Objection Deadline shall be the first Business Day that is **180 days** after the Effective Date. However, the last date for filing Avoidance Actions against a holder of a Claim or Interest is be the date established by Bankruptcy Code Section 546(a) and the last day for asserting any other Estate Cause of Action shall be the last day of the applicable statute of limitations therefor provided under applicable non-bankruptcy law, as such period may have been extended by Bankruptcy Code Section 108 or any other section of the Bankruptcy Code or other applicable law; provided, however, that no Entity or Person (including the Liquidation Trustee, any holder of Claims, or any holder of Interests) may file an objection to any Claim deemed Allowed by the Plan, and any such objection shall be deemed null and void. Notwithstanding any of the foregoing, the Liquidation Trustee may request from the Bankruptcy Court one or more extensions of the Claims/Interest Objection Deadline, which relief shall be freely given for cause stated and the extended date shall become the new Claims/Interest Objection Deadline.

With the exception of objections filed by the Debtor before the Effective Date, the Liquidation Trustee shall have the exclusive responsibility for reviewing and objecting to the Allowance of any Claim or Interest filed in the Chapter 11 Case. In the event that any objection filed by the Debtor remains pending as of the Effective Date, the Liquidation Trustee shall be deemed substituted for the Debtor as the objecting party. All objections shall be litigated to a Final Order; provided, however, that the Liquidation Trustee may compromise and settle any objections to Claims or Interests, subject to the provisions of Article VIII of the Plan without further order of the Bankruptcy Court; provided further, however, that Distributions may be made to a holder of a Claim or Interest prior to the expiration of the Claims/Interests Objection Deadline if the Liquidation Trustee reasonably believes that no basis exists for objection to such holder's Claim or Interest. Notwithstanding the foregoing, nothing in the Plan operates as a waiver or release of (i) any right that any party in interest may have to object to (a) any Claim or Interest through the Effective Date or (b) any Fee Claim after the Effective Date; or (ii) any objection to Claims or Interests pending as of the Effective Date, regardless of whether such objection was brought by the Debtor or any other party in interest.

The Plan provides that objections to Claims or Interests not otherwise deemed Allowed by the Plan will not be subject to any defense, including, without limitation, res judicata, estoppel or any other defense, because of the confirmation of the Plan. Additionally, the rights of the Liquidation Trustee to amend, modify or supplement any objection to a particular Claim or Interest to include relief pursuant to Bankruptcy Code Section 502(d) are preserved until sixty (60) days after the entry of a Final Order against a holder of such Claim or Interest.

2. **Estimation, Amendment and Settlement of Claims or Interests**

The Plan provides that through the Claims/Interests Objection Deadline, the Debtor or, after the Effective date, the Liquidation Trustee, may request that the Bankruptcy Court enter an Estimation Order, pursuant to Bankruptcy Code Section 502(c), fixing the value of any Disputed Claim or Interest, regardless of whether the Debtor has previously objected to such Claim or Interest, provided that a Final Order or unstayed order has not previously been entered by the Bankruptcy Court with respect to such Claim or Interest or any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Disputed Claim or Disputed Interest at any time during litigation concerning any objection to any Disputed Claim or Disputed Interest, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court enters an Estimation Order estimating any Disputed Claim or Disputed Interest, the amount of such estimation will constitute either the Allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest, as determined by the Bankruptcy Court in the absence of a stay of such order pending appeal. If a Claim has been estimated for an amount less than the Face Amount and the Claim holder has obtained a stay pending appeal, the Liquidation Trustee must reserve for the Face Amount of such Claim pending resolution of such appeal. If the estimated amount constitutes a maximum limitation on such Claim or Interest, the Liquidation Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim or Interest. All of the aforementioned Claims and Interests objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims or Interests may be estimated and thereafter resolved by any mechanism permitted under the Bankruptcy Code or the Plan.

The Plan further provides that after the Confirmation Date, a Claim or Interest may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim or Interest solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority of such Claim.

Pursuant to the Plan, from and after the Effective Date, the Liquidation Trustee shall be authorized with respect to those Claims or Interests that are not Allowed by Final Order, pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Section 105(a), to compromise and settle Disputed Claims with a Disputed amount in excess of one million dollars ($1,000,000), upon Bankruptcy Court approval of such settlement. Notwithstanding any prior order of the Bankruptcy Court or the provisions of Bankruptcy Rule 9019, the Liquidation Trustee may settle or compromise any Disputed Claim with a Disputed amount of one million dollars ($1,000,000) or less without approval of the Bankruptcy Court.

3. **No Recourse**

The Plan provides that, notwithstanding that the Allowed amount of any particular Disputed Claim or number of Disputed Interests is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount or number for which there is insufficient value in the relevant fund or reserve to provide a recovery equal to that received by other holders of Allowed Claims or Interests in the relevant Class, with respect to such Claim or Interest no holder shall have recourse to the Liquidation Trust, the Estate, the Debtor, any member thereof, any of their Professionals, the holder of any other Claim or Interest, or any of their respective property. However, nothing in the Plan will modify any right of a holder of a Claim or Interest under Bankruptcy Code Section 502(j). **Thus, the Bankruptcy Court's entry of an estimation order may limit the Distribution to be made on individual Disputed Claims or Interests, regardless of the amount or number finally Allowed on account of such Disputed Claims or Interests.**

E. **DISTRIBUTIONS UNDER THE PLAN**

1. **Delivery of Distributions**

The Plan provides that Distributions to holders of Allowed Claims will be made by the Disbursing Agent at such time as required by the Plan and, assuming the availability of funds less applicable reserves established in accordance with the Plan and the Liquidation Trust Agreement, not less than on each Quarterly Distribution Date: (a) at the addresses set forth in the Proofs of Claim or Requests for Payment by such holders; (b) at the addresses set forth in any written notices of address change filed or delivered after the date on which any related Proof of Claim or Request for Payment was filed to (i) if such notice is filed or delivered on or prior to the Effective Date, the Debtor and the Claims Agent or (ii) if such notice is filed or delivered after the Effective Date, the Liquidation Trustee and the Claims Agent; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim if no Proof of Claim has been filed and none of the Debtor or the Liquidation Trustee and the Claims Agent have received a written notice of a change of address.

Any Cash payment to be made by the Liquidation Trustee pursuant to the Plan may be made, at the sole discretion of the Liquidation Trustee, by draft, check, wire transfer or as otherwise required or provided in any relevant agreement or applicable law. Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day. No Cash payment in an amount less than fifty dollars ($50.00) is required to be made by the Liquidation Trustee to any holder of a Claim or Interest.

No Distributions shall be made with respect to Unclaimed Property. Any Distribution that is determined to be Unclaimed Property will be transferred to or retained in the LT Distribution Account for further disposition in accordance with the Plan. Nothing contained in the Plan requires the Liquidation Trustee to attempt to locate any holder of an Allowed Claim.

If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Liquidation Trustee may, in lieu of making such Distribution to such Entity or Person, make such Distribution into an escrow account until the disposition thereof shall be

determined by the Bankruptcy Court or by written agreement among the interested parties to such dispute; provided, however, that if the dispute remains unresolved by Final Order for an unreasonable period of time, the Liquidation Trustee may request that the Bankruptcy Court order that the property that is the subject of the dispute shall become Unclaimed Property.

Notwithstanding any other provision in the Plan, no holder of an Allowed Claim will receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim, plus post-petition interest thereon to the extent Allowed by the Bankruptcy Code and the Plan. When a holder of an Allowed Claim recovers the full amount of its Allowed Claim from another source, it will no longer have any entitlement to receive Distributions under the Plan.

2. **Disputed Claims Reserves**

Pursuant to the Plan, on the Initial Distribution Date (or on any other date on which Distributions for any particular Class of Claims are made pursuant to the Plan by the Liquidation Trustee), and in connection with making all Distributions required to be made on any such date under the Plan, the Liquidation Trustee shall establish a separate Disputed Claim Reserve for Cash Distributions pertaining to each Disputed Claim in each relevant Class, as necessary pursuant to the Plan.

The Plan provides that the Liquidation Trustee shall reserve the Ratable proportion of all Cash allocated for Distribution on account of each Disputed Claim based upon the Face Amount of each such Disputed Claim, or such lesser amount as may be agreed to by the holder of the Claim on one hand and the Liquidation Trustee on the other hand, as applicable, or in such amount as may otherwise be determined by order of the Bankruptcy Court. All Cash allocable to the Disputed Claims in the relevant Class hereunder will be distributed by the Liquidation Trustee to the relevant Disputed Claim Reserve on the Initial Distribution Date (or such other date on which Distributions for any particular Class of Claims are made pursuant to the Plan). All Cash distributed into a Disputed Claim Reserve are to be deposited in an interest-bearing account at a qualified institution, consistent with the Liquidation Trust Agreement.

Each Disputed Claim Reserve will be closed and extinguished by the Liquidation Trustee when all Distributions and other dispositions of Cash or other property required to be made therefrom under the Plan and the Liquidation Trust Agreement have been made. Upon closure of a Disputed Claim Reserve, all Cash and other property held in that Disputed Claim Reserve will revest in the Liquidation Trust and such Cash and property shall will be Ratably distributed to the other holders of Allowed Claims in the Class in respect of which such Disputed Claims Reserve was created, except as otherwise provided in Article IV of the Plan, and once the Claims in such Class are paid in full, will be distributed to holders of Allowed Claims in the order of the priority established by the Plan.

3. **Setoff**

The Plan permits, but does not require, the Liquidation Trustee to setoff against any Claim (for purposes of determining the Allowed amount of such Claim on which Distribution will be made), any claims of any nature whatsoever that the Estate or the Liquidation Trust may have against the Claim holder, but neither the failure to do so nor the allowance of any Claim

hereunder shall constitute a waiver or release by the Liquidation Trust of any such claim it may have against such Claim holder. Holders of Allowed Claims retain whatever rights to setoff they are otherwise entitled to assert under Bankruptcy Code Section 553.

4. **Withholding and Reporting Requirements**

In connection with the Plan and all Distributions thereunder, the Liquidation Trustee is required to comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions thereunder shall be subject to any such withholding and reporting requirements. The Liquidation Trustee will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

5. **Post-Petition Interest on Claims**

Unless otherwise specifically provided for in the Plan or the Confirmation Order, postpetition interest will not accrue or be paid on Claims or, if applicable, Interests, and no holder of a Claim or Interest will be entitled to interest accruing on or after the Petition Date on any Claim. No holder of a Claim shall be entitled to receive interest earned on a Disputed Claims Reserve.

6. **Transfers of Claims and Interest/Distribution Record Date**

As of the Effective Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor or its agents will be deemed closed and there will not be any further changes in the holders of record of any of the Claims or Interests. No party, including but not limited to the Liquidation Trustee, will have any obligation to recognize any transfer of the Claims or Interests occurring after the Effective Date unless notice of the transfer of such Claim or Interest, in form and substance satisfactory to the Liquidation Trustee, is received by the Liquidation Trust, as appropriate, prior to the Effective Date; provided, however, that only those holders of record stated on the transfer ledgers as of the close of business on the Effective Date, to the extent applicable, shall be entitled to be recognized for all purposes .

F. **CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF PLAN**

1. **Conditions to Confirmation**

The following are each conditions to entry of the Confirmation Order, each of which must be satisfied or waived in accordance with Section 10.01 of the Plan:

- The Bankruptcy Court shall have approved this Disclosure Statement with respect to the Plan in form and substance that is reasonably acceptable to the Debtor and shall, among other things:

  - Provide that the Debtor is authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the

agreements or documents created under or in connection with the Plan; and

○ provide that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan; and

• the Confirmation Order shall have been entered by the Bankruptcy Court.

2. **Conditions To The Effective Date**

The Plan specifies that it may not be consummated, and the Effective Date will not occur, unless and until certain conditions precedent set forth in Section 10.02 of the Plan are satisfied or waived in accordance with Section 10.03 of the Plan, which conditions are as follows:

• the Confirmation Order shall have been entered on or before December 31, 2015;

• the Confirmation Order shall not then be stayed, vacated or reversed or shall not have been amended without the agreement of the Debtor;

• the Liquidation Trust shall have been established and all Assets of the Estate, including but not limited to the Estate Causes of Action, shall have been transferred to and vested in the Liquidation Trust free and clear of all Claims and Interests, except as specifically provided in the Plan and the Liquidation Trust Agreement;

• the Liquidation Trustee shall have been appointed and assumed his or her rights and responsibilities under the Plan and the documents substantially in the form set forth in the Liquidation Trust Agreement; and

• all actions, documents and agreements necessary to implement the provisions of the Plan to be effectuated on or prior to the Effective Date shall be reasonably satisfactory to the Debtor, and such actions, documents and agreements shall have been effected or executed and delivered;

3. **Waiver of Conditions**

Each of the conditions set forth in Section 10.01 and Section 10.02 of the Plan may be waived in whole or in part by the Debtor without any notice to parties in interest or the Bankruptcy Court and without a hearing; provided, however, that any such waiver shall not be effective without the consent of the Creditors' Committee, which consent shall not be unreasonably withheld.

4. **Termination Of The Plan For Failure To Become Effective**

If the Effective Date shall not have occurred on or prior to the first Business Day that is more than ninety (90) days after the Confirmation Date, or such later date as shall be agreed to by the Debtor and the Creditors' Committee, the Debtor may schedule a status hearing with the

Bankruptcy Court. If the Confirmation Order is ultimately vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute an admission, a waiver, or release of any Claims against or Interests in the Estate.

## G.    **EFFECTS OF CONFIRMATION**

Except as expressly provided for in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to (a) be res judicata or the basis for estoppel of, (b) create any other defense to the prosecution to judgment on the merits of, (c) be a waiver of or (d) be a relinquishment of any Estate Causes of Action, including Avoidance Actions, that are left unaltered or unimpaired by the Plan. On and after the Effective Date, the Liquidation Trust shall have, retain, reserve and be entitled to assert, prosecute, settle or abandon all such Estate Causes of Action.

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, Distribution and other benefits provided under the Plan, the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against the Debtor, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness. The provisions of the Plan, including, without limitation, its injunction, exculpation, release and compromise provisions, are mutually dependent and non-severable

Except as necessary to be consistent with the Plan, the Plan will not diminish or impair the enforceability of insurance policies that may cover Claims against the Debtor, the Estate, the Assets or any other Person or Entity. In no event shall the Liquidation Trust have the right to cancel or limit the coverage available under any Insurance Policy under which the Debtor's directors, officers or employees are insured parties.

Until the Effective Date, all injunctions or stays entered or otherwise provided for in the Chapter 11 Case under Bankruptcy Code Sections 105(a) or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect. Upon the Effective Date, all injunctions or stays as to the Debtor in existence on the Confirmation Date are dissolved without any further recourse. All protective orders previously entered in favor of the Debtor shall continue in full force and effect, and may be enforced by the Liquidation Trustee after the Effective Date. All protective orders binding upon the Debtor shall be deemed of no further force or effect as of the Effective Date.

## H. RELEASES, EXCULPATION, INJUNCTION AND LIMITATION OF LIABILITY

### 1. Releases by Debtor

**The Plan provides that as of the Effective Date, for good and valuable consideration, including the release of any and all Claims against the Estate by each Person so released (and subject to confirmation of such release by the holder thereof in such form as the Liquidation Trustee in its discretion requires), the adequacy of which is confirmed in the Plan, the Debtor, and any Person seeking to exercise the rights of the Debtor's Estate, including, without limitation, any successor to the Debtor, any Estate representative appointed or selected pursuant to Section 1123(b)(3) of the Bankruptcy Code, or the Liquidation Trustee, whether pursuing an action derivatively or otherwise, shall be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including Avoidance Actions) and liabilities whatsoever (other than for fraud, willful misconduct or gross negligence) in connection with or related to the Debtor (including Aereo, Inc. before the commencement of the Chapter 11 Case), the affairs of same, the Chapter 11 Case or the Plan (other than solely the rights of the Debtor and the Liquidation Trustee to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Confirmation Date, and that may be asserted by or on behalf of the Debtor, the Estate or the Liquidation Trustee against (a) any of the present or former directors, officers and employees of the Debtor, (b) any of the Debtor's Professionals and court-retained agents serving during the pendency of the Chapter 11 Case, and (c) any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (b).**

### 2. Exculpation

**The Plan provides that, notwithstanding any other provision, none of (a) the Debtor, (b) the directors, officers or employees of the Debtor serving at any time during the pendency of the Chapter 11 Case, (c) the Professionals or court-retained agents of the Debtor, (d) the members and Professionals of the Creditors' Committee, but only in their capacities as such, or (e) any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (d), shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective members, directors, officers, employees, advisors, attorneys, professionals, agents, partners, stockholders or affiliates, or any of their respective successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct, or willful violation of federal or state laws and**

regulations including the Tax Code (in each case as determined by a Final Order), and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Notwithstanding any other provision of the Plan, no holder of a Claim or an Interest, no other party in interest, none of their respective members, directors, officers, employees, advisors, attorneys, professionals, agents, partners, stockholders or affiliates, and none of their respective successors or assigns, shall have any right of action against (a) the Debtor, (b) the directors, officers, or employees of the Debtor serving at any time during the pendency of the Chapter 11 Case, (c) the Professionals or court-retained agents of the Debtor, (d) the members and Professionals of the Creditors' Committee, but only in their capacities as such, or (e) any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (d), for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, or willful misconduct or willful violation of federal or state laws and regulations including the Tax Code (in each case as determined by a Final Order).

3.  **Injunction**

Confirmation of the Plan will have the effect of, among other things, permanently enjoining (a) all Entities or Persons that have held, hold or may hold or have asserted, assert or may assert Claims against or Interests in the Estate (including Aereo, Inc. before the commencement of the Chapter 11 Case) with respect to any such Claim or Interest, and (b) respecting Section 11.07 of the Plan, the Estate and the Liquidation Trust, from and after the Effective Date, from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Estate or the Liquidation Trust or any of their property; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Estate or the Liquidation Trust or any of their property; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Estate or the Liquidation Trust or any of their property; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Estate or the Liquidation Trust or any of their property, except as contemplated or Allowed by the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (vi) prosecuting or otherwise asserting (A) any Claim or Interest, including any right, Claim or Cause of Action, released pursuant to the Plan, (B) any form of objection to any Claim that is Allowed by the Plan, or (C) asserting Avoidance Actions against any holder of a Claim that is Allowed by the Plan. Additionally, unless otherwise explicitly stated in the Plan, the injunction contemplated by this Section shall prohibit the

**assertion against the Liquidation Trust of all Claims or Interests, if any, related to the Debtor (including Aereo, Inc. before the commencement of the Chapter 11 Case).**

## I. RETENTION OF JURISDICTION

The Plan provides for continuing jurisdiction of the Bankruptcy Court over all matters arising out of or related to the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, without limitation, jurisdiction:

- to the extent not otherwise determined by the Plan, to determine (i) the allowance, classification, or priority of Claims upon objection by any party in interest entitled to file an objection, or (ii) the validity, extent, priority and nonavoidability of consensual and nonconsensual Liens and other encumbrances against Assets, Estate Causes of Action or property of the Estate or the Liquidation Trust;

- to issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Entity or Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Entity or Person;

- to protect the Assets or property of the Estate and/or the Liquidation Trust, including Estate Causes of Action, from Claims against, or interference with, such Assets or property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning Liens or other encumbrances on any Assets of the Estate, including without limitation to prohibit or preclude any injunctions or similar relief as to the Successful Bidder solely on account of such Successful Bidder's purchase of Assets of the Estate, or Persons released under and by the Plan;

- to determine any and all applications for allowance of Fee Claims;

- to determine any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims or any Request for Payment of Claims, including both fees and expenses, entitled to priority under Bankruptcy Code Section 507(a);

- to resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of Distributions hereunder, including any matters arising in connection with Article IX of the Plan;

- to determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases or determine any issues

arising from the deemed rejection of executory contracts and unexpired leases set forth in Article VII of the Plan;

- except as otherwise provided in the Plan, to determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of the Chapter 11 Case, including any remands;

- to enter a Final Order closing the Chapter 11 Case of Aereo, Inc.;

- to modify the Plan under Bankruptcy Code Section 1127, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

- to issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity or Person, to the full extent authorized by the Bankruptcy Code;

- to determine any tax liability pursuant to Bankruptcy Code Section 505;

- to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

- to resolve any disputes concerning whether an Entity or Person had sufficient notice of the Chapter 11 Case, the applicable Bar Date, the Disclosure Statement Hearing or the Confirmation Hearing or for any other purpose;

- to resolve any dispute or matter arising under or in connection with any order of the Bankruptcy Court entered in the Chapter 11 Case;

- to authorize, as may be necessary or appropriate, Sales of Assets as necessary or desirable and resolve objections, if any, to such Sales;

- to resolve any disputes concerning any release, injunction, exculpation or other waiver or protection provided in the Plan;

- to approve, if necessary, any Distributions, or objections thereto, under the Plan;

- to approve, as may be necessary or appropriate, any Claims settlement entered into or offset exercised by the Liquidation Trust;

- to resolve any dispute or matter arising under or in connection with the Liquidation Trust;

- to order the production of documents, disclosures, or information, or to appear for deposition demanded pursuant to Bankruptcy Rule 2004; and

- to determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code, to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of (a) any request for payment or proof of any Administrative Claim, (b) any Disputed Claims or Interests and (c) any and all objections to the allowance or priority of any Claim or Interest.

## J.    NO ADMISSIONS, REVOCATION OF THE PLAN, SEVERABILITY OF PLAN PROVISIONS, ENTIRE AGREEMENT

The Debtor may, with the consent of the Creditors' Committee, modify the Plan at any time prior to the entry of the Confirmation Order, provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements.

After the entry of the Confirmation Order and before substantial consummation of the Plan, the Debtor may, with consent of the Creditors' Committee, modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (i) the Debtor obtain approval of the Bankruptcy Court for such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment or Distributions of any Class of Claims or Interests under the Plan.

After the Confirmation Date and before substantial consummation of the Plan, the Debtor may, with the consent of the Creditors' Committee, not to be unreasonably withheld or delayed, modify the Plan in a way that materially or adversely affects the interests, rights, treatment or Distributions of a Class of Claims or Interests, provided that: (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtor obtains Bankruptcy Court approval for such modification, after notice and a hearing; (iii) the Plan as modified complies with the Bankruptcy Code and Bankruptcy Rules; and (iv) the Debtor complies with Bankruptcy Code Section 1125 with respect to the Plan as modified.

The Plan (together with the Liquidation Trust Agreement) and the Confirmation Order set forth the entire agreement and undertaking relating to the subject matter thereof and supersede all prior discussions and documents. The Debtor's Estate shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter thereof, other than as expressly provided for therein or in the Confirmation Order.

## K.    EXEMPTION FROM CERTAIN TRANSFER TAXES

Pursuant to Bankruptcy Code Section 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation or release of any other Lien, mortgage, deed of trust or other security interest, or (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with the Plan or the Sale of any Assets of the Estate, any deeds, releases, bills of sale or assignments executed in connection with the Plan or the Confirmation

Order, shall not be subject to any stamp tax, transfer tax, intangible tax, recording fee, or similar tax, charge or expense to the fullest extent provided for under Bankruptcy Code Section 1146(a).

## L.    SUCCESSORS AND ASSIGNS

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

## V.    CONFIRMATION AND CONSUMMATION OF THE PLAN

## A.    SOLICITATION OF VOTES

This Disclosure Statement, including all appendices hereto, together with the related materials included herewith, are being furnished to the holders of General Unsecured Claims in Class 4 and Claims Subject to Subordination in Class 5, which Classes are the only Classes entitled to vote on the Plan.  The process by which the Debtor will solicit votes on the Plan is summarized in Article IX of this Disclosure Statement.  All parties who are entitled to vote should read Article IX carefully to ensure that votes are properly and timely submitted such that they are counted as votes to accept or reject the Plan.

## B.    CONFIRMATION PROCEDURES

Bankruptcy Code Section 1128(a) requires the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of a plan of liquidation.  The Bankruptcy Court has scheduled the Confirmation Hearing for confirmation of the Plan to commence on May 19, 2015 at 10:00 a.m. (Prevailing Eastern Time) before the Honorable Sean H. Lane, United States Bankruptcy Judge, One Bowling Green, Room 708, New York, New York, 10004.  Notice of the Confirmation Hearing will be provided to all known creditors and equity holders or their representatives.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned or continued date made at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.  **The Bankruptcy Court has directed that objections, if any, to the confirmation of the Plan be served on or before May 8, 2015 at 4:00 p.m. (Prevailing Eastern Time) in the manner described in the Notice accompanying this Disclosure Statement.**

Bankruptcy Code Section 1128(b) provides that any party in interest may object to confirmation of a plan.  Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objecting party, the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtor's Estate, the basis for the objection and the specific grounds therefor, and must be filed with the Bankruptcy Court, together with proof of service thereof, and served upon (i) the United States Trustee; (ii) counsel to the Creditors' Committee, (iii) the Securities and Exchange Commission, (iv) all persons or entities listed in the Debtor's Schedules, (v) all parties who have filed a proof of claim against the Debtor (including the moving Broadcasters), (vi) all governmental entities listed in the Debtor's creditor matrix, (vii) all parties to Executory Contracts and Unexpired Leases with the Debtor, (viii) all parties who have requested notice in this Chapter 11 Case pursuant to Bankruptcy Rule 2002, and (ix) such other parties as the Bankruptcy Court may

order, so as to be actually received no later than the date and time designated in the notice of the Confirmation Hearing.

Rule 9014 of the Federal Rules of Bankruptcy Procedure governs objections to confirmation of the Plan. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

## C.      STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

### 1.      General Requirements

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Bankruptcy Code Section 1129(a) have been satisfied with respect to the Plan. The Debtor believes that: (i) the Plan satisfies or will satisfy all of the statutory requirements of Chapter 11 of the Bankruptcy Code; (ii) the Debtor has complied or will have complied with all of the requirements of Chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.

### 2.      Best Interests Test

[To Be Provided]

### 3.      Feasibility

Bankruptcy Code Section 1129(a)(11) requires that the Plan is able to achieve its objectives, in that it is not likely to be followed by liquidation, or the need for further financial reorganization, of the debtor, unless such liquidation or reorganization is proposed in the plan. Since the Plan proposes liquidation, there are no impediments to achieving a liquidation, and the Liquidation Trust will have sufficient Assets to make the Distributions required by the Plan, the Plan is therefore feasible. Section 1129(a)(11) also requires that the Debtor be able to perform its obligations under the Plan. For purposes of determining whether the Plan meets this requirement, the Debtor analyzed its ability to meet its obligations under the Plan. The Debtor believes that it has adequate funding to be able to meet its obligations under the Plan.

### 4.      Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan either (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; or (b) cures any default, reinstates the original terms of such obligation and otherwise leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest.

Bankruptcy Code Section 1126(c) defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in

number of claims in that class, but for that purpose counts only those creditors who actually vote to accept or to reject the plan.  Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance.

Claims in Classes 1, 2 and 3 are Unimpaired under the Plan and the holders of Claims in such Classes are deemed to accept the Plan.  Claims in Classes 4 and 5 are Impaired under the Plan, and the holders of Claims in such Classes are entitled to vote on the Plan.  Interests in Class 6 are Impaired under the Plan and the holders of Interests in such Class are not expected to receive any recovery under the Plan and are thus deemed to reject the Plan.

The Debtor will request confirmation of the Plan, as it may be modified from time to time, under Bankruptcy Code Section 1129(b) as more fully described below with respect to Class 6 that is deemed to reject the Plan and any of Classes 4 or 5 that vote against the Plan.

### 5.  **Confirmation Without Acceptance By All Impaired Classes**

Bankruptcy Code Section 1129(b) allows a bankruptcy court to confirm a plan even if less than all impaired classes entitled to vote on the plan have accepted it, provided that the plan has been accepted by at least one impaired class of claims.  Pursuant to Bankruptcy Code Section 1129(b), notwithstanding an impaired class's rejection or deemed rejection of the Plan, the plan can be confirmed, at the debtor's request, in a procedure commonly known as "cram down," so long as the plan does not "discriminate unfairly" (as discussed below) and is "fair and equitable" (as discussed below) with respect to each class of claims or equity interests that is impaired under, and has not accepted, the Plan.

(a)     No Unfair Discrimination

The "unfair discrimination" test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under a plan.  The test does not require that the treatment be the same or equivalent, but that such treatment not be "unfair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (e.g., classes of the same legal character).  Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly, and, accordingly, a plan could treat two classes of unsecured creditors in a materially different manner without unfairly discriminating against either class.  This test only applies to classes that reject or that are deemed to have rejected a plan.

(b)     Fair And Equitable Test

The "fair and equitable" test applies to classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class.  This test only applies to classes that reject or that are deemed to have rejected the plan.  Under this Plan, only Unsecured Claims and Interests have the potential to reject or be deemed to reject the Plan.  As to the rejecting class, the test sets different standards depending on the type of claims or equity interests in such class:

- <u>Unsecured Claims</u>: The condition that a plan be "fair and equitable" to a non-accepting class of unsecured claims includes the following requirement that either:

  - the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

  - the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

- <u>Equity Interests</u>: The condition that a plan be "fair and equitable" to a non-accepting class of equity interests includes the requirements that either:

  - the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

  - the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

The treatment of Unsecured Claims and Interests under the Plan satisfies the "fair and equitable" test. Distributions are being made under the Plan only in accordance with legal priorities. General Unsecured Claims in Class 4 are entitled to Available Cash only after higher priority Claims are paid in full. Holders of Claims Subject to Subordination in Class 5 are entitled to any remaining Available Cash only after higher priority Claims in Class 4 are paid in full. To the extent a Claim Subject to Subordination in Class 5 is determined by Final Order not to be subordinated, such Claim in Class 5 shall be entitled to the same Pro Rata treatment and Distributions afforded to General Unsecured Claims in Class 4. Holders of Aereo Interests will receive nothing unless all higher priority Claims and all Claims in Classes 4 and 5 are paid in full, with post-petition interest.

6.     **Consummation Of The Plan**

The Plan will be consummated on the Effective Date. If the Bankruptcy Court agrees to waive the stay under Bankruptcy Rule 3020(e), the Debtor expects consummation of the Plan to occur within several days after Confirmation of the Plan. If the stay is not waived, consummation should occur within several days after the fourteen-day stay terminates. For a more detailed discussion of the conditions precedent to the consummation of the Plan, see Article X of the Plan.

## VI.    RISK FACTORS ASSOCIATED WITH THE PLAN

> PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS THAT ARE ENTITLED TO VOTE SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT. ALTHOUGH THESE RISK FACTORS ARE MANY, THESE FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### A.    CERTAIN BANKRUPTCY CONSIDERATIONS

#### 1.    The Debtor May Amend, And Other Parties In Interest May Object To, The Amount, Classification And Treatment Of A Claim

Except as otherwise provided in the Plan, and in consultation with the Creditors' Committee, the Debtor reserves the right to object to the amount and classification, and to amend or modify the treatment, of any Claim or Interest under the Plan. In certain circumstances before the Effective Date, other parties in interest may also object to the amount, classification and treatment of any Claim or Interest under the Plan. Any holder of a Claim that is or may become subject to an objection may not receive its expected share of the estimated Distributions described in this Disclosure Statement or the Plan.

#### 2.    The Debtor May Not Be Able To Secure Confirmation Of The Plan

Even if all holders of Claims in the Voting Classes vote to accept the Plan, the Plan might not be confirmed by the Bankruptcy Court. Bankruptcy Code Section 1129 sets forth the requirements for confirmation and requires, among other things, that the confirmation of a plan is not likely to be followed by the liquidation or the need for further financial reorganization unless, as here, such liquidation or reorganization is proposed in the plan, and that the value of distributions to dissenting creditors and stockholders not be less than the value of distributions such creditors and stockholders would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan satisfies all the requirements for confirmation of a plan under the Bankruptcy Code. There can be no assurance, however, that the Bankruptcy Court will also conclude that the requirements for confirmation of the Plan have been satisfied.

Confirmation of the Plan is also subject to certain conditions as described in Article X of the Plan. If the conditions are not satisfied, the Plan cannot be confirmed.

#### 3.    The Debtor May Fail To Meet All Conditions Precedent To Effectiveness Of The Plan

Although the Debtor believes that the Effective Date may occur very shortly after the Confirmation Date, there can be no assurance as to such timing (or that the Effective Date even occurs). Moreover, if the conditions precedent to the Effective Date, including the entry of a

Confirmation Order, execution and delivery of certain documents, and receipt of all necessary authorizations, have not occurred within a reasonable period of time, the Plan may be vacated by the Bankruptcy Court.

4. **Distributions May Be Delayed Or May Be Less Than Anticipated**

A substantial amount of time may elapse between the Effective Date and the receipt of Distributions under the Plan for holders of certain Claims and, if applicable, Interests, because of the time required to achieve recovery of certain Assets and to come to a final conclusion as to the appropriate amount and/or priority of various Claims filed against the Debtor's Estate, including, without limitation, the Claims Subject to Subordination in Class 5. While sufficient funds are available to make certain Initial Distributions, to the extent that Distributions under the Plan are derived, in whole or in part, from recoveries on the Estate Causes of Action, including Avoidance Actions prosecuted by the Liquidation Trustee, there can be no assurance that any such Estate Causes of Action will produce recoveries that will provide sufficient funds for such Distributions to be made by the Liquidation Trust.

Actual recoveries under the Plan depend upon the final Allowed amount of Claims. Actual recoveries may be substantially different from the estimates in this Disclosure Statement as a result of disallowances in whole or part of the Face Amounts of Proofs of Claim or the allowance of amounts for Proofs of Claim filed as unliquidated and/or contingent, including in either case the disallowance or allowance of Proofs of Claim that may be subject to a later Bar Date.

5. **Certain Risks Arise In Connection With The Liquidation Trust**

There are tax and security risks associated with the use of a Liquidation Trust. Although the Liquidation Trust is being organized and structured in a manner believed to be compliant with applicable tax laws and regulations and to minimize taxes where lawfully permissible, there is no assurance that the taxing authorities will agree with the assumptions being made in this regard as to the structure, organization and status of the Liquidation Trust.

In addition, although the Liquidation Trust is intended to be established in a manner that does not constitute the interests in the Liquidation Trust as securities or require registration under or compliance with security laws and regulations, regulators could disagree with or dispute the applicability of security laws. The potential consequences could include challenges to the validity of the Liquidation Trust or, at a minimum, increased compliance cost and greater expense to the operation of the Liquidation Trust.

There is a risk that the assignment or transfer of the Estate Causes of Action, claims and privileges to the Liquidation Trust as contemplated by the Plan could be subject to challenge that, if successful, could nullify the transfer of the Estate Causes of Action, in whole or in part, and result in the Liquidation Trustee being unable to pursue those Estate Causes of Action or assert claims or privileges in connection therewith.

The Plan includes provisions that nothing in its provisions or the establishment of the Liquidation Trust and the transfer of Estate Causes of Action to the Liquidation Trust is intended to create or give rise to any claim of preclusion or estoppel in defense of any Estate Causes of

Action. Nevertheless, there is a risk that despite such intention and such provisions, there could be a determination that some act or event occurring in connection with the Plan, its implementation and the establishment and operation of the Liquidation Trust will be deemed to create such defenses.

There is a risk that the term of the Liquidation Trust will be inadequate to complete the full pursuit and resolution of the Estate Causes of Action.

The Plan and provisions regarding the establishment and operation of the Liquidation Trust require the selection of a Liquidation Trustee that is a Person designated by the Debtor. There is a risk, despite every effort to select a Person who is qualified to perform the tasks of the Liquidation Trustee, that the Person selected will be less effective than what might have been achieved by continued proceeding in the Chapter 11 Case.

## B.    DISCLOSURE STATEMENT DISCLAIMER

### 1.    The Information Contained Herein Is For Soliciting Votes Only

The information contained in this Disclosure Statement is for purposes of soliciting votes on the Plan and may not be relied upon for any other purposes.

### 2.    This Disclosure Statement Was Not Approved By The SEC

This Disclosure Statement has not been filed with the SEC or any state regulatory authority. Neither the SEC nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits or the statements contained herein, and any representation to the contrary is unlawful.

### 3.    The Financial Information Contained In This Disclosure Statement Is Not Audited

The financial information contained in this Disclosure Statement has not been audited. In preparing this Disclosure Statement, the Debtor relied on financial data derived from its books and records that was available at the time of such preparation. Although the Debtor has used its reasonable good faith efforts to ensure the accuracy of the financial information provided in this Disclosure Statement, and while the Debtor believes that such financial information fairly reflects its financial condition, the Debtor is unable to warrant or represent that the financial information contained herein and attached hereto is without material inaccuracies.

### 4.    This Disclosure Statement Contains Forward Looking Statements

This Disclosure Statement contains "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward looking terminology such as "may," "expect," "believe," "predicts," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from

those referred to in such forward looking statements. The liquidation analysis, Distribution projections and other information contained herein and attached hereto are estimates only, and the timing and amount of actual Distributions to holders of Allowed Claims and Interests may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates or recovery projections may or may not turn out to be accurate.

### 5. No Legal Or Tax Advice Is Provided To You By This Disclosure Statement

This Disclosure Statement is not legal advice to you. The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each holder of a Claim or an Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

### 6. No Admissions Are Made By This Disclosure Statement

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtor) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, the holders of Claims or Interests or any other parties in interest.

### 7. No Reliance Should Be Placed On Any Failure To Identify Causes Of Action Or Projected Objections

No reliance should be placed on the fact that a particular Cause of Action or projected objection to a particular Claim or Interest is, or is not, identified in this Disclosure Statement. Except as otherwise provided in the Plan, the Confirmation Order or a Final Order, the Debtor, before the Effective Date, or the Liquidation Trust, after the Effective Date, may seek to investigate, file and prosecute any Estate Causes of Action or objections to Claims and Interests irrespective of whether the Disclosure Statement identifies such Estate Causes of Action or objections.

### 8. Nothing Herein Constitutes A Waiver Of Any Right To Object To Claims Or Recover Transfers And Assets

The vote by a holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Debtor, the Liquidation Trust or any party in interest, as the case may be, to object to that holder's Allowed Claim, or recover any preferential, fraudulent or other voidable transfer or Assets made to such holder, regardless of whether any objections or Causes of Action are specifically or generally identified herein.

### 9. The Information Used Herein Was Provided By The Debtor And Was Relied Upon By The Debtor's Professionals

Counsel to and other advisors retained by the Debtor have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Debtor have performed certain limited

due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

10.    **The Potential Exists For Material Inaccuracies And The Debtor Has No Duty To Update**

The statements contained in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Debtor has used its reasonable good faith efforts to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtor nonetheless cannot, and does not, confirm the current accuracy of all statements appearing in this Disclosure Statement. Further, although the Debtor may subsequently update the information in this Disclosure Statement, the Debtor has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

11.    **No Representations Made Outside The Disclosure Statement Are Authorized**

No representations concerning or relating to the Debtor, the Chapter 11 Case or the Plan are authorized by the Debtor, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by you in arriving at your decision. You should promptly report unauthorized representations or inducements to the counsel to the Debtor.

## VII.    ALTERNATIVES TO THE PLAN

The Debtor believes that the Plan provides holders of Claims with the greatest possible value and earliest possible returns that can be realized on their respective Claims. The Debtor also believes that the Plan is fair and reasonable in its treatment of all constituencies. The alternatives to confirmation of the Plan are: (i) confirmation of an alternative plan submitted by a party in interest in the Chapter 11 Case; (ii) liquidation of the Assets, if necessary, and distribution under chapter 7 of the Bankruptcy Code; and (iii) dismissal of the Chapter 11 Case. As discussed below, the Debtor believes that the alternatives will be less beneficial to holders of Claims than if the Plan is consummated.

## A.    ALTERNATIVE PLAN

If the Plan is not confirmed, the Debtor or another party in interest in the Chapter 11 Case will have an opportunity to file another plan, but it does not appear that alternative plans are likely to succeed. The Debtor believes that no other plan would provide holders of Claims and Interests with a greater value or earlier recovery than they would be entitled to receive under the Plan. The Debtor has been engaged in extensive negotiations with the Creditors' Committee, and the Plan provides for Distributions to holders of Claims and Interests in a "waterfall" based on the relative seniority and legal priorities of the Classes. The Debtor has no reason to believe that any further negotiations regarding a plan of liquidation would lead to any alternative plan that would provide greater recoveries that could be confirmed within a reasonable period of time and without protracted litigation and additional administrative expense.

## B.    CHAPTER 7 LIQUIDATION

A chapter 7 liquidation of the Debtor could be carried out with the anticipated results described above.  For the reasons set forth above, the Debtor believes that the Distributions to holders of Claims under the Plan will be greater and earlier than the Distributions that might result after conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

## C.    DISMISSAL

Upon dismissal of the Chapter 11 Case, the protections of the Bankruptcy Code would disappear, thereby resulting in costly, uncontrolled and protracted litigation in various jurisdictions among and between the parties in interest.  Therefore, the Debtor believes that dismissal of the Chapter 11 Case is not a viable alternative to Confirmation of the Plan.

## VIII.   CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS

## A.    IN GENERAL

The following discussion summarizes certain material U.S. federal income tax consequences expected to result from the consummation of the Plan.  This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "IRC"), applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "IRS"), all as in effect as of the date hereof.  There can be no assurance that the IRS will not take a contrary view, no ruling from the IRS has been or will be sought nor will any counsel provide a legal opinion as to any of the expected U.S. federal income tax consequences set forth below.  No assurance can be given that the IRS or another authority would not assert, or that a court would not sustain, a different position from any discussed herein.

Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein.  Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to the beneficial owners of Claims (each a "Holder" and collectively, the "Holders"), the Liquidation Trust, or the Debtor.  It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the U.S. federal income tax consequences described herein.

The following summary is for general information only.  The tax treatment of a Holder may vary depending upon such Holder's particular situation.  This summary does not address all of the tax consequences that may be relevant to a Holder, including any alternative minimum tax consequences, and does not address the tax consequences to a Holder that has made an agreement to resolve its claim in a manner not explicitly provided for in the Plan.  This summary also does not address the U.S. federal income tax consequences to persons not entitled to vote on the Plan or Holders subject to special treatment under the U.S. federal income tax laws, such as brokers or dealers in securities or currencies, certain securities traders, tax-exempt entities, real estate investment trusts, regulated investment companies, financial institutions, insurance companies, foreign persons, partnerships and other pass-through entities, Holders that hold Claims as a position in a "straddle" or as part of a "synthetic security," "hedging," "conversion"

or other integrated transaction, Holders that have a "functional currency" other than the United States dollar and Holders that have acquired Claims in connection with the performance of services. Further, this summary does not address any aspects of state taxation, local taxation, non-U.S. taxation, or U.S. federal taxation other than income taxation.

The tax treatment of Holders and the character, amount and timing of income, gain or loss recognized as a consequence of the Plan and the Distributions provided for by the Plan may vary, depending upon, among other things: (i) whether the Holder receives Distributions under the Plan in more than one taxable year; (ii) whether the Holder falls into any special class of taxpayers, such as those that are excluded from this discussion as noted above; (iii) the manner in which the Holder acquired the Claim; (iv) the length of time that the Claim has been held; (v) whether the Claim was acquired at a discount; (vi) whether the Holder has taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or prior years; (vii) whether the Holder has previously included in income any amount with respect to the Claim; (viii) the method of tax accounting of the Holder; and (ix) whether the Claim is a "capital asset" within the meaning of Section 1221 of the IRC. Therefore, each Holder should consult its tax advisor for information that may be relevant to its particular situation and circumstances, and the particular tax consequences to such Holder of the transactions contemplated by the Plan.

**THE FOLLOWING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN U.S. FEDERAL TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FOLLOWING DISCUSSION IS FOR INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, EACH HOLDER IS STRONGLY URGED TO CONSULT ITS TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL, AND APPLICABLE NON-U.S. INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.**

## B.    U.S. FEDERAL INCOME TAX CONSEQUENCES TO THE DEBTOR

If there is a discharge of indebtedness by a debtor, such discharge would give rise to cancellation of debt ("COD") income, which generally must be included in the debtor's income. However, the IRC permits a debtor to exclude its COD income from gross income if the discharge occurs in a Chapter 11 case. Thus, although the Debtor may realize COD income as a result of the satisfaction of the Claims, the Debtor should not be required to recognize such COD income.

The 363 Sale may trigger income or gain recognition by the Debtor. However, the Debtor's NOLs and capital losses would generally offset any such income or gain (with any capital losses available to only offset capital gains). Subject to the discussion of U.S. federal alternative minimum tax in the following paragraph, the Debtor does not anticipate owing U.S. federal income tax with respect to taxable years ending after the Petition Date. If, however, the IRS were to prevail in assessing U.S. federal income tax for any of these years or for tax years ending prior to the Petition Date, payments of such taxes could reduce the amounts otherwise available for distribution under the Plan. The Debtor does not expect to incur any tax liability from the transfer of the Liquidation Trust Assets to the Liquidation Trust.

A corporation may incur alternative minimum tax ("AMT") liability even where a NOL is generated for regular corporate income tax purposes or where NOL carryovers and certain other tax attributes are sufficient to eliminate taxable income as computed under the regular corporate income tax. In general, the AMT is imposed on a corporation's alternative minimum taxable income at a twenty percent (20%) rate to the extent such tax exceeds the corporation's regular U.S. federal income tax. For purposes of computing taxable income for AMT purposes, certain tax deductions and other beneficial allowances allowed in computing a corporation's regular U.S. federal income tax are modified or eliminated. In particular, even though a corporation otherwise might be able to offset all of its taxable income for regular tax purposes by available NOL carryforwards, a portion of a corporation's taxable income for AMT purposes may not be offset by available NOL carryforwards (as computed for AMT purposes). Although it is possible that the Debtor could be liable for the AMT, at this time the Debtor does not expect to incur a material amount of AMT as a result of the discharge of indebtedness or the 363 Sale pursuant to the consummation of the Plan.

## C. U.S. FEDERAL INCOME TAX CONSEQUENCES TO HOLDERS OF CLAIMS

Each Holder will generally recognize gain or loss in its taxable year that includes the Effective Date in an amount equal to the difference between the amount realized or deemed realized in respect of its Claim and its adjusted tax basis in such Claim. The amount realized for this purpose should generally equal the amount of cash and the fair market value of any other Assets (net of any applicable liabilities) received or deemed received for U.S federal income tax purposes under the Plan in respect of such Holder's Claim. Although not free from doubt, Holders of Allowed Claims that are Beneficiaries of the Liquidation Trust as of the Effective Date should be treated as receiving from the Debtor their respective shares of the Liquidation Trust Assets in satisfaction or partial satisfaction, as the case may be, of their Allowed Claims, and simultaneously transferring such Assets (net of any applicable liabilities) to the Liquidation Trust. Additionally, Holders that are Beneficiaries of the Liquidation Trust should generally recognize their allocable share of income, gain, loss and deductions recognized by the Liquidation Trust on an annual basis, as discussed below.

Because a Holder's ultimate share of the Debtor's Assets that it will receive with respect to its Allowed Class 4 or Class 5 Claim will not be determinable on the Effective Date due to, among other things, the value of the Assets at the time of actual receipt and the amount of the Allowed Claims not being ascertainable on the Effective Date, such Holder should recognize additional or offsetting gain or loss if, and to the extent that, the aggregate amount of cash and fair market value of the Assets ultimately received by such Holder (including any Assets received from the Liquidation Trust) is greater than or less than the amount used in initially determining gain or loss in accordance with the procedures described in the preceding paragraph. It is unclear when a Holder of an Allowed Class 4 or Class 5 Claim should recognize, as an additional amount received for purposes of computing gain or loss, any amount received by such Holder that is attributable to the disallowance of a Disputed Claim.

The character of any gain or loss as capital gain or loss or ordinary income or loss and, in the case of capital gain or loss, as short-term or long-term, will depend on a number of factors, including: (i) the nature and origin of the Claim; (ii) the tax status of the Holder of the Claim; (iii) whether the Claim has been held for more than one year; (iv) the extent to which the Holder

previously claimed a loss or bad debt deduction with respect to the Claim; and (v) whether the Claim is indebtedness that was acquired at a market discount. A Holder that purchased a debt Claim from a prior holder of such indebtedness at a market discount may be subject to the market discount rules of the IRC. Under those rules (subject to a de minimis exception), assuming that such Holder has made no election to accrue the market discount and include it in income on a current basis, any gain recognized on the exchange of such Claim generally would be characterized as ordinary income to the extent of the accrued market discount on such Claim as of the date of the exchange.

It is possible that the IRS may assert that any loss should not be recognizable by a Holder until the Liquidation Trustee makes its final distribution of the Assets of the Liquidation Trust (other than in the case of a Holder of an Allowed Class 4 Claim). Holders should consult their tax advisors regarding the possibility that the recognition of gain or loss may be deferred until the final distribution of the Assets of the Liquidation Trust and the Assets held in the Disputed Claims Reserve. Special rules apply to situations where the consideration to be received with respect to a Claim is contingent and some or all of the proceeds may be received in a tax year after the year of the disposition. Holders should consult their tax advisors regarding the potential application of the installment sale rules to their particular situations, including the advisability of electing out of the installment method where it may apply.

The Plan provides that Holders of Allowed Class 6 Interests are not expected to receive any recovery under the Plan. As such, a Holder of an Allowed Class 6 Interest will generally recognize loss in an amount equal to such Holder's adjusted tax basis in the Allowed Class 6 Interest. Each Holder of an Allowed Class 6 Interest should consult its tax advisor regarding the deductibility of tax losses.

The Plan provides that, to the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest. Each Holder should consult its tax advisor regarding the determination of the amount of consideration received under the Plan that is attributable to interest (if any).

## D.  U.S. FEDERAL INCOME TAX TREATMENT OF THE LIQUIDATION TRUST

It is intended that the Liquidation Trust will be treated as one or more "grantor trusts" for U.S. federal income tax purposes. In general, a grantor trust is not a separate taxable entity. The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an advanced ruling as to the grantor trust status of a liquidating trust under a Chapter 11 plan. Although the Debtor is not requesting a private letter ruling regarding the status of the Liquidation Trust as a grantor trust, consistent with the requirements of Revenue Procedure 94-45, the Liquidation Trust Agreement requires all relevant parties to treat, for federal income tax purposes, the transfer of the Liquidation Trust Assets to the Liquidation Trust as (i) a transfer of such Liquidation Trust Assets (net of any applicable liabilities) to the Beneficiaries of the Liquidation Trust (to the extent of the value of their respective interests in the applicable Liquidation Trust Assets) followed by (ii) a transfer of such Liquidation Trust Assets (net of any

applicable liabilities) by such Beneficiaries to the Liquidation Trust (to the extent of the value of their respective interests in the applicable Liquidation Trust Assets), with the Beneficiaries being treated as the grantors and owners of the Liquidation Trust.

The Plan and the Liquidation Trust Agreement generally provide that the Beneficiaries of the Liquidation Trust must value the Assets of the Liquidation Trust consistently with the values determined by the Liquidation Trustee for all U.S. federal, state, local and foreign income tax purposes.  As soon as possible after the Effective Date, but in no event later than [thirty (30)] days after the end of the calendar year in which occurs the Effective Date, the Liquidation Trustee, based upon his good faith determination after consultation with his counsel, shall inform the Beneficiaries in writing solely as to his estimate of the value of the Liquidation Trust Assets and the value of such Liquidation Trust Assets that is allocable to Holders of Class 4 and Class 5 Claims.

A grantor trust is treated as a pass-through entity for U.S. federal income tax purposes.  Accordingly, no U.S. federal income tax should be imposed on the deemed transfer of Liquidation Trust Assets by a Holder to the Liquidating Trust.  Further, the Liquidating Trust should not be subject to U.S. federal income tax on the deemed receipt of such Liquidating Trust Assets or on the income earned or gain recognized by the Liquidating Trust with respect to the Liquidating Trust Assets.  Consistent with the treatment of the Liquidation Trust as one or more grantor trusts, the Liquidation Trust Agreement will require each Beneficiary to report on its U.S. federal income tax return its allocable share of the Liquidation Trust's income.  Therefore, a Beneficiary may incur a U.S. federal income tax liability with respect to its allocable share of the income of the Liquidation Trust whether or not the Liquidation Trust has made any Distributions to such Beneficiary.  The character of items of income, gain, deduction, and credit to any Beneficiary and the ability of such Beneficiary to benefit from any deduction or losses will depend on the particular situation of such Beneficiary.

In general, a distribution of underlying Assets from the Liquidation Trust to a Beneficiary will not be taxable to such Beneficiary because such Beneficiaries are already regarded for U.S. federal income tax purposes as owning such assets.  Holders that are Beneficiaries of the Liquidation Trust are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of Distributions from the Liquidation Trust.

The Liquidation Trustee will file with the Service tax returns for the Liquidation Trust as one or more grantor trusts pursuant to Treasury Regulation Section 1.671-4(a) and will also send to each Beneficiary a separate statement setting forth such Beneficiary's share of items of Liquidation Trust income, gain, loss, deduction, or credit.  Each such Beneficiary will be required to report such items on its U.S. federal income tax return.

The discussion above assumes that the Liquidation Trust will be respected as one or more grantor trusts for U.S. federal income tax purposes.  If the IRS were to challenge successfully such classification, the U.S. federal income tax consequences to the Liquidation Trust and the Beneficiaries could differ materially from those discussed herein (including the potential for an entity-level tax to be imposed on all income of the Liquidation Trust).

## E. BACKUP WITHHOLDING AND INFORMATION REPORTING

A Holder of an Allowed Claim may be subject to backup withholding, currently at the rate of 28%, with respect to any "reportable" payments received pursuant to the Plan unless (i) such Holder is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact or (ii) provides a correct taxpayer identification number, certifies as to no loss of exemption from backup withholding and complies with applicable requirements of the backup withholding rules. A Holder who does not provide a correct taxpayer identification number may be subject to penalties imposed by the IRS. Amounts withheld under the backup withholding rules may be credited against a Holder's tax liability, and a Holder may obtain a refund of any excess amounts withheld under the backup holding rules by timely filing the appropriate claim for refund with the IRS.

The Liquidation Trustee will report annually to each Beneficiary, and to the IRS, the Beneficiary's share of any income, gains and losses of the Liquidation Trust during the calendar year to the extent required by law.

Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including certain transactions that result in the taxpayer recognizing a loss in excess of specified thresholds. Each Holder should consult its tax advisor regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations.

THE FOREGOING DISCUSSION OF CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS IS FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. ACCORDINGLY, EACH HOLDER SHOULD CONSULT ITS TAX ADVISOR WITH RESPECT TO THE TAX CONSEQUENCES OF THE PLAN DESCRIBED HEREIN AND THE APPLICATION OF FEDERAL, STATE, LOCAL AND FOREIGN TAX LAWS. NEITHER THE DEBTOR, NOR ITS PROFESSIONALS SHALL HAVE ANY LIABILITY TO ANY PERSON OR HOLDER ARISING FROM OR RELATED TO THE U.S. FEDERAL, STATE, LOCAL OR FOREIGN TAX CONSEQUENCES OF THE PLAN OR THE FOREGOING DISCUSSION.

## IX. SOLICITATION AND VOTING PROCEDURES

## A. PARTIES ENTITLED TO VOTE

In general, a holder of a claim or interest may vote to accept or to reject a plan if (a) the claim or interest is "Allowed," which means generally that no party in interest has objected to such claim or interest and (b) the claim or interest is "impaired" by the plan and entitled to receive a recovery under the plan.

Under Bankruptcy Code Section 1124, a class of claims or interests is deemed to be "impaired" under a plan unless (i) the plan leaves unaltered the legal, equitable and contractual rights to which such claim or interest entitles the holder thereof or (ii) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

If, however, the holder of an impaired claim or interest will not receive or retain any distribution under the plan on account of such claim or interest, the Bankruptcy Code deems such holder to have rejected the plan and, accordingly, holders of such claims and interests do not actually vote on the plan. If a claim or interest is not impaired by the plan, the Bankruptcy Code deems the holder of such claim or interest to have accepted the plan and, accordingly, holders of such claims and interests are not entitled to vote on the plan.

## B.     CLASSES ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN

Holders of Claims in Classes 4 and 5 are entitled to vote to accept or reject the Plan. By operation of law, each unimpaired Class of Claims is deemed to have accepted the Plan and each impaired Class of Claims or Interests that will receive nothing under the Plan is deemed to have rejected the Plan and, therefore, the holders of Claims or Interests in such Classes are not entitled to vote to accept or reject the Plan. Consequently, Classes 1, 2 and 3 are deemed to have accepted the Plan and Class 6 is deemed to have rejected the Plan and, therefore, none of the holders of Claims or Interests in such Classes are entitled to vote to accept or reject the Plan.

## C.     WAIVERS OF DEFECTS, IRREGULARITIES, ETC.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots will be determined by the Voting Agent and the Debtor (in consultation with the Creditors' Committee) in their sole discretion, which determination will be final and binding. As indicated below under "Withdrawal of Ballots; Revocation," effective withdrawals of Ballots must be delivered to the Voting Agent prior to the Voting Deadline. The Debtor, in consultation with the Creditors' Committee, reserves the absolute right to contest the validity of any such withdrawal. The Debtor also reserves the right, in consultation with the Official Creditors' Committee, to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtor or its counsel, be unlawful. The Debtor, in consultation with the Creditors' Committee, further reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. The interpretation (including the Ballot and the respective instructions thereto) by the Voting Agent and the Debtor, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtor (or the Bankruptcy Court) determine. Neither the Debtor nor any other Person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

## D.     WITHDRAWAL OF BALLOTS; REVOCATION

Any party who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Voting Agent at any time prior to the Voting Deadline. To be valid, a notice of withdrawal must (i) contain the description of the Claim(s) to which it relates and the aggregate principal amount

represented by such Claim(s), (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the Claim(s) and possesses the right to withdraw the vote sought to be withdrawn, and (iv) be received by the Voting Agent in a timely manner at Prime Clerk LLC, 830 Third Avenue, 9th Floor, New York, NY 10022. The Debtor intends to consult with the Voting Agent to determine whether any withdrawals of Ballots were received and whether the requisite acceptances of the Plan have been received. As stated above, the Debtor, in consultation with the Creditors' Committee, expressly reserves the absolute right to contest the validity of any such withdrawals of Ballots. Unless otherwise directed by the Bankruptcy Court, a purported notice of withdrawal of Ballots which is not received in a timely manner by the Voting Agent will not be effective to withdraw a previously cast Ballot. Any party who has previously submitted to the Voting Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change his or its vote by submitting to the Voting Agent prior to the Voting Deadline a subsequent properly completed Ballot for acceptance or rejection of the Plan. In the case where more than one timely, properly completed Ballot is received, only the Ballot which bears the latest date will be counted for purposes of determining whether the requisite acceptances have been received.

## E.  FURTHER INFORMATION; ADDITIONAL COPIES

If you have any questions or require further information about the voting procedures for voting your Claim or about the packet of material you received, or if you wish to obtain an additional copy of the Plan, this Disclosure Statement, or any exhibits or appendices to such documents (at your own expense, unless otherwise specifically required by Bankruptcy Rule 3017(d)), please contact the Voting Agent at:

>Prime Clerk LLC
>830 Third Avenue, 9th Floor
>New York, New York 10022
>Phone: 1.212.257.5459

**F.**     **CONCLUSION AND RECOMMENDATION**

        For all of the reasons set forth in this Disclosure Statement, the Debtor believes that confirmation of the Plan is preferable to all other alternatives. Consequently, the Debtor recommends all holders of the Class 4 Claims and the Class 5 Claims vote to ACCEPT the Plan, and complete and return their Ballots so that they will be RECEIVED by Prime Clerk on or before 5:00 p.m. (Prevailing Eastern Time) on May 8, 2015.

Dated: February 27, 2015

Respectfully submitted by,

AEREO, INC.

By:/s/ *Ramon A. Rivera*
    Name: Ramon A. Rivera
    Title:   Chief Financial Officer

William R. Baldiga, Esquire
R. Benjamin Chapman, Esquire
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
(212) 209-4800

*Counsel for the Debtor*
*and Debtor-in-Possession*