William R. Baldiga, Esq.
R. Benjamin Chapman, Esq.
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to the Debtor
and the Debtor-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| AEREO, INC.,[1] | ) |
| | ) Case No. 14-13200 (SHL) |
| Debtor | ) |
| | ) |

## NOTICE OF FILING OF SUPPLEMENTS TO
## AMENDED CHAPTER 11 PLAN OF AEREO, INC.

**PLEASE TAKE NOTICE THAT** on April 24, 2015, Aereo, Inc., the debtor and debtor-in-possession in the above-captioned case (the "Debtor"), filed the Amended Chapter 11 Plan of Aereo, Inc., dated April 24, 2015 [Docket No. 297].

PLEASE TAKE FURTHER NOTICE THAT the Debtor files herewith supplements to the Plan as described below:

1) The proposed Order Confirming the Amended Chapter 11 Plan of Aereo, Inc., attached hereto as Exhibit A;

2) The Liquidation Trust Agreement, attached hereto as Exhibit B.

---

[1]     The last four digits of the Debtor's taxpayer identification number are: 2838.  Aereo, Inc. is a New York corporation.

Dated: June 1, 2015
      New York, New York

Respectfully submitted,

BROWN RUDNICK LLP

 /s/ William R. Baldiga
William R. Baldiga, Esq.
R. Benjamin Chapman, Esq.
7 Times Square
New York, NY  10036
Telephone: (212) 209-4800
 Facsimile: (212) 209-4801

*Counsel to the Debtor and the Debtor-in-Possession*

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| AEREO, INC.,[1] | : | Case No. 14-13200 (SHL) |
| | : | |
| Debtor. | : | |
| | : | |

### ORDER CONFIRMING AMENDED CHAPTER 11 PLAN OF AEREO, INC.

This matter is before the Court for entry of an order (this "Confirmation Order")[2] confirming the *Amended Chapter 11 Plan of Aereo, Inc.* (together with all exhibits thereto and related documents, the "Plan," a copy of which is annexed hereto as **Exhibit A**) dated April 24, 2015 filed by the above captioned debtor and debtor-in-possession (the "Debtor").

On May 8, 2015, the Court approved the *Amended Disclosure Statement for Amended Chapter 11 Plan of Aereo, Inc.* (the "Disclosure Statement"). Based upon this Court's review of (i) the *Declaration of Lawton Bloom in Support of Confirmation of the Amended Chapter 11 Plan of Aereo, Inc.* (the "Confirmation Affidavit") filed on June __, 2015; (ii) the *Declaration of Steven Gordon of Prime Clerk LLC Certifying the Methodology for the Tabulation of Votes On and Results of Voting with Respect to the Amended Plan of Aereo, Inc.* (the "Voting Affidavit") with a "Ballot Tabulation Report" attached thereto as Exhibit A and the "Ballot Exclusion Report" attached thereto as Exhibit B filed on June __, 2015; (iii) the Plan and the Liquidation Trust Agreement attached as Exhibit A to the Plan and filed with the Plan Supplement; (iv) all of the evidence proffered or adduced at, objections filed in connection with and arguments of

---

[1]      The last four digits of the Debtor's taxpayer identification number is: 2838.  Aereo, Inc. is a New York corporation.

[2]      Capitalized terms used herein and not defined shall have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

counsel made at, the Confirmation Hearing (as defined below); and (v) the entire record of this Chapter 11 Case; and after due deliberation thereon and good cause appearing therefore, this Court hereby makes and issues the following findings of fact and conclusions of law.[3]

**THE COURT FINDS AND CONCLUDES**:

A.    <u>Jurisdiction and Venue</u>.    On the Petition Date, the Debtor commenced this Chapter 11 Case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor was and is qualified to be a debtor under Section 109 of the Bankruptcy Code. Venue in the Southern District of New York was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2).  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.    <u>The Plan</u>.  On February 27, 2015, the Debtor filed the *Chapter 11 Plan of Aereo, Inc.*, together with the *Disclosure Statement for Chapter 11 Plan of Aereo, Inc.*  On April 24, 2015, the Debtor filed a *Notice of Filing of Amended Chapter 11 Plan of Aereo, Inc.* and contemporaneously filed a comparison document marked to show changes from the version of the Plan filed on February 27, 2015.  Furthermore, on April 24, 2105, the Debtor filed the *Notice of Filing of Amended Disclosure Statement for Amended Chapter 11 Plan of Aereo, Inc.* and contemporaneously filed a comparison document marked to show changes from the version of the Disclosure Statement filed on February 27, 2015.  The Disclosure Statement as approved by

---

[3]    This Confirmation Order constitutes this Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable by Bankruptcy Rules 7052 and 9014.  Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

the Court related to the Plan, which is the subject of this Confirmation Order and was the subject of solicitation of votes under Section 1126 of the Bankruptcy Code.

C.    <u>Disclosure Statement Order</u>.    On May 8, 2015, this Court entered its *Order (I) Approving Amended Disclosure Statement, (II) Determining Dates, Procedures and Forms Applicable to Solicitation Process, (III) Establishing Vote Tabulation Procedures, and (IV) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of Amended Plan* (the "<u>Disclosure Statement Order</u>").    The Disclosure Statement Order, *inter alia*, (i) set June 8, 2015 at 2:00 p.m. (prevailing Eastern time), as the date for the commencement of the hearing to consider confirmation of the Plan (the "<u>Confirmation Hearing</u>"); (ii) approved the form and method of notice of the Confirmation Hearing; and (iii) established certain procedures for soliciting and tabulating votes with respect to the Plan.    As evidenced in the Voting Affidavit, the Debtor complied with the service requirements and procedures approved in the Disclosure Statement Order and served (a) to those holders, as of the Voting Record Date (as defined in the Disclosure Statement Order), of General Unsecured Claims in Class 4 that are entitled to vote on the Plan, as described in the Disclosure Statement Order (the "<u>Voting Class</u>") the Solicitation Package (as defined in the Disclosure Statement Order; (b) to the Disputed Claimants the Notice of Disputed Claim Status and the Disputed Claimant Package (as those terms are defined in the Disclosure Statement Order); (c) to the Unimpaired Holders the Notice of Non-Voting Status (as those terms are defined in the Disclosure Statement Order); and (d) to the Deemed Rejecting Holders the Notice of Deemed Rejecting Status (as those terms are defined in the Disclosure Statement Order).

D.    <u>Transmittal and Mailing of Materials; Notice</u>.    Due, adequate and sufficient notice of the Disclosure Statement, Plan and of the Confirmation Hearing, together with all deadlines

for voting on or filing objections to the Plan, was given to all known holders of Claims or Interests. The Disclosure Statement, the Plan, Ballots, Disclosure Statement Order and Confirmation Hearing Notice were transmitted and served in accordance with the Disclosure Statement Order, Bankruptcy Code and the Bankruptcy Rules and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other applicable bar dates and hearings was given in compliance with the Bankruptcy Code, Bankruptcy Rules and the Disclosure Statement Order and no other or further notice is or shall be required.

E.      Voting Report.  On June 1, 2015, Prime Clerk LLC filed with the Court the Voting Affidavit certifying the method and results of the Ballot tabulation of the Voting Class to accept or reject the Plan, the Ballot Tabulation Report certifying results of the Debtor's solicitation of acceptances and rejections of the Plan and the Ballot Exclusion Report noting the Ballots not included in the tabulation and the reasons for such exclusion. Collectively, the Voting Affidavit, the Ballot Tabulation Report and the Ballot Exclusion Report shall be referred to as the "Voting Report."

F.      Solicitation.  Based upon the Voting Report, votes for acceptance and rejection of the Plan were solicited in good faith and complied with Sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code, Bankruptcy Rules and all other applicable rules, laws and regulations.

G.      Ballots.  All procedures used to distribute the Solicitation Packages to the applicable holders of Claims and Interests and to tabulate the Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules,

the local rules of the Bankruptcy Court for the Southern District of New York and all other applicable rules, laws and regulations.  As evidenced by the Voting Report, all Ballots were properly tabulated.

H.    <u>Good Faith Solicitation</u>.  Based on the record before the Court in the Chapter 11 Case, the Debtor and its directors, officers, agents, affiliates, representatives, attorneys and advisors have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Disclosure Statement Order and are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article XI of the Plan.

I.    <u>Impaired Class that Has Voted to Accept the Plan</u>.  As evidenced by the Voting Report, which certified both the method and results of the voting, pursuant to the requirements of Sections 1124 and 1126 of the Bankruptcy Code, Class 4 has voted to accept the Plan.  As such, the single Impaired Class of Claims has voted to accept the Plan.

J.    <u>Classes Deemed to Have Accepted or Rejected the Plan</u>.  The Court finds that, under the Plan, Classes 1, 2 and 3 are unimpaired as that term is defined in Section 1124 of the Bankruptcy Code ("<u>Unimpaired</u>").  Therefore, pursuant to Section 1126(f) of the Bankruptcy Code, Classes 1, 2 and 3 are conclusively presumed to have accepted the Plan.  The Court also finds that, under the Plan, Class 5 is not expected to receive any distributions under the Plan and is deemed to have rejected the Plan pursuant to Bankruptcy Code Section 1126(g).

K.    <u>Compromise and Settlement.</u>    Pursuant to Bankruptcy Rule 9019 and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior

5

to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against the Debtor, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtor. The compromises and settlements are in the best interests of the Debtor, the Estate, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

L.    Exculpation, Releases and Injunctions. Each of (a) the exculpation and limitation of liability provisions of the Plan (the "Exculpation") with respect to (i) the Debtor, (ii) the directors, officers or employees of the Debtor serving at any time during the pendency of the Chapter 11 Case, (iii) the professionals or court-retained agents of the Debtor, (iv) the members and professionals of the Official Creditors' Committee, but only in their capacities as such, (v) the Broadcasters, (vi) each of the Broadcasters' respective current or former officers and directors, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents or other representatives (each solely in its capacity as such) or (vii) any of the successors or assigns of any of the parties identified in the foregoing clauses (i) through (vi); (b) the releases under the Plan by the Debtor (the "Debtor Releases") with respect to (i) any of the present or former directors, officers and employees of the Debtor, (ii) any of the Debtor's professionals and court-retained agents serving during the pendency of the Chapter 11 Case and (iii) any of the successors or assigns of any of the parties identified in the foregoing clauses (i) through (ii); and (c) the injunction provisions under Section 11.09 of the Plan (the "Injunction") with respect to (i) all Entities or Persons that have held, hold or may hold or have asserted, assert or may assert Claims against or Interests in the Estate (including Aereo, Inc. before the commencement of the Chapter 11 Case) with respect to any such Claim or Interest and (ii) with respect to Section 11.09(vi)(A)-(C) of the Plan, the Estate and the Liquidation Trust: (1) are

6

within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (2) are essential means of implementing the Plan pursuant to Bankruptcy Code Section 1123(a)(5); (3) are integral elements of the transactions incorporated into the Plan; (4) confer material benefits on, and are in the best interests of, the Debtor, its Estate and creditors; (5) are important to the overall objectives of the Plan to finally resolve all claims among or against the key parties in interest in the Chapter 11 Case with respect to the Debtor; and (6) are consistent with Bankruptcy Code Sections 105, 1123 and 1129 and other applicable provisions of the Bankruptcy Code.  The record of the Confirmation Hearing and the Chapter 11 Case is sufficient to support the Exculpation, the Debtor Releases and the Injunction provisions contained in the Plan.  Nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.0 Rule 1.8(h)(1) (2009).

Notwithstanding any other provision in this Order, the Plan or the Disclosure Statement, nothing herein or in the Plan or Disclosure Statement shall be construed as releasing or exculpating (i) the Debtor, the Liquidation Trustee (as the Debtor's successor in interest), the Committee or the Broadcasters from complying with the terms of the Broadcaster Settlement Agreement or the Consent Judgments and Permanent Injunctions entered in *American Broadcasting Companies, Inc., et al. v. Aereo, Inc.*, Case No. 12 Civ. 1540 (AJN)(HBP)  and *Community Television of Utah, LLC, et al. v. Aereo, Inc.*, No. 2:13CV910DAK, or (ii) the Debtor or the Estate from any indemnification claims for which proofs of claim were filed by a director or officer of the Debtor who served at any time during the Chapter 11 Case.  For clarity, upon the Effective Date, neither the Committee nor its members or agents shall have any obligation to (i) take any affirmative act in connection with this Chapter 11 Case, or (ii) monitor compliance with, or take any affirmative action with respect to any order or agreement in this Chapter 11

Case or any of the proceedings identified in the Broadcaster Settlement Agreement, including the Consent Judgments and Permanent Injunctions referenced in the preceding sentence.

M.      <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of this Chapter 11 Case maintained by the clerk of the Court and/or its duly appointed agent (the "<u>Docket</u>") including, without limitation, all pleadings and other documents on file, all orders entered and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Chapter 11 Case.

N.      <u>Burden of Proof</u>.  The Debtor, as the Plan proponent, has met its burden of proving the elements of Section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard in this Court.  The Court also finds that the Debtor has satisfied the elements of Section 1129 of the Bankruptcy Code by clear and convincing evidence.

O.      <u>Plan Compliance with Bankruptcy Code -- 11 U.S.C. § 1129(a)(1).</u>  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code Section 1129(a)(1).

(1)      *Proper Classification—11 U.S.C. §§ 1122, 1123(a)(1).*  Aside from Administrative Expense Claims, Fee Claims and Priority Tax Claims, which need not be classified, the Plan designates five Classes of Claims and Interests.  The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan and such Classes do not unfairly discriminate among holders of Claims and Interests.  Thus, the Plan satisfies Bankruptcy Code Sections 1122 and 1123(a)(1).

(2)      *Specified Unimpaired Classes—11 U.S.C. § 1123(a)(2).*  Article V of the Plan specifies that Classes 1, 2 and 3 are unimpaired under the Plan, thereby satisfying Bankruptcy Code Sections 1123(a)(2).

(3)      *Specified Treatment of Impaired Classes—11 U.S.C. § 1123(a)(3).*  Article V of the Plan designates Classes 4 and 5 as impaired and specifies the treatment of Claims and Interests in those Classes, thereby satisfying Bankruptcy Code Section 1123(a)(3).

8

(4)    *No Discrimination—11 U.S.C. § 1123(a)(4).*  The Plan provides for the same treatment by the Debtor for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying Bankruptcy Code Sections 1123(a)(4).

(5)    *Implementation of Plan—11 U.S.C. § 1123(a)(5).*  Article VI of the Plan provides adequate and proper means for its implementation, thereby satisfying Bankruptcy Code Sections 1123(a)(5).

(6)    *Non-Voting Equity Securities—11 U.S.C. § 1123(a)(6).*  Because the Plan contemplates (i) the transfer of substantially all of the Debtor's Assets to the Liquidation Trust and (ii) the dissolution of the Debtor's corporate existence as soon as practicable and/or advisable after the Effective Date, the Plan does not expressly provide for the inclusion of a provision prohibiting the issuance of nonvoting equity securities in the Debtor's charter. Moreover, because the Plan does not provide for the issuance of any securities, the issuance of nonvoting securities is impossible.  Therefore, the Plan satisfies the requirement of Bankruptcy Code Section 1123(a)(6).

(7)    *Selection of Officers and Directors—11 U.S.C. § 1123(a)(7).*  The Debtor will have no directors and officers as of and after the Effective Date.  A Liquidation Trustee will be appointed to serve under the Liquidation Trust Agreement.  The initial Liquidation Trustee has been identified in the Liquidation Trust Agreement, and any successor to the initial Liquidation Trustee selected under the terms of the Liquidation Trust Agreement will be appointed in a manner consistent with the interests of holders of Claims and Interests and with public policy.  Accordingly, the requirements of Bankruptcy Code Section 1123(a)(7) are satisfied.

(8)    *Additional Plan Provisions—11 U.S.C. § 1123(b).*  The Plan's additional provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.  The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

(a)    *Impairment of Claims and Interests and Assumption, Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases—11 U.S.C. § 1123(b)(1)-(2).*  In accordance with Bankruptcy Code Section 1123(b)(l), Article V of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests.  In accordance with Bankruptcy Code Section 1123(b)(2), Article VII of the Plan provides for the rejection of all executory contracts and unexpired leases of the Debtor that have not expired by their own terms as of the Effective Date, except for those executory contracts and unexpired leases that (a) have been assumed, assumed and assigned or rejected pursuant to previous orders of the Bankruptcy Court or (b) are the subject of a pending motion to assume or a motion or permitted notice to assume and assign, in each case filed as of the Effective Date.  The Plan is therefore consistent with Bankruptcy Code Section 1123(b)(1)-(2).

(b)    *Retention, Enforcement and Settlement of Claims Held by the Debtor—11 U.S.C. § 1123(b)(3).*  Pursuant to Bankruptcy Code Section 1123(b)(3),

9

except as otherwise provided in the Plan or this Confirmation Order, after transfer of the Assets to the Liquidation Trust pursuant to Section 6.01 of the Plan, the Liquidation Trustee will have the exclusive rights, powers and interests of the Estate to pursue, settle or abandon any and all Estate Causes of Action, including Avoidance Actions, as the sole representative of the Estate.

Unless otherwise ordered by the Court after notice and a hearing, from and after the Effective Date of the Plan, only the Liquidation Trustee shall be entitled to object to Claims. The Claims/Interest Objection Deadline shall be one hundred eighty (180) days after the Effective Date unless such date is extended by the Bankruptcy Court upon motion of the Liquidation Trustee. No other deadlines by which objections to Claims must be filed have been established in these Chapter 11 Cases. In light of the foregoing, the Plan is consistent with Bankruptcy Code Section 1123(b)(3).

(c)    *Sale of All or Substantially All of the Property of the Estate—11 U.S.C. § 1123(b)(4).* Consistent with Bankruptcy Code Section 1123(b)(4), the Plan effectuates the distribution of the proceeds of the sale of all or substantially all assets of the Estates under the Plan or previous Sale Orders of the Court. The Plan is therefore consistent with Bankruptcy Code Section 1123(b)(4).

(d)    *Modification of the Rights of Holders of Claims—11 U.S.C. § 1123(b)(5).* Article V of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of each Class of Claims and therefore, the Plan is consistent with Bankruptcy Code Section 1123(b)(5).

(e)    *Other Provisions Not Inconsistent with Applicable Provisions of the Bankruptcy Code; Deemed Consolidation—11 U.S.C.§ 1123(b)(6).* The Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code, including: (a) the provisions of Article VI of the Plan regarding the means for executing and implementing the Plan; (b) the provisions of Article VII of the Plan governing the treatment of executory contracts and unexpired leases; (c) the provisions of Article IX of the Plan governing distributions on account of Allowed Claims, particularly as to the timing and calculation of amounts to be distributed; (d) the provisions of Section 11.07 of the Plan regarding the exculpation of the Debtor and certain other parties with respect to acts or omissions relating to, or arising out of, the Chapter 11 Cases; (e) the provisions of Section 11.08 of the Plan regarding the Releases by Debtor; (f) the provisions of Section 11.09 of the Plan regarding the injunction with respect to claims and interests treated under the Plan; and (g) the provisions of Article XII of the Plan regarding retention of jurisdiction by the Court over certain matters after the Effective Date. The Plan is therefore consistent with Bankruptcy Code Section 1123(b)(6).

(9)    *Plan Compliance with Fed. R. Bankr. P. 3016.* The Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b). Further, the Plan and Disclosure Statement describe in specific and conspicuous language all acts to be enjoined and

identify the entities that are subject to the injunction, satisfying Bankruptcy Rule 3016(c) to the extent applicable.

(10)    *Compliance with Fed. R. Bankr. P. 3017*.  The Debtor has given notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d) and the Disclosure Statement Order.  The solicitation materials prescribed by the Disclosure Statement Order were transmitted to the creditors entitled to vote on the Plan in accordance with Bankruptcy Rule 3017(d).

(11)    *Compliance with Fed. R. Bankr. P. 3018*.  The solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018.  The Plan was transmitted to all creditors entitled to vote on the Plan, sufficient time was prescribed for such creditors to accept or reject the Plan and the solicitation materials used and solicitation procedures followed comply with Bankruptcy Code Sections 1125 and 1126, thereby satisfying the requirements of Bankruptcy Rule 3018.

P.    Debtor's Compliance with Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)).    The Debtor, as Plan proponent, has complied with all applicable provisions of the Bankruptcy Code, as required by Section 1129(a)(2) of the Bankruptcy Code, including, without limitation, Sections 1122, 1123, 1124, 1125, 1126, 1127 and 1145 of the Bankruptcy Code and Bankruptcy Rules 3016, 3017, 3018 and 3019.  In particular, the Debtor is a proper debtor under Section 109 of the Bankruptcy Code and proper Plan proponent under Section 1121(a) of the Bankruptcy Code.  Furthermore, the solicitation of acceptances or rejections of the Plan:  (1) complied with the Disclosure Statement Order; (2) complied with all applicable laws, rules and regulations governing the adequacy of disclosure in connection with such solicitation; and (3) occurred only after disclosing "adequate information" to holders of Claims or Equity Interests as Section 1125(a) of the Bankruptcy Code defines that term.

Q.    The Plan is Proposed in Good Faith (Section 1129(a)(3)).    The Debtor has proposed the Plan in good faith and not by any means forbidden by law.  The Plan and related documents have been negotiated in good faith, at arm's length and are fair and reasonable in all respects.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case, the Plan itself and the process leading to its

11

formulation. The Chapter 11 Case was filed, and the Plan was proposed, with the legitimate purpose of liquidating and maximizing the value of the Debtor's estate and the recovery to holders of Claims and Equity Interests. Accordingly, the Plan was proposed in good faith pursuant to Section 1129(a)(3) of the Bankruptcy Code.

R.    Payments for Services or Costs and Expenses are Reasonable and Approved (Section 1129(a)(4)). Except as otherwise provided in the Plan, Liquidation Trust Agreement or certain prior orders of the Court, any payments made or to be made for services or for costs and expenses incurred in connection with the Chapter 11 Case are subject to the Court's approval. Fees to be paid to the Debtor's retained professionals are subject to the Court's approval, through the fee application process. Funds to be contributed to support the Liquidation Trust are specified in the Plan and include the Liquidation Trust Operational Reserve in the amount deemed necessary to satisfy anticipated future Liquidation Trust Operating Expenses. The Liquidation Trustee and its professionals are entitled to payment of reasonable fees and out-of-pocket expenses as set forth in the Plan and the Liquidation Trust Agreement.

S.    Directors, Officers, Trustees and Insiders (Section 1129(a)(5)). Under the Plan, the Debtor's remaining directors and officers are deemed to resign as of the Effective Date of the Plan. Pursuant to Section 6.06 of the Plan, the Debtor will dissolve as soon as practicable and advisable after the Effective Date. Section 6.01(b) of the Plan provides that, on the Effective Date, the Liquidation Trustee shall execute the Liquidation Trust Agreement, establishing the Liquidation Trust. To the extent the Liquidation Trust is a successor to the Debtor, Bankruptcy Code Section 1129(a)(5) is satisfied here, as pursuant to the Liquidation Trust Agreement, Lawton Bloom of Argus Management Corporation has been identified as the Liquidation Trustee. The Plan therefore complies with Bankruptcy Code Section 1129(a)(5).

T.    No Rate Changes (Section 1129(a)(6)).  This Section is inapplicable because there is no governmental regulatory commission that has jurisdiction over the rates that the Debtor charges.

U.    Best Interests of Creditors (Section 1129(a)(7)).  Based on the evidence that was proffered or adduced at, or prior to, or in affidavits in connection with, the Confirmation Hearing, including the Liquidation Analysis attached as Exhibit B to the Disclosure Statement, all holders of Claims or Interests will receive or retain under the Plan as much or more than they would receive if the Chapter 11 Case was converted to a case under Chapter 7 of the Bankruptcy Code.

V.    Deemed Acceptance or Rejection by Certain Classes (Section 1129(a)(8)).

(1)    Classes 1, 2 and 3 are unimpaired and are conclusively presumed to have accepted the Plan under Bankruptcy Code Section 1126(f).  As to these Classes, Bankruptcy Code Section 1129(a)(8) has been satisfied.

(2)    Class 4 is impaired by the Plan and entitled to vote on confirmation.  At least two-thirds in amount and more than one-half in number of the Claims held by Creditors in Class 4 has voted to accept the Plan, as established by the Voting Agent Declaration, in accordance with Bankruptcy Code Section 1126(c).  As to this Class, Bankruptcy Code Section 1129(a)(8) has been satisfied.

(3)    Class 5 is impaired and not entitled to receive or retain any property under the Plan and, therefore, is deemed to have rejected the Plan pursuant to Bankruptcy Code Section 1126(g).  Although Bankruptcy Code Section 1129(a)(8) has not been satisfied with respect to Class 5, the Plan is confirmable because the Plan satisfies Bankruptcy Code Section 1129(b) with respect to those Classes of Claims and Interests, as set forth below.

W.    Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (Section 1129(a)(9)).  Through the provisions of the Plan governing Administrative Claims, Fee Claims and Priority Tax Claims, the Plan provides for the payment in full, on the later of (a) the Effective Date or as soon as reasonably practicable thereafter, and (b) as soon as reasonably practicable after the date such Claim becomes an Allowed Claim, of all

Claims entitled to priority under Bankruptcy Code Section 507(a).  Accordingly, Bankruptcy Code Section 1129(a)(9) is satisfied.

X.    <u>Acceptance by at Least One Impaired Class (Section 1129(a)(10))</u>.  Class 4 has voted to accept the Plan and, accordingly, Section 1129(a)(10) of the Bankruptcy Code is satisfied.

Y.    <u>Feasibility of the Plan (Section 1129(a)(11))</u>.  Because the Plan is a plan of liquidation, Bankruptcy Code Section 1129(a)(11) is inapplicable to the Plan.

Z.    <u>Payment of Bankruptcy Fees (Section 1129(a)(12))</u>.  The payment of fees payable pursuant to 28 U.S.C. § 1930 will be the responsibility of: (a) the Debtor prior to the Effective Date and (b) the Liquidation Trustee after the Effective Date through such time as the Chapter 11 Case is closed, dismissed or converted.  Thus, Bankruptcy Code Section 1129(a)(12) is satisfied.

AA.    <u>Retiree Benefits (Section 1129(a)(13))</u>.  The Plan does not alter any retiree benefits to the extent any such benefits currently exist.  Thus, the requirements of Section 1129(a)(13) of the Bankruptcy Code are satisfied.

BB.    <u>Domestic Support Obligations, Individuals and Certain Transfers (Section 1129(a)(14)-(16))</u>.  The Debtor is not required to pay any domestic support obligations; accordingly, Section 1129(a)(14) of the Bankruptcy Code is not applicable.  The Debtor is not an individual and, accordingly, Bankruptcy Code Section 1129(a)(15) is inapplicable in this Chapter 11 Case.  The Debtor is a moneyed, business or commercial corporation and, accordingly, Bankruptcy Code Section 1129(a)(16) is inapplicable in this Chapter 11 Case.

CC.    <u>Fair and Equitable; No Unfair Discrimination (Section 1129(b))</u>.  Pursuant to Bankruptcy Code Section 1129(b), as to any impaired class of unsecured claims or equity interests that rejects a plan, such plan must be "fair and equitable" with respect to each such

14

class.  Class 5 Aereo Interests will not receive any property under the Plan.  No Class junior to Class 5 exist or are receiving any recovery and, thus, the "fair and equitable" test has been satisfied.  Furthermore, the Plan does not discriminate unfairly against any Class that is deemed to reject the Plan.

DD.    <u>Principal Purpose of the Plan (Section 1129(d))</u>.  The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e) and no governmental unit has objected to the confirmation of the Plan on any such grounds.  The Plan therefore satisfies the requirements of Bankruptcy Code Section 1129(d).

EE.    <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in Section 1129 of the Bankruptcy Code.

FF.    <u>Executory Contracts and Unexpired Leases</u>.  The Debtor has exercised reasonable business judgment in determining whether to assume or reject each of its executory contracts and unexpired leases as set forth in Article VII of the Plan and this Confirmation Order.  Each assumption or rejection of an executory contract or unexpired lease pursuant to the Plan and this Confirmation Order shall be legal, valid and binding upon the Debtor, the Liquidation Trust and all non-Debtor parties to such executory contract or unexpired lease, all to the same extent as if such assumption or rejection had been effectuated pursuant to an appropriate authorizing order of this Court entered before the Confirmation Date under Section 365 of the Bankruptcy Code.

GG.    <u>Approval of Settlements and Compromises</u>.  Pursuant to Bankruptcy Rule 9019 and any applicable federal or state law, and as consideration for the distributions and other benefits provided under the Plan, all settlements and compromises of Claims, causes of action and objections to Claims that are embodied in the Plan constitute good faith compromises and

settlements of any Claims, causes of action and objections to Claims, which compromises and settlements are hereby approved as fair, equitable, reasonable and appropriate in light of the relevant facts and circumstances underlying such compromise and settlement, and are in the best interests of the Debtor and its Estate, creditors and other parties in interest.

HH.    <u>Releases and Discharges</u>.    The injunctions, releases, limitation of liabilities, exculpation provisions and discharges of Claims and causes of action described in Sections 11.07, 11.08 and 11.09 of the Plan and this Confirmation Order constitute good faith compromises and settlements of the matters covered thereby and are consensual as evidenced by the acceptance of the Plan by Class 4 as demonstrated in the Voting Report.    Such compromises and settlements are made in exchange for adequate consideration and are in the best interests of holders of Claims and Interests, are fair, necessary, equitable and reasonable, and are integral elements of the resolution of this Chapter 11 Case in accordance with the Plan.    Each of the injunctions, releases, limitation of liabilities, exculpation provisions and discharges of Claims and causes of action set forth in the Plan and this Confirmation Order is: (1) within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (2) an essential means of implementing the Plan pursuant to Section 1123(a)(6) of the Bankruptcy Code; (3) an integral element of the transactions incorporated into the Plan; (4) conferring material benefit on, and is in the best interests of, the Debtor, its Estate and its creditors; (5) important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Case with respect to the Debtor; and (6) consistent with Sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

II.    <u>Likelihood of Satisfaction of Conditions Precedent to Effectiveness</u>.    Based on the evidence proffered or adduced at, or prior to, or in declarations filed in connection with the

Confirmation Hearing, and all other related pleadings, exhibits and other relevant documents, each of the conditions precedent to the Effective Date, as set forth in Article X of the Plan, is reasonably likely to be satisfied, unless waived in accordance with the provisions of Article X of the Plan.

**ACCORDINGLY, THE COURT HEREBY ORDERS THAT**:

1.      <u>Confirmation of the Plan</u>.  The Plan, in the form annexed hereto as **<u>Exhibit A</u>**, and each of its provisions as may be modified by this Confirmation Order are hereby **CONFIRMED** in each and every respect pursuant to Section 1129 of the Bankruptcy Code.  The terms of the Plan, including all exhibits thereto, are incorporated by reference into, and are an integral part of, this Confirmation Order.  The failure specifically to include or to refer to any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of any such provision.  The terms of the Plan, including all exhibits thereto, shall be effective and binding as of the Effective Date of the Plan.  Notwithstanding the foregoing, if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be reasonably reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.  However, to the extent of any inconsistencies between the Broadcaster Settlement Agreement and the Plan or the Confirmation Order, the Broadcaster Settlement Agreement controls.

2.      <u>Objections</u>.  All objections and responses to and statements and comments regarding the Plan, to the extent not already withdrawn, waived or settled, and all reservations of rights included therein, shall be, and hereby are, overruled.

3.     Plan Modifications.   After the entry of this Confirmation Order and before substantial consummation of the Plan, the Debtor may, with consent of the Official Creditors' Committee, modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in this Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that:  (i) the Debtor obtain approval of the Bankruptcy Court for such modification, after notice and a hearing; (ii) such modification shall not materially and adversely affect the interests, rights, treatment or distributions of any Class of Claims or Interests under the Plan; and (iii) such modification is not inconsistent with the Broadcaster Settlement Agreement.  After the Confirmation Date and before substantial consummation of the Plan, the Debtor may, with the consent of the Official Creditors' Committee, not to be unreasonably withheld or delayed, modify the Plan in a way that materially or adversely affects the interests, rights, treatment or distributions of a Class of Claims or Interests, provided that:  (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtor obtains Bankruptcy Court approval for such modification, after notice and a hearing; (iii) the Plan as modified complies with the Bankruptcy Code and Bankruptcy Rules; (iv) the Debtor complies with Bankruptcy Code Section 1125 with respect to the Plan as modified; and (v) such modification is not inconsistent with the Broadcaster Settlement Agreement.

4.     Incorporation of Terms and Provisions of Plan.   Each term and provision of the Plan is valid, binding and enforceable as though fully set forth herein.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.  The failure specifically to include or reference any particular term or provision of the Plan in this Confirmation Order shall not

diminish or impair the effectiveness of such term and provision, it being the intent of the Court that the Plan be confirmed in its entirety.

5.    <u>Binding Effect</u>.  Effective on the Effective Date or any other date if so provided in the Plan, and except as expressly provided otherwise in this Confirmation Order, the Plan and its provisions shall be binding to the fullest extent of the law upon the Debtor, any party in interest, any entity acquiring or receiving property or a distribution under the Plan and any holder of a Claim against or Interest in the Debtor, including all governmental entities, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan.  The Plan and related documents and Liquidation Trust Agreement constitute the legal, valid, binding, enforceable and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.  Pursuant to Bankruptcy Code Sections 1123(a) and 1142(a) and the provisions of this Confirmation Order, the Plan and all other Plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

6.    <u>Plan Implementation Authorization</u>.  The Debtor or the Liquidation Trustee, as the case may be, and their respective directors, officers, members, agents and attorneys, are authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file or record any contract, instrument, release or other agreement or document, including, without limitation, the Plan and all other Plan-related documents, as the same may be modified, amended and supplemented (including such modifications to the Liquidation Trust Agreement that are substantially consistent with the terms and provisions of such form and necessary to satisfy the conditions to the effectiveness of the Plan) and to take any action necessary or appropriate to implement, effectuate, consummate or further evidence the Plan in

accordance with its terms or take any or all corporate actions authorized to be taken pursuant to

the Plan, whether or not specifically referred to in the Plan or any exhibit thereto, without further

order of the Court.  To the extent applicable, any or all such documents shall be accepted upon

presentment by each of the respective state filing offices and recorded in accordance with

applicable state law and shall become effective in accordance with their terms and the provisions

of state law.

7.    <u>Dissolution of the Debtor</u>.  In accordance with the terms of the Plan, as soon as

practicable after the Effective Date, Aereo, Inc. shall be dissolved for all purposes without the

necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to

be made in connection therewith.  All directors and officers of the Debtor shall be deemed to

have resigned as of the Effective Date and shall have no obligations with respect to the Debtor

from and after the Effective Date.  Following the Confirmation Date and prior to the occurrence

of the Effective Date, the then-current officers and directors of the Debtor shall continue in their

respective capacities and the Debtor shall execute such documents and take such other action as

is necessary to effectuate the actions provided for in the Plan.  The dissolution of the Debtor shall

not have any effect, in any manner, on the Estate Causes of Action that the Liquidation Trustee

may assert in accordance with the Plan and the Liquidation Trust Agreement.

8.    <u>The Liquidation Trust</u>.  The Liquidation Trust shall be established on the

Effective Date and shall be maintained thereafter in accordance with the terms of the Plan and

the Liquidation Trust Agreement.   The Liquidation Trust Agreement attached as <u>Exhibit A</u> to

the Plan and all of its provisions therein are hereby approved by this Confirmation Order.  The

designation of Lawton Bloom of Argus Management Corp. as the initial Liquidation Trustee is

approved.  Pending the occurrence of the Effective Date, the Debtor is authorized to take all

actions as may be necessary to facilitate the creation and implementation of the Liquidation Trust.

9.        Transfer of Assets to Liquidation Trust. Pursuant to Article VI of the Plan, and upon the Effective Date, the Debtor shall (a) be deemed to have transferred all assets to the Liquidation Trust, subject to all rights, defenses and setoffs of any party in interest including the Liquidation Trustee and (b) make any available distributions, including the funding of the Liquidation Trust Operational Reserve, to Liquidation Trustee, respectively, pursuant to the Plan and the Liquidation Trust Agreement.

10.        Cancellation of Existing Securities.  Pursuant to Section 4.05 of the Plan, on the Effective Date, all notes, instruments, debentures, certificates and other documents evidencing Interests in the Debtor shall be canceled and deemed rejected and terminated.

11.        Cancellation of Liens.  Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, any lien securing any Secured Claim shall be deemed released, and the Person holding such Secured Claim shall be authorized and directed, at the expense of the Liquidation Trustee to release any collateral or other property of the Debtor held by such Person and to take such actions, at the expense of the Liquidation Trustee, as may be requested by the Liquidation Trustee to evidence the release of such lien, including, without limitation, the execution, delivery and filing or recording of such releases as may be requested by the Liquidation Trustee at the sole expense of the Liquidation Trustee.

12.        Approval of Plan Exculpation, Debtor Releases, Injunction.  The Exculpation provided in Section 11.07 of the Plan, the Debtor Releases provided for in Section 11.08 of the Plan and the Injunctions provided for in Section 11.09 of the Plan are approved.  As set forth

more fully in the Plan, as of the Effective Date and subject to the occurrence of the Effective

Date:

(a)    none of (a) the Debtor, (b) the directors, officers or employees of the Debtor serving at any time during the pendency of the Chapter 11 Case, (c) the professionals or court-retained agents of the Debtor, (d) the members and professionals of the Official Creditors' Committee, but only in their capacities as such, (e) the Broadcasters, (f) each of the Broadcasters' respective current or former officers and directors, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents or other representatives (each solely in its capacity as such) or (g) any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (f) shall have or incur any liability to any holder of a Claim or an Interest or any other party in interest or any of their respective members, directors, officers, employees, advisors, attorneys, professionals, agents, partners, stockholders or affiliates or any of their respective successors or assigns, for any act or omission in connection with, relating to or arising out of, the Chapter 11 Case, the formulation, negotiation or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence or willful misconduct or willful violation of federal or state laws and regulations including the Tax Code (in each case as determined by a Final Order) and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan;

(b)    notwithstanding any other provision of the Plan, no holder of a Claim or an Interest, no other party in interest, none of their respective members, directors, officers, employees, advisors, attorneys, professionals, agents, partners, stockholders or affiliates and none of their respective successors or assigns shall have any right of action against (a) the Debtor, (b) the directors, officers or employees of the Debtor serving at any time during the pendency of the Chapter 11 Case, (c) the professionals or court-retained agents of the Debtor, (d) the members and professionals of the Official Creditors' Committee, but only in their capacities as such, (e) the Broadcasters, (f) each of the Broadcasters' respective current or former officers and directors, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents or other representatives (each solely in its capacity as such) or (g) any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (f), for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the formulation, negotiation or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud or willful misconduct or willful violation of federal or state laws and regulations including the Tax Code (in each case as determined by a Final Order);

(c)    as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor and any Person seeking to exercise the rights of the Debtor's Estate, including the Liquidation Trustee, whether pursuing an action derivatively or otherwise, shall be deemed to forever release, waive and discharge all claims,

22

obligations, suits, judgments, damages, demands, debts, rights, causes of action (including Avoidance Actions) and liabilities whatsoever (other than for fraud, willful misconduct or gross negligence) in connection with or related to the Debtor, the Chapter 11 Case or the Plan (other than the rights of the Debtor and the Liquidation Trustee to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Confirmation Date, against (a) any of the present or former directors, officers and employees of the Debtor, (b) the Debtor's professionals and court-retained agents serving during the pendency of the Chapter 11 Cases, (c) the Broadcasters, (d) each of the Broadcasters' respective current or former officers and directors, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents or other representatives (each solely in its capacity as such) and (e) any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (c); provided, however, that nothing in Section 11.08 of the Plan shall be deemed to prohibit the Debtor or the Liquidation Trustee from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, causes of action or liabilities they may have against any of their employees (other than any director or officer of the Debtor) that is based upon an alleged breach of a confidentiality, non-compete or any other contractual or fiduciary obligation owed to the Debtor.  Any and all claims against the Debtor, including, but not limited to, indemnification claims asserted by any of the present or former directors, officers and employees of the Debtor shall be waived, disallowed or prohibited provided that such a claim for which a timely proof of claim has been filed shall not be waived, disallowed or prohibited under this Section; and

          (d)      confirmation of the Plan shall have the effect of, among other things, permanently enjoining (a) all Entities or Persons that have held, hold or may hold or have asserted, assert or may assert Claims against or Interests in the Estate with respect to any such Claim or Interest and (b) with respect to Section 11.09(vi)(A)-(C) of the Plan, the Estate and the Liquidation Trust, from and after the Effective Date, from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan):  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Estate or the Liquidation Trust or any of their property; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Estate or the Liquidation Trust  or any of their property; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Estate or the Liquidation Trust or any of their property; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Estate or the Liquidation Trust or any of their property, except with respect to any right of setoff asserted prior to the entry of the Confirmation Order, whether asserted in a Proof of Claim or otherwise or as otherwise contemplated or allowed by the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (vi) prosecuting or otherwise asserting (A) any Claim or Interest, including any right, claim or Cause of Action, released pursuant to the Plan or (B) any form of objection to any Claim that is Allowed by the Plan.  Additionally, unless otherwise explicitly stated in the Plan,

the injunction contemplated by Section 11.09 of the Plan shall prohibit the assertion against the Liquidation Trust of all Claims or Interests, if any, related to the Debtor. Nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. Tit. 22 § 1200.0 Rule 1.8(h)(1) (2009).

(e)    Notwithstanding any other provision in this Order, the Plan or the Disclosure Statement, nothing herein or in the Plan or Disclosure Statement shall be construed as releasing or exculpating the Debtor, the Liquidation Trustee (as the Debtor's successor in interest), the Committee or the Broadcasters from complying with the terms of the Broadcaster Settlement Agreement or the Consent Judgments and Permanent Injunctions entered in *American Broadcasting Companies, Inc., et al. v. Aereo, Inc.*, Case No. 12 Civ. 1540 (AJN)(HBP) and *Community Television of Utah, LLC, et al. v. Aereo, Inc.*, No. 2:13CV910DAK. For clarity, upon the Effective Date, neither the Committee nor its members or agents shall have any obligation to (i) take any affirmative act in connection with this Chapter 11 Case, or (ii) monitor compliance with, or take any affirmative action with respect to any order or agreement in this Chapter 11 Case or any of the proceedings identified in the Broadcaster Settlement Agreement, including the Consent Judgments and Permanent Injunctions referenced in the preceding sentence.

13.    <u>Prosecution of Estate Causes of Action by the Liquidation Trust</u>. The Liquidation Trustee shall be authorized without further order to pursue and liquidate all Estate Causes of Action identified in the Plan. From and after the Effective Date, the Liquidation Trust, subject to Section 6.02 of the Plan, shall have exclusive rights, powers and interests of the Estate to pursue, settle or abandon such Estate Causes of Action as the sole representative of the Estate pursuant to Bankruptcy Code Section 1123(b)(3).

14.    <u>Governmental Approvals Not Required</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State or any other governmental authority with respect to the implementation or consummation of the Plan and any other documents, instruments or agreements and any amendments or modifications thereto and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any other documents, instruments or agreements and any amendments or modifications thereto.

15.    <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to Bankruptcy Code Sections 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan or any other amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

16.    <u>Approval of Deemed Rejection of Remaining Contracts and Leases</u>.    Unless otherwise provided in an order of or in proceedings before the Court specifically dealing with an executory contract or unexpired lease that is subject to rejection pursuant to Section 7.01 of the Plan, the rejection of such contract or lease is hereby approved as of the Effective Date as proposed in the Plan.  If the rejection pursuant to Plan Section 7.01 results in a Claim for damages, then such Claim shall be forever barred and shall not be enforceable against the Estate, the Liquidation Trust, their successors or properties, unless a Proof of Claim is filed with the Claims Agent and served on the Liquidation Trust within thirty (30) days after the date of notice of the entry of this Confirmation Order.

17.    <u>Post-Effective Date Fees and Expenses</u>.  From and after the Effective Date, the Liquidation Trustee shall, in accordance with the Liquidation Trust Agreement, but without the necessity for any approval by the Court, pay the reasonable fees and expenses of the professional Persons thereafter incurred by the Liquidation Trustee related to the implementation and consummation of the Plan (<u>i.e.</u>, fees and expenses that are not Administrative Claims) under the terms of the Liquidation Trust Agreement.

18.    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising

under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the State of New York.

19.    Claims Bar Dates and Other Claims Matters.

(a)    *Bar Date for Administrative Claims Other Than Fee Claims and Priority Tax Claims.*  Other than with respect to (a) Administrative Claims for which the Bankruptcy Court previously has established a Bar Date, (b) Fee Claims addressed in subsection (b) below and (c) Priority Tax Claims addressed in subsection (c) below, any and all requests for payments or proofs of Administrative Claims must be filed with the Bankruptcy Court on or before the applicable Administrative Claims Bar Date.  Objections to any such Administrative Claims must be filed and served on the claimant on or before the Claims/Interest Objection Deadline, unless such date is extended by the Bankruptcy Court upon motion of the Liquidation Trustee.

Any Administrative Claim that is not asserted in accordance with Section 3.01 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Estate, the Liquidation Trust or any of their Assets or property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(b)    *Bar Date for Fee Claims.*  All Final Fee Applications for payment of Fee Claims must be filed with the Bankruptcy Court on or before the Fee Claims Bar Date.  Objections to any such Fee Claims must be filed and served on the claimant on or before the Claims/Interest Objection Deadline, unless such date is extended by the Bankruptcy Court upon motion of the Liquidation Trustee.

Any Fee Claim that is not asserted in accordance with Section 3.02 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Estate, the Liquidation Trust or any of their Assets or property, and the holder thereof shall be enjoined from commenting or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(c)    *Bar Date for Priority Tax Claims.*  To be eligible to receive distributions under the Plan on account of a Priority Tax Claim, holders of such Priority Tax Claims must file a Proof of Claim that is received by the Claims Agent on or prior to the Governmental Unit Bar Date.  Objections to any such Priority Tax Claims must be filed and served on the claimant on or before the Claims/Interest Objection Deadline, unless such date is extended by the Bankruptcy Court upon motion of the Liquidation Trustee.

Any Priority Tax Claim that is not asserted in accordance with Section 3.03 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Estate, the Liquidation Trust or any of their Assets or property and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(d)    *Bar Date for Rejection Damages Claims.*  If the rejection of any executory contract or unexpired lease under Section 7.01 of the Plan gives rise to a Claim by the non-Debtor party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Estate, the Liquidation Trust, their successors or properties unless a Proof of Claim is filed with the Claims Agent and served on the Liquidation Trust within thirty (30) days after the date of notice of the entry of the order of the Bankruptcy Court rejecting the executory contract or unexpired lease, which may include, if applicable, this Confirmation Order.

20.    Reversal.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of the Court or any other court, in the absence of a stay of this Confirmation Order, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken in good faith under or in connection with the Plan prior to the Debtor's receipt of written notice of entry of any such order. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, in the absence of a stay of this Confirmation Order, any such act or obligation incurred or undertaken in good faith pursuant to and in reliance on this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

21.    Provisions Governing Distributions.  The Debtor or Liquidation Trustee shall make all distributions required under the Plan and the distribution provisions of Article IX of the Plan shall be, and hereby are, approved in their entirety.

22.    Procedures for Resolution of Claims.  The claims resolution procedures and reserves to be established with respect to Disputed Claims and all other provisions of Article VIII of the Plan shall be, and hereby are, approved in their entirety.

23.    Satisfaction of Claims.  Except as otherwise provided in the Plan or this Confirmation Order, the rights afforded in the Plan and the treatment of all Claims and Interests under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Interests of any nature whatsoever, including any accrued post-petition interest (aside

from as provided in Section 9.05 of the Plan), against the Debtor or its Estate, assets, properties or interests in property.  Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, all Claims against and Interests in the Debtor shall be satisfied, discharged and released in full.  Neither the Liquidation Trust nor the Debtor shall be responsible for any pre-Effective Date obligations of the Debtor, except those expressly assumed by the Liquidation Trust or Debtor, as applicable.  Except as otherwise provided in the Plan or this Confirmation Order, all Persons shall be precluded and forever barred from asserting against the Liquidation Trust, the Liquidation Trustee, the Debtor, their respective successors or assigns or its Estate, affiliates, assets, properties or interests in property any event, occurrence, condition, thing or other or further Claims, Interests or causes of action based upon any act, omission, transaction or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.  The stipulated protective orders described in Sections 11.05 and 11.06 of the Plan shall continue in full force and effect following the Effective Date.

24.    The Automatic Stay.  The stay in effect in the Chapter 11 Case pursuant to Sections 105 or 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunctions set forth in the Plan, this Confirmation Order and/or Sections 524 and 1141 of the Bankruptcy Code; provided, however, that nothing herein shall bar the filing of financing documents (including Uniform Commercial Code financing statements, security agreements, leases, mortgages, trust agreements and bills of sale) or the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

25.    <u>The Official Creditors' Committee</u>.  On the Effective Date, the Official Creditors' Committee shall be dissolved and the Official Creditors' Committee, its members and its professionals shall automatically be released and discharged from all further authority, duties, responsibilities and obligations arising from or related to the Chapter 11 Case; provided, however, that the Official Creditors' Committee shall remain in effect for the purpose of preparing, filing and prosecuting to Final Order any Professional Fee Claims pursuant to the procedures set forth herein and in the Plan.

26.    <u>Section 346 Exemption</u>.  Section 346 of the Bankruptcy Code shall apply to any taxes that may potentially result from, or may be related to, the events, transactions and occurrences of the Chapter 11 Case and, in particular, pursuant to Section 346 of the Bankruptcy Code, no state or local tax imposed on, or measured by, income shall be imposed on the Debtor, including, but not limited to, franchise taxes to the extent that any such franchise taxes are measured by book or taxable income of the Debtor as a result of the forgiveness or discharge of indebtedness of the Debtor arising from the confirmation and consummation of the Plan, including, but not limited to, undertaking the transactions contemplated by the Plan or any provision of the Plan or this Confirmation Order.

27.    <u>Section 1146 Exemption</u>.  Pursuant to Bankruptcy Code Section 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation or release of any other Lien, mortgage, deed of trust or other security interest or (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with the Plan or the sale of any assets of the Estate, any deeds, releases, bills of sale or assignments executed in connection with the Plan or the Confirmation Order, shall not be subject to any stamp tax, transfer tax, intangible

tax, recording fee or similar tax, charge or expense to the fullest extent provided for under Bankruptcy Code Section 1146(a).

28.    <u>Post-Confirmation Notices and Bar Dates</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), within fifteen (15) calendar days of entry of this Confirmation Order, the Debtor (or its agent) shall give notice of the entry of this Confirmation Order (the "<u>Notice of Confirmation</u>") by United States mail, first class postage prepaid, by hand or by overnight courier service to all parties having been served with the Confirmation Hearing Notice; provided, however, that no notice or service of any kind shall be required to be mailed or made upon any Person or entity to whom the Debtor mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtor has been informed in writing by such Person or entity or is otherwise aware, of that Person's or entity's new address.  Mailing and service of the Notice of Confirmation in the time and manner set forth in this Paragraph are good and sufficient under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c) and no further notice is necessary.

29.    <u>Setoff Rights</u>.  In the event that the Debtor has a Claim of any nature whatsoever against the holder of a Claim against the Debtor, then the Debtor and the Liquidation Trustee, as the case may be, are authorized, but not required to, set off against the Claim (and any payments or other Plan distributions to be made in respect of such Claim under the Plan) the Debtor's Claim against such holder, subject to the provisions of Sections 553, 556 and 560 of the Bankruptcy Code.  Neither the failure to set off nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that the Debtor may have against the holder of

any Claim.  Such setoff rights shall inure to the benefit of the Liquidation Trust and any successors thereto.

30.  <u>Failure to Consummate the Plan / Non-Occurrence of the Effective Date</u>.  If the Effective Date shall not occur, (i) the Plan shall be null and void; (ii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtor; (b) prejudice in any manner the rights of the Debtor, including, without limitation, any right to seek a further extension of the exclusivity periods under Section 1121(d) of the Bankruptcy Code; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtor; (iii) upon the filing of a Notice of Non-Occurrence of Effective Date signed by counsel for the Debtor and the Official Creditors' Committee, (x) all assets shall automatically be revested in the Debtor and (y) the Debtor shall operate its business as debtor-in-possession, subject to the Bankruptcy Code, Bankruptcy Rules and all orders of the Court then remaining in full force and effect; and (iv) all actions taken by any person or entity in reliance on the Confirmation Order, prior to the filing of the Notice of Non-Occurrence of Effective Date shall remain valid and enforceable and shall not be subject to subsequent review or ratification by the Court.  Upon the occurrence of the Effective Date, the Plan shall be deemed substantially consummated.  The Plan satisfactorily fulfills the requirements of Local Rule 3021-1 and any additional requirements of Local Rule 3021-1 are hereby waived.

31.  <u>Filing and Recording</u>.  This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Equity Interests existing prior to such date have been unconditionally released, discharged and terminated and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds,

registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and all other Persons and entities who may be required, by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any document or instruments. Each and every federal, state and local government agency is hereby directed to accept any and all documents and instruments necessary, useful or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax or similar tax imposed by state or local law.

32. <u>Retention of Jurisdiction</u>. Except as may be provided in the Broadcaster Settlement Agreement approved by the Court, pursuant to Sections 105(a) and 1142 of the Bankruptcy Code and Sections 157 and 1334 of title 28 of the United States Code, notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction after the Effective Date over the Chapter 11 Case and all matters arising out of or related to the Chapter 11 Case, the Plan, this Confirmation Order or any related agreements and documents. Without limiting the generality of the foregoing, the Court shall retain exclusive jurisdiction for the following purposes: (a) to hear and determine any and all objections to the allowance or requests for estimation of Claims or the establishment of reserves pending the resolution of Disputed Claims; (b) to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or the Estate; (c) to hear and determine any motions pending on the Effective Date to reject any executory contract or unexpired lease and to determine the allowance of any Claim resulting therefrom; (d) to enter such orders as may be necessary or appropriate in connection with the recovery of the Debtor's assets wherever located; (e) to hear and determine any and all applications for allowance of

compensation and reimbursement of expenses; (f) to hear and determine any and all controversies, suits and disputes arising under or in connection with the interpretation, implementation or enforcement of the Plan and any of the documents intended to implement the provisions of the Plan, including, without limitation, this Confirmation Order and the Liquidation Trust Agreement or any other matters to be resolved by the Bankruptcy Court under the terms of the Plan or the Liquidation Trust Agreement (except as may be otherwise provided in the Broadcaster Settlement Agreement); (g) to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Case, including, without limitation, matters involving federal, state and local taxes in accordance with Bankruptcy Code Sections 346, 505 and 1146; (h) to hear and determine any and all applications, adversary proceedings and contested matters pending on the Effective Date or that may be commenced thereafter as provided in the Plan; (i) to effectuate distributions under and performance of the provisions of the Plan; (j) to hear and determine any applications to modify any provision of the Plan to the full extent permitted by the Bankruptcy Code; (k) to correct any defect, cure any omission or reconcile any inconsistency in the Plan, the exhibits to the Plan and annexes thereto or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan; (l) to determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; (m) to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Case or the Plan; (n) to enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan, including, without

33

limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated; (o) to determine any other matter not inconsistent with the Bankruptcy Code or the Plan; (p) to resolve any disputes regarding fees and expenses of professionals employed by the Liquidation Trustee; and (q) except as may be provided in the Broadcaster Settlement Agreement and the Consent Judgments, to hear and determine any and all controversies, suits and disputes arising under or in connection with any distributions to be made by the Debtor or the Liquidation Trust.  Notwithstanding anything to the contrary, all Persons or entities may seek relief from the Court to exercise any and all rights and remedies available under non-bankruptcy law, which are hereby expressly reserved, for the collection of any distributions to be made by the Debtor or the Liquidation Trust; provided, however, that good cause must be shown for such relief.  During the time period between entry of this Confirmation Order and the Effective Date, all prior orders ("Existing Orders") in these cases shall remain in full force and effect.

33.    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court at the Confirmation Hearing, shall be paid by the Debtor on or before the Effective Date.   From and after the Effective Date, the Liquidation Trustee shall pay the fees assessed under section 1930 of title 28 of the United States Code until entry of an order closing, converting or dismissing the Chapter 11 Case.  Beginning on the Effective Date, the Liquidation Trustee shall be responsible for preparing and filing all post-confirmation reports with the Court.  The Debtor shall pay any fees relating to distributions by the Debtor to the Liquidation Trust, regardless of the date of such distributions.

34. <u>Effective Date</u>.    Notwithstanding anything to the contrary in the Plan, the Effective Date of this Plan may be the first Business Day upon which the conditions set forth in Article X of the Plan have been satisfied or waived as provided in the Plan.

35. <u>Final Order</u>.  Any stay of the Confirmation Order required by Bankruptcy Rule 3020(e) or Bankruptcy Rule 6004(h) is waived.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated: June __, 2015
      New York, New York

                _____
                HONORABLE SEAN H. LANE
                UNITED STATES BANKRUPTCY JUDGE

61953112

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| ------------------------------------------------------- : | | |
| In re: | : | Chapter 11 |
|  | : | |
| AEREO, INC., | : | Case No. 14-13200 (SHL) |
|  | : | |
| Debtor.[1] | : | |
| ------------------------------------------------------- : | | |

## <u>AMENDED CHAPTER 11 PLAN OF AEREO, INC.</u>

---

**THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH SECTION 1125 AND WITHIN THE MEANING OF SECTION 1126 OF THE BANKRUPTCY CODE, 11 U.S.C. §§ 1125, 1126. THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION.**

---

**BROWN RUDNICK, LLP**
William R. Baldiga, Esq.
R. Benjamin Chapman, Esq.
7 Times Square
New York, NY  10036
(212) 209-4800

*Counsel for the Debtor*
*and Debtor-in-Possession*

Dated:  May 8, 2015

---

[1]    The last four digits of the Debtor's federal tax identification number are 2838.  The Debtor's mailing address is Aereo, Inc., c/o Lawton W. Bloom, Argus Management Corporation, 208 West 29th St. Suite 613A, New York, NY 10001.

# TABLE OF CONTENTS

**Article I DEFINITIONS; RULES OF INTERPRETATION;  AND COMPUTATION OF TIME** ...................2
  Section 1.01    Definitions .............................................................................................2
  Section 1.02    Broadcaster Settlement Agreement ..............................................12
  Section 1.03    Rules of Interpretation ....................................................................12
  Section 1.04    Computation of Time ......................................................................12

**Article II CLASSIFICATION OF CLAIMS AND INTERESTS** .......................................12
  Section 2.01    General Rules of Classification ....................................................12
  Section 2.02    Unclassified Claims ........................................................................13
  Section 2.03    Classified Claims and Interests ....................................................13

**Article III TREATMENT OF UNCLASSIFIED CLAIMS** ...............................................13
  Section 3.01    Administrative Claims ....................................................................13
  Section 3.02    Fee Claims .......................................................................................14
  Section 3.03    Priority Tax Claims .........................................................................14

**Article IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS** .....................15
  Section 4.01    Class 1:  Remaining Secured Claims ...........................................15
  Section 4.02    Class 2:  Priority Non-Tax Claims ................................................16
  Section 4.03    Class 3:  Convenience Claims .......................................................16
  Section 4.04    Class 4:  General Unsecured Claims .............................................17
  Section 4.05    Class 5:  Aereo Interests ...............................................................17

**Article V ACCEPTANCE OR REJECTION OF THE PLAN** ..........................................18
  Section 5.01    Impaired Classes of Claims and Interests Entitled to Vote ........18
  Section 5.02    Acceptance by an Impaired Voting Class .....................................18
  Section 5.03    Deemed Acceptances by Classes ..................................................18
  Section 5.04    Deemed Rejections by Classes ......................................................18
  Section 5.05    Confirmation Pursuant to Bankruptcy Code Section 1129(b) .....18

**Article VI MEANS FOR IMPLEMENTATION** ...............................................................19
  Section 6.01    The Liquidation Trust .....................................................................19
  Section 6.02    Prosecution and Resolution of Estate Causes of Action .............22
  Section 6.03    Cancellation of Documents ............................................................23
  Section 6.04    Termination of Official Creditors' Committee .............................23
  Section 6.05    Filing of Monthly and Quarterly Reports and Payment of Statutory Fees ...............23

Section 6.06      Dissolution of the Debtor ..................................................................................23

Section 6.07      Closing of the Debtor's Chapter 11 Case ........................................................23

Section 6.08      Effectuating Documents and Further Transactions ..........................................24

**Article VII EXECUTORY CONTRACTS AND LEASES** ....................................................**24**

Section 7.01      Rejection of Contracts and Leases ...................................................................24

Section 7.02      Bar Date For Rejection Damages .....................................................................24

**Article VIII DISPUTED, CONTINGENT AND  UNLIQUIDATED CLAIMS AND INTERESTS** ..................**25**

Section 8.01      Objections to Claims and Interests ...................................................................25

Section 8.02      Estimation of Claims or Interests .....................................................................25

Section 8.03      Amendments to Claims or Interests ..................................................................26

Section 8.04      Authority To Settle Disputed Claims or Interests ...........................................26

Section 8.05      No Recourse .......................................................................................................26

**Article IX PROVISIONS GOVERNING DISTRIBUTIONS** .................................................**27**

Section 9.01      Delivery of Distributions Generally .................................................................27

Section 9.02      Provisions Concerning Disputed Claims Reserves ..........................................27

Section 9.03      Setoffs ...............................................................................................................28

Section 9.04      Withholding and Reporting Requirements ........................................................28

Section 9.05      Postpetition Interest on Claims ........................................................................29

Section 9.06      Undeliverable Distributions .............................................................................29

Section 9.07      Allocation of Plan Distributions between Principal and Interest.......................29

Section 9.08      Disputed Identity of Holder...............................................................................29

Section 9.09      Transfers of Claims and Interest/Distribution Record Date ............................29

Section 9.10      Method of Cash Distributions ..........................................................................30

Section 9.11      *De Minimis* Distributions .................................................................................30

Section 9.12      Treatment of Unclaimed Property; Remaining Available Cash ......................30

Section 9.13      No Distribution in Excess of Allowed Amount of Claim .................................30

**Article X CONDITIONS PRECEDENT** ..........................................................................**30**

Section 10.01      Conditions to Confirmation.............................................................................30

Section 10.02      Conditions to the Effective Date .....................................................................31

Section 10.03      Waiver of Certain Conditions ..........................................................................31

Section 10.04      Effect of Nonoccurrence of the Conditions to the Effective Date....................32

**Article XI EFFECTS OF CONFIRMATION** ....................................................................**32**

Section 11.01      Retention of Estate Causes of Action/Reservation of Rights ..........................32

Section 11.02      Compromise of Controversies .........................................................................32

Section 11.03      Preservation of Insurance .................................................................................32

Section 11.04    Term of Injunctions or Stays; Protective Orders .................................................. 32

Section 11.05    Protective Order In The SDNY Copyright Case. ................................................. 33

Section 11.06    Protective Order In The District of Massachusetts Copyright Case. ................. 33

Section 11.07    Exculpation .................................................................................................................. 33

Section 11.08    Releases by Debtor ..................................................................................................... 34

Section 11.09    Injunction ..................................................................................................................... 35

Section 11.10    Broadcaster Settlement Agreement Survival ......................................................... 35

**Article XII RETENTION OF JURISDICTION** ...................................................................................... **35**

Section 12.01    Retention of Exclusive Jurisdiction by the Bankruptcy Court ........................... 35

Section 12.02    Retention of Non-Exclusive Jurisdiction by the Bankruptcy Court .................. 37

Section 12.03    Failure of Bankruptcy Court to Exercise Jurisdiction ......................................... 37

**Article XIII MISCELLANEOUS PROVISIONS** ...................................................................................... **38**

Section 13.01    Amendments ................................................................................................................ 38

Section 13.02    Severability .................................................................................................................. 38

Section 13.03    Successors and Assigns .............................................................................................. 39

Section 13.04    Exemption from Certain Transfer Taxes ................................................................ 39

Section 13.05    Governing Law ............................................................................................................ 39

Section 13.06    Confirmation Order and Plan Control ..................................................................... 39

Section 13.07    Withdrawal of Plan ..................................................................................................... 39

Section 13.08    Payment Dates ............................................................................................................. 40

Section 13.09    Notices .......................................................................................................................... 40

**Article XIV CONFIRMATION REQUEST** ................................................................................................ **41**

*Solicitation Version*

## PLAN INTRODUCTION AND SUMMARY

Aereo Inc. (the "<u>Debtor</u>") proposes this Chapter 11 Plan  (as it may be amended, modified or supplemented from time to time, together with all exhibits annexed hereto or referenced herein, the "<u>Plan</u>") for the resolution and satisfaction of all Claims against and Interests in the Debtor.  All capitalized terms not defined in this introduction have the meanings ascribed to them in Article I of this Plan.  Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtor's history, businesses, resolution of material disputes, significant asset sales, financial projections for the liquidation and distribution of the Debtor's remaining assets and a summary and analysis of the Plan and certain related matters.  All parties entitled to vote on the Plan should review the Disclosure Statement and the terms of the Plan before voting to accept or reject the Plan.  No solicitation materials, other than the Disclosure Statement and related materials transmitted herewith and approved by the Bankruptcy Court, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

The Plan provides for the liquidation of Assets of the Estate, including the investigation and prosecution of Estate Causes of Action, by a Liquidation Trust to be formed pursuant to the Plan and a Liquidation Trust Agreement, attached hereto as **<u>Exhibit A</u>**.  The Liquidation Trust is to be managed by a Liquidation Trustee.  The Liquidation Trustee shall be responsible for making distributions to holders of Claims and, if applicable, Interests, as well as all other administrative tasks necessary for ultimate resolution of the Chapter 11 Case, pursuant to the terms of the Plan and the Liquidation Trust Agreement.

*Solicitation Version*

# ARTICLE I

## DEFINITIONS; RULES OF INTERPRETATION;
## AND COMPUTATION OF TIME

Section 1.01    **Definitions**.    Capitalized terms used herein and set forth in alphabetical order below shall have the following meanings:

"**363 Sale**" means a sale pursuant to Bankruptcy Code Section 363, approved by a Sale Order.

"**503(b)(9) Claim**" means an Administrative Claim that arises pursuant to Bankruptcy Code Section 503(b)(9).

"**503(b)(9) Claims Bar Date**" means 5:00 p.m. (Eastern) on February 18, 2015, the date set by the Bankruptcy Court as the last day for submitting requests for payment with respect to 503(b)(9) Claims.

"**Administrative Claim**" means an obligation of the Debtor under Bankruptcy Code Section 503(b) entitled to priority in payment under Bankruptcy Code Section 507(a), including but not limited to: (a) a 503(b)(9) Claim; (b) the actual and necessary costs and expenses incurred after the Petition Date for preserving the Estate and/or operating the Debtor's businesses; (c) cure costs associated with the assumption or assumption and assignment of executory contracts and unexpired leases pursuant to Bankruptcy Code Section 365; and (d) all Statutory Fees.  As used herein, the term "Administrative Claim" shall exclude Fee Claims.

"**Administrative Claims Bar Date**" means for Administrative Claims arising on or after the Petition Date, the first Business Day that is at least thirty (30) days after the Effective Date or such other date ordered by the Bankruptcy Court.  For the avoidance of doubt, a 503(b)(9) Claim is subject to the 503(b)(9) Claims Bar Date and is not subject to the Administrative Claims Bar Date.

"**Aereo**" means Aereo, Inc., a New York corporation and the Chapter 11 Debtor.

"**Aereo Interest**" means any equity security, within the meaning of Bankruptcy Code Section 101(16), issued by Aereo and outstanding prior to the Effective Date including, without limitation, any preferred stock, common stock, stock options or other right to purchase the stock of Aereo, together with any warrants, conversion rights, rights of first refusal, subscriptions, commitments, agreements or other rights to acquire or receive any stock or other equity ownership interests in Aereo prior to the Effective Date.

"**Allowed**" means (a) when used with respect to an Administrative Claim, all or any portion of an Administrative Claim (i) that has been allowed by a Final Order or adjudicated in favor of the holder by estimation or liquidation by a Final Order, (ii) for which a Request for Payment in a liquidated amount has been filed by the applicable Bar Date and as to which either (1) no objection to the allowance thereof has been filed by the applicable Claims/Interest Objection Deadline, or (2) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (iii) that was incurred by the Debtor in the ordinary course of

business during the Chapter 11 Case and as to which there is no dispute as to the Debtor's liability; (b) when used with respect to a Claim other than an Administrative Claim, such Claim or any portion thereof (i) that has been allowed by a Final Order or adjudicated in favor of the holder by estimation or liquidation by a Final Order, or is expressly allowed in a liquidated amount in the Plan, (ii) as to which (1) no Proof of Claim has been filed and (2) the liquidated and non-contingent amount of which is included in the Schedules, other than a Claim that is included in the Schedules at zero, in an unknown amount, or as disputed, or (iii) for which a Proof of Claim in a liquidated amount has been filed by the Bar Date and as to which either (1) no objection to the allowance thereof has been filed by the applicable Claims/Interest Objection Deadline, or (2) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order; (c) when used with respect to any Claim, a Claim that is not otherwise a Disputed Claim; or (d) when used with respect to an Interest, an Interest held in the name, kind and amount set forth on the records of the stock transfer agent in the case of Aereo Interests.

"**Assets**" means (a) all assets and properties of every kind, nature, character and description (whether real, personal, or mixed, whether tangible and intangible, including contract rights, wherever situated and by whomever possessed), including the goodwill related thereto, operated, owned or leased by the Debtor as of the Effective Date and that constitute property of the Estate within the purview of Bankruptcy Code Section 541 including, without limitation, any and all claims, Estate Causes of Action or rights of the Debtor under federal, state, or foreign law, letters of credit issued for the benefit of the Debtor and the monies deposited to secure the performance of any contract or lease by the Debtor or any affiliate thereof; and (b) the proceeds, products, rents and profits of any of the foregoing.  For the avoidance of doubt, Assets include the rights of the Debtor under the Successful Bidder Asset Purchase Agreements and the Sale Orders.

"**Available Cash**" means any Cash received by the Liquidation Trust (including, but not limited to, Cash transferred by the Debtor to the Liquidation Trust on the Effective Date) and thereafter held by the Liquidation Trust and available from time to time for Liquidation Trust Operating Expenses and/or for Distributions.

"**Avoidance Actions**" means any claims, rights, defenses, or other Causes of Action arising under Chapter 5 of the Bankruptcy Code including, without limitation, under Bankruptcy Code Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, or under similar or related state or federal statutes and common law, including state fraudulent transfer laws, whether or not prosecution of such actions has commenced as of the Confirmation Date or the Effective Date, and whether or not standing to bring such claims is held by any representative of the Estate, any party-in-interest, or any other Entity or Person.

"**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101 - 1130, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Case.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York, or such other court having jurisdiction over this Chapter 11 Case or any proceeding within, or appeal of an order entered in, the Chapter 11 Case.

3

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, and as such rules have been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Case.

"**Bar Date**" means, as applicable, (a) the Administrative Claims Bar Date, (b) the 503(b)(9) Claims Bar Date, (c) the General Bar Date and/or (d) the Governmental Unit Bar Date.

"**Beneficiaries**" means the holders of Allowed Claims as may be determined from time to time in accordance with the Plan and the Liquidation Trust Agreement, which shall receive beneficial interests in the Liquidation Trust pursuant to the Plan.

"**Broadcasters**" means CBS Broadcasting, Inc., CBS Studios, Inc., Fox Television Stations, Inc. and Twentieth Century Fox Film Corporation, Fox Broadcasting Company, The Univision Network Limited Partnership and Univision Television Group, Inc., Open 4 Business Productions, LLC, Universal Network Television LLC, Telemundo Network Group LLC, WLIW LLC, WPIX LLC, WNJU-TV Broadcasting LLC, NBCUniversal Media LLC, Universal Television LLC (f/k/a NBC Studios LLC), WNET and Thirteen Productions LLC, KUTV Licensee LLC, Public Broadcasting Service, KSTU LLC (f/k/a Community Television of Utah LLC), Nexstar Broadcasting, Inc., Disney Enterprises, Inc. and American Broadcasting Companies, Inc.

"**Broadcaster Claims**" means the Claims of CBS Broadcasting, Inc. (Claim No. 41), CBS Studios, Inc. (Claim No. 42), Fox Television Stations, Inc. and Twentieth Century Fox Film Corporation (Claim No. 44), Fox Broadcasting Company (Claim No. 45), The Univision Network Limited Partnership and Univision Television Group, Inc. (Claim No. 47), Open 4 Business Productions LLC (Claim No. 48), Universal Network Television LLC (Claim No. 49), Telemundo Network Group LLC (Claim No. 50), WLIW LLC (Claim No. 55), WPIX LLC (Claim No. 58), WNJU-TV Broadcasting LLC (Claim No. 60), NBCUniversal Media LLC (Claim No. 61), Universal Television LLC (f/k/a NBC Studios LLC) (Claim No. 63), WNET and Thirteen Productions LLC (Claim No. 64), KUTV Licensee LLC (Claim No. 65), Public Broadcasting Service (Claim No. 66), KSTU LLC (f/k/a Community Television of Utah LLC) (Claim No. 67), Disney Enterprises, Inc. (Claim No. 70) and American Broadcasting Companies, Inc. (Claim No. 72), which became fixed and liquidated, and no longer subject to objection, expungement, setoff or recoupment, pursuant to the Bankruptcy Court's approval of the Broadcaster Settlement Agreement.

"**Broadcaster Settlement Agreement**" means the settlement agreement, dated as of April 20, 2015, among the Debtor, the Committee and the Broadcasters, and filed with the Bankruptcy Court at Docket Nos. 288, 294.

"**Business Day**" means any day, other than a Saturday, Sunday or "legal holiday" (as such term is defined by Bankruptcy Rule 9006(a)).

"**Cash**" means money that is legal tender of the United States of America or the indubitable equivalent thereof.

"**Causes of Action**" means any and all claims, rights, defenses, offsets, recoupments, actions in law or equity or otherwise, causes of action, choses in action, suits, damages, rights to

legal or equitable remedies, judgments, third-party claims, counterclaims and cross-claims against any Entity or Person, whether arising under the Bankruptcy Code or federal, state, common or other law, regardless of whether the subject of pending litigation or proceedings on the Confirmation Date, the Effective Date or thereafter.

"**Chapter 11 Case**" means the Chapter 11 case of the Debtor pending before the Bankruptcy Court and bearing case number 14-13200 (SHL).

"**Claim**" has the meaning ascribed to such term in Bankruptcy Code Section 101(5).  As used herein, the term may include an Administrative Claim and a Fee Claim.

"**Claims Agent**" means Prime Clerk, LLC.

"**Claims/Interest Objection Deadline**" means the last day for filing objections to Claims and Interests as provided in Article VIII of the Plan.

"**Class**" means a category of holders of Claims or Interests, as described in Article II of this Plan.

"**Confirmation**" means confirmation of the Plan pursuant to Bankruptcy Code Section 1129.

"**Confirmation Date**" means the date upon which the Confirmation Order is entered on the docket maintained by the Bankruptcy Court pursuant to Bankruptcy Rule 5003.

"**Confirmation Hearing**" means the hearing before the Bankruptcy Court at which the Plan is confirmed.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code Section 1129.

"**Consent Judgments**" means the consent judgments and permanent injunctions attached as Exhibit B to the Broadcaster Settlement Agreement to be entered in the SDNY Copyright Case and the Utah Copyright Case.

"**Convenience Claims**" means all Unsecured Claims in an amount of [$1,000] or less, or which by agreement of the holder thereof has been reduced to [$1,000] or less.

"**Debtor**" means Aereo, Inc.

"**Designated Rate**" means the Federal Judgment Interest Rate provided by the Federal Reserve as that rate is current and applicable on the Effective Date.

"**Disbursing Agent**" means (a) with respect to Distributions to be made on the Effective Date (the Initial Distribution Date for First Tier Claims), either the Debtor or (if so designated to do so by the Debtor) the Liquidation Trustee, or in either case any person retained by the Debtor or the Liquidation Trustee to make such Distributions, and (b) with respect to all other

Distributions, the Liquidation Trustee or any person retained by the Liquidation Trustee to effectuate the Distributions contemplated under the Plan.

"**Disclosure Statement**" means the written disclosure statement that relates to the Plan, including all exhibits, appendices, schedules and annexes attached thereto, as it may be altered, amended, supplemented or modified from time to time, and that is prepared, approved and distributed in accordance with Bankruptcy Code Section 1125 and Bankruptcy Rule 3018.

"**Disputed**" means (a) with respect to any Claim, other than a Claim that has been Allowed pursuant to the Plan or a Final Order, a Claim (i) as to which no Request for Payment or Proof of Claim has been filed by the applicable Bar Date and which is listed in the Schedules as unliquidated, contingent or disputed; (ii) as to which a Request for Payment or Proof of Claim has been filed by the applicable Bar Date, but as to which an objection, request for subordination or request for estimation has been filed by the applicable Claims/Interest Objection Deadline, or which is otherwise disputed in accordance with applicable law, which objection, request for subordination or estimation, or dispute has not been withdrawn or determined by a Final Order; (iii) as to which a Request for Payment or Proof of Claim was required to be filed by the Bar Date, but as to which a Request for Payment or Proof of Claim was not timely or properly filed; (iv) that is disputed in accordance with the provisions of the Plan; or (v) if not otherwise Allowed, as to which the applicable Claims/Interest Objection Deadline has not expired; and (b) with respect to any Interest, an Interest held in name, kind, or amount different from the name, kind and amount set forth on the records of the Debtor's stock transfer agent in the case of Aereo Interests.

"**Disputed Claims Reserve(s)**" shall have the meaning ascribed to such term in Section **9.02** of the Plan.

"**Distribution**" means any payment of Cash to be made under the Plan to holders of Allowed Claims or, if applicable, Allowed Interests.

"**Distribution Address**" means: (a) the address indicated on any applicable Proof of Claim or Request for Payment properly filed by an Entity or Person, or its/his authorized agent prior to the applicable bar date; (b) if no Proof of Claim or other Request for Payment has been filed, the address set forth in the Schedules; or (c) in the event of Distributions to holders of Aereo Interests, the addresses maintained by the stock transfer agent for the Aereo Interests; provided, however, that any Entity or Person may, after the Effective Date, select an alternative Distribution Address by filing a notice with the Bankruptcy Court (with a copy served on the Liquidation Trustee and the Claims Agent) identifying such alternative Distribution Address.

"**Distribution Date(s)**" means the date or dates on which a Distribution is required to be made under the Plan.

"**Effective Date**" means: (a) if no stay of the Confirmation Order is in effect, the first Business Day after the date on which all of the conditions set forth in Section **10.02** of the Plan have been satisfied or waived in accordance with that Section, or such later date as may be reasonably agreed to by the Debtor and the Official Creditors' Committee; or (b) if a stay of the Confirmation Order is in effect, on the first Business Day (or such later day as may be

reasonably agreed to by the Debtor and the Official Creditors' Committee) after the later of: (i) the date such stay is vacated; and (ii) the date each condition set forth in the Plan has been satisfied or waived as set forth in the Plan.

"**Entity**" has the meaning ascribed to such term in Bankruptcy Code Section 101(15).

"**Estate**" means the Chapter 11 estate of the Debtor created by Bankruptcy Code Section 541.

"**Estate Causes of Action**" means all Causes of Action that belong to the Estate and which are not released or otherwise resolved by the Broadcaster Settlement Agreement or Confirmation of the Plan, including but not limited to: (a) all Avoidance Actions; (b) all other claims in or of avoidance, recovery or subordination; and (c) all other actions described in the Disclosure Statement, the Schedules or the Plan. For the avoidance of doubt, the term Estate Causes of Action does not include (a) any Cause of Action or Avoidance Action acquired by the Successful Bidder or that the Debtor has covenanted not to pursue under the terms of the Successful Bidder Asset Purchase Agreement or (b) any Cause of Action or Avoidance Action resolved by the Broadcaster Settlement Agreement.

"**Estimation Order**" means a Final Order, which may be the Confirmation Order, estimating for voting, distribution or any other proper purposes under the Bankruptcy Code the aggregate (and if applicable, individual) amount of any Claims, whether classified or unclassified under this Plan.

"**Face Amount**" means the amount of any Claim as listed on a timely filed Proof of Claim or the Schedules if no Proof of Claim has been timely filed.

"**Fee Claim**" means a Claim: (a) of a Professional retained by order of the Bankruptcy Court for compensation and/or reimbursement of expenses pursuant to Bankruptcy Code Sections 327, 328, 330 or 331 (other than ordinary course professionals of the Debtor); and (b) of any Professional or other party-in-interest seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Bankruptcy Code Section 503(b).

"**Fee Claims Bar Date**" means 5:00 p.m. (Prevailing Eastern Time) on the date that is the first Business Day after the date that is thirty (30) days after the Effective Date.

"**Final Order**" means an order or judgment of the Bankruptcy Court (or other court with jurisdiction), as entered on the docket of the Bankruptcy Court (or other court with jurisdiction), that has not been reversed, stayed, modified or amended, and as to which: (a) the time to appeal or seek review has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for review, rehearing, remand or certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under Bankruptcy Code Section 502(j), Bankruptcy Rules 9023 and 9024, or any other rules or law governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order shall not cause such order to be not a Final Order.

"**First Tier Claims**" mean Administrative Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims, Remaining Secured Claims and Convenience Claims, whether Allowed or Disputed.

"**Fourth Tier Interests**" means Aereo Interests.

"**General Claims Bar Date**" means 5:00 p.m. (Prevailing Eastern Time) on February 18, 2015, the date set by the Bankruptcy Court as the last day for filing Proofs of Claim in the Chapter 11 Case for Claims arising prior to the Petition Date, except for Administrative Claims (including 503(b)(9) Claims), Fee Claims and Claims asserted by Governmental Units.

"**General Unsecured Claim**" means a Claim greater than $1,000 that is not an Administrative Claim, a Priority Tax Claim, a Fee Claim, a Remaining Secured Claim, a Priority Non-Tax Claim, or a Convenience Claim.

"**Governmental Unit**" has the meaning ascribed to such term in Bankruptcy Code Section 101(27).

"**Governmental Unit Bar Date**" means 5:00 p.m. (Prevailing Eastern Time) on May 19, 2015, the date set by the Bankruptcy Court as the last day for Governmental Units to file Proofs of Claim in the Chapter 11 Cases for Claims arising prior to the Petition Date.

"**Impaired**" has the meaning ascribed to such term in Bankruptcy Code Section 1124.

"**Initial Distribution Date**" means the first date on which a Class or Class of Claims is entitled to be paid under the Plan subsequent to the Effective Date, including (a) in the case of First Tier Claims, the Effective Date for Claims Allowed as of such date; (b) in the case of Second Tier Claims, as soon as practicable after the payment of or establishment of adequate reserves for all First Tier Claims, but in no event earlier than the later of the Administrative Claims Bar Date and the Fee Claim Bar Date; (c) in the case of Third Tier Claims, as soon as practicable after the payment of or establishment of adequate reserves for all First Tier Claims and Second Tier Claims and (e) in the case of Fourth Tier Claims/Interests, as soon as practicable after the payment of or establishment of adequate reserves for all First Tier Claims and Second Tier Claims.

"**Interest**" means the legal, equitable, contractual or other rights of any Person (a) with respect to any Aereo Interests or (b) to acquire or receive Aereo Interests.

"**Lien**" shall have the meaning ascribed to such term in Bankruptcy Code Section 101(37).

"**Liquidation Trust**" means the trust established pursuant to Section **6.01** of the Plan and in accordance with the Liquidation Trust Agreement.

"**Liquidation Trust Agreement**" means that certain trust agreement that establishes and governs the Liquidation Trust.

"**Liquidation Trustee**" means the Person appointed as the trustee of the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement.

"**Liquidation Trust Operating Expenses**" means the overhead and other operational expenses of the Liquidation Trust including, but not limited to, the reasonable professional costs related to the prosecution of Estate Causes of Action, objecting to Disputed Claims or Disputed Interests and reasonable compensation for the Liquidation Trustee.

"**Liquidation Trust Operational Reserve**" means the reserve established by the Liquidation Trust to hold the amount of Available Cash deemed necessary to satisfy its anticipated future Liquidation Trust Operating Expenses.

"**LT Distribution Account**" means an account to be established by the Liquidation Trustee on the Effective Date to hold the amount of Available Cash, less Liquidation Trust Operating Expenses as incurred and as reserved for in the Liquidation Trust Operational Reserve, to be utilized for Distribution on account of Allowed Claims and, if applicable, Allowed Interests in accordance with the Plan, less any amounts set aside in the Disputed Claims Reserve; provided, however, that any surplus amounts in the Liquidation Trust Operational Reserve and any Disputed Claims Reserve shall be returned to the LT Distribution Account.

"**Official Creditors' Committee**" means the Official Committee of Unsecured Creditors appointed in this Chapter 11 Case, as such committee may be reconfigured from time to time until the Effective Date.

"**Person**" has the meaning ascribed to such term in Bankruptcy Code Section 101(41).

"**Petition Date**" means November 20, 2014.

"**Plan**" means this Chapter 11 Plan, dated as of the date set forth on the first page hereof, together with any amendments or modifications hereto as the Debtor may file hereafter in accordance with the terms of the Plan.

"**Priority Claims**" means, collectively, Priority Non-Tax Claims and Priority Tax Claims.

"**Priority Non-Tax Claim**" means a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code Sections 507(a)(3), (4), (5), (6) or (7).

"**Priority Tax Claim**" means a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code Section 507(a)(8).

"**Professional**" means a Person employed in the Debtor's Chapter 11 Case pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code Sections 327 and 1103, and to be compensated for services rendered prior to the Effective Date, pursuant to Bankruptcy Code Sections 327, 328, 329, 330, 331 and 363.

"**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court or any court-approved claims agent in connection with the Chapter 11 Case.

"**Quarterly Distribution Date**" means the first Business Day after the end of each quarterly calendar period (i.e., March 31, June 30, September 30 and December 31 of each calendar year), or as soon thereafter as practicable, following the Effective Date.

"**Ratable, Ratably or Pro Rata**" means the proportion that the Allowed Claim in a particular Class bears to the aggregate amount of (a) Allowed Claims in such Class as of the date of determination, plus (b) Disputed Claims (in their aggregate Face Amounts or such other amounts as may be estimated) in such Class as of the date of determination.

"**Rejection Claim**" means any Claim for amounts due as a result of the rejection of an executory contract or unexpired lease in accordance with Bankruptcy Code Section 365.

"**Remaining Secured Claims**" means a Secured Claim arising prior to the Petition Date against the Debtor, other than any Secured Claim satisfied pursuant to a Sale Order.

"**Request for Payment**" means a request for payment of an Administrative Claim filed with the Bankruptcy Court, or with the Claims Agent in the case of any 503(b)(9) Claim, in connection with the Chapter 11 Case.

"**Sale Order**" means any Order authorizing the sale of certain assets of the Debtor free and clear of all claims, liens, liabilities, rights, interests and encumbrances to a Successful Bidder, and approving a Successful Bidder Asset Purchase Agreement.

"**Schedules**" means, collectively, the (a) schedules of assets, liabilities and executory contracts and (b) statements of financial affairs, as each may be amended and supplemented from time to time prior to the Effective Date, filed by the Debtor pursuant to Bankruptcy Code Section 521.

"**SDNY Copyright Case**" means that case known as *American Broadcasting Companies, Inc., et al. v. Aereo, Inc.*, Case No. 12 Civ. 1540 (AJN)(HBP) before the United States District Court for the Southern District of New York.

"**Second Tier Claims**" mean General Unsecured Claims, whether Allowed or Disputed.

"**Secured Claim**" means: (a) that portion of a Claim that is secured by a valid, perfected and enforceable Lien that is not subject to an Avoidance Action, in or upon any right, title or interest of the Debtor in and to property of the Estate, to the extent of the value of the holder's interest in such property as of the relevant determination date or (b) any Claim that is subject to an offset right pursuant to Bankruptcy Code Section 553, to the extent of the amount subject to a valid setoff, in the case of each of (a) and (b) as agreed in writing by the Debtor or the Liquidation Trustee or as determined by the Bankruptcy Court pursuant to Bankruptcy Code Section 506(a).

"**Statutory Fees**" means the fees due and payable pursuant to Section 1930 of Title 28 of the United States Code.

*Solicitation Version*

"**Successful Bidder**" means the party who tenders, in the Debtor's judgment, the highest and best bid for a particular Asset or group of Assets, as confirmed in one or more Successful Bidder Asset Purchase Agreements and approved by one or more Sale Orders.

"**Successful Bidder Asset Purchase Agreement**" means an asset purchase agreement executed by and between the Debtor and a Successful Bidder, dated as of February 26, 2015 and approved by a Sale Order.

 "**Taxes**" means all income, franchise, excise, sales, use, employment, withholding, property, payroll or other taxes, assessments, or governmental charges, together with any interest, penalties, additions to tax, fines and similar amounts relating thereto, imposed or collected by any Governmental Unit on or from the Debtor.

"**Tax Code**" means the United States Internal Revenue Code of 1986, as amended, modified or supplemented from time to time, and the rules and regulations promulgated thereunder.

"**Third Tier Claims**" means postpetition interest at the Designated Rate as provided for under the Plan on account of Priority Tax Claims, Priority Non-Tax Claims, Remaining Secured Claims, Convenience Claims and General Unsecured Claims.

"**Unclaimed Property**" means any Cash or other distributable property unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto in respect of such holder's Allowed Claim. Unclaimed Property shall, without limitation, include:  (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, notwithstanding efforts by the Liquidation Trustee to locate such address which were commercially reasonable under the circumstances; and (d) checks (and the funds represented thereby) not mailed or delivered because a holder of a Claim or Interest is requested to provide a taxpayer identification number or to otherwise satisfy any tax withholding requirements with respect to a distribution and such holder fails to do so within ninety (90) days of the date of such request.

"**Unimpaired**" means, with respect to any Claim, that such Claim is not impaired within the meaning of Bankruptcy Code Section 1124.

"**United States Trustee**" means the United States Trustee appointed under Section 581(a)(3) of Title 28 of the United States Code to serve in the Chapter 11 Case for the Southern District of New York.

"**Unsecured Allocation**" means Available Cash remaining in the LT Distribution Account after payment in full of, or adequate reserve for, all First Tier Claims, subject to the establishment of Disputed Claims Reserves for Second Tier Claims.

"**Unsecured Claim**" means any Claim, arising prior to the Petition Date, that is not: (a) an Administrative Claim; (b) a Priority Claim or (c) a Remaining Secured Claim.

"**Unsecured Interest Allocation**" means Available Cash remaining in the LT Distribution Account to be used for the payment of postpetition interest to holders of First Tier Claims (other than Administrative Claims and Remaining Secured Claims) and Second Tier Claims after payment in full of, or adequate reserve for, all First Tier Claims and Second Tier Claims.

"**Utah Copyright Case**" means that case known as *Community Television of Utah, LLC, et al. v. Aereo, Inc.*, No. 2:13CV910DAK before the United States District Court for the District of Utah.

Section 1.02    **Broadcaster Settlement Agreement**.  The definitions contained in the Broadcaster Settlement Agreement are incorporated herein.

Section 1.03    **Rules of Interpretation**.    For purposes of the Plan:    (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter genders; (c) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (d) any reference in the Plan to an existing document or an exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (e) unless otherwise specified, all references in the Plan to articles, sections, clauses and exhibits are references to articles, sections, clauses and exhibits of or to the Plan; (f) the words "herein" and "hereto," and other words of similar import, refer to this Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) any reference to an Entity or Person as a holder of a Claim or Interest includes that Entity or Person's successors, assigns and affiliates; (i) the rules of construction set forth in Bankruptcy Code Section 102 shall apply to the extent such rules are not inconsistent with any other provision in this Section; (j) any term used herein that is not defined herein shall have the meaning ascribed thereto in the Bankruptcy Code and/or the Bankruptcy Rules, if used therein; and (k) any reference to the "Liquidation Trustee" shall be deemed to include a reference to the "Liquidation Trust" and any reference to the "Liquidation Trust" shall be deemed to include a reference to the "Liquidation Trustee" unless the context otherwise requires.

Section 1.04    **Computation of Time**.    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

Section 2.01    **General Rules of Classification**.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the

Effective Date.  A Claim or Interest may be bifurcated and classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

Section 2.02  **Unclassified Claims**.  In accordance with Bankruptcy Code Section 1123(a)(1), Administrative Claims, Fee Claims and Priority Tax Claims have not been classified.

Section 2.03  **Classified Claims and Interests**.  Subject to Section **2.01** of the Plan, the Claims and Interests against the Debtor have been classified as follows:

| **Class** | **Claim** | **Status** | **Voting Rights** |
|---|---|---|---|
| Class 1 | Remaining Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 2 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 3 | Convenience Claims | Unimpaired | Not Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Aereo Interests | Impaired | Not Entitled to Vote |

# ARTICLE III
# TREATMENT OF UNCLASSIFIED CLAIMS

Section 3.01  **Administrative Claims**.

(a)  **Administrative Claims Bar Date and 503(b)(9) Claims Bar Date**.  To be eligible to receive distributions under the Plan on account of an Administrative Claim (other than a 503(b)(9) Claim) that is not otherwise Allowed by the Plan, a Request for Payment of an Administrative Claim must have been or be filed with the Bankruptcy Court on or before the applicable Administrative Claims Bar Date.  To be eligible to receive distributions under the Plan on account of a 503(b)(9) Claim that is not otherwise Allowed by the Plan, a Request for Payment of a 503(b)(9) Claim must have been filed with the Claims Agent on or before the 503(b)(9) Claims Bar Date.  Any Administrative Claim that is not asserted in accordance with this Section 3.01(a) shall be deemed disallowed under this Plan and shall be forever barred against the Estate, the Liquidation Trust or any of their Assets or property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(b)  **Treatment**. Administrative Claims are First Tier Claims under the Plan.  Subject to the terms herein, and unless the holder of an Allowed Administrative Claim agrees to receive other less favorable treatment, each holder of an Allowed Administrative Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) the Initial Distribution Date for First Tier Claims or (ii) as soon as reasonably practicable after the date

such Claim becomes an Allowed Claim; provided, however, that Allowed Administrative Claims of the United States Trustee for Statutory Fees shall be paid on the Effective Date and thereafter, as such fees may thereafter accrue and be due and payable by the Liquidation Trustee pursuant to Section **6.05** of the Plan in accordance with the applicable schedule for payment of such fees.

Section 3.02    **Fee Claims**.

(a)    **Fee Claims Bar Date**.  All final applications for payment of Fee Claims shall be filed with the Bankruptcy Court on or before the Fee Claims Bar Date.  Any Fee Claim that is not asserted in accordance with this Section 3.02(a) shall be deemed disallowed under this Plan and shall be forever barred against the Estate, the Liquidation Trust, or any of their Assets or property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(b)    **Treatment**.  Fee Claims are First Tier Claims under the Plan. Subject to the terms herein, and unless the holder of an Allowed Fee Claim agrees to receive other less favorable treatment, each holder of an Allowed Fee Claim shall be paid 100% of the unpaid amount of such Claim in Cash no later than five (5) Business Days after the date that such Claim is allowed by order entered by the Bankruptcy Court

Section 3.03    **Priority Tax Claims.**

(a)    **Governmental Unit Bar Date**.  To be eligible to receive distributions under the Plan on account of a Priority Tax Claim, a Proof of Claim must be filed with the Claims Agent so as to be received on or before the Governmental Unit Bar Date.  Any Priority Tax Claim that is not asserted in accordance with this Section 3.03(a) shall be deemed disallowed under this Plan and shall be forever barred against the Estate, the Liquidation Trust or any of their Assets or property and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

(b)    **Treatment**. Priority Tax Claims are First Tier Claims under the Plan.  Subject to the terms herein, and unless the holder of an Allowed Priority Tax Claim agrees to receive other less favorable treatment, each holder of an Allowed Priority Tax Claim shall be entitled to receive 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) the Initial Distribution Date for First Tier Claims or (ii) as soon as reasonably practicable after the date such Claim becomes an Allowed Claim.  Additionally, after payment or adequate reserve for all First Tier Claims and Second Tier Claims, on the Initial Distribution Date for Third Tier Claims, each eligible holder of an Allowed Priority Tax Claim shall be entitled to receive Available Cash from the Unsecured Interest Allocation on account of postpetition interest accrued through the Effective Date at the Designated Rate.

# ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

Section 4.01    **Class 1:  Remaining Secured Claims**.

(a)    **Classification**.  Remaining Secured Claim are First Tier Claims under the Plan. Class 1 shall consist of all Remaining Secured Claims.  Class 1 consists of separate Sub-Classes, one for each Remaining Secured Claim.  Each Sub-Class is deemed to be a separate Class for all purposes under the Bankruptcy Code.  Class 1 is Unimpaired by the Plan and the holders of Remaining Secured Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

(b)    **Treatment**.  Except to the extent that the holder of an Allowed Remaining Secured Claim agrees to a different treatment of such Claim, on the later of the Effective Date and the date such Remaining Secured Claim becomes an Allowed Remaining Secured Claim, or as soon thereafter as reasonably practicable, each holder of an Allowed Remaining Secured Claim shall receive, in complete settlement, satisfaction and discharge of its Class 1 Claim, at the Liquidation Trustee's election, (i) payment in full in Cash of such holder's Allowed Remaining Secured Claim, (ii) the Debtor's interest in the collateral securing such holder's Allowed Remaining Secured Claim or (iii) such other treatment rendering such holder's Allowed Remaining Secured Claim, provided, however, that if the holder of an Allowed Remaining Secured Claim holds Cash with a right of setoff, such holder shall be entitled to effect the setoff and thereby satisfy the Claim in lieu of receiving payment.

(c)    **Certain Conditions to Receipt of Aforementioned Treatment**.  Except as otherwise specifically provided in the Plan or in any agreement, instrument or document created in connection with the Plan:  (a) each holder of a Remaining Secured Claim, regardless of whether such Claim has been listed in the Schedules or asserted in a Proof of Claim:  (1) shall turn over and release to the Estate and the Liquidation Trust any and all property of the Estate that secures or purportedly secures such Claim and any such Lien arguably securing such Claim shall automatically, and without further action by the Estate or the Liquidation Trustee, be deemed released; provided, however, that if such property is Cash, in lieu of payment, the holder shall be deemed to have setoff the Cash to the extent of the Allowed amount of the Claim, and shall be obligated to turn over and release the balance of Cash and any other property that was held to secure the Claim and (2) execute such documents and instruments as the Liquidation Trustee require(s) to evidence such holder's release of such property or Lien, and if such holder violates the Confirmation Order and this Plan by refusing to execute appropriate documents or instruments, the Liquidation Trustee may, in its discretion, file a copy of the Confirmation Order which shall serve to release any holder's rights in such property; and (b) on the Effective Date, all right, title and interest in such property shall revert, vest or revest in accordance with this Plan, free and clear of all Claims and Interests, including, without limitation, Liens, escrows, charges, pledges, or other encumbrances of any kind; provided, however, that the physical turnover of property described in (a)(1) above, is necessary and required only to the extent the holder is in possession or control of the property that secures or purportedly secures such Claim.

Without limiting the automatic release provisions of the immediately preceding Paragraph: (a) no distribution hereunder shall be made to or on behalf of any holder unless and until such holder executes and delivers to the Estate or the Liquidation Trustee such release of Liens or otherwise turns over and releases any property in such holder's possession; (b) any holder that fails to execute and deliver such release of Liens within ninety (90) days after the Effective Date (or such other date as may be agreed by the Liquidation Trustee and such holder) shall be subject to whatever sanction is deemed appropriate by the Bankruptcy Court and (c) the Liquidation Trustee, which shall be deemed to be appointed as attorney-in-fact for all such holders of Remaining Secured Claims for the purpose of releasing such Liens, shall be authorized to use, and all authorities shall be required to accept, the Confirmation Order and the notice of Effective Date as satisfaction of all Liens.

Notwithstanding the foregoing two Paragraphs, any Lien securing the Claim of a holder, to the extent that it is valid, perfected and unavoidable, or otherwise Allowed under the Plan, attaches to the proceeds of the Asset encumbered by such Lien; provided, however, that such Liens are immediately released in accordance with the foregoing two Paragraphs when the Claim of such a holder (y) is disallowed or (z) becomes an Allowed Claim and payment on the Allowed Claim is made.

Section 4.02    **Class 2: Priority Non-Tax Claims**.

(a)    **Classification**. Class 2 consists of all Priority Non-Tax Claims. Class 2 is Unimpaired by the Plan and the holders of Priority Non-Tax Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

(b)    **Treatment**. Priority Non-Tax Claims are First Tier Claims under the Plan. Subject to the terms herein and unless the holder of an Allowed Priority Non-Tax Claim agrees to receive other less favorable treatment, each holder of an Allowed Priority Non-Tax Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) Initial Distribution Date for First Tier Claims or (ii) as soon as is reasonably practicable after the date such Claim becomes an Allowed Claim. Additionally, after payment or adequate reserve for all First Tier Claims and Second Tier Claims, on the Initial Distribution Date for Third Tier Claims, each eligible holder of an Allowed Priority Non-Tax shall be entitled to receive Available Cash from the Unsecured Interest Allocation on account of postpetition interest accrued through the Effective Date at one of the following interest rates: (a) as to a Claim that is not based upon an agreement that provides for interest, at the Designated Rate or (b) as to a Claim that is based upon an agreement that provides for interest either (i) at the non-default interest rate provided for in such agreement or (ii) if no such rate is provided, then at the Designated Rate.

Section 4.03    **Class 3: Convenience Claims**

(a)    **Classification**. Class 3 shall consist of all Convenience Claims. Class 3 is Unimpaired by the Plan and the holders of Allowed Class 3 Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

(b)    **Treatment**.  Convenience Claims are First Tier Claims under the Plan.  Each holder of an Allowed Convenience Claim shall be paid 100% of the unpaid amount of such Claim in Cash on the date that is the later of (i) Initial Distribution Date for First Tier Claims or (ii) as soon as is reasonably practicable after the date such Claim becomes an Allowed Claim.  Additionally, after payment or adequate reserve for all First Tier Claims and Second Tier Claims, on the Initial Distribution Date for Third Tier Claims, each eligible holder of an Allowed Convenience shall be entitled to receive Available Cash from the Unsecured Interest Allocation on account of postpetition interest accrued through the Effective Date at one of the following interest rates:  (a) as to a Claim that is <u>not</u> based upon an agreement that provides for interest, at the Designated Rate or (b) as to a Claim that is based upon an agreement that provides for interest either (i) at the non-default interest rate provided for in such agreement or (ii) if no such rate is provided, then at the Designated Rate.

Section 4.04    **<u>Class 4:  General Unsecured Claims</u>**.

(a)    **<u>Classification</u>**.  Class 4 shall consist of all General Unsecured Claims.  Class 4 is Impaired by the Plan and the holders of General Unsecured Claims are entitled to vote on the Plan.

(b)    **<u>Treatment</u>**.  General Unsecured Claims are Second Tier Claims under the Plan. Subject to the terms herein, and unless the holder of an Allowed General Unsecured Claim agrees to receive other less favorable treatment, each holder of an Allowed General Unsecured Claim, in full satisfaction, settlement and release of and in exchange for all such Allowed Claims, shall be entitled to receive, commencing on the Initial Distribution Date for Second Tier Claims, one or more Distributions of Available Cash in an amount equal to its Pro Rata share of the Unsecured Allocation.  Additionally, after payment or adequate reserve for all First Tier Claims and Second Tier Claims, on the Initial Distribution Date for Third Tier Claims, each eligible holder of an Allowed General Unsecured Claim shall be entitled to receive Available Cash from the Unsecured Interest Allocation on account of postpetition interest accrued through the Effective Date at one of the following interest rates:  (a) as to a Claim that is <u>not</u> based upon an agreement that provides for interest, at the Designated Rate or (b) as to a Claim that is based upon an agreement that provides for interest either (i) at the non-default interest rate provided for in such agreement or (ii) if no such rate is provided, then at the Designated Rate.

Section 4.05    **<u>Class 5:  Aereo Interests</u>**.

(a)    **<u>Classification</u>**. Class 5 shall consist of all Aereo Interests.  Class 5 is Impaired by the Plan and the holders of Aereo Interests are not entitled to vote on the Plan and are deemed to reject the Plan.

(b)    **<u>Treatment</u>**.  Aereo Interests are Fourth Tier Interests under the Plan.  All Aereo Interests shall be cancelled as of the Effective Date.  If, and only if, there is Available Cash remaining in the LT Distribution Account after payment in full of, or adequate reserve for, Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Tax Claims and all Allowed Claims or Disputed Claims in Classes 1 through 4, then, in full satisfaction, settlement and release of and in exchange for all such Allowed Interests, each holder of an Allowed Aereo Interest shall be entitled to receive, on the Initial Distribution Date for Fourth

Tier Interests, one or more Distributions of Available Cash in an amount equal to its allocated share of such Available Cash remaining in the LT Distribution Account as such allocated share shall be determined by the Bankruptcy Court in accordance with the Debtor's corporate organizational documents and New York law applicable thereto, upon motion of the Liquidation Trustee and after notice to all holders of Aereo Interests.  If, however, there is no Available Cash remaining in the LT Distribution Account after payment in full of, or adequate reserve for, Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Tax Claims and all Allowed Claims or Disputed Claims in Classes 1 through 4, then no holder of an Aereo Interest shall receive or retain any property under the Plan or the Liquidation Trust Agreement on account of such holder's Interest.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THE PLAN

Section 5.01    **Impaired Classes of Claims and Interests Entitled to Vote**. Holders of Claims in each Impaired Class of Claims that will receive or retain any property under the Plan are entitled to vote to accept or reject the Plan, unless any such Class has been deemed to reject the Plan.  Class 4 is Impaired as set forth in Sections **4.04** of the Plan, and has not been deemed to reject the Plan.  Accordingly, the votes of holders of Claims in Class 4 shall be solicited with respect to the Plan.

Section 5.02    **Acceptance by an Impaired Voting Class**.  In accordance with Bankruptcy Code Section 1126(c), and except as provided in Bankruptcy Code Section 1126(e), an Impaired Class of Claims that votes on the Plan shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

Section 5.03    **Deemed Acceptances by Classes**.  Claims in Classes 1, 2 and 3 are Unimpaired under the Plan.  Under Bankruptcy Code Section 1126(f), holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan and the votes of holders of such Unimpaired Claims and Interests shall not be solicited.

Section 5.04    **Deemed Rejections by Classes**.    Interests in Class 5 are Impaired. The holders of such Interests are not expected to receive or retain any property under the Plan and are presumed to have rejected the Plan, and the votes of holders of such Impaired Claims and Interests shall not be solicited.

Section 5.05    **Confirmation Pursuant to Bankruptcy Code Section 1129(b)**. In view of the deemed rejection of the Plan by Class 5, the Debtor requests Confirmation of the Plan, as it may be modified from time to time, under Bankruptcy Code Section 1129(b).  The Debtor reserves the right to alter, amend or modify the Plan or any exhibit, in accordance with the provisions of the Plan, including, without limitation, Section **13.01**, as necessary to satisfy the requirements of Bankruptcy Code Section 1129(b).

# ARTICLE VI

# MEANS FOR IMPLEMENTATION

Section 6.01    **The Liquidation Trust**.

(a)    **Appointment of the Liquidation Trustee**.  The Liquidation Trustee for the Liquidation Trust shall be a Person designated jointly by the Debtor and the Official Creditors' Committee, and identified in the Liquidation Trust Agreement.  The Liquidation Trustee shall be the successor to all of the privileges of the Estate and the Debtor including, but not limited to, the attorney/client privilege.  The Liquidation Trustee shall be a successor to the Debtor under the Broadcaster Settlement Agreement and shall be bound by, and receive all rights and benefits from, the Broadcaster Settlement Agreement.

(b)    **Creation of Liquidation Trust**.  On the Effective Date, the Liquidation Trustee shall sign the Liquidation Trust Agreement and accept all Assets of the Estate on behalf of the Beneficiaries thereof, and be authorized to obtain, liquidate and collect all of the Assets of the Estate not in its possession and pursue all of the Estate Causes of Action.  The Liquidation Trust will then be deemed created and effective without any further action by the Bankruptcy Court or any party.  The Liquidation Trust shall be established for the sole purpose of liquidating its Assets, with no objective to continue or engage in the conduct of a trade or business and for making Distributions in accordance with the Plan and the Liquidation Trust Agreement.

(c)    **Beneficiaries of Liquidation Trust**.  The holders of Allowed Claims and, if applicable, Allowed Interests entitled to Distributions shall be Beneficiaries of the Liquidation Trust.  Such Beneficiaries shall be bound by the Liquidation Trust Agreement.  The interests of the Beneficiaries in the Liquidation Trust shall be uncertificated and shall be nontransferable except upon death of the interest holder or by operation of law.

(d)    **Vesting and Transfer of Assets to the Liquidation Trust**.  Pursuant to Bankruptcy Code Section 1141(b), the Assets of the Estate shall vest in the Liquidation Trust; provided, however, that the Liquidation Trust, with the consent of the Liquidation Trustee, may abandon or otherwise not accept any Assets that the Liquidation Trustee believes, in good faith, have no value to the Liquidation Trust.  Any Assets the Liquidation Trustee so abandons or otherwise does not accept shall not vest in the Liquidation Trust.  As of the Effective Date, all Assets vested in the Liquidation Trust and all Assets dealt with in the Plan shall be free and clear of all Liens, Claims and Interests, including without limitation any injunctive relief previously entered against the Debtor, except as may be otherwise specifically provided in the Plan or in the Confirmation Order.

(e)    **Certain Powers and Duties of Liquidation Trust and Liquidation Trustee**

(i)    General Powers of Liquidation Trustee. The Liquidation Trustee shall be the exclusive trustee of the assets of the Liquidation Trust for purposes of 31 U.S.C. Section 3713(b) and 26 U.S.C. Section 6012(b)(3).  The powers, rights and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and shall include the authority and responsibility to:  (a) receive, manage, invest, supervise and protect trust assets; (b)

pay taxes or other obligations incurred by the Liquidation Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and distribution of trust assets; (d) calculate and implement distributions of trust assets; (e) prosecute, compromise, and settle, in accordance with the specific terms of the Liquidation Trust Agreement, Estate Causes of Action vested in the Liquidation Trust; (f) resolve issues involving Claims and Interests pursuant to Article IX of this Plan;  and (g) undertake all administrative functions of the Chapter 11 Case, including the ultimate closing of the Chapter 11 Case. The Liquidation Trust is the successor to the Debtor, the Estate and the Debtor's rights to books and records.

(ii)    Books and Records.  On the Effective Date, the Liquidation Trustee shall: (i) take possession of all books, records, and files of the Debtor and its Estate, including the Excluded Assets as that term is defined in the Superseding Order (I) Approving Bidding Procedures; (II) Establishing Certain Related Deadlines; And (III) Granting Related Relief [Docket No. 176] (the "Superseding Order"); and (ii) provide for the retention and storage of such books, records and files until the later of (a) such time as the Liquidation Trustee determines, in accordance with the Liquidation Trust Agreement, that retention of same is no longer necessary or required, or (b) the terms of the Superseding Order, or any other order of any court of competent jurisdiction,  permit the destruction of the same.

(iii)    Investments of Cash. The Liquidation Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Bankruptcy Code Section 345 or in other prudent investments; provided, however, that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

(iv)    Costs and Expenses of Administration of Liquidation Trust.    All Liquidation Trust Operating Expenses shall be the responsibility of and paid by the Liquidation Trust in accordance with the Liquidation Trust Agreement.

(v)    Reporting. In no event later than ten (10) Business Days after the end of the first full month following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidation Trust Operational Reserve and any Disputed Claims Reserve has been released or paid out in accordance with the Plan, the Liquidation Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients and dates of all distributions made by the Liquidation Trustee under the Plan through each applicable reporting period.

(f)    **Federal Income Tax Treatment of the Liquidation Trust for the Liquidation Trust Assets; Tax Reporting and Tax Payment Obligations.**    For federal income tax purposes, it is intended that the Liquidation Trust be classified as a liquidating trust under Section 301.7701-4 of the Treasury regulations and that such trust be owned by its Beneficiaries (i.e., holders of Allowed Claims and/or Interests in Class 1, Class 2, Class 3, Class 4, and Class 5). Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Estate of an undivided interest in each of the assets of the Liquidation Trust and then contributed such interests to the Liquidation Trust.

(i)     Liquidation Trust Assets Treated as Owned by Holders of Allowed Claims.  For all federal income tax purposes, all parties shall treat the transfer of Assets to the Liquidation Trust for the benefit of the holders of Allowed Claims and/or Interests in Class 1, Class 2, Class 3, Class 4, and Class 5, as (a) a transfer of the assets of the Liquidation Trust directly to the holders of Allowed Claims or Interests in Class 1, Class 2, Class 3, Class 4, and Class 5, followed by (b) the transfer by such holders to the Liquidation Trust of the Assets of the Liquidation Trust in exchange for the beneficial interests in the Liquidation Trust.  Accordingly, the holders of such Allowed Claims or Interests in Class 1, Class 2, Class 3, Class 4, and Class 5 shall be treated for federal income tax purposes as the grantors and owners of their respective share, if any, of the Assets of the Liquidation Trust.

(ii)     Tax Reporting.  The Liquidation Trustee shall file returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Section 6.01.  The Liquidation Trustee also shall annually send to each holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their federal income tax returns; provided, however, that no such statement need be sent to any Class that will not receive any Distribution from the Liquidation Trust.  The Liquidation Trust's taxable income, gain, loss, deduction or credit will be allocated to holders of Allowed Claims or Interests in Class 1, Class 2, Class 3, Class 4, and Class 5 in accordance with their relative beneficial interests in the Liquidation Trust.

As soon as possible after the Effective Date, the Liquidation Trustee shall make a good faith valuation of assets of the Liquidation Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes.  The Liquidation Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any Governmental Unit for taxing purposes.

The Liquidation Trustee may segregate the Disputed Claims Reserve and the Liquidation Trust Operational Reserve.  The Liquidation Trustee may file all income tax returns with respect to any taxable income or loss attributable to the Disputed Claims Reserve or the Liquidation Trust Operational Reserve, determining that either or both of such reserves are tax reporting entities, separate and distinct from the Liquidation Trust itself, in which case, the Liquidation Trustee shall pay the federal, state and local income taxes attributable to such tax reporting entities.

The Liquidation Trustee may request an expedited determination of Taxes of the Debtor or of the Liquidation Trust, including the Disputed Claims Reserve and the Liquidation Trust Operational Reserve, under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Debtor and the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust.

The Liquidation Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Debtor and the Liquidation Trust.  The Liquidation Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions made by the Liquidation Trust shall be subject to any such withholding and reporting requirements.

(iii)    <u>Payment of Taxes</u>.  The Liquidation Trust shall be responsible for payments of all tax obligations of the Debtor including Priority Tax Claims and Administrative Claims, and any taxes imposed on the Liquidation Trust or its Assets, including the Disputed Claims Reserve and the Liquidation Trust Operational Reserve.  In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidation Trust as a result of the resolutions of such Disputed Claims.

(g)    **Term of Liquidation Trust**.  The Liquidation Trustee shall be discharged and the Liquidation Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Assets of the Liquidation Trust have been liquidated, (iii) all duties and obligations of the Liquidation Trustee have been fulfilled, and (iv) all Distributions required to be made by the Liquidation Trust under the Plan and the Liquidation Trust Agreement have been made, but in no event shall the Liquidation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the assets of the Liquidation Trust.

Section 6.02    <b><u>Prosecution and Resolution of Estate Causes of Action</u></b>.

(a)    **The Liquidation Trustee's Exclusive Authority to Pursue, Settle, or Abandon Estate Causes of Action**.  Prosecution and settlement of all Estate Causes of Action, including Avoidance Actions, shall be the sole responsibility of the Liquidation Trustee, pursuant to this Plan and the Confirmation Order.  From and on the Effective Date, the Liquidation Trustee shall have exclusive rights, powers and interests of the Estate to pursue, settle or abandon such Estate Causes of Action as the sole representative of the Estate pursuant to Bankruptcy Code Section 1123(b)(3).  All Estate Causes of Action, including Avoidance Actions, are reserved and preserved to the extent set forth in the Plan.

(b)    **Settlement of Estate Causes of Action**.  Settlement by the Liquidation Trust of any Estate Cause of Action shall require:  (i) approval only of the Liquidation Trustee, if the amount claimed by the Liquidation Trust against a defendant is less than one million dollars ($1,000,000); and (ii) approval of the Liquidation Trustee and the Bankruptcy Court, if the amount claimed by the Liquidation Trust against a defendant equals or exceeds one million dollars ($1,000,000).

(c)    **Reservation of Rights Regarding Prosecution of Causes of Action**.  Nothing herein shall prohibit holders of Claims or Interests from contributing Causes of Action in their possession into a separate liquidation trust or other Entity for the prosecution of such Causes of Action.  The Liquidation Trust Agreement shall enable the Liquidation Trustee to enter into

agreements, to the extent not inconsistent with Section **6.01** of the Plan, with any such Entity and/or with holders of Claims and Interests for the prosecution of Estate Causes of Action and Causes of Action belonging to holders of Claims or Interests.

Section 6.03    **Cancellation of Documents**.  On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, debentures, certificates and other documents evidencing Claims and Interests in a Debtor or the Debtor including, without limitation, the Aereo Interests, shall, with respect to the Debtor, be canceled and deemed rejected and terminated.

Section 6.04    **Termination of Official Creditors' Committee**.    The appointment of the Official Creditors' Committee shall terminate on the Effective Date, and the members of the Official Creditors' Committee (solely in their capacities as such) shall be released and discharged from all further rights and duties arising from or related to such roles in the Chapter 11 Case.

Section 6.05    **Filing of Monthly and Quarterly Reports and Payment of Statutory Fees**.  The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidation Trustee.  All Statutory Fees with respect to the period prior to the Effective Date shall be paid by the Debtor in Cash on the Effective Date or other required payment date.  With respect to the period after the Effective Date, the Liquidation Trustee shall be obligated to pay quarterly Statutory Fees to the Office of the United States Trustee and such obligation shall continue until such time as the Chapter 11 Case is closed, dismissed or converted.

Section 6.06    **Dissolution of the Debtor**.  As soon as practicable after the Effective Date, the Debtor will be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith.  Pursuant to Bankruptcy Code Section 1142(b), the Liquidation Trustee shall be authorized to file and shall file with the official public office for keeping corporate records in the State of New York a certificate of dissolution or equivalent document. Such a certificate of dissolution may be executed by the Liquidation Trustee without need for any action or approval by the shareholders or Board of Directors of the Debtor. From and after the Effective Date, the Debtor (a) for all purposes shall be deemed to have withdrawn its business operations from any state in which it was previously conducting, or is registered or licensed to conduct, its business operations, and shall not be required to file any document, pay any sum or take any other action in order to effectuate such withdrawal, (b) shall be deemed to have cancelled pursuant to this Plan all Interests, and (c) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, the dissolution of the Debtor shall not have any effect, in any manner, on the Estate Causes of Action that the Liquidating Trustee may assert in accordance with the Plan and the Liquidating Trust Agreement or the rights of indemnity or similar protections granted by the Debtor prepetition represented by Claims filed on account thereof.

Section 6.07    **Closing of the Debtor's Chapter 11 Case**.  The Chapter 11 Case shall remain open and subject to the provisions of this Section 6.07. Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Chapter 11

Case, when all Assets contributed to the Liquidation Trust in accordance with Section **6.01(d)** above have been liquidated and converted into Cash (other than those Assets abandoned by the Liquidation Trust), and such Cash has been distributed in accordance with the Liquidation Trust Agreement and this Plan, the Liquidation Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

Section 6.08   **Effectuating Documents and Further Transactions**.   Prior to the Effective Date, the Debtor shall be authorized to execute, deliver, file or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan. After the Effective Date, the Liquidation Trustee shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.

## ARTICLE VII

## EXECUTORY CONTRACTS AND LEASES

Section 7.01   **Rejection of Contracts and Leases**.   Pursuant to the Sale Orders, the Bankruptcy Court established deadlines and procedures for the Debtor to assume executory contracts or unexpired leases designated by the Successful Bidders, and, in accordance with such procedures, the Debtor assumed and assigned and rejected numerous executory contracts and unexpired leases.   Each executory contract or unexpired lease of the Debtor that has not expired by its own terms prior to the Effective Date, and that (a) has not been assumed, assumed and assigned, or rejected pursuant to such process or by order of the Bankruptcy Court during the Chapter 11 Cases prior to the Effective Date, (b) is not the subject of a motion to assume or a motion or permitted notice to assume and assign in each case filed as of the Effective Date, shall be deemed rejected pursuant to Bankruptcy Code Section 365 as of the Effective Date.   The Confirmation Order shall constitute a Final Order of the Bankruptcy Court approving the rejection of such executory contract or unexpired lease.

Section 7.02   **Bar Date For Rejection Damages**.   If the rejection of any executory contract or unexpired lease under the Plan gives rise to a Claim by the non-Debtor party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Estate, the Liquidation Trust, their successors or properties, unless a Proof of Claim filed with the Claims Agent and served on the Liquidation Trustee within thirty (30) days after the date of notice of the entry of the order of the Bankruptcy Court rejecting the executory contract or unexpired lease, which may include, if applicable, the Confirmation Order. Any such timely filed claim shall be classified in Class 4.

## ARTICLE VIII

## DISPUTED, CONTINGENT AND
## UNLIQUIDATED CLAIMS AND INTERESTS

Section 8.01    **Objections to Claims and Interests**.

(a)    The Claims/Interest Objection Deadline shall be **180 days** after the Effective Date; provided, however, that the last date for filing Avoidance Actions against a holder of a Claim or Interest shall be the date established by Bankruptcy Code Section 546(a) and the last day for asserting any other Estate Cause of Action shall be the last day of the applicable statute of limitations therefor provided under applicable non-bankruptcy law, as such period may have been extended by Bankruptcy Code Section 108 or any other section of the Bankruptcy Code or other applicable law; provided further, however, that no Entity or Person (including the Liquidation Trustee, any holder of Claims, or any holder of Interests) may file an objection to any Claim deemed Allowed by the Plan, and any such objection shall be deemed null and void. Notwithstanding any of the foregoing, the Liquidation Trustee may request from the Bankruptcy Court one or more extensions of the Claims/Interest Objection Deadline, which relief shall be freely given for cause stated and the extended date shall become the new Claims/Interest Objection Deadline.

(b)    With the exception of objections filed by the Debtor before the Effective Date, the Liquidation Trustee shall have the exclusive responsibility for reviewing and objecting to the Allowance of any Claim or Interest filed in the Chapter 11 Case. In the event that any objection filed by the Debtor remains pending as of the Effective Date, the Liquidation Trustee shall be deemed substituted for the Debtor as the objecting party.  All objections shall be litigated to a Final Order; provided, however, that the Liquidation Trustee may compromise and settle any objections to Claims or Interests, subject to the provisions of this Article VIII without further order of the Bankruptcy Court; provided further, however, that distributions may be made to a holder of a Claim or Interest prior to the expiration of the Claims/Interests Objection Deadline if the Liquidation Trustee reasonably believes that no basis exists for objection to such holder's Claim or Interest.  Notwithstanding the foregoing, nothing in this Plan shall be interpreted to operate as a waiver or release of (i) any right that any party-in-interest may have to object to (a) any Claim or Interest through the Effective Date or (b) any Fee Claim after the Effective Date; or (ii) any objection to Claims or Interests pending as of the Effective Date, regardless of whether such objection was brought by the Debtor or any other party-in-interest.

(c)    Objections to Claims or Interests not otherwise deemed Allowed by the Plan shall not be subject to any defense, including, without limitation, res judicata, estoppel or any other defense because of the confirmation of the Plan.  Additionally, the rights of the Liquidation Trustee to amend, modify or supplement any objection to a particular Claim or Interest to include relief pursuant to Bankruptcy Code Section 502(d) are hereby preserved until sixty (60) days after the entry of a Final Order against a holder of such Claim or Interest.

Section 8.02    **Estimation of Claims or Interests**.    Through the Claims/Interests Objection Deadline, Debtor or, after the Effective date, the Liquidation Trustee, may request that the Bankruptcy Court enter an Estimation Order fixing the value of, pursuant to

25

Bankruptcy Code Section 502(c), any Disputed Claim or Interest, regardless of whether the Debtor has previously objected to such Claim or Interest, provided that a Final Order or unstayed order has not previously been entered by the Bankruptcy Court with respect to such Claim or Interest or any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Disputed Claim or Disputed Interest at any time during litigation concerning any objection to any Disputed Claim or Disputed Interest, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court enters an Estimation Order estimating any Disputed Claim or Disputed Interest, the amount of such estimation will constitute either the Allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest, as determined by the Bankruptcy Court in the absence of a stay of such order pending appeal. If a Claim has been estimated for an amount less than the Face Amount and the Claim holder has obtained a stay pending appeal, the Liquidation Trustee must reserve for the Face Amount of such Claim pending resolution of such appeal. If the estimated amount constitutes a maximum limitation on such Claim or Interest, the Liquidation Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim or Interest. All of the aforementioned Claims and Interests objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims or Interests may be estimated and thereafter resolved by any mechanism permitted under the Bankruptcy Code or the Plan.

Section 8.03    **Amendments to Claims or Interests**. After the Confirmation Date, a Claim or Interest may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim or Interest solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority.

Section 8.04    **Authority To Settle Disputed Claims or Interests**. From and after the Effective Date, the Liquidation Trustee shall be authorized with respect to those Claims or Interests that are not Allowed by Final Order, pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Section 105(a), to compromise and settle Disputed Claims with a Disputed amount in excess of one million dollars ($1,000,000), upon Bankruptcy Court approval of such settlement. Notwithstanding any prior order of the Bankruptcy Court or the provisions of Bankruptcy Rule 9019, the Liquidation Trustee may settle or compromise any Disputed Claim with a Disputed amount of one million dollars ($1,000,000) or less without approval of the Bankruptcy Court.

Section 8.05    **No Recourse**. Notwithstanding that the Allowed amount of any particular Disputed Claim or number of Disputed Interests is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount or number for which there is insufficient value in the relevant fund or reserve to provide a recovery equal to that received by other holders of Allowed Claims or Interests in the relevant Class, with respect to such Claim or Interest no holder shall have recourse to the Liquidation Trust, the Estate, the Debtor, any member thereof, any of their professionals, the holder of any other Claim or Interest, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim or Interest under Bankruptcy Code Section 502(j). THUS, THE BANKRUPTCY COURT'S ENTRY OF AN ESTIMATION ORDER MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS OR INTERESTS,

REGARDLESS OF THE AMOUNT OR NUMBER FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS OR INTERESTS.

## ARTICLE IX

## PROVISIONS GOVERNING DISTRIBUTIONS

Section 9.01    **Delivery of Distributions Generally**.

Distributions to holders of Allowed Claims shall be made by the Disbursing Agent at such time as required by the Plan and, assuming the availability of funds less applicable reserves established in accordance with the Plan and the Trust, not less than on each Quarterly Distribution Date:  (a) at the addresses set forth in the Proofs of Claim or Requests for Payment by such holders; (b) at the addresses set forth in any written notices of address change Filed or delivered after the date on which any related Proof of Claim or Request for Payment was Filed to (i) if such notice is Filed or delivered on or prior to the Effective Date, the Debtor and the Claims Agent or (ii) if such notice is Filed or delivered after the Effective Date, the Liquidation Trustee and the Claims Agent; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim if no Proof of Claim has been Filed and none of the Debtor or the Liquidation Trustee and the Claims Agent have received a written notice of a change of address.

Section 9.02    **Provisions Concerning Disputed Claims Reserves**.

(a)    **Establishment of Disputed Claims Reserves**.  On the Initial Distribution Date (or on any other date on which distributions for any particular Class of Claims are made pursuant to the Plan by the Liquidation Trust), and in connection with making all Distributions required to be made on any such date under the Plan, the Liquidation Trustee shall establish a separate Disputed Claim Reserve for Cash distributions pertaining to each Disputed Claim in each relevant Class, as necessary pursuant to the Plan.

(b)    **Amounts to Be Reserved**.  The Liquidation Trustee shall reserve the Ratable proportion of all Cash allocated for Distribution on account of each Disputed Claim based upon the Face Amount of each such Disputed Claim, or such lesser amount as may be agreed to by the holder of the Claim on one hand and the Liquidation Trustee on the other hand, as applicable, or in such amount as may otherwise be determined by order of the Bankruptcy Court.  All Cash allocable to the Disputed Claims in the relevant Class hereunder shall be distributed by the Liquidation Trustee to the relevant Disputed Claim Reserve on the Initial Distribution Date (or such other date on which distributions for any particular Class of Claims are made pursuant to the Plan).  All Cash distributed into a Disputed Claim Reserve shall be deposited in an interest-bearing account at a qualified institution, consistent with the Liquidation Trust Agreement.

(c)    **Distributions**.  Unless otherwise required by the applicable treatment provisions of the Plan (including with respect to Administrative Claims, Fee Claims, Priority Tax Claims, Remaining Secured Claims, Priority Non-Tax Claims, and Convenience Claims) payments on any Disputed Claim or, if applicable, Disputed Interest, that becomes an Allowed Claim or Allowed Interest shall be distributed on the first Quarterly Distribution Date after the Claim or, if applicable, Interest, is Allowed.  Distributions shall be made only to the extent of the aggregate

distributions that the holder of any such Allowed Claim or Allowed Interest would have received had such Claim or Interest been Allowed as of the Effective Date (less any taxes paid with respect to amounts held in the Disputed Claims Reserves).

(d) **Termination of Disputed Claim Reserves**. Each Disputed Claim Reserve shall be closed and extinguished by the Liquidation Trustee when all distributions and other dispositions of Cash or other property required to be made therefrom under the Plan and the Liquidation Trust Agreement have been made. Upon closure of a Disputed Claim Reserve, all Cash and other property held in that Disputed Claim Reserve shall revest in the Liquidation Trust and such Cash and property shall first be Ratably distributed to the other holders of Allowed Claims in the Class in respect of which such Disputed Claims Reserve was created, except as otherwise provided in Article IV of the Plan, and once the Claims in such Class are paid in full, shall be distributed to holders of Allowed Claims in the order of the priority established by the Plan.

(e) **Transmittal of Distributions and Notices**. Any property or notice that an Entity or Person is or becomes entitled to receive pursuant to the Plan may be delivered by regular mail, postage prepaid, in an envelope addressed to that Entity or Person's Distribution Address. Property distributed in accordance with this Section 9.02 shall be deemed delivered to such Entity or Person regardless of whether such property is actually received by that Entity or Person. A holder of a Claim or Interest may designate a different Distribution Address by notifying, after the Effective Date, the Liquidation Trustee and the Claims Agent of that address in writing. Such notification shall be effective only upon receipt. The address of the Liquidation Trust shall be identified in the Liquidation Trust Agreement and may be changed by the Liquidation Trustee upon filing a notice of such address change with the Bankruptcy Court, which notice shall be delivered to all parties entitled to notice under Bankruptcy Rule 2002.

Section 9.03    **Setoffs**. The Liquidation Trustee may, but shall not be required to, setoff against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Estate or the Liquidation Trust may have against the Claim holder, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation Trust of any such claim it may have against such Claim holder. Holders of Allowed Claims retain whatever rights to setoff they are otherwise entitled to assert under Bankruptcy Code Section 553.

Section 9.04    **Withholding and Reporting Requirements**. In connection with the Plan and all distributions hereunder, the Liquidation Trustee shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Liquidation Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim or, if applicable, an Allowed Interest, that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income,

withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Liquidation Trustee for the payment and satisfaction of such withholding tax obligations.  Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution to be held by the Liquidation Trustee until such time as the Liquidation Trustee is satisfied with the holder's arrangements for any withholding tax obligations.

Section 9.05    **Postpetition Interest on Claims**. Unless otherwise specifically provided for in the Plan or the Confirmation Order, postpetition interest shall not accrue or be paid on Claims or, if applicable, Interests, and no holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid upon any Claim or, if applicable, Interest in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after such Claim becomes an Allowed Claim.  No holder of a Claim shall be entitled to receive interest earned on a Disputed Claims Reserve.

Section 9.06    **Undeliverable Distributions**. No Distributions shall be made with respect to Unclaimed Property.  Any Distribution that is determined to be Unclaimed Property shall be transferred to or retained in the LT Distribution Account for further disposition in accordance with the Plan.  Nothing contained in the Plan shall require the Liquidation Trustee to attempt to locate any holder of an Allowed Claim.

Section 9.07    **Allocation of Plan Distributions between Principal and Interest**.  To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

Section 9.08    **Disputed Identity of Holder**.  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Liquidation Trustee may, in lieu of making such Distribution to such Entity or Person, make such Distribution into an escrow account until the disposition thereof shall be determined by the Bankruptcy Court or by written agreement among the interested parties to such dispute; provided, however, that if the dispute remains unresolved by Final Order for an unreasonable period of time, the Liquidation Trustee may request that the Bankruptcy Court order that the property that is the subject of the dispute shall irrevocably become Unclaimed Property.

Section 9.09    **Transfers of Claims and Interest/Distribution Record Date**. As of the Effective Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor or its agents, shall be deemed closed, and there shall be no further changes in the holders of record of any of the Claims or Interests.  No party, including but not limited to the Liquidation Trustee, shall have any obligation to recognize any transfer of the Claims or Interests occurring after the Effective Date unless notice of the transfer of such Claim or Interest, in form and substance satisfactory to the Liquidation Trustee shall have been received by the Liquidation Trustee, as appropriate, prior to the Effective Date.  Subject to the immediately preceding sentence, only those holders of record stated on the transfer ledgers as of

29

the close of business on the Effective Date, to the extent applicable, shall be entitled to be recognized for all purposes hereunder.

Section 9.10    **Method of Cash Distributions**.  Any Cash payment to be made by the Liquidation Trust pursuant to the Plan may be made, at the sole discretion of the Liquidation Trustee, by draft, check, wire transfer or as otherwise required or provided in any relevant agreement or applicable law.  Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

Section 9.11    ***De Minimis* Distributions**.  No Cash payment in an amount less than fifty dollars ($50.00) shall be required to be made by the Liquidation Trust to any holder of a Claim or Interest.  Cash that otherwise would be payable under the Plan but for this Section 9.11 shall be available for use by the Liquidation Trustee to pay Liquidation Trust Operating Expenses and make Distributions.

Section 9.12    **Treatment of Unclaimed Property; Remaining Available Cash**.  Unclaimed Property shall be considered Available Cash and may be used to pay Liquidation Trust Operating Expenses or to fund Distributions under the Plan; provided, however, that the Liquidation Trust shall not be obligated to make Distributions to a Class of Claims or Interests if the amount of the Available Cash is *de minimis* and is not sufficient to warrant the incurrence of costs in making the Distribution.  In the event the Liquidation Trustee holds Available Cash after all Liquidation Trust Operating Expenses and Distributions are made, such remaining Available Cash shall be distributed to The American Red Cross or, if such organization no longer exists, some similar charitable organization of the Liquidation Trustee's choice.  Neither Available Cash nor any Claim or any Unclaimed Property attributable to such Claim, shall escheat to any federal, state or local government or other entity.

Section 9.13    **No Distribution in Excess of Allowed Amount of Claim**. Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any distribution in excess of the Allowed amount of such Claim, plus postpetition interest thereon to the extent allowed by the Bankruptcy Code and this Plan.  Upon a holder of an Allowed Claim recovering the full amount of its Allowed Claim from another source, it thereafter shall no longer have any entitlement to receive distributions under the Plan.

# ARTICLE X

## CONDITIONS PRECEDENT

Section 10.01  **Conditions to Confirmation**.  The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in accordance with Section **10.03** of the Plan:

(a)    the Confirmation Order shall not contain anything that is inconsistent with the Broadcaster Settlement Agreement and shall otherwise be in form and substance reasonably acceptable to the Debtor and the Committee and shall, among other things:

(i)    provide that the Debtor is authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the agreements or documents created under or in connection with the Plan; and

(ii)    provide that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan; and

(b)    the Confirmation Order shall have been entered by the Bankruptcy Court; and

(c)    the Bankruptcy Court shall have entered an order approving the Broadcaster Settlement Agreement.

Section 10.02 **Conditions to the Effective Date**.    The Plan may not be consummated, and the Effective Date shall not occur, unless and until each of the conditions set forth below is satisfied or waived (if and to the extent permitted by Section **10.03** of the Plan) by the Debtor:

(a)    the Confirmation Order shall have been entered on or before December 31, 2015;

(b)    the Confirmation Order shall not then be stayed, vacated or reversed or shall not have been amended without the agreement of the Debtor;

(c)    the Settlement Effective Date, as defined in the Broadcaster Settlement Agreement, shall have occurred;

(d)    the Liquidation Trust shall have been established and all Assets of the Estate, including but not limited to the Estate Causes of Action, shall have been transferred to and vested in the Liquidation Trust free and clear of all Claims and Interests, except as specifically provided in the Plan and the Liquidation Trust Agreement;

(e)    the Liquidation Trustee shall have been appointed and assumed his or her rights and responsibilities under the Plan and the documents substantially in the form set forth in the Liquidation Trust Agreement; and

(f)    all actions, documents and agreements necessary to implement the provisions of the Plan to be effectuated on or prior to the Effective Date shall be reasonably satisfactory to the Debtor, and such actions, documents and agreements shall have been effected or executed and delivered;

Section 10.03 **Waiver of Certain Conditions**.    Notwithstanding Section **10.04** or any other provision of this Plan, the Debtor may not waive the condition to the occurrence of the Confirmation Date set forth in Section **10.01(c)** and may not waive the condition to the Effective Date that is set forth in Section **10.02(c)**. Each of the other conditions set forth in Section **10.01** and Section **10.02** of the Plan may be waived in whole or in part by the Debtor without any notice to parties in interest or the Bankruptcy Court and without a hearing, provided, however, that any such waiver shall not be effective without the consent of the Official Creditors' Committee, which consent shall not be unreasonably withheld.

31

Section 10.04 **Effect of Nonoccurrence of the Conditions to the Effective Date**. If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived in accordance with the Plan on or before the first Business Day that is more than ninety (90) days after the Confirmation Date, or such later date as shall be agreed to by the Debtor and the Official Creditors' Committee, the Debtor may schedule a status hearing with the Bankruptcy Court.  If the Confirmation Order is ultimately vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute an admission, a waiver, or release of any Claims against or Interests in the Estate.

## ARTICLE XI

## EFFECTS OF CONFIRMATION

Section 11.01 **Retention of Estate Causes of Action/Reservation of Rights**. Except as expressly provided for in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to (a) be res judicata or the basis for estoppel of, (b) create any other defense to the prosecution to judgment on the merits of, (c) be a waiver of or (d) be a relinquishment of any Estate Causes of Action, including Avoidance Actions, that are left unaltered or unimpaired by the Plan.  On and after the Effective Date, the Liquidation Trustee shall have, retain, reserve and be entitled to assert, prosecute, settle or abandon all such Estate Causes of Action.

Section 11.02 **Compromise of Controversies**.  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against the Debtor, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtor.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness.  The provisions of the Plan, including, without limitation, its injunction, exculpation, release and compromise provisions, are mutually dependent and non-severable.

Section 11.03 **Preservation of Insurance**.  Except as necessary to be consistent with the Plan, the Plan shall not diminish or impair the enforceability of insurance policies that may cover Claims against the Debtor, the Estate, the Assets or any other Person or Entity.  In no event shall the Liquidation Trustee have the right to cancel or limit the coverage available under any Insurance Policy under which the Debtor's directors, officers or employees are insured parties.

Section 11.04 **Term of Injunctions or Stays; Protective Orders In Litigation Not Involving the Broadcasters or Hearst Stations Inc.**  Until the Effective Date, and except as otherwise provided in the Broadcaster Settlement Agreement, all injunctions or stays entered or otherwise provided for in the Chapter 11 Case under Bankruptcy Code Sections 105(a) or 362,

or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect. Upon the Effective Date, all injunctions or stays as to the Debtor in existence on the Confirmation Date are dissolved without any further recourse. All protective orders previously entered in favor of the Debtor in litigation not involving the Broadcasters or Hearst Stations Inc. shall continue in full force and effect, and may be enforced by the Liquidation Trustee after the Effective Date. All protective orders binding upon the Debtor in litigation not involving the Broadcasters or Hearst Stations Inc. shall be deemed of no further force or effect as of the Effective Date.

Section 11.05 **Protective Order In The SDNY Copyright Case**. The Debtor and the Broadcasters shall be deemed to have requested the destruction of (i) Discovery Material as that term is defined in the Amended Stipulated Protective Order in the SDNY Copyright Case [ECF No. 63], and (ii) any material provided by the Debtor to the Broadcasters pursuant to any agreement of the parties or order of the Bankruptcy Court. The Debtor and the Broadcasters shall promptly take all necessary action to effectuate the terms of the Amended Stipulated Protective Order and each shall deliver certificates of compliance within two weeks from the Settlement Effective Date, as that term is defined in the Broadcaster Settlement Agreement. The Amended Stipulated Protective Order shall continue in full force and effect following the Effective Date.

Section 11.06 **Protective Order In The District of Massachusetts Copyright Case**. The Debtor and Hearst Stations, Inc. shall be deemed to have requested the destruction of Discovery Material as that term is defined in the *Stipulated Protective Order* in the case entitled *Hearst Stations Inc., d/b/a WCVB-TV v. Aereo, Inc.*, filed in the District of Massachusetts, Case No. 1:13-cv-11649-NMG [ECF No. 53]. The Debtor and Hearst Stations, Inc. shall promptly take all necessary action to effectuate the terms of the *Stipulated Protective Order* and each shall deliver certificates of compliance within two weeks from the Settlement Effective Agreement, as that term is defined in the Broadcaster Settlement Agreement. The *Stipulated Protective Order* shall continue in full force and effect following the Effective Date.

Section 11.07 **Exculpation**. Notwithstanding any other provision of the Plan, none of (a) the Debtor, (b) the directors, officers or employees of the Debtor serving at any time during the pendency of the Chapter 11 Case, (c) the professionals or court-retained agents of the Debtor, (d) the members and professionals of the Official Creditors' Committee, but only in their capacities as such, (e) the Broadcasters, (f) each of the Broadcasters' respective current or former officers and directors, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents or other representatives (each solely in its capacity as such), or (g) any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (f), shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective members, directors, officers, employees, advisors, attorneys, professionals, agents, partners, stockholders or affiliates, or any of their respective successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct, or willful violation of federal or state laws and regulations including the Tax Code (in each case as determined by a Final Order), and in all respects shall be entitled to

reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Notwithstanding any other provision of the Plan, no holder of a Claim or an Interest, no other party in interest, none of their respective members, directors, officers, employees, advisors, attorneys, professionals, agents, partners, stockholders or affiliates, and none of their respective successors or assigns, shall have any right of action against (a) the Debtor, (b) the directors, officers, or employees of the Debtor serving at any time during the pendency of the Chapter 11 Case, (c) the professionals or court-retained agents of the Debtor, (d) the members and professionals of the Official Creditors' Committee, but only in their capacities as such, or the respective directors, (e) the Broadcasters, (f) each of the Broadcasters' respective current or former officers and directors, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents or other representatives (each solely in its capacity as such), or (g) any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (f), for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, or willful misconduct or willful violation of federal or state laws and regulations including the Tax Code (in each case as determined by a Final Order).

For the avoidance of doubt, nothing in this Section or in any other part of the Plan shall be construed as releasing or exculpating the Debtor, the Liquidation Trustee (as the Debtor's successor in interest), the Committee, the Broadcasters from complying with the terms of the Broadcaster Settlement Agreement.

Section 11.08 **Releases by Debtor**. As of the Effective Date, for good and valuable consideration, including the release of any and all Claims against the Estate by each Person so released (and subject to confirmation of such release by the holder thereof in such form as the Liquidation Trustee in its discretion requires), the adequacy of which is hereby confirmed, the Debtor, and any Person seeking to exercise the rights of the Debtor's Estate, including, without limitation, any successor to the Debtor, any Estate representative appointed or selected pursuant to Section 1123(b)(3) of the Bankruptcy Code, or the Liquidation Trustee, whether pursuing an action derivatively (including, but not limited to, the Derivative Actions) or otherwise, shall be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including Avoidance Actions) and liabilities whatsoever (other than for fraud, willful misconduct or gross negligence) in connection with or related to the Debtor (including Aereo, Inc. before the commencement of the Chapter 11 Case), the affairs of the same, the Chapter 11 Case or the Plan (other than solely the rights of the Debtor and the Liquidation Trustee to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event or other occurrence in connection with the Chapter 11 Case taking place on or prior to the Confirmation Date, and that may be asserted by or on behalf of the Debtor, the Estate or the Liquidation Trustee against (a) any of the present or former directors,

34

officers and employees of the Debtor, (b) any of the Debtor's professionals and court-retained agents serving during the pendency of the Chapter 11 Case, and (c) any of the successors or assigns of any of the parties identified in the foregoing clauses (a) through (b).  Nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.0 Rule 1.8(h)(1) (2009).

Section 11.09 **Injunction**.  Confirmation of this Plan shall have the effect of, among other things, permanently enjoining (a) all Entities or Persons that have held, hold or may hold or have asserted, assert or may assert Claims against or Interests in the Estate (including Aereo, Inc. before the commencement of the Chapter 11 Case) with respect to any such Claim or Interest, and (b) respecting (vi)(A), (vi)(B), and (vi)(C) of this Section 11.07, the Estate and the Liquidation Trustee, from and after the Effective Date, from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan):  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Estate or the Liquidation Trust or any of their property; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Estate or the Liquidation Trust  or any of their property; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Estate or the Liquidation Trust or any of their property; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Estate or the Liquidation Trust or any of their property, except as contemplated or allowed by the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (vi) prosecuting or otherwise asserting (A) any Claim or Interest, including any right, claim or Cause of Action, released pursuant to the Plan (including, but not limited to, the Derivative Actions), (B) any form of objection to any Claim that is Allowed by the Plan, or (C) asserting Avoidance Actions against any holder of a Claim that is Allowed by the Plan. Additionally, unless otherwise explicitly stated in the Plan, the injunction contemplated by this Section shall prohibit the assertion against the Liquidation Trust of all Claims or Interests, if any, related to the Debtor (including Aereo, Inc. before the commencement of the Chapter 11 Case).

Section 11.10 **Broadcaster Settlement Agreement Survival**.    Nothing contained in the Plan, including but not limited to Section 11.07, shall enjoin, affect or modify in any way the right of the Debtor, the Liquidation Trustee (as successor in interest to the Debtor), the Committee, the Broadcasters and their respective Representatives to enforce the Broadcaster Settlement Agreement and the Consent Judgments either before or after the Effective Date. Nothing contained in the Plan shall affect or modify in any way the releases and covenants not to sue as expressly set forth in Section 9 of the Broadcaster Settlement Agreement.

## ARTICLE XII

## RETENTION OF JURISDICTION

Section 12.01 **Retention of Exclusive Jurisdiction by the Bankruptcy Court**. Pursuant to Bankruptcy Code Sections 105(a) and 1142, and notwithstanding entry of the

Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Case and the Plan to the fullest extent permitted by law including, without limitation, jurisdiction:

(a)    to the extent not otherwise determined by the Plan, to determine (i) the allowance, classification, or priority of Claims upon objection by any party-in-interest entitled to file an objection, or (ii) the validity, extent, priority and nonavoidability of consensual and nonconsensual Liens and other encumbrances against Assets, Estate Causes of Action or property of the Estate or the Liquidation Trust;

(b)    to issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Entity or Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Entity or Person;

(c)    to protect the Assets or property of the Estate and/or the Liquidation Trust, including Estate Causes of Action, from claims against, or interference with, such Assets or property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning Liens or other encumbrances on any Assets of the Estate, including without limitation to prohibit or preclude any injunctions or similar relief as to a Successful Bidder solely on account of such Successful Bidder's purchase of assets of the Estate, or Persons released under and by the Plan;

(d)    to determine any and all applications for allowance of Fee Claims;

(e)    to determine any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims or any Request for Payment of Claims, including both fees and expenses, entitled to priority under Bankruptcy Code Section 507(a);

(f)    to resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of distributions hereunder, including any matters arising in connection with Section **6.02** of the Plan;

(g)    to determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases or determine any issues arising from the deemed rejection of executory contracts and unexpired leases set forth in Article VII of the Plan;

(h)    except as otherwise provided herein, to determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of the Chapter 11 Case, including any remands;

(i)    to enter a Final Order closing the Chapter 11 Case of Aereo;

(j)        to modify the Plan under Bankruptcy Code Section 1127, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(k)        to issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity or Person, to the full extent authorized by the Bankruptcy Code;

(l)        to determine any tax liability pursuant to Bankruptcy Code Section 505;

(m)        to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(n)        to resolve any disputes concerning whether an Entity or Person had sufficient notice of the Chapter 11 Case, the applicable Bar Date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

(o)        to resolve any dispute or matter arising under or in connection with any order of the Bankruptcy Court entered in the Chapter 11 Case;

(p)        to authorize, as may be necessary or appropriate, sales of Assets as necessary or desirable and resolve objections, if any, to such sales;

(q)        except as may be provided in the Broadcaster Settlement Agreement and the Consent Judgments, to resolve any disputes concerning any release, injunction, exculpation or other waiver or protection provided in the Plan;

(r)        to approve, if necessary, any distributions, or objections thereto, under the Plan;

(s)        to approve, as may be necessary or appropriate, any Claims settlement entered into or offset exercised by the Liquidation Trustee;

(t)        to resolve any dispute or matter arising under or in connection with the Liquidation Trust;

(u)        to order the production of documents, disclosures, or information, or to appear for deposition demanded pursuant to Bankruptcy Rule 2004; and

(v)        to determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

Section 12.02    **Retention of Non-Exclusive Jurisdiction by the Bankruptcy Court**.  Notwithstanding anything else in the Plan, the Bankruptcy Court shall retain non-exclusive jurisdiction over all Estate Causes of Action prosecuted by the Liquidation Trustee.

Section 12.03    **Failure of Bankruptcy Court to Exercise Jurisdiction**.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise

without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in Section **12.01** of the Plan, the provisions of this Article XII shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

Section 13.01 **Amendments**.

(a)    **Pre-Confirmation Amendments**.  The Debtor may, with the consent of the Official Creditors' Committee, modify the Plan at any time prior to the entry of the Confirmation Order, provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, and, is not inconsistent with the Broadcaster Settlement Agreement.

(b)    **Postconfirmation/Preconsummation Amendment Not Requiring Resolicitation**.  After the entry of the Confirmation Order and before substantial consummation of the Plan, the Debtor may, with consent of the Official Creditors' Committee, modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that:  (i) the Debtor obtain approval of the Bankruptcy Court for such modification, after notice and a hearing; (ii) such modification shall not materially and adversely affect the interests, rights, treatment or distributions of any Class of Claims or Interests under the Plan; and (iii) such modification is not inconsistent with the Broadcaster Settlement Agreement.

(c)    **Postconfirmation/Preconsummation Amendment Requiring Resolicitation**.  After the Confirmation Date and before substantial consummation of the Plan, the Debtor may, with the consent of the Official Creditors' Committee, not to be unreasonably withheld or delayed, modify the Plan in a way that materially or adversely affects the interests, rights, treatment or distributions of a Class of Claims or Interests, provided that:  (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtor obtains Bankruptcy Court approval for such modification, after notice and a hearing; (iii) the Plan as modified complies with the Bankruptcy Code and Bankruptcy Rules; (iv) the Debtor complies with Bankruptcy Code Section 1125 with respect to the Plan as modified; and (v) such modification is not inconsistent with the Broadcaster Settlement Agreement.

Section 13.02 **Severability**.  If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision and make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination and will provide

38

that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Section 13.03 **Successors and Assigns**. The rights, benefits and obligations of any Entity or Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Entity or Person.

Section 13.04 **Exemption from Certain Transfer Taxes**. Pursuant to Bankruptcy Code Section 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation or release of any other Lien, mortgage, deed of trust or other security interest, or (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with the Plan or the sale of any assets of the Estate, any deeds, releases, bills of sale or assignments executed in connection with the Plan or the Confirmation Order, shall not be subject to any stamp tax, transfer tax, intangible tax, recording fee, or similar tax, charge or expense to the fullest extent provided for under Bankruptcy Code Section 1146(a).

Section 13.05 **Governing Law**. Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the State of New York.

Section 13.06 **Confirmation Order and Plan Control**. To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, or any other agreement entered into by the Debtor and/or the Liquidation Trustee (other than the Broadcaster Settlement Agreement as approved by the Bankruptcy Court), the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order controls the Plan, the Disclosure Statement and any such agreements. To the extent of any inconsistencies between the Broadcasters' Settlement Agreement and the Plan or the Confirmation Order, the Broadcasters' Settlement Agreement, as approved by the Bankruptcy Court, controls.

Section 13.07 **Withdrawal of Plan**. The Debtor reserves the right, in the exercise of its reasonable discretion, to revoke and withdraw or to modify the Plan at any time prior to the Confirmation Date or, if the Debtor is for any reason unable to consummate the Plan after the Confirmation Date, at any time up to the Effective Date. If the Debtor revokes or withdraws the Plan, (a) nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims by or against the Estate or to prejudice in any manner the rights of the Estate or any Entity or Person in any further proceeding involving the Debtor and (b) the result shall be the same as if the Confirmation Order were not entered, the Plan was not filed and the Effective Date did not occur. Notwithstanding any other provision in this Plan, in the event that the Broadcasters' Settlement Agreement is not approved by the Bankruptcy Court or the Settlement Effective Date has not occurred as provided in Section 2(c) of the Broadcasters' Settlement Agreement, the Debtor, the Committee and the Broadcasters shall be restored to their

*Solicitation Version*

respective positions as if the Broadcasters' Settlement Agreement was never entered into or approved and the Debtor may withdraw or amend this Plan and the Disclosure Statement and seek confirmation of an alternative or amended Plan and Disclosure Statement.

Section 13.08 **Payment Dates**.  Whenever any payment to be made under the Plan is due on a day other than a Business Day, such payment will instead be made, without interest, on the next Business Day or as soon thereafter as practicable.

Section 13.09 **Notices**.  Any notice, request or demand given or made under this Plan or under the Bankruptcy Code or the Bankruptcy Rules shall be in writing and shall be sent via hand delivery, reputable overnight courier service, or facsimile and shall be deemed given when received (and in the case of notice by facsimile, when received and telephonically confirmed) at the following addresses or facsimile numbers, whether hand delivered, sent by overnight courier service or faxed:

| Debtor | Counsel to the Debtor |
|---|---|
| Aereo, Inc. c/o Lawton Bloom Argus Management Corp. 208 West 29th St., Suite 613A New York, NY 10001 Telephone: 212-686-1593 Email: lbloom@arguscorp.net | Brown Rudnick LLP Seven Times Square New York, NY 10036 Attn:  William R. Baldiga, Esq. R. Benjamin Chapman, Esq. Telephone:  212-209-4800 Facsimile:  212-209-4801 |
| **United States Trustee** | **Counsel to the Official Creditors' Committee** |
| Office of the United States Trustee for the Southern District of New York 201 Varick Street, Suite 1006 New York, NY 10014 Attn:  Susan D. Golden, Esq. Telephone:  212-510-0528 | Stinson Leonard Street LLP 150 South Fifth Street, Suite 2300 Minneapolis, MN 55402 Attn:  Robert T. Kugler, Esq. Telephone:  612-335-1645 Facsimile:  612-335-1657 |
| **Liquidation Trustee** | |
| The initial Liquidation Trustee shall be the Person identified in a writing filed no less than ten (10) days before the Confirmation Hearing pursuant to Section **6.01(a)** of the Plan | |

*Solicitation Version*

# ARTICLE XIV

## CONFIRMATION REQUEST

The Debtor requests confirmation of the Plan under Bankruptcy Code Section 1129.

Dated: May 8, 2015

AEREO, INC.

By: /s/ Lawton W. Bloom
    Name: Lawton W. Bloom
    Title:  Chief Restructuring Officer
           for Aereo, Inc.

William R. Baldiga, Esquire
R. Benjamin Chapman, Esquire
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
(212) 209-4800

*Counsel for the Debtor
and Debtor-in-Possession*

# EXHIBIT A

# LIQUIDATION TRUST AGREEMENT

# EXHIBIT B

# LIQUIDATION TRUST AGREEMENT OF AEREO, INC.

This Liquidation Trust Agreement (the "Liquidation Trust Agreement") is made this __ day of June, 2015 by and among Aereo, Inc. (the "Debtor"), and Lawton Bloom of Argus Management Corp., as trustee (the "Liquidation Trustee").

# RECITALS

WHEREAS, on November 20, 2014, the Debtor filed a voluntary Chapter 11 petition with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

WHEREAS, on [_____], 2015, the Bankruptcy Court entered its ["Order Confirming Chapter 11 Plan of Aereo, Inc." docket number [_____] (the "Confirmation Order"), which Order confirmed the "Chapter 11 Plan of Aereo, Inc." (as modified, confirmed and implemented, the "Plan");[1] and

WHEREAS, the Plan's Effective Date occurred on _____, 2015; and

WHEREAS, the Plan contemplates, on the Effective Date, (a) the creation of a liquidation trust (the "Liquidation Trust") and the creation of the beneficial interests in the Liquidation Trust of holders of Administrative Claims, Fee Claims, Priority Tax Claims, and Allowed Claims in Class 1, Class 2, Class 3, Class 4 and Class 5, (collectively, the "Beneficiaries" and, each individually, a "Beneficiary"), and (b) the Liquidation Trust will be vested with Cash and certain other Assets (including without limitation the right to prosecute and settle Estate Causes of Action) (collectively, the "Liquidation Trust Assets") to be liquidated and distributed to the Beneficiaries, as set forth in the Plan; and

WHEREAS, the Plan contemplates that, pursuant to Treasury Regulation Section 301.7701-4(d), the Liquidation Trust shall be created for the primary purpose of liquidating the Liquidation Trust Assets in an expeditious but orderly manner for the benefit of the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidation Trust and the Plan; and

WHEREAS, the Liquidation Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes, pursuant to Sections 671-677 of the Internal Revenue Code of 1986, as amended (the "IRC"), with the Beneficiaries to be treated as the grantors of the Liquidation Trust and deemed to be the owners of the Liquidation Trust Assets (subject to the rights of creditors of the Liquidation Trust), and, consequently, the transfer of the Liquidation Trust Assets to the Liquidation Trust shall be treated as a deemed transfer of those assets from the Debtor and the Estate to the Beneficiaries followed by a deemed transfer by such Beneficiaries to the Liquidation Trust for federal income tax purposes.

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Plan.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

**1.1    Creation and Purpose of the Liquidation Trust.**    The Debtor and the Liquidation Trustee hereby create the Liquidation Trust for the primary purpose of liquidating and distributing the Liquidation Trust Assets to the Beneficiaries in accordance with their respective entitlements, if any, under the Plan, the Confirmation Order, and applicable tax statutes, rules and regulations, and in an expeditious but orderly manner, with no objective to continue or engage in the conduct of a trade or business.  In particular, the Liquidation Trustee shall (a) make continuing efforts to collect and reduce the Liquidation Trust Assets to Cash, and (b) make timely Distributions and not unduly prolong the duration of the Liquidation Trust.

**1.2    Declaration of Trust.**    In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Debtor and the Liquidation Trustee have executed this Liquidation Trust Agreement and, effective on the Plan's Effective Date, hereby irrevocably transfer to the Liquidation Trust, all of the right, title and interests of the Debtor in and to the Liquidation Trust Assets, to have and to hold unto the Liquidation Trust and its successors and assigns forever, under and subject to the terms of the Plan and the Confirmation Order, for the benefit of the Beneficiaries (to the extent of their respective legal entitlements) and their successors and assigns as provided for in this Liquidation Trust Agreement and in the Plan and Confirmation Order.

**1.3    Vesting of Estate Assets.**    On the Effective Date, pursuant to the terms of the Plan, all Assets of the Estate (that are not abandoned pursuant to the terms of the Plan, the Confirmation Order, or other Bankruptcy Court order) shall be vested in the Liquidation Trust, which also shall be authorized to obtain, liquidate, and collect all of the Assets of the Estate not in its possession and pursue all of the Estate Causes of Action.  In addition, on the Effective Date, the Liquidation Trust shall: (i) take possession of all books, records, and files of the Debtor and its Estate; and (ii) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trust determines, in accordance with the Liquidation Trust Agreement, that retention of same is no longer necessary or required.  Subject to the provisions of the Plan, all such Assets shall be delivered to the Liquidation Trust free and clear of Liens, Claims, and Interests of any kind.  Moreover, on the Effective Date, all privileges with respect to any Assets of the Estate, including the attorney/client privilege, to which the Debtor is entitled shall be automatically vested in, and available for assertion by or waiver on behalf of the Liquidation Trust.  To the extent any of the foregoing does not automatically occur on the Effective Date or is not effectuated through the Confirmation Order or this Agreement, the Debtor shall, on the Effective Date, execute such other and further documents as is reasonably necessary to effectuate all of the foregoing.

**1.4    Acceptance by Liquidation Trustee.**  The Liquidation Trustee hereby accepts the trust imposed upon it by this Liquidation Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Liquidation Trust Agreement, the Plan, and the Confirmation Order.  In connection with and in furtherance of the purposes of the Liquidation Trust, the Liquidation Trustee hereby accepts the transfer of the Liquidation Trust Assets.

**1.5    Name of the Liquidation Trust.**  The Liquidation Trust established hereby shall be known as the "Aereo Liquidation Trust".

## ARTICLE II
## THE LIQUIDATION TRUSTEE

**2.1    Appointment.**    The Liquidation Trustee has been selected pursuant to the provisions of the Plan and has been appointed as of the Effective Date.  The Liquidation Trustee's appointment shall continue until the earlier of (a) the termination of the Liquidation Trust or (b) the Liquidation Trustee's resignation, death, dissolution, removal or liquidation.

**2.2    General Powers.**    Except as otherwise provided in this Liquidation Trust Agreement, the Plan or the Confirmation Order, the Liquidation Trustee may control and exercise authority over the Liquidation Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the business of the Liquidation Trust.  Nothing in this Agreement shall be deemed to prevent the Liquidation Trustee from taking, or failing to take, any action that it is obligated to take (or fail to take) in the performance of any fiduciary or similar duty which the Liquidation Trustee owes to the Beneficiaries or any other Person.  No person dealing with the Liquidation Trust shall be obligated to inquire into the Liquidation Trustee's authority in connection with the acquisition, management, or disposition of Liquidation Trust Assets.    Without limiting the foregoing, but subject to the Plan, the Confirmation Order, and other provisions of this Liquidation Trust Agreement, the Liquidation Trustee shall be expressly authorized to, with respect to the Liquidation Trust and the Liquidation Trust Assets:

(a)    Exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken with respect to the Liquidation Trust Assets, by any officer, director, shareholder or other party acting in the name of the Debtor or its estate with like effect as if duly authorized, exercised and taken by action of such officers, directors, shareholders or other party.

(b)    Open and maintain bank accounts on behalf of or in the name of the Liquidation Trust, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Liquidation Trust.

(c)    Receive, manage, invest, supervise and protect the Liquidation Trust Assets, subject to the limitations provided herein.

- 3 -

(d)        Hold legal title to any and all Liquidation Trust Assets.

(e)        Subject to the applicable provisions of the Plan, collect and liquidate all Liquidation Trust Assets pursuant to the Plan; provided, however, that any future sale of material assets shall be subject to an order of the Bankruptcy Court containing language substantially similar to paragraph 15 of the Order at Docket No. 254, and shall not contain anything inconsistent with that paragraph.

(f)        Review and, where appropriate, object to claims and supervise and administer the resolution, settlement and payment of all Claims and the Distribution to the Beneficiaries and creditors of the Liquidation Trust, in accordance with this Liquidation Trust Agreement, the Plan, and the Confirmation Order.

(g)        Subject to Section 4.2 of this Liquidation Trust Agreement, prosecute, compromise and settle all Estate Causes of Action.

(h)        (i) Seek a determination of tax liability under Bankruptcy Code Section 505; (ii) file, if necessary, any and all tax and information returns required with respect to the Debtor and the Liquidation Trust; (iii) make tax elections for and on behalf of the Debtor and the Liquidation Trust; and (iv) pay taxes, if any, payable for and on behalf of the Debtor and the Liquidation Trust.

(i)        Pay all lawful, expenses, debts, charges, taxes and liabilities of the Debtor (as required by the Plan) and the Liquidation Trust.

(j)        Take all other actions consistent with the provisions of the Plan which the Liquidation Trustee deems reasonably necessary or desirable to administer the Plan.

(k)        Make Distributions to applicable Beneficiaries, and to creditors of the Liquidation Trust on account of Liquidation Trust Operating Expenses, as provided for, or contemplated by, the Plan, the Confirmation Order and this Liquidation Trust Agreement.

(l)        Withhold from the amount distributable to any person such amount as may be sufficient to pay any tax or other charge which the Liquidation Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States, any foreign country, or of any state, local or political subdivision of either.

(m)        Enter into any agreement or execute any document required by or consistent with the Plan, the Confirmation Order or this Liquidation Trust Agreement and perform all obligations thereunder.

(n)        If any of the Liquidation Trust Assets are situated in any state or other jurisdiction in which the Liquidation Trustee is not qualified to act as trustee, nominate and appoint a person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as may be designated by the Liquidation Trustee in its discretion; confer upon such trustee all the rights, powers, privileges and duties of the Liquidation Trustee hereunder, subject to the conditions and limitations of this Liquidation Trust Agreement, except

- 4 -

as modified or limited by the Liquidation Trustee and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such trustee is acting shall prevail to the extent necessary); require such trustee to be answerable to the Liquidation Trustee for all monies, assets and other property that may be received in connection with the administration of all property; and remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Liquidation Trustee of a written instrument declaring such trustee removed from office, and specifying the effective date and time of removal.

(o)     Purchase and carry all insurance policies and pay all insurance premiums and costs it deems reasonably necessary or advisable.

(p)     Implement, enforce or discharge all of the terms, conditions and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order and this Liquidation Trust Agreement.

(q)     Enter into agreements, to the extent not inconsistent with Section 6.02 of the Plan, with any Entity or with holders of Claims or Interests for the prosecutions of Estate Causes of Action and Causes of Action belonging to holders of Claims or Interests.

(r)     Undertake all administrative functions of the Chapter 11 Case, including the ultimate dissolution of the Debtor and the closing of the Chapter 11 Case of Aereo, Inc.

**2.3     Limitations on the Liquidation Trustee.**  Notwithstanding anything under applicable law, this Liquidation Trust Agreement or the Plan to the contrary, the Liquidation Trustee shall not do or undertake any of the following:

(a)     Take any action that would jeopardize treatment of the Liquidation Trust as a "liquidating trust" for federal income tax purposes.

(b)     Receive transfers of any listed stocks or securities, any readily-marketable assets or any operating assets of a going business, except as is absolutely necessary or required under the Plan and the Confirmation Order; provided, however, that in no event shall the Liquidation Trustee receive any such investment that would jeopardize treatment of the Liquidation Trust as a "liquidating trust" for federal income tax purposes.

(c)     Receive or retain cash in excess of a reasonable amount necessary to make applicable Distributions to Beneficiaries and satisfy any liabilities of the Liquidation Trust (including any Liquidation Trust Operating Expenses) and to establish and maintain the Liquidation Trust Operational Reserve and other reserves contemplated by the Plan.

(d)     Exercise any investment power other than the power to invest in demand and time deposits in banks or savings institutions, or temporary investments such as short term certificates of deposit or Treasury bills or other investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any modification in the Internal Revenue Service ("IRS") guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements or otherwise.

- 5 -

(e)     Receive or retain any operating assets of a going business, a partnership interest in a partnership that holds operating assets, or fifty percent (50%) or more of the stock of a corporation with operating assets, except as is absolutely necessary or required under the Plan and the Confirmation Order; provided, however, that in no event shall the Liquidation Trustee receive or retain any such asset or interest that would jeopardize treatment of the Liquidation Trust as a "liquidating trust" for federal income tax purposes.

**2.4    Compensation of Liquidation Trustee and its Professionals.**

(a)     The initial Liquidation Trustee shall be entitled to receive reasonable compensation in connection with the performance of its duties as set forth in Exhibit A hereto, plus the reimbursement of reasonable out-of-pocket expenses.  Any successor to the Liquidation Trustee shall also be entitled to reasonable compensation in connection with the performance of its duties, which compensation may be different from the terms provided in Exhibit A, plus the reimbursement of reasonable out-of-pocket expenses.

(b)     On or before the last day of the month following the end of each quarter for which compensation or reimbursement is sought, the Liquidation Trustee shall file a quarterly statement with the Bankruptcy Court.  Any objections to the statement must be filed within fifteen (15) days of the date of the filing of the quarterly statement.  At the expiration of the fifteen (15) day period, 100% of the amounts requested, except for that portion of such fees and disbursements to which any objection has been made, shall be paid to the Liquidation Trustee from Liquidation Trust Operational Reserve.  The parties shall attempt to consensually resolve objections, if any, to any quarterly statement.  If the parties are unable to reach a consensual resolution of any such objection, the Liquidation Trustee may seek payment of such fees and costs by filing a motion with the Bankruptcy Court.

(c)     On or before the last day of each month following the month for which compensation or reimbursement is sought, each of the professionals of the Liquidation Trust (unless any such professionals and the Liquidation Trustee agree to different treatment) seeking compensation shall serve a monthly statement on the Liquidation Trustee.  The Liquidation Trustee will have fifteen (15) days from the date such statement is received to review the statement and object to such statement by serving an objection setting forth the precise nature of the objection and the amount at issue on the Liquidation Trustee and the party seeking compensation.  At the expiration of the fifteen (15) day period, the Liquidation Trustee shall pay from Liquidation Trust Operational Reserve 100% of the amounts requested, except for the portion of such fees and disbursements to which any objection has been made.  The parties shall attempt to consensually resolve objections, if any, to any monthly statement.  If the parties are unable to reach a consensual resolution of any such objection, the party who received an objection to its fees and costs may seek payment of such fees and costs by filing a motion with the Bankruptcy Court and providing notice to the Liquidation Trustee.

**2.5    General Duties, Obligations, Rights and Benefits of the Liquidation Trustee.** The Liquidation Trustee shall have all duties, obligations, rights and benefits assumed by, assigned to or vested in the Liquidation Trust under the Plan, the Confirmation Order, this Liquidation Trust Agreement and any other agreement entered into pursuant to or in connection

- 6 -

with the Plan.  Such duties, obligations, rights and benefits include, without limitation, all duties, obligations, rights and benefits relating to the collection and liquidation of the Liquidation Trust Assets, resolution of Claims and, if necessary, Interests, satisfaction of claims of creditors of the Liquidation Trust, the pursuit of Estate Causes of Action, Distributions to Beneficiaries, administration of the Liquidation Trust and any other duties, obligations, rights and benefits reasonably necessary to accomplish the purpose of the Liquidation Trust under the Plan, the Confirmation Order, this Liquidation Trust Agreement and any other agreement entered into pursuant to or in connection with the Plan.  Without limiting the duties, obligations, rights and benefits of the Liquidation Trustee under this Section or any other provision of this Liquidation Trust Agreement, the Liquidation Trustee shall have all duties, obligations, rights and benefits assigned to the Liquidation Trustee under the Confirmation Order.

     **2.6**     **Liquidation Trust Operational Reserve.**     The Liquidation Trustee may establish, fund, and administer the Liquidation Trust Operational Reserve to hold the amount of Available Cash deemed necessary to satisfy its anticipated future Liquidation Trust Operating Expenses.

     **2.7**     **Replacement of the Liquidation Trustee.**  The Liquidation Trustee may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Liquidation Trustee.  The Liquidation Trustee may be removed by the Bankruptcy Court upon motion and after notice and a hearing, which motion may be brought by any party in interest.  In the event of the resignation or removal of the Liquidation Trustee, the successor Liquidation Trustee shall be appointed by the Bankruptcy Court upon request and based upon submissions from interested parties (including any Beneficiary).  Upon its appointment, the successor Liquidation Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of its predecessor and all responsibilities of the predecessor Liquidation Trustee relating to the Liquidation Trust shall be terminated.   In the event the Liquidation Trustee's appointment terminates by reason of termination without cause, death or disability (meaning herein, incapacity resulting in the inability to perform services for three consecutive months or in the aggregate of 180 days during any 12 month period), amounts owed to the original Liquidation Trustee (or his estate or representative) on the one hand and any successor Liquidation Trustee on the other shall be allocated between them to reflect their respective periods of service.  In the event of the removal or resignation of any Liquidation Trustee, such Liquidation Trustee (or his estate or representatives) shall be immediately compensated for all reasonable fees and expenses accrued through the effective date of termination, whether or not previously invoiced.  The provisions of Article V shall survive the resignation or removal of any Liquidation Trustee.

     **2.8**     **Liquidation Trust Continuance.**  The death, dissolution, resignation or removal of the Liquidation Trustee shall not terminate the Liquidation Trust or revoke any existing agency created by the Liquidation Trustee pursuant to this Liquidation Trust Agreement or invalidate any action theretofore taken by the Liquidation Trustee, and the successor Liquidation Trustee agrees that the provisions of this Liquidation Trust Agreement shall be binding upon and inure to the benefit of the successor Liquidation Trustee and all its successors or assigns.

# ARTICLE III

## PROSECUTION AND RESOLUTION OF ESTATE CAUSES OF ACTION

**3.1     The Liquidation Trust's Exclusive Authority To Pursue, Settle, or Abandon Estate Causes of Action.**  Pursuant to Section 6.02(a) of the Plan, the Liquidation Trust shall have exclusive rights, powers, and interests of the Estate to pursue, settle or abandon all Estate Causes of Action as the sole representative of the Estate pursuant to Bankruptcy Code Section 1123(b)(3).

**3.2     Settlement of Estate Causes of Action**.  Pursuant to Section 6.02(b) of the Plan, settlement by the Liquidation Trust of any Estate Cause of Action shall require: (i) approval only of the Liquidation Trustee, if the amount claimed by the Liquidation Trust against a defendant is less than one million dollars ($1 million); and (ii) approval of the Liquidation Trustee and the Bankruptcy Court, if the amount claimed by the Liquidation Trust against a defendant is unliquidated or equals to or exceeds one million dollars ($1 million).

# ARTICLE IV

## LIABILITY OF LIQUIDATION TRUSTEE

**4.1     Standard of Care; Exculpation.**  Neither the Liquidation Trustee nor any director, officer, affiliate, employee, employer, professional, agent or representative of the Liquidation Trustee shall be liable for losses, claims, damages, liabilities or expenses in connection with the affairs of the Liquidation Trust to any Beneficiary of the Liquidation Trust, or any other person, for the acts or omissions of the Liquidation Trustee; provided, however, that the foregoing limitation shall not apply to any losses, claims, damages, liabilities or expenses suffered or incurred by any Beneficiary that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence or willful misconduct of the Liquidation Trustee or any director, officer, affiliate, employee, employer, professional, agent or representative of the Liquidation Trustee.  Every act done, power exercised or obligation assumed by the Liquidation Trust, the Liquidation Trustee or any director, officer, affiliate, employee, employer, professional, agent or representative of the Liquidation Trustee pursuant to the provisions of this Liquidation Trust Agreement shall be held to be done, exercised or assumed, as the case may be, by the Liquidation Trust, the Liquidation Trustee, or any director, officer, affiliate, employee, employer, professional, agent or representative of the Liquidation Trustee acting for and on behalf of the Liquidation Trust and not otherwise; provided however, that none of the foregoing entities or persons are deemed to be responsible for any other such entities' or persons' actions or inactions outside of the scope of the authority provided by the Liquidation Trust.  Except as provided in the proviso of the first sentence of this Section 4.1 with respect to any Beneficiary, every person, firm, corporation or other entity contracting or otherwise dealing with or having any relationship with the Liquidation Trust, the Liquidation Trustee, or any director, officer, affiliate, employee, employer, professional, agent or representative of the Liquidation Trustee shall have recourse

- 8 -

only to the Liquidation Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships and the Liquidation Trust, the Liquidation Trustee, or any director, officer, affiliate, employee, employer, professional, agent or representative of the Liquidation Trustee shall not be individually liable therefor.

### 4.2    Indemnification.

(a)    Except as otherwise set forth in the Plan or Confirmation Order, the Liquidation Trustee, and any director, officer, affiliate, employee, employer, professional, agent or representative of the Liquidation Trustee (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall be defended, held harmless and indemnified by the Liquidation Trust against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Liquidation Trust Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Liquidation Trustee's acceptance of or the performance or nonperformance of its obligations under this Liquidation Trust Agreement, the Plan or the Confirmation Order; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to be a liability for which recourse is not limited to the Liquidation Trust Assets pursuant to Section 4.1 above.  Satisfaction of any obligation of the Liquidation Trust arising pursuant to the terms of this Section shall be payable only from the Liquidation Trust Assets, may be advanced prior to the conclusion of such matter and such right to payment shall be prior and superior to any other rights to receive a Distribution of the Liquidation Trust Assets.

(b)    The Liquidation Trust shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in connection with the Liquidation Trust Agreement or the duties, acts or omissions of the Liquidation Trustee, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise.  Each Indemnified Party hereby undertakes, and the Liquidation Trust hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor under this Liquidation Trust Agreement.

### 4.3    No Liability for Acts of Successor/Predecessor Liquidation Trustees.  Upon the appointment of a successor Liquidation Trustee and the delivery of the Liquidation Trust Assets to the successor Liquidation Trustee, the predecessor Liquidation Trustee and any director, officer, affiliate, employee, employer, professional, agent or representative of the predecessor Liquidation Trustee shall have no further liability or responsibility with respect thereto.  A successor Liquidation Trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Liquidation Trustee shall be in any way liable for the acts or omissions of any predecessor Liquidation Trustee unless a

successor Liquidation Trustee expressly assumes such responsibility. A predecessor Liquidation Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor Liquidation Trustee for any events or occurrences subsequent to the cessation of its role as Liquidation Trustee.

**4.4    Reliance by Liquidation Trustee on Documents or Advice of Counsel.**  Except as otherwise provided in this Liquidation Trust Agreement, the Liquidation Trustee, any director, officer, affiliate, employee, employer, professional, agent or representative of the Liquidation Trustee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Liquidation Trustee to be genuine and to have been presented by an authorized party.  The Liquidation Trustee shall not be liable for any action taken or suffered by the Liquidation Trustee, as applicable, in reasonable reliance upon the advice of counsel or other professionals engaged by the Liquidation Trustee, as applicable, in accordance with this Liquidation Trust Agreement.

**4.5    Insurance.**  The Liquidation Trust may purchase, using Liquidation Trust Assets, and carry all insurance policies and pay all insurance premiums and costs the Liquidation Trustee deems reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs and expenses it may incur, including but not limited to attorneys' fees, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its fraud or willful misconduct, with respect to the implementation and administration of the Plan or this Liquidation Trust Agreement.

## ARTICLE V

## GENERAL PROVISIONS CONCERNING
## ADMINISTRATION OF THE LIQUIDATION TRUST

**5.1    Liquidation Trust Reserve.**  The Liquidation Trustee may, at its discretion, establish the Liquidation Trust Operational Reserve as set forth in Section 2.6 of this Liquidation Trust Agreement.

**5.2    Register of Beneficiaries.**  The Liquidation Trustee shall maintain at all times a register of the names, Distribution Addresses, amounts of Allowed Claims and the Ratable interests in the Liquidation Trust of the Beneficiaries (the "Register").  The Liquidation Trustee shall cause the Register to be kept at its office or at such other place or places as may be designated by the Liquidation Trustee from time to time.

**5.3    Books and Records.**  The Liquidation Trustee also shall maintain in respect of the Liquidation Trust and the Beneficiaries books and records relating to the Liquidation Trust Assets and income realized therefrom and the payment of expenses of and claims against or assumed by the Liquidation Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof.  Except as expressly provided in

- 10 -

this Liquidation Trust Agreement, the Plan or the Confirmation Order, or as may be required by applicable law (including securities law), nothing in this Liquidation Trust Agreement is intended to require the Liquidation Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or Distribution out of the Liquidation Trust Assets.  Beneficiaries shall have the right upon thirty (30) days' prior written notice delivered to the Liquidation Trustee to inspect the Liquidation Trust's books and records, including the Register, provided such Beneficiary shall have entered into a confidentiality agreement in form and substance reasonably satisfactory to the Liquidation Trustee. Satisfaction of the foregoing condition notwithstanding, if (a) the Liquidation Trustee determines in good faith that the inspection of the Liquidation Trust's books and records, including the Register, by any Beneficiary would be detrimental to the Liquidation Trust or (b) such Beneficiary is a defendant (or potential defendant) in a pending (or potential) action brought by the Liquidation Trustee, the Liquidation Trustee may deny such request for inspection. The Bankruptcy Court shall resolve any dispute between any Beneficiary and the Liquidation Trustee under this Section 5.3.

**5.4     Quarterly Reporting Obligations to Bankruptcy Court and Payment of Statutory Fees**.  In no event later than thirty (30) days after the end of the first full month following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidation Trust Operational Reserve and any Disputed Claims Reserve has been released or paid out in accordance with the Plan, the Liquidation Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients and dates of all Distributions made by the Liquidation Trustee under the Plan through each applicable reporting period.  The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidation Trustee.  Additionally, all Statutory Fees with respect to the period prior to the Effective Date shall be paid by the Debtor in Cash on the Effective Date or other required payment date.  With respect to the period after the Effective Date, the Liquidation Trustee shall be obligated to pay quarterly Statutory Fees to the Office of the United States Trustee and such obligation shall continue until such time as the Chapter 11 Case is closed, dismissed or converted.

**5.5     Final Accounting of Liquidation Trustee.**  The Liquidation Trustee (or any such successor Liquidation Trustee) shall within ninety (90) days after the termination of the Liquidation Trust or the death, dissolution, resignation or removal of the Liquidation Trustee, render an accounting containing at least the following information:

(a)     A description of the Liquidation Trust Assets.

(b)     A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the Liquidation Trust and the Liquidation Trust Assets during the Liquidation Trustee's term of service, including their source and nature.

(c)     Separate entries for all receipts of principal and income.

- 11 -

(d)      The ending balance of all Liquidation Trust Assets as of the date of the accounting, including the Cash balance on hand and the name(s) and location(s) of the depository or depositories where the Cash is kept.

(e)      All known liabilities of the Liquidation Trust.

(f)      All pending actions.

**5.6      Filing of Accounting**.  The accounting shall be filed with the Bankruptcy Court and all Beneficiaries shall have notice that the final accounting has been filed and an opportunity to have a hearing on the approval of the accounting and, to the extent applicable, the discharge of the Liquidation Trustee.

**5.7      Filing of Monthly and Quarterly Reports and Payment of Statutory Fees.** The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidation Trustee.  All Statutory Fees with respect to the period prior to the Effective Date shall be paid by the Debtor in Cash on the Effective Date or other required payment date.  With respect to the period after the Effective Date, the Liquidation Trustee shall be obligated to pay quarterly Statutory Fees to the Office of the United States Trustee and such obligation shall continue until such time as the Chapter 11 Case is closed, dismissed or converted.

**5.8      Filing of Tax Returns.**  The Liquidation Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Debtor and the Liquidation Trust.

## ARTICLE VI
## BENEFICIAL INTERESTS AND BENEFICIARIES

**6.1      Trust Beneficial Interests.**  Depending upon the amount of Available Cash, each holder of an Allowed Administrative Claim, Fee Claim, or Priority Tax Claim or an Allowed Claim or Interest in Class 1, Class 2, Class 3, Class 4, and Class 5 shall be entitled to receive Distributions as set forth in the Plan.

**6.2      Interest Beneficial Only**.   The ownership of a beneficial interest in the Liquidation Trust shall not entitle any Beneficiary to any title in or to the Liquidation Trust Assets or to any right to call for a partition or division of the Liquidation Trust Assets or to require an accounting.

**6.3      Evidence of Beneficial Interest.**   Ownership of a beneficial interest in the Liquidation Trust shall not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidation Trustee.

**6.4      Transfers of Beneficial Interests.**  Beneficial interests in the Liquidation Trust shall be nontransferable except upon death of the interest holder or by operation of law.  The Liquidation Trust, pursuant to Section 9.09 of the Plan, shall not have any obligation to

recognize any transfer of Claims or Interests occurring after the Effective Date. Only those holders of Claims and Interests of record stated on the transfer ledgers as of the close of business on the Effective Date, to the extent applicable, shall be entitled to be recognized for all purposes hereunder.

**6.5    Absolute Owners.**  The Liquidation Trustee may deem and treat the Beneficiary reflected as the owner of a beneficial interest on the Register as the absolute owner thereof for the purposes of receiving Distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

**6.6    Change of Address.**  A Beneficiary may, after the Effective Date, select an alternative Distribution Address by notifying the Liquidation Trust and the Claims Agent in writing of such alternative Distribution Address.  Absent such notice, the Liquidation Trustee shall not recognize any such change of Distribution Address.  Such notification shall be effective only upon receipt by the Liquidation Trustee and the Claims Agent.

**6.7    Effect of Death, Dissolution, Incapacity or Bankruptcy of Beneficiary.**  The death, dissolution, incapacity or bankruptcy of a Beneficiary during the term of the Liquidation Trust shall not operate to terminate the Liquidation Trust during the term of the Liquidation Trust nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the Distribution of the Liquidation Trust Assets or for a partition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Liquidation Trust Agreement or in the Liquidation Trust.

**6.8    Standing.**  Except as expressly provided in this Liquidation Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Liquidation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than against the Liquidation Trustee to the extent provided in this Liquidation Trust Agreement) upon or with respect to the Liquidation Trust Assets.

## ARTICLE VII
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**7.1    Incorporation of Plan Provisions.**  As of the Effective Date, the Liquidation Trust shall assume responsibility for all Claims matters established by the Plan.  In accordance with the Plan, the Liquidation Trustee shall establish appropriate Disputed Claims Reserves pending resolution, as set forth in the Plan, of all contested matters and adversary proceedings concerning Disputed Claims and for any Claims which the Liquidation Trustee believes may be asserted against the Liquidation Trust for which there has been established no other reserve or means for payment.

**7.2    Disputed Claims Reserves.**

(a)    **Establishment of Disputed Claims Reserves.**  On the Initial Distribution Date (or on any other date on which Distributions for any particular Class of Claims are made by the Liquidation Trustee), and in connection with making all Distributions required to be made on

any such date under the Plan, the Liquidation Trustee shall establish a separate Disputed Claims Reserve on account of Distributions of Cash for each of the relevant Classes, as necessary pursuant to the Plan.

(b)    **Amounts to Be Reserved.**    The Liquidation Trustee shall reserve the Ratable proportion of all Cash allocated for Distribution on account of each Disputed Claim based upon the Face Amount of each such Disputed Claim, or such lesser amount as may be agreed to by the holder of the Claim on one hand and the Liquidation Trust on the other hand, as applicable, or in such amount as may otherwise be determined by order of the Bankruptcy Court. All Cash allocable to the Disputed Claims in the relevant Class under the Plan shall be distributed by the Liquidation Trustee to the relevant Disputed Claim Reserve on the Initial Distribution Date (or such other date on which Distributions for any particular Class of Claims are made pursuant to the Plan). All Cash distributed into a Disputed Claim Reserve shall be deposited in an interest-bearing account at a qualified institution, consistent with this Liquidation Trust Agreement.

(c)    **Distribution.**    Unless otherwise required by the applicable treatment provisions of the Plan (including with respect to Administrative Claims, Priority Non-Tax Claims, Fee Claims, Remaining Secured Claims and Convenience Claims) payments on any Disputed Claim or, if applicable Disputed Interest, that becomes an Allowed Claim or Allowed Interest shall be distributed on the first Quarterly Distribution Date after the Claim or, if applicable Interest, is Allowed in accordance with Section 9.02 of the Plan. Distributions shall be made only to the extent of the aggregate Distributions that the holder of any such Allowed Claim or Allowed Interest would have received had such Claim or Interest been Allowed as of the Effective Date (less any taxes paid with respect to amounts held in the Disputed Claims Reserves).

(d)    **Termination of Disputed Claims Reserve.**    Pursuant to Section 9.02(d) of the Plan, each Disputed Claim Reserve shall be closed and extinguished by the Liquidation Trustee when all Distributions and other dispositions of Cash or other property required to be made therefrom under the Plan and the Liquidation Trust Agreement have been made. Upon closure of a Disputed Claim Reserve, all Cash and other property held in that Disputed Claim Reserve shall revest in the Liquidation Trust and such Cash and property shall first be Ratably distributed to the other holders of Allowed Claims in the Class in respect of which such Disputed Claims Reserve was created, except as otherwise provided in Article IV of the Plan, and once the Claims in such Class are paid in full, shall be distributed to holders of Allowed Claims in the order of the priority established by the Plan.

(e)    **Transmittal of Distributions and Notices.**    Any property or notice that an Entity or Person is or becomes entitled to receive pursuant to the Plan may be delivered by regular mail, postage prepaid, in an envelope addressed to that Entity or Person's Distribution Address. Property distributed in accordance with this Section shall be deemed delivered to such Entity or Person regardless of whether such property is actually received by that Entity or Person. A holder of a Claim or Interest may designate a different Distribution Address by notifying, after the Effective Date, the Liquidation Trustee and the Claims Agent of that address

- 14 -

in writing.  Any change of Distribution Address must be provided to the Liquidation Trustee and the Claims Agent in order to be effective.  Such notification shall be effective only upon receipt.

# ARTICLE VIII
# DISTRIBUTIONS

**8.1    Distributions to Beneficiaries from Liquidation Trust Assets.**  All payments to be made by the Liquidation Trustee to any Beneficiary shall be made only in accordance with the Plan, the Confirmation Order and this Liquidation Trust Agreement and from the Liquidation Trust Assets (or from the income and proceeds realized from the Liquidation Trust Assets) net of the Liquidation Trust Operational Reserve, and only to the extent that the Liquidation Trust has sufficient Liquidation Trust Assets (or income and proceeds realized from the Liquidation Trust Assets) to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order and this Liquidation Trust Agreement.

**8.2    Distributions; Withholding.**   The Liquidation Trustee shall make initial Distributions with respect to each Class of Allowed Claims and, if applicable, Interests as provided in the Plan and, following the initial Distributions required under the Plan, the Liquidation Trustee shall make Distributions to each Class of Allowed Claims (including Distributions of all net Cash (including net Cash proceeds)) on Quarterly Distribution Dates.  All such Distributions shall be made as provided, and subject to any withholding or reserve, in this Liquidation Trust Agreement, the Plan or the Confirmation Order.  Additionally, the Liquidation Trustee may withhold from amounts distributable to any Beneficiary any and all amounts, determined in the Liquidation Trustee's sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

**8.3    No Distribution Pending Allowance.**  No payment or Distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, except for Distributions into a Disputed Claims Reserve in accordance with the Plan, Confirmation Order, and this Liquidation Trust Agreement.

**8.4    Distributions after Allowance.**   Distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which such holder of a Claim belongs.

**8.5    Non-Cash Property**.  Subject to Section 2.3 hereof, and to the terms of the Superseding Order (I) Approving Bidding Procedures; (II) Establishing Certain Related Deadlines; And (III) Granting Related Relief [Docket No. 176], any non-Cash property of the Liquidation Trust may be sold, transferred or abandoned by the Liquidation Trustee.  Notice of such sale, transfer or abandonment shall be provided to the holders, if any, of Secured Claims holding liens on such non-Cash property.  If, in the Liquidation Trustee's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the Liquidation Trustee believes, in good faith, such property has no value to the Liquidation Trust, the Liquidation Trustee shall have the right to abandon or otherwise dispose of such property, including by donation of such property to the American Red Cross or, if such organization no longer exists,

- 15 -

some similar charitable organization of the Liquidation Trustee's choice.  Except in the case of fraud, willful misconduct or gross negligence, no party in interest shall have a cause of action against the Liquidation Trustee or any director, officer, employee, consultant or professional of the Liquidation Trustee or professionals, arising from or related to the disposition of non-Cash property in accordance with this Section.

**8.6    Unclaimed Property.**  Unclaimed Property will be considered Available Cash and may be used to pay Liquidation Trust Operating Expenses or to fund Distributions under the Plan; provided, however, that, pursuant to Section 9.11 of the Plan, the Liquidation Trust shall not be obligated to make Distributions to a Class of Claims or Interests if the amount of the Available Cash is *de minimis* and is not sufficient to warrant the incurrence of costs in making the Distribution.  In the event the Liquidation Trustee holds Available Cash after all Liquidation Trust Operating Expenses and Distributions are made, such remaining Available Cash shall be distributed to a charitable organization of the Liquidating Trustee's choice.  Neither Available Cash nor any Claim or any Unclaimed Property attributable to such Claim, shall escheat to any federal, state or local government or other entity.

**8.7    Withholding Taxes.**  Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder.  All holders of Claims shall be required to provide the Liquidation Trustee with any information necessary to effect the withholding of such taxes.

**8.8    Distributions on Non-Business Days.**  Any Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

**8.9    No Distribution in Excess of Allowed Amount of Claim.**  Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim, plus postpetition interest thereon to the extent allowed by the Bankruptcy Code and the Plan.  Upon a holder of an Allowed Claim recovering the full amount of its Allowed Claim from another source, it thereafter shall no longer have any entitlement to receive Distributions under the Plan.

**ARTICLE IX**
**TAXES**

**9.1    Income Tax Status.**  Consistent with Revenue Procedure 94-45, 1994-28 I.R.B. 124, the Liquidation Trust shall be treated as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to IRC Sections 671-677.  As such, the Beneficiaries will be treated as both the grantors and the deemed owners of the Liquidation Trust.  Any items of income, deduction, credit and loss of the Liquidation Trust shall be allocated for federal income tax purposes to the Beneficiaries.

**9.2    Tax Returns.**  In accordance with IRC Section 6012 and Treasury Regulation Section 1.671-4(a), the Liquidation Trust shall file with the IRS annual tax returns on Form 1041.  In addition, the Liquidation Trust shall file in a timely manner such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon.  Within a reasonable time following the end of the taxable year, the

Liquidation Trust shall send to each Beneficiary a separate statement setting forth the Beneficiary's share of items of income, gain, loss, deduction or credit and will instruct each such Beneficiary to report such items on their federal income tax returns.  The Liquidation Trust may provide each Beneficiary with a copy of the Form 1041 for the Liquidation Trust (without attaching any other Beneficiary's Schedule K-1 or other applicable information form) along with such Beneficiary's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement.  The Liquidation Trust shall allocate the taxable income, gain, loss, deduction or credit of the Liquidation Trust with respect to each Beneficiary.

**9.3    Withholding of Taxes and Reporting Related to Liquidation Trust Operations.**  In connection with the Plan and all Distributions thereunder, the Liquidation Trustee shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions thereunder shall be subject to any such withholding and reporting requirements. The Liquidation Trustee is authorized by the Plan to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim or, if applicable, an Allowed Interest, that is to receive a Distribution pursuant to the Plan has sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Liquidation Trustee for the payment and satisfaction of such withholding tax obligations.  Any property to be distributed pursuant to the Plan, pending the implementation of such arrangements, shall be treated as an undeliverable Distribution to be held by the Liquidation Trustee until such time as the Liquidation Trustee is satisfied with the holder's arrangements for any withholding tax obligations.  The Liquidation Trustee may require any Beneficiary to furnish to the Liquidation Trustee its social security number or employer or taxpayer identification number as assigned by the IRS and the Liquidation Trustee may condition any Distribution to any Beneficiary upon the receipt of such identification number.

**9.4    Valuations.**  As soon as possible after the Effective Date, the Liquidation Trustee shall make a good faith valuation of the Liquidation Trust Assets, and such valuation shall be used consistently by all parties (including, without limitation, the Liquidation Trustee and the Beneficiaries) for all federal income tax purposes.  The Liquidation Trustee also shall file (or cause to be filed) any other statements, returns or disclosures relating to the Liquidation Trust that are required by any governmental unit.

**9.5    Treatment of Disputed Claims Reserve.**  Notwithstanding any other provision of this Liquidation Trust Agreement to the contrary, subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Liquidation Trustee shall (i) treat any Liquidation Trust Assets allocable to, or retained on account of, a Disputed Claims Reserve in accordance with Section 7.2 of this Liquidation Trust Agreement as held by one or more discrete trusts for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim, in accordance with the trust provisions of the IRC (sections 641 et seq.), (ii) treat as taxable income or loss of each Disputed Claims Reserve, with

- 17 -

respect to any given taxable year, the portion of the taxable income or loss of the Liquidation Trust that would have been allocated to the holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a Distribution from the Disputed Claims Reserve any increased amounts distributed by the Liquidation Trustee as a result of any Disputed Claims resolved earlier in the taxable year, to the extent such Distributions relate to taxable income or loss of the Disputed Claims Reserve determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes.  All Beneficiaries shall report, for income tax purposes, consistent with the foregoing.  In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidation Trustee as a result of the resolutions of such Disputed Claims.

**9.6    Expedited Determination of Taxes.**  The Liquidation Trustee may request an expedited determination of taxes of the Debtor and of the Liquidation Trust, including the Disputed Claims Reserve, under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Debtor and the Liquidation Trust for all taxable periods through the termination of the Liquidation Trust.

**ARTICLE X**
**TERMINATION OF LIQUIDATION TRUST**

**10.1    Termination of Liquidation Trust.**  The Liquidation Trustee shall be discharged and the Liquidation Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Liquidation Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidation Trustee hereunder have been fulfilled, (iv) all Distributions required to be made by the Liquidation Trustee under the Plan and this Liquidation Trust Agreement have been made, and (v) the Chapter 11 Case of Aereo, Inc. has been closed; provided, however, that in no event shall the Liquidation Trust be terminated later than the term of the Liquidation Trust under Section 10.2 of this Liquidation Trust Agreement, as such term may be extended pursuant to Section 10.2.

**10.2    Maximum Term.**  The term of the Liquidation Trust shall end no later than the fifth (5th) anniversary of the Effective Date (the "Initial Liquidation Trust Term"); provided, however, that the Liquidation Trust may, subject to the further provisions of this Section 10.2, extend the term of the Liquidation Trust for such additional period of time as is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets as follows: within the six (6) month period prior to the termination of the Initial Liquidation Trust Term, the Liquidation Trustee may file a notice of intent to extend the term of the Liquidation Trust with the Bankruptcy Court and upon approval of the Bankruptcy Court of such extension, the term of the Liquidation Trust shall be so extended.  The Liquidation Trustee may file one or more such extension notices, each notice to be filed within the six (6) month period prior to the termination

of the extended term of the Liquidation Trust (all such extensions, collectively, are referred to herein as the "Supplemental Liquidation Trust Term"). Notwithstanding anything to the contrary in this Section 10.2, however, the Supplemental Liquidation Term may not exceed three (3) years without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes. In addition, the provisions of this Section 10.2 shall be without prejudice to the right of any party in interest under Bankruptcy Code Section 1109 to petition the Bankruptcy Court, for cause shown, to shorten the Supplemental Liquidation Trust Term.

**10.3    Events Upon End of Term Termination.**  At the conclusion of the term of the Liquidation Trust, the Liquidation Trustee shall distribute the remaining Liquidation Trust Assets, if any, to the Beneficiaries, in accordance with the Plan, the Confirmation Order and this Liquidation Trust Agreement, provided, however, that the Liquidation Trustee shall not be obligated to make Distributions to a Class of Claims or Interests if the amount of the Available Cash is *de minimis* and is not sufficient to warrant the incurrence of costs in making the Distribution.

**10.4    Winding Up and Discharge of the Liquidation Trustee.**  For the purposes of winding up the affairs of the Liquidation Trust at the conclusion of its term, the Liquidation Trustee shall continue to act as Liquidation Trustee until its duties under this Liquidation Trust Agreement have been fully discharged or its role as Liquidation Trustee is otherwise terminated under this Liquidation Trust Agreement and the Plan. Upon a motion by the Liquidation Trustee, the Bankruptcy Court may enter an order relieving the Liquidation Trustee, its agents and employees of any further duties, discharging the Liquidation Trustee and releasing its bond, if any.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

**11.1    Amendments.**  The Liquidation Trustee may modify, supplement, or amend this Agreement but only to clarify any ambiguity or inconsistency, or render the Agreement in compliance with its stated tax purposes, and only if such amendment does not materially and adversely affect the interests, rights, treatment or Distributions of any Beneficiaries. The Liquidation Trustee may modify, supplement, or amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order.

**11.2    Waiver.**  No failure by the Liquidation Trust or the Liquidation Trustee to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

**11.3    Cumulative Rights and Remedies.**  The rights and remedies provided in this Liquidation Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

**11.4    No Bond Required.**  Notwithstanding any state law to the contrary, the Liquidation Trustee (including any successor Liquidation Trustee) shall be exempt from giving

- 19 -

any bond or other security in any jurisdiction other than as provided under Section 2.3 of this Liquidation Trust Agreement.

**11.5    Irrevocability.**  This Liquidation Trust Agreement and the Liquidation Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Liquidation Trust Agreement.

**11.6    Relationship to the Plan.**  The principal purpose of this Liquidation Trust Agreement is to aid in the implementation of the Plan and, therefore, this Liquidation Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Liquidation Trust Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.

**11.7    Division of Liquidation Trust.**  Under no circumstances shall the Liquidation Trustee have the right or power to divide the Liquidation Trust unless authorized to do so by the Bankruptcy Court.

**11.8    Applicable Law.**  The Liquidation Trust is made in the State of New York, and the Liquidation Trust and this Liquidation Trust Agreement, and the rights and obligations of the Liquidation Trustee are to be governed by and construed and administered according to the laws of the State of New York; provided, however, that, except as expressly provided in this Liquidation Trust Agreement, there shall not be applicable to the Liquidation Trust, the Liquidation Trustee, or this Liquidation Trust Agreement any provisions of the laws (statutory or common) of the State of New York pertaining to trusts which relate to or regulate: (i) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges; (ii) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust; (iii) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of real or personal property; (iv) fees or other sums payable to trustees, officers, agents or employees of a trust; (v) the allocation of receipts and expenditures to income or principal; (vi) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of trust assets; or (vii) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees, which are inconsistent with the limitations or liabilities or authorities and powers of the Liquidation Trustee set forth or referenced in this Liquidation Trust Agreement.

**11.9    Retention of Jurisdiction.**  Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidation Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, including, without limitation, this Liquidation Trust Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Liquidation Trustee or any professional retained by the Liquidation Trustee, in its capacity as such. Each party to this Liquidation Trust Agreement and each Beneficiary of the Liquidation Trust hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret

- 20 -

or construe any provision of this Liquidation Trust Agreement or of any other agreement or document delivered in connection with this Liquidation Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum *non conveniens* or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that any action to enforce, interpret or construe any provision of this Liquidation Trust Agreement will be brought only in the Bankruptcy Court. Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret or construe any provision of this Liquidation Trust Agreement. Notwithstanding the preceding, nothing herein shall be interpreted as requiring the commencement or prosecution of any Estate Causes of Action in the Bankruptcy Court, and all determinations regarding the proper forum for initiating any Estate Cause of Action shall be at the discretion of the Liquidation Trust, consistent with applicable law.

**11.10  Severability.**  In the event that any provision of this Liquidation Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court to be invalid or unenforceable to any extent, the remainder of this Liquidation Trust Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Liquidation Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

**11.11  Limitation of Benefits.**   Except as otherwise specifically provided in this Liquidation Trust Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Liquidation Trust Agreement.

**11.12  Notices.**   All notices, requests, demands, consents and other communication hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or by facsimile with an electromagnetic report of delivery or if sent by overnight mail, registered mail, certified mail or regular mail, with postage prepaid, to the following addresses:

If to the Liquidation Trustee:

**Lawton Bloom**
**c/o Argus Management Corp.**
**208 West 29th Street, Suite 613A**
**New York, NY 10001**
Tel: 212-686-1593

with a copy to:

**[Address To Come]**
Tel:
Fax:

- 21 -

       If to a Beneficiary:

          To the name and Distribution Address set forth in
          the Register with respect to such Beneficiary.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

**11.13  Further Assurances.**  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Liquidation Trust Agreement, and to consummate the transactions contemplated hereby.

**11.14  Integration.**  This Liquidation Trust Agreement, the Plan and the Confirmation Order constitute the entire agreement with, by and among the parties thereto, and there are no representations, warranties, covenants or obligations except as set forth herein, in the Plan and in the Confirmation Order.  This Liquidation Trust Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise provided in this Liquidation Trust Agreement, the Plan or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Liquidation Trust Agreement.  To the extent there is an inconsistency between the Plan and this Liquidation Trust Agreement, the Plan shall control.

**11.15  Interpretation.**  The enumeration and Section headings contained in this Liquidation Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Liquidation Trust Agreement or of any term or provision hereof.  Unless context otherwise requires, whenever used in this Liquidation Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations and corporations.  The words herein, hereby, and hereunder and words with similar import, refer to this Liquidation Trust Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise.  Any reference to the "Liquidation Trustee" shall be deemed to include a reference to the "Liquidation Trust" and any reference to the "Liquidation Trust" shall be deemed to include a reference to the "Liquidation Trustee" except for the references in Sections 5.1, 5.2 and such other provisions in which the context otherwise requires.

**11.16  Counterparts.**  This Liquidation Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Liquidation Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

AEREO, INC.

By:_____
     Name:
     Title:

By:_____
     Name: **Lawton Bloom**,
     as Liquidation Trustee

- 23 -

**<u>EXHIBIT A</u>**

**<u>CONTRACT OF THE LIQUIDATION TRUSTEE</u>**

**[TO BE PROVIDED]**