1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 14-13200-shl

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  AEREO, INC.,

9

10            Debtor.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14            United States Bankruptcy Court

15            One Bowling Green

16            New York, New York

17

18            June 8, 2015

19            2:11 PM

20

21  B E F O R E :

22  HON. SEAN H. LANE

23  U.S. BANKRUPTCY JUDGE

24

25

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

1

2  Doc #233 (Confirmation Hearing) Amended Chapter 11 Plan of

3  Aero, Inc.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Sharona Shapiro

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

```
 1
 2  A P P E A R A N C E S :
 3  BROWN RUDNICK LLP
 4         Attorneys for Debtor
 5         One Financial Center
 6         18th Floor
 7         Boston, MA 02111
 8
 9  BY:   R. BENJAMIN CHAPMAN, ESQ.
10
11
12  BROWN RUDNICK LLP
13         Attorneys for Debtor
14         Seven Times Square
15         New York, NY 10036
16
17  BY:   WILLIAM R. BALDIGA, ESQ.
18
19
20  UNITED STATES DEPARTMENT OF JUSTICE
21         Attorneys for Office of the United States Trustee
22         201 Varick Street, Suite 1006
23         New York, NY 10014
24
25  BY:   SUSAN D. GOLDEN, ESQ.
```

1

2 STINSON LEONARD STREET LLP

3          Attorneys for Official Creditors' Committee

4          150 South Fifth Street

5          Suite 2300

6          Minneapolis, MN 55402

7

8 BY:   ROBERT KUGLER, ESQ.

9          EDWIN H. CALDIE, ESQ.

10

11

12 THOMPSON & KNIGHT LLP

13          Attorneys for NBCUniversal Media, LLC

14          900 Third Avenue,  20th Floor

15          New York, NY 10022

16

17 BY:   MICHAEL V. BLUMENTHAL, ESQ.

18

19

20 WEIL, GOTSHAL & MANGES, LLP

21          Attorneys for CBS Broadcasting Inc. and CBS Studios Inc.

22          767 Fifth Avenue

23          New York, NY 10153

24

25 BY:   YVANNA CUSTODIO, ESQ.

1                       P R O C E E D I N G S

2              THE COURT:  Good afternoon.  Please be seated.

3              We're here this afternoon for the confirmation hearing

4       in Aereo, Inc.  So let me get appearances from counsel.

5              MR. CHAPMAN:  Good afternoon, Your Honor.  Ben Chapman

6       from Brown Rudnick, on behalf of Aereo.  I'm here with my

7       colleague, William Baldiga.

8              THE COURT:  All right.  Good afternoon.  Let me get

9       any other appearances from anyone else who might expect to

10      speak.

11             MR. KUGLER:  Robert Kugler from Stinson Leonard Street

12      with my partner, Edwin Caldie, on behalf of the official

13      committee of unsecured creditors.

14             MS. GOLDEN:  Susan Golden for the U.S. Trustee.

15             MR. BLUMENTHAL:  Michael Blumenthal from Thompson &

16      Knight, representing NBCUniversal Media, LLC.

17             MS. CUSTODIO:  Yvanna Custodio from Weil, Gotshal &

18      Manges, on behalf of CBS Broadcasting Inc. and CBS Studios.

19      Good afternoon, Your Honor.

20             THE COURT:  All right.  Good afternoon to you all.

21             Take it away.

22             MR. CHAPMAN:  Thank you, Your Honor.  We are here

23      today seeking confirmation of the amended Chapter 11 plan of

24      Aereo, Inc.

25          I'd like to start today by thanking the committee and its

1  professionals who were absolutely instrumental in not just

2  helping us with the process of negotiating and formulating the

3  plan for a consensual Chapter 11 plan today, but also were so

4  instrumental in all of the major important junctures in this

5  case, including even the sales and the auction process that

6  happened earlier.  Their tremendous support and professionalism

7  has helped get us where we are today.

8         We'd also like to thank the Court for all of its

9  assistance and direction in this case, particularly during the

10 difficult and contentious issues that we faced at the beginning

11 of the case.  The Court's guidance and flexibility on these

12 issues very much helped us and is greatly appreciated.

13        And as a housekeeping matter, I note that we submitted

14 the declarations of Lawton Bloom, in support of confirmation of

15 the Chapter 11 plan.  Lawton Bloom is the debtor's CRO, chief

16 restructuring officer.

17        We also submitted the declaration of James Daloia, of

18 Prime Clerk, who was the debtor's solicitation agent.

19        And there being -- both of them are here in the court

20 today for any questions, but there were no objections to that,

21 so I'd like to move them into the record.

22        THE COURT:  Anybody have any objection to receiving

23 those declarations?

24        MR. KUGLER:  No objections, Your Honor.

25        THE COURT:  All right.  I don't see anyone rising.  I

1   didn't see any objection on the docket.  And I don't see any

2   reason why those shouldn't be admitted, so they are so

3   admitted.

4   (Declaration of Lawton Bloom was hereby received into evidence,

5   as of this date.)

6   (Declaration of James Daloia was hereby received into evidence,

7   as of this date.)

8           MR. CHAPMAN:  Thank you, Your Honor.

9           The debtor originally filed its Chapter 11 plan and

10   disclosure statement on February 27th, immediately following

11   the auction.  The debtor, in conversation with the committee,

12   agreed to adjourn the original schedule for consideration of

13   the disclosure statement and the plan, in an effort to work

14   with the committee and the broadcasters to reach a consensual

15   resolution to this case that would preserve as much value as

16   possible for distribution to the debtor's creditors.

17           After several weeks of long and sometimes contentious

18   negotiations, the debtor, the committee and the broadcasters

19   were able to reach an agreement resolving the broadcasters'

20   claims in this case and permitting the debtor to, among other

21   things, propose a fully consensual amended Chapter 11 plan and

22   amended disclosure statement which were filed on April 24th.

23           The Court approved the broadcasters' settlement

24   agreement on May 7th.  I'm happy to report today that all

25   obligations under the settlement agreement have been -- that

 1   condition to its effectiveness have been performed.

 2         We are still waiting on certification from one -- from

 3   certain of the broadcasters' pre-petition copyright litigation

 4   counsel about certain of the discovery material that they had

 5   was destroyed.  But I've been in contact with counsel, and they

 6   have confirmed that that process is underway and it should be

 7   happening any moment now.  Again, that's not a condition to its

 8   effectiveness, just an update on that.  The settlement

 9   agreement -- the broadcasters' settlement agreement has gone

10   through.

11         The Court approved the debtor's amended disclosure

12   statement on May 8th, and as required by the Court's order

13   approving the disclosure statement, the debtor, through its

14   solicitation agent, Prime Clerk, distributed the solicitation

15   materials, including a copy of the amended Chapter 11 plan, to

16   creditors that were entitled to vote.  It was all of the

17   creditors in Class 4, unsecured claims.

18         As reflected in Mr. Daloia's declaration, all the

19   cred -- a hundred percent of the creditors, in amount and in

20   number, voted in favor of the plan.  The plan is a plan of

21   liquidation that contemplates the creation of a liquidation

22   trust and distributions of the debtor's assets by liquidation

23   trustee.

24         We've been in discussions as to the identity of the

25   liquidation trustee -- we have identified the debtor's CRO, Mr.

1  Bloom, as the liquidation trustee.  I'll come back in a moment

2  to a potential issue around that, but I'll note that for now.

3          A copy of the liquidation trust agreement was filed

4  with a plan supplement package on June 1st. Also with the plan

5  supplement package, we included the confirmation order, which

6  was also reviewed and commented on by the committee and the

7  broadcasters.

8          The amended plan and the confirmation order are

9  consistent with the terms of the broadcasters' settlement

10  agreement.  The amended plan was negotiated in good faith by

11  all parties involved, and has been overwhelmingly accepted by

12  the debtor's creditors.  The debtor believes that the plan

13  complies with all of the requirements of the Bankruptcy Code

14  relating to confirmation, as required by Section 1129 of the

15  Bankruptcy Code.

16          The plan results in the -- the plan provides for the

17  classification of claims and treatment thereof, as described in

18  the plan, and as provided in the liquidation analysis filed

19  with the disclosure statement, those claims and interests will

20  receive as much or more under the plan as they would in a

21  Chapter 7 case.

22          The debtor believes that the plan is feasible and will

23  result in the prompt distribution of the debtor's assets and

24  wind-down of the debtor's estate by the liquidation trustee.

25          All of the conditions to confirmation of the plan have

1 been satisfied, as set forth in Section 10.01.  In addition,

2 the plan can go effective immediately.  All of the conditions

3 in Article 10 for the effective date have also been satisfied.

4          And here's what we'd like to note with respect to the

5 liquidation trust agreement.  One item remains open.  There

6 were several employee loan obligations that were made prior to

7 the commencement of the case.  We disclosed it in our

8 schedules.  Everyone is aware of it.  The committee has been

9 aware of it.  The trustee was aware of it.  The U.S. Trustee

10 was aware of it.  This issue has been given to the committee to

11 pursue and resolve.  We'd hoped, at this time, that it would be

12 resolved, but unfortunately it has not yet been.

13          As mentioned earlier, in discussion with the

14 committee, we had all hoped that Lawton Bloom, the debtor's

15 CRO, would serve as the liquidation trustee, given his

16 familiarity with the case and his experience in managing such

17 companies.  However, there may be some issues as to his

18 handling of -- pursuing the loan obligations and potential

19 avoidance actions, if that is what happens.  And so we want to

20 make sure that all such issues are avoided.

21          We've conferred with the committee and the other

22 parties here today, including Mr. Blumenthal and the U.S.

23 Trustee, and have indicated that we would like to go forward

24 with confirmation of all of the documents, but pursuant to

25 Section 11.1 of the liquidation trust agreement, the

1  liquidation trustee may amend the liquidation trust agreement

2  to create a supervisory board that will be charged with or

3  authorized to pursue this limited issue of resolving what to do

4  with the employee loan transactions.  We intend on filing that

5  amended liquidation trust agreement with -- on notice with the

6  Court by the end of the week, but just wanted, for

7  transparency, to let the Court know that will happen.  So

8  Lawton Bloom will continue to be the liquidation trustee and

9  will not be dealing with this particular issue.

10         THE COURT:  All right.

11         MR. CHAPMAN:  So for all those reasons, Your

12  Honor -- I'm happy to go further into -- or answer any

13  questions that the Court may have as to why the plan satisfies

14  all of the requirements of the Code.

15         THE COURT:  The only thing I'd ask that you just put

16  on the record is obviously there's a 9019 settlement with the

17  broadcasters.  As such, there are releases that need to satisfy

18  the Metro Media standard, and so if you would just give a brief

19  statement on the record as to that.

20         MR. CHAPMAN:  Sure.  The 9019 settlement, that has

21  been approved by the Court.  The terms therein have been

22  incorporated into the terms here in the plan.  The releases

23  contained in the plan relate to releases of certain

24  individuals, including the debtor's employees, directors,

25  officers, the committee and its professionals, the debtor's

1    professionals and broadcasters.  All are set forth in the plan

2    for actions relating to the -- for the Chapter 11 case.  We

3    believe that these releases are appropriate and within the

4    range of reasonableness, have been approved by a court before.

5    We would request that the Court approve them unless the Court

6    has any further questions.

7              THE COURT:  But I guess you also -- but you also

8    have -- in addition to plan releases, I think you have, if I

9    remember correctly, the paragraph on exculpation releases and

10   objection, just (a) -- I think (a) and (b) are pretty much the

11   standard, as I see, but I think (c) and (d) talk about the,

12   essentially, third-party releases that is the debtor or any

13   person seeking to exercise -- well, it addresses the

14   broadcasters, right, so -- if I'm getting that correct.  So

15   it's essentially a third-party release, but I think the notion

16   is that there's substantial consideration to justify the third-

17   party release, and that the settlement was part and parcel of

18   everything going along with the plan.

19             MR. CHAPMAN:  Yes, Your Honor.

20             THE COURT:  All right.

21             MR. CHAPMAN:  There was substantial consideration

22   given in exchange for these releases.  They are a critical part

23   of the plan and are also put forth in the declaration of Mr.

24   Bloom.  The releases were heavily negotiated and are in

25   exchange for the broadcasters releasing certain of their claims

1    as provided in 9019.  We think their releases are supported by

2    what has been exchanged here and are reasonable in this case.

3              THE COURT:  All right.  Thank you.

4              MR. CHAPMAN:  Thank you.

5              THE COURT:  All right.  Anyone wish to be heard in

6    connection with the request to confirm the amended Chapter 11

7    plan?

8              MR. KUGLER:  All right.  Just very briefly, Your

9    Honor.  I want to make sure that the Court understands the

10   committee is fully behind this.  It has been a difficult case

11   and a complex case over a very short period of time, but I

12   think it's a good result and we're fully on board and support

13   and seek confirmation as well.

14             THE COURT:  Thank you.  Anyone else wish to be heard?

15             All right.  I'm happy to confirm the amended Chapter

16   11 plan of Aereo, Ltd.  The Court finds it satisfied all of

17   required and applicable provisions of the Bankruptcy Code,

18   including relevant law.

19             So -- and this is not meant to be an exhaustive list

20   but just the highlights, including Section 1129(a)(1), which

21   talks about the applicable provisions of Title 11, which

22   includes the requirements of 1122 and 1123, which govern

23   classification contents of a plan.  So the Court finds that the

24   plan conforms with Section 1122 about classification of claims

25   and interests.

1       The Court also finds that it complies with Section

2   1123(a), which deals with the mandatory contents of a plan,

3   which talks about specifying, for example what treatment of

4   impaired classes and the treatment of each claim and interest

5   and adequate means for implementation.

6       The Court also finds that it satisfies Section

7   1123(b), as applicable, which deals with discretionary contents

8   of a plan.

9       The Court also finds that it complies with Section

10  1129(a)(2).  And so 1129(a)(1) focuses on the formal content of

11  the actual plan; (a)(2) focuses on the activities of the plan

12  proponent, so it's meant to ensure that plan proponents have

13  complied with disclosure and solicitation requirements of

14  Sections 1125 and 1126.  And the Court finds that those are

15  satisfied.

16      The Court finds that the plan complies with -- and

17  this, again, just to highlight certain of the -- all the

18  applicable requirements, including 1129(a)(3), that it's

19  proposed in good faith, 1129(a)(7), that it's in the best

20  interests of the creditors, 1129(a)(8), dealing with acceptance

21  of the plan, 1129(a)(9), which deals with payment of priority

22  claims, and 1129(a)(10), that requires acceptance by at least

23  one impaired class.  1129(a)(11), which is commonly discussed

24  in these circumstances, does not apply, because it's a

25  liquidating plan, and that deals with feasibility of the debtor

1   going forward.

2          And so for all those reasons the Court is happy to

3   conclude that it meets the applicable requirements.

4          And the last thing we're discussing is the releases

5   that we mentioned earlier.  And, as you all know, nondebtor

6   releases and exculpations are permissible in some

7   circumstances, but not as a routine matter, as the Second

8   Circuit has counseled courts and parties in cases such as DBSD,

9   Adelphia Communications, and, most notably, Metromedia Fiber

10  Network, Inc., 416 F.3d 136, 141 (2d Cir. 2005).

11         The Second Circuit has instructed that such releases

12  are proper only in rare cases.  The Circuit has counseled that

13  in analyzing nondebtor releases it requires a finding of unique

14  circumstances, and it's given some guidance on that, so

15  releases are permissible when the provisions are important to a

16  debtor's plan, which includes where the release party has

17  provided substantial consideration.

18         The Court finds the releases here to be appropriate,

19  and particularly the -- as to the settlement and 9019, dealing

20  with the Broadcasters, because such substantial consideration

21  has been provided, as we've already talked about at the prior

22  hearing, where the 9019 was teed up and approved.

23         So for all those reasons the Court is happy to confirm

24  the plan, and I think I had some very, very modest comments

25  about the order.  I don't know if there's been any changes to

1   the order that was submitted as part of the supplements to the

2   amended Chapter 11 plan on June 1st.

3           MR. CHAPMAN:  No, Your Honor.  There have not been any

4   changes to that version.

5           THE COURT:  All right.  I think my very modest

6   comments are on page 17 the first numbered paragraph talks

7   about confirmation of the plan, and at the last line it says,

8   "To the extent any inconsistencies exist between the

9   Broadcasters' settlement agreement and the plan confirmation

10  order, the Broadcasters' settlement agreement controls."  It

11  previously dealt with how you deal with the plan versus the

12  Broadcasters' settlement.  I've always seen it that at the end

13  of the day the confirmation order controls, basically because

14  you're asking for the Court to approve something, and you don't

15  want to have the possibility that something is somehow approved

16  but then not part of what's going on.

17          So I suspect this is the case.  This is, sort of, a

18  belt and suspenders, kind of, provision, but I think the

19  confirmation order should control, so you may want to just

20  tweak that to give everybody the appropriate level of comfort,

21  but I don't think I've approved a Chapter 11 confirmation order

22  where the confirmation orders have, sort of, had an out to it.

23          So I think we address the Metromedia findings for the

24  releases.  And for paragraphs 16, 19, and 28, they all deal

25  with bar dates, and I think all of those are bar dates for a

1   variety of different things, including rejection and various

2   things.  And I think they're all tied to notice of the entry of

3   the confirmation order, which is going to be done.  I think

4   it's set forth in paragraph 28.

5          So what I'd like to do is just add language here that

6   makes it clear that that notice that's going to be given will

7   specify what bar dates it's triggering.  Just some very basic

8   language to say this notice triggers the requirement to file a

9   claim under this provision, that kind of claim.  And, again, I

10  think it's all discussed in paragraphs 16, 19, and 28.  Just so

11  that way if somebody receives that notice they know their time

12  is ticking.

13         And I think the only other thing that I had was on

14  page 31, paragraph 30, and consistent with the, sort of, the

15  minor level of my comments, there's a line in here towards the

16  bottom that says, "Upon the occurrence of the effective date

17  the plan shall be deemed substantially consummated."  And I

18  think that's consistent with what the plan says, and I have no

19  problem with the concept, but I think that if it was ever to be

20  litigated it really -- it's not appropriate for an order.  It's

21  what the debtors say in the plan, and then there's a test for

22  what substantial consummation looks like.  So I would just take

23  that out.  Certainly it's appropriate to say it in the plan.  I

24  have no problem with that.  But I've looked at some other

25  confirmation orders, and I think we tend to put -- people tend

AEREO, INC.                                                  18

1    to put it in the plan, but it doesn't make its way into the

2    confirmation order.

3           So I think all those are pretty minor things, and I

4    don't think they do any violence to anything that you all have

5    worked out.

6           MR. BLUMENTHAL:  Your Honor, can I ask a quick

7    question --

8           THE COURT:  Sure.

9           MR. BLUMENTHAL:  -- on your comment to paragraph 1, if

10   Your Honor would have a problem with that last sentence if we

11   said "If there are any inconsistencies between the

12   Broadcasters' settlement agreement and the plan, the

13   Broadcasters' settlement agreement controls."  And if there was

14   any inconsistency between the order, your order approving the

15   settlement agreement, and the confirmation order, the order

16   approving the settlement agreement controls, because we don't

17   believe there are any inconsistencies.

18          THE COURT:  I don't think there are.  I think that's

19   close.  I'm just trying to think about it sitting here.  Again,

20   I think there is a line in that paragraph that I don't have a

21   problem with that says that between the settlement agreement

22   and the plan, the settlement agreement controls.  And I don't

23   have a problem with that.

24          MR. BLUMENTHAL:  Okay.

25          THE COURT:  My only thought is in concept I don't want

AEREO, INC.                                                    19

1  to have a, sort of, an out in the confirmation order.

2          So I don't -- but I don't know that -- is there really

3  a problem with what's in --

4          MR. BLUMENTHAL:  No.  What we could do, Your Honor,

5  is --

6          THE COURT:  -- the settlement order versus what's in

7  the confirmation order?

8          MR. BLUMENTHAL:  -- is simply say if there's an

9  inconsistency between the settlement agreement and the plan the

10  settlement agreement controls, but maybe not talk about the

11  confirmation order.  I understand your issue there.

12          THE COURT:  All right.  All right.  Hold on.  Let me

13  just --

14          MR. BLUMENTHAL:  Yes.  Then we can obviate the issue

15  that you just raised.

16          In other words --

17          THE COURT:  Yes.  No.  No, I got it.

18          MR. BLUMENTHAL:  Yes.

19          THE COURT:  I got it.  Because, basically, then it

20  makes very clear what the pecking order is --

21          MR. BLUMENTHAL:  Right.

22          THE COURT:  -- between the two.  Anybody have any

23  comments they want to make on that proposal?

24          MR. KUGLER:  I think that's the right way to do it,

25  Your Honor.

1            THE COURT:  All right.  Anyone else?

2            All right.  Yes.  I don't have a problem with that.

3            MR. BLUMENTHAL:  Okay.  Thank you, Your Honor.

4            THE COURT:  All right.  All right.  Anything else as

5     to the order?  All right.

6            MR. CHAPMAN:  Thank you, Your Honor.

7            THE COURT:  All right.  Anything else we need to

8     discuss here today?  All right.  So I'll wait for a revised

9     order.  Just make sure to circulate it to all of the parties

10    who are interested before you send it along to chambers, so

11    that everybody's on the same page.  But, again, it's pretty

12    modest stuff.

13           And I'll just take this opportunity to thank all the

14    professionals involved in the case.  It was a very difficult,

15    challenging case.  I think everybody was very helpful in teeing

16    up issues that needed to be teed up.  And I think it's a case

17    that could have easily descended into pretty constant warfare,

18    and, under the circumstances, because this was, sort of, just

19    one chapter of a much longer litigation saga, so I appreciate

20    the professionalism of all counsel here to prevent that from

21    happening in an estate that, really, just didn't have the money

22    for that to happen.

23           So I really appreciate that.  It was really important

24    to do.  And, again, I think there were fights, but sometimes

25    there are fights you've got to fight and that have to be

AEREO, INC.                                                    21

1    resolved, but I don't think it was unnecessarily acrimonious,

2    which would have been, I think, a difficult path for the case

3    that was already difficult enough.  So thank you.

4            MR. CHAPMAN:  Thank you, Your Honor.

5            UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

6        (Whereupon these proceedings were concluded at 2:34 PM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I N D E X


EXHIBITS

| DEBTOR'S | DESCRIPTION | PAGE | |
|---|---|---|---|
| | Declaration of | 7 | |
| | Lawton Bloom | | |
| | Declaration of | 7 | |
| | James Daloia | | |



RULINGS

| | PAGE | LINE |
|---|---|---|
| Chapter 11 plan is confirmed | 15 | 23 |

23

1

2                          C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    *Sharona Shapiro*

8

9

10   _____

11   SHARONA SHAPIRO

12   AAERT Certified Electronic Transcriber CET**D 492

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  June 9, 2015

19

20

21

22

23

24

25