**Hearing Date and Time: July 15, 2015 at 2:00 p.m.**
**Objection Deadline: July 8, 2015 at 5:00 p.m.**

William R. Baldiga, Esquire
R. Benjamin Chapman, Esquire
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
(212) 209-4800

*Counsel for the Liquidation Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AEREO, INC., | : | Case No. 14-13200 (SHL) |
| | : | |
| Debtor. | : | |
| | : | |

**NOTICE OF MOTION OF THE LIQUIDATION TRUSTEE FOR ENTRY OF AN
ORDER APPROVING AND AUTHORIZING (A) THE SALE OF THE DEBTOR'S
SOURCE CODE FREE AND CLEAR OF ALL CLAIMS, LIENS, LIABILITIES,
RIGHTS, INTERESTS AND ENCUMBRANCES; (B) THE LIQUIDATION TRUSTEE
TO ENTER INTO AND PERFORM THE OBLIGATIONS UNDER THE ASSIGNMENT
AND ASSUMPTION AGREEMENT; AND (C) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that a hearing on the annexed motion, dated June 23, 2015

(the "Motion"), of the trustee (the "Liquidation Trustee") for the Aereo Liquidation Trust (the

"Trust"), established in the above-captioned Chapter 11 case (the "Chapter 11 Case") pursuant to

the Court's *Order Confirming Amended Chapter 11 Plan of Aereo, Inc.* [Docket Nos. 340, 343][1]

(the "Confirmation Order"), the *Amended Chapter 11 Plan of Aereo, Inc.* (as confirmed, the

"Plan") and the Amended Liquidation Trust Agreement (the "LTA") between Aereo, Inc. (the

"Debtor") and the Liquidation Trustee, for entry of an order approving and authorizing (a) the

---

[1] The Confirmation Order signed and entered by the Court on June 10, 2015 [Docket No. 340] did not attach the Plan (as defined below) and the LTA (as defined below). The Court re-filed the Confirmation Order again on June 12, 2015 [Docket No. 343], attaching the Plan and LTA as exhibits. Except for attaching the exhibits as described in the preceding sentence, the Confirmation Order entered at [Docket No. 343] is the same in all respects to the Confirmation Order entered at [Docket No. 340].

sale of the Debtor's source code free and clear of all claims, liens, liabilities, rights, interests and encumbrances; and (b) the Liquidation Trustee to enter and perform all obligations under a certain assignment and assumption agreement, all as more fully set forth in the Motion, will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") at One Bowling Green, New York, New York  10004, Courtroom 701 on **July 15, 2015 at 2:00 p.m..**

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Motion must comply with the Federal Rules of Bankruptcy Procedures and the Local Rules of the Bankruptcy Court, must be set forth in a writing describing the basis therefore and must be filed with the Bankruptcy Court electronically in accordance the General Order M-399, by registered users of the Bankruptcy Court's electronic case filing system (the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties in interest, in Portable Document Format (PDF), Word Perfect or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and served upon each of the following so as to be actually received no later than **5:00 p.m. on July 8, 2015** (the "Objection Deadline"): (i) attorneys for the Liquidation Trustee, Brown Rudnick LLP, 7 Times Square, New York, New York  10036, Attn: William R. Baldiga, Esq.; and (ii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014, Attn:  Susan D. Golden, Esq. and Andrew Velez-Rivera, Esq.

Dated: June 23, 2015
     New York, New York         Respectfully submitted,


By: /s/ William R. Baldiga
    William R. Baldiga, Esquire
    R. Benjamin Chapman, Esquire
    BROWN
     RUDNICK LLP
    7 Times Square
    New York, NY 10036
    (212) 209-4800

    *Counsel for the Liquidation Trustee*

61970326

**Hearing Date and Time:  July 15, 2015 at 2:00 p.m.**
**Objection Deadline:  July 8, 2015 at 5:00 p.m.**

William R. Baldiga, Esquire
R. Benjamin Chapman, Esquire
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
(212) 209-4800

*Counsel for the Liquidation Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AEREO, INC., | : | Case No. 14-13200 (SHL) |
| | : | |
| Debtor. | : | |
| | : | |

**MOTION OF THE LIQUIDATION TRUSTEE FOR ENTRY OF AN ORDER
APPROVING AND AUTHORIZING (A) THE SALE OF THE DEBTOR'S SOURCE
CODE FREE AND CLEAR OF ALL CLAIMS, LIENS, LIABILITIES, RIGHTS,
INTERESTS AND ENCUMBRANCES; (B) THE LIQUIDATION TRUSTEE TO ENTER
INTO AND PERFORM THE OBLIGATIONS UNDER THE ASSIGNMENT AND
ASSUMPTION AGREEMENT; AND (C) GRANTING RELATED RELIEF**

Lawton W. Bloom of Argus Management Corporation (the "Liquidation Trustee"),

trustee for the Aereo Liquidation Trust (the "Trust") established in the above-captioned Chapter

11 case (the "Chapter 11 Case") pursuant to the Court's *Order Confirming Amended Chapter 11*

*Plan of Aereo, Inc.* [Docket Nos. 340, 343][1] (the "Confirmation Order"), the *Amended Chapter*

*11 Plan of Aereo, Inc.* (as confirmed, the "Plan") and the Amended Liquidation Trust

Agreement, dated June 11, 2015 (the "LTA") between Aereo, Inc. (the "Debtor") and the

Liquidation Trustee, by and through his undersigned counsel, hereby files this motion (the

---

[1]    The Confirmation Order signed and entered by the Court on June 10, 2015 [Docket No. 340] did not attach the Plan (as defined below) and the LTA (as defined below).  The Court re-filed the Confirmation Order again on June 12, 2015 [Docket No. 343], attaching the Plan and LTA as exhibits.  Except for attaching these exhibits, the Confirmation Order entered at [Docket No. 343] is the same in all respects to the Confirmation Order entered at [Docket No. 340].

"<u>Motion</u>"), pursuant to Sections 105(a) and 363 of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), Rule 6004-1 of the Local Bankruptcy Rules for the Southern District of

New York (the "<u>Local Bankruptcy Rules</u>"), for entry of an order, substantially in the form

attached hereto as **<u>Exhibit A</u>** (the "<u>Sale Order</u>"), approving and authorizing:

   i)   the sale (the "<u>Sale</u>") of the Debtor's Source Code, as hereinafter defined, to
        Sapodilla Holdings Incorporated ("<u>Sapodilla</u>"), free and clear of claims, liens,
        liabilities, rights, interests and encumbrances;

  ii)   the Liquidation Trustee to enter into and perform the obligations under that
        certain Assignment and Assumption Agreement, by and between the Debtor
        and Sapodilla, dated May 27, 2015 (the "<u>Sapodilla Agreement</u>"), attached
        hereto as **<u>Exhibit B</u>**; and

 iii)  related relief as is just and proper.

In support of this Motion, the Liquidation Trustee files herewith the *Declaration of Lawton W.

Bloom In Support of Motion for Entry of an Order Approving and Authorizing (A) The Sale of

the Debtor's Source Code Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and

Encumbrances; (B) The Liquidation Trustee to Enter Into and Perform the Obligations Under

the Assignment and Assumption Agreement; and (C) Granting Related Relief* (the "<u>Bloom

Declaration</u>"), and respectfully states as follows:

**<u>JURISDICTION AND VENUE</u>**

      1.     This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.

This is a core proceeding under 28 U.S.C. § 157(b). Venue of this Chapter 11 Case and this

Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for

the relief requested herein are Sections 105(a) and 363(b) of the Bankruptcy Code, Bankruptcy

Rules 2002 and 6004, Local Bankruptcy Rules 2002-1 and 6004-1, and the Amended Guidelines

for the Conduct of Asset Sales established and adopted by the United States Bankruptcy Court for the Southern District of New York pursuant to General Order M-383 (the "Sale Guidelines").

# I.    BACKGROUND

### A.    Commencement of the Debtor's Chapter 11 Case

2.    On November 20, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code, commencing this Chapter 11 Case.  The factual background of the Debtor's business and the reasons for commencing this Chapter 11 Case are set forth in the *Declaration of Ramon A. Rivera, Secretary, Treasurer, and Chief Financial Officer of Aereo, Inc. in Support of First Day Pleadings* [Docket No. 7] (the "First Day Declaration").

### B.    Confirmation of Plan and Appointment of Liquidation Trustee

3.    On June 10, 2015, the Court entered the Confirmation Order confirming the Debtor's Plan.  The Plan provides for the creation of the Trust and appointment of the Liquidation Trustee to administer the Trust for the benefit of the Debtor's creditors.  The Liquidation Trustee and the Debtor executed the LTA on June 11, 2015 (the "Effective Date"), which is the date on which all of the conditions to effectiveness of the Plan as provided in Section 10.02 therein were satisfied or waived.  *See Notice of Entry of Confirmation Order and Effective Date*, dated June 11, 2015 [Docket No. 342].

4.    The LTA names Lawton W. Bloom of Argus Management Corp. as the Liquidation Trustee.  Mr. Bloom also served as the Debtor's Chief Restructuring Officer (in his capacity as such, the "CRO") prior to the Effective Date.  Pursuant to the terms of the Plan and the LTA, the Liquidation Trustee, as successor-in-interest to the Debtor, is vested with the

3

management and control of the Debtor's estate, including the disposal and sale of the Debtor's

assets as appropriate.

C.    **The Auction and Sale Process**

5.    In his previous capacity as CRO, the Liquidation Trustee managed the sales and

marketing processes for certain of the Debtor's assets in the Chapter 11 Case.  Details of the

prior marketing processes and sales of certain of the Debtor's assets are set forth in: (a) the

*Declaration of Lawton W. Bloom in Support of Motion of the Debtor for Entry of Orders*

*Approving and Authorizing (A) The Sale of Certain Assets of the Debtor Free and Clear of All*

*Claims, Liens, Liabilities, Rights, Interests and Encumbrances; (B) The Debtor to Enter Into and*

*Perform its Obligations Under Purchase Agreements; and (C) Granting Related Relief* [Docket

No. 231]; and (b) the *Declaration of Lawton W. Bloom in Support of Debtor's Expedited Motion*

*Pursuant to 11 U.S.C. §§ 105(a) And 363 for an Order Authorizing the Sale of Certain De*

*Minimis Assets* [Docket No. 192].

6.    The Debtor conducted an auction on February 24 and 25, 2015 (the "Auction"),

for the sale of substantially all of its assets.  At the close of the Auction, and after consultation

with the Official Committee of Unsecured Creditors (the "Committee") and the moving

Broadcasters (together, the "Consultation Parties"), the Debtor announced the Bids of TiVo Inc.

("TiVo"), RPX Corporation ("RPX") and Alliance Technology Solutions, Inc. ("Alliance") as

the Successful Bids with respect to certain of the Debtor's intellectual property and equipment.[2]

---

[2]    On March 12, 2015, the Court entered two orders authorizing the sales to TiVo, RPX and Alliance (the "Prior Sale Orders").  *See Order (A) Authorizing the Sale of Certain Equipment of the Debtor Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances; (B) Authorizing the Debtor to Enter Into and Perform its Obligations Under the Equipment Purchase Agreement; and (C) Granting Related Relief* [Docket No. 253]; *Order (A) Authorizing the Sale of the Enterprise Assets of the Debtor Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances; (B) Authorizing the Debtor to Enter Into and Perform its Obligations Under the Enterprise Assets Purchase Agreements; and (C) Granting Related Relief* [Docket No. 254]. The Debtors consummated the sale transactions authorized by the Prior Sale Orders on March 13, 2015, March 16, 2015, and April 2, 2015. *See Notice of Closing of Sales of Certain of the Debtor's Assets to TiVo Inc. and RPX*

D.      **The Sale of the Source Code**

7.      During the course of the Auction, the Debtor received a bid from a potential purchaser for, among other things, the Debtor's right, title and interest in and to the intellectual property listed in Exhibit A to the Sapodilla Agreement (the "Source Code").  Although the Debtor, the Committee and the potential purchaser at the Auction attempted to reach mutually acceptable terms for the sale, the Auction closed without the parties reaching such agreement.

8.      In the several weeks following the close of the Auction, the Debtor, the Committee and the potential purchaser of the Source Code continued to negotiate terms of a possible transaction involving the Source Code.  Ultimately, the parties' negotiations did not result in an agreement, and the potential purchaser elected not to proceed with the purchase of the Source Code and withdrew from the discussions.

9.      Thereafter, the CRO recommenced the marketing process for the Debtor's Source Code in an effort to find another purchaser, targeting potential purchasers in the technology industry.  As a result of the CRO's marketing efforts, Sapodilla made an offer of $125,000 (the "Purchase Price") to acquire the Source Code.  In consultation with the Committee, the Liquidation Trustee determined that Sapodilla's offer of $125,000 for the Source Code is the best and highest offer received for those assets.

10.     The Debtor and Sapodilla executed the Sapodilla Agreement on May 27, 2015, pursuant to which Sapodilla placed the Purchase Price in escrow and received access to the Source Code for the purpose of verifying its content and accuracy, which Sapodilla has now verified.  The Sapodilla Agreement provides that, once Sapodilla verified the content and

---

*Corporation* [Docket No. 257]; *Notice of Closing of Sale of Certain of the Debtor's Assets to Alliance Technology Solutions, Inc.* [Docket No. 272].

accuracy of the Source Code, the parties would seek the Court's approval of the sale of the Source Code to Sapodilla on the terms set forth in the Sapodilla Agreement.

11.    The Court confirmed the Plan and the Plan went effective, thereby creating the Trust and appointing the Liquidation Trustee, while the Debtor and Sapodilla were in the process of performing their obligations under the Sapodilla Agreement, including verifying the Source Code and preparing to seek the Court's approval of the sale of the Source Code to Sapodilla. Accordingly, the Liquidation Trustee is now seeking the Court's approval of the Sapodilla Agreement and authority to proceed with the sale of the Source Code to Sapodilla.

**E.    The Proposed Transaction**

12.    As set forth above and in the Sapodilla Agreement, the terms of the Proposed Transaction are as follows:

(i)    Sapodilla has placed $125,000, the Purchase Price, in escrow pursuant to the instructions attached as Exhibit B to the Sapodilla Agreement;

(ii)    The Debtor provided Sapodilla with access to the Source Code to inspect and examine (the "Inspection");

(iii)    Sapodilla has confirmed in writing by returning to the Debtor the form of written confirmation attached as Exhibit C to the Sapodilla Agreement (the "Written Confirmation") that the Source Code to be assigned pursuant to the Sapodilla Agreement is accurately represented as set forth in the Sapodilla Agreement;[3]

(iv)    The Debtor is required to submit this Motion to the Court seeking approval of the Sale; and

(v)    Within forty-eight (48) hours from the entry of the Sale Order, (a) the Purchase Price shall be released from escrow to the Debtor and (b) the Debtor shall assign and deliver to Sapodilla the Source Code (the "Assignment").

---

[3]    The Sapodilla Agreement provides certain deadlines by which the parties were to perform their respective obligations or face termination of the Sapodilla Agreement.  Although providing access to the Source Code and verifying its content took longer than the deadlines stated in the Sapodilla Agreement, the parties agreed to waive the deadline requirements and are continuing to seek approval of the Sapodilla Agreement and authority to consummate the transactions contemplated thereby.

### III.    RELIEF REQUESTED

13.    By this Motion, the Liquidation Trustee seeks entry of an order, substantially in the form attached hereto as **Exhibit A**: (i) authorizing and approving the Sale of the Sapodilla Assets free and clear of all claims, liens, liabilities, rights, interests and encumbrances; (ii) authorizing and approving the Liquidation Trustee's entry into and performance under, and the terms and conditions of, the Sapodilla Agreement; and (iii) granting other related relief as is just and proper.

### IV.    BASIS FOR RELIEF REQUESTED

### A.    The Sale Should be Approved as an Exercise of the Liquidation Trustee's Sound Business Judgment

14.    Section 363(b) of the Bankruptcy Code governs transactions involving property of the debtor's estate outside the ordinary course of business.  Specifically, that section provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b).

15.    Under applicable law, a transaction must represent a reasonable exercise of business judgment on the part of the debtor in possession to be approved under Section 363(b) of the Bankruptcy Code.  *See, e.g.*, *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 772 F.2d 1063, 1071 (2d Cir. 1983); *see also In re Integrated Res, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993), *quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) ("the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company'") (applying the business judgment rule to the debtor's motion to enter into a sale contract).

16.     Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."  Courts often allow private sales when a debtor demonstrates that the sale is permissible pursuant to Section 363(b) of the Bankruptcy Code.  *See, e.g.*, *Palermo v. Pritam Realty, Inc. (In re Pritam Realty, Inc.)*, 233 B.R. 619, 624 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Condere Corp.*, 228 B.R. 615, 637 (Bankr. S.D. Miss. 1998) (approving sale of a chapter 11 debtor's assets where the standards of Section 363(b) were met).  Factors that this Court considers in evaluating a sale of assets pursuant to Section 363(b) include, but are not limited to: (i) whether the debtor had a sound business purpose for the sale; (ii) whether the sale process was fair and reasonable; (iii) whether the sale price is fair and reasonable; and (iv) whether the debtor acted in good faith.  *In re Global Crossing Ltd.*, 295 B.R. 726, 744-45 (Bankr. S.D.N.Y. 2003).

17.     It is well-settled that, where there is a court-approved auction process, a full and fair price is presumed obtained for the assets sold, as the most accurate measure of value is exposure to the market.  *See Bank of Am. Nat'l Trust & Sav. Ass'n v. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999); *see also In Re Trans World Airlines, Inc.*, No. 01-00056, 2001 Bankr. Lexis 980, at *13 (Bankr. D. Del. April 2, 2001) (while a "§ 363(b) sale transaction does not require an auction procedure... the auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction").

18.     In addition, pursuant to Section 363(m), "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to any entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the

8

appeal, unless such authorization and such sale or lease were stayed pending appeal." 11 U.S.C.

§ 363(m).  While the Bankruptcy Code does not define "good faith," the Second Circuit has held

that the good faith of a purchaser is shown by the integrity of his conduct during the course of

the sale proceedings, and absent a demonstration of such integrity, a good faith finding may not

be made. *See, e.g.*, *Gucci*, 126 F.3d at 390 (a purchaser's good faith is lost by "fraud, collusion

between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair

advantage of other bidders") (internal citations omitted); *In re Sasson Jeans, Inc.*, 90 B.R. 608,

610 (S.D.N.Y. 1988) (same).

19.    The sale of the Source Code in accordance with the Sapodilla Agreement is an

exercise of the Liquidation Trustee's sound business judgment and is in the best interests of the

Debtor's estate.  The Source Code, along with all of the Debtor's other assets, were marketed to

dozens of potential purchasers in the media, telecommunications and technology industries, and

a public Auction was conducted for the assets that involved bidding by eleven (11) Qualified

Bidders.

20.    Both during and following the Auction, the Debtor and the Creditors' Committee

engaged in ongoing conversations with potential purchasers in attempts to consummate a deal for

the Source Code.  The potential purchaser of the Source Code identified at the Auction

ultimately elected not to pursue a transaction with the Debtor.  Accordingly, the Liquidation

Trustee, in his capacity as CRO, continued to market the Source Code to potential purchasers in

the technology industry.

21.    Following the Liquidation Trustee's renewed efforts to sell the Source Code, the

offer made by Sapodilla constitutes the best and highest offer received for that asset.  No party

made a higher or otherwise better offer for the Source Code – either individually or together with

any of the Debtor's other remaining assets.  The Liquidation Trustee therefore believes that the Purchase Price offered by Sapodilla under the Sapodilla Agreement is fair and reasonable, and represents the highest and best obtainable price under the circumstances in exchange for the Source Code.

22.    The Liquidation Trustee also submits that Sapodilla is a "good faith purchaser" within the meaning of Section 363(m) of the Bankruptcy Code and that the Sapodilla Agreement is a good faith agreement on arm's-length terms entitled to the protections of Section 363(m) of the Bankruptcy Code.[4]  First, the consideration to be received by the Debtor's estate pursuant to the Sapodilla Agreement is fair and reasonable.  Second, the Debtor and Sapodilla entered into the Sapodilla Agreement in good faith and after arm's-length negotiations, during which the Debtor and Sapodilla were represented by competent counsel.  Finally, there is no indication that any conduct by the Debtor, the Liquidation Trustee or Sapodilla could be viewed as "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders," or similar conduct that would cause or permit the Sale or the Sapodilla Agreement to be avoided under Section 363(n) of the Bankruptcy Code.  Furthermore, the Committee has been involved in the sale efforts of the Source Code and supports approval of the Sapodilla Agreement and the sale and assignment of the Source Code to Sapodilla. Accordingly, the Liquidation Trustee believes that the Sapodilla Agreement is entitled to the full protections of Section 363(m) of the Bankruptcy Code.

---

[4]    Section 363(m) of the Bankruptcy Code provides that:

[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

### B. The Sale Should be Approved "Free and Clear" Under § 363(f)

23.     Section 363(f) of the Bankruptcy Code permits a debtor to sell its property free and clear of another party's interest in the property if one of the following five circumstances is present:

i.     applicable non-bankruptcy law permits such a free and clear sale;

ii.     the holder of the interest consents;

iii.     the interest is a lien and the sale price of the property exceeds the value of all liens on the property;

iv.     the interest is in bona fide dispute; or

v.     the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

See 11 U.S.C. § 363(f); see also In re GMC, 407 B.R. 463 (Bankr. S.D.N.Y. 2009) ("Section 363(f) permits the bankruptcy court to authorize a sale free of 'any interest' that an entity has in property of the estate.").   Courts have interpreted the term "interest" in Section 363(f) to broadly include any claim connected to or arising from the property to be sold.  See, e.g., In re Trans World Airlines, Inc., 322 F.3d 283, 289-90 (3d Cir. 2003) (federal statutory EEOC claims and employee benefits claims arising in connection with debtor's operation its airline assets were "interests" under Section 363(f)); see also In re Chrysler LLC, 576 F.3d 108, 126 (2d Cir. 2009) (personal injury and products liability tort claims were "interests" under Section 363(f)), vacated as moot sub. nom. Ind. State Police Pension Tr. v. Chrysler, LLC, 130 U.S. 1015 (2009); In re Leckie Smokeless Coal Co., 99 F.3d 573, 582 (4th Cir. 1996) (plan administrators' federal statutory claims under the Coal Act seeking contribution to employer-sponsored benefit plans were "interests" under Section 363(f)).

24.     Where an "interest" can be classified in one of the five (5) categories of Section 363(f), "[b]y its terms, § 363(f) cleanses the transferred assets of any attendant liabilities, and allows the buyer to acquire them without fear that an estate creditor can enforce its claim against those assets." *In re Grumman Olson Industries, Inc.*, 445 B.R. 243, 249 (Bankr. S.D.N.Y. 2011), *aff'd* 467 B.R. 694 (S.D.N.Y. 2012).

25.     Here, the Debtor's interests in the Source Code can be sold under applicable non-bankruptcy law permitting the sale of interests in intellectual property.  The proposed Sale Order also provides that any lien, claim or encumbrance in the Source Code will attach to the net proceeds of the Sale, subject to any claims and defenses the Debtor may possess with respect thereto.  Accordingly, the Source Code can be sold free and clear of any such liens, claims or encumbrances pursuant to Section 363(f) of the Bankruptcy Code.

26.     The sale of the Source Code to Sapodilla was approved and supported by the Committee.[5]  In addition, pursuant to the terms of the settlement agreement between the Debtor, the Committee and the Broadcasters [Docket No. 294] (the "Settlement Agreement") and the Court's *Order Granting Joint Motion To Approve Settlement Agreement With Broadcasters* [Docket No. 309], the proposed Sale Order attached as **Exhibit A** hereto contains language substantially similar to paragraph 15 of the *Order (A) Authorizing the Sale of the Enterprise Assets of the Debtor Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances; (B) Authorizing the Debtor to Enter Into and Perform its Obligations Under the Enterprise Assets Purchase Agreements; and (C) Granting Related Relief* [Docket No. 254], and nothing inconsistent with that paragraph.  As such, under the terms of the Settlement Agreement, the Broadcasters have agreed not to object to the proposed sale of the Source Code to Sapodilla.

---

[5]     Although the Committee was dissolved on the Effective Date pursuant to paragraph 25 of the Confirmation Order, the Committee approved and supported the Sale prior to the entry of the Confirmation Order.

27.    Based on the foregoing, the Liquidation Trustee believes that the Sale will satisfy the statutory requirements of Section 363(f) of the Bankruptcy Code and should be approved free and clear of all liens, claims and encumbrances.

## VI.    WAIVER OF 14-DAY STAY OF SALE ORDER

28.    Pursuant to Bankruptcy Rule 6004(g): "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(g). Given the size of the sale and the need to efficiently administer the Trust, the Liquidation Trustee believes that an expedited Sale is in the best interest of the Debtor's estate and its creditors. Moreover, the Sapodilla Agreement contemplates that the Sale will be consummated within two (2) days following entry of the Sale Order. Thus, the Liquidation Trustee is seeking an order permitting the immediate approval of the Sale and believes that the protections afforded by Rule 6004(g) would be inapplicable to the Sale under these particular circumstances (indeed, if anything, a delay would harm creditors and other stakeholders).

## VII.    MOTION PRACTICE

29.    This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Motion. Accordingly, the Liquidation Trustee submits that this Motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## VIII.    NOTICE

30.    The Liquidation Trustee has provided notice of this Motion to: (a) the Office of the United States Trustee; (b) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the Source Code offered for sale (which, for the

avoidance of doubt, does <u>not</u> include the Broadcasters); and (c) to the extent not already included in clauses (a) and (b), the Master Service List (as defined in the Case Management Order entered by the Court on December 24, 2014 [Docket No. 106]).  In light of the nature of the relief requested and the notice requirements in the Sale Guidelines, the Liquidation Trustee submits that no further notice is required or needed under the circumstances.

31.    A    copy    of    this    Motion    is    available    on    this    Court's    website: http://www.nysb.uscourts.gov/.  Additional copies of this Motion are available on the website of the    Debtors'    Claims    and    Noticing    agent,    Prime    Clerk,    LLC,    at https://cases.primeclerk.com/aereo.

## VIII.  <u>NO PRIOR REQUEST</u>

32.    No previous motion for the relief sought herein has been made to this or any other court.

## **<u>CONCLUSION</u>**

WHEREFORE, the Liquidation Trustee respectfully requests that the Court enter the Sale

Order, in substantially the form attached hereto as **<u>Exhibit A</u>**, granting the relief requested

herein, and grant such other and further relief as is just and proper.

Dated: June 23, 2015
     New York, New York            Respectfully submitted,

                           By: <u>/s/ William R. Baldiga</u>
                              William R. Baldiga, Esquire
                              R. Benjamin Chapman, Esquire
                              BROWN RUDNICK LLP
                              7 Times Square
                              New York, NY 10036
                              (212) 209-4800

                              *Counsel for the Liquidation Trustee*

# **EXHIBIT A**

## **PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|                    |   |              |
|--------------------|---|--------------|
|                    | : |              |
| In re:             | : | Chapter 11   |
|                    | : |              |
| AEREO, INC.,       | : | Case No. 14-13200 (SHL) |
|                    | : |              |
|                    | : |              |
|        Debtor.     | : |              |
|                    | : |              |

---

**ORDER APPROVING AND AUTHORIZING (A) THE SALE OF THE DEBTOR'S
SOURCE CODE FREE AND CLEAR OF ALL CLAIMS, LIENS, LIABILITIES,
RIGHTS, INTERESTS AND ENCUMBRANCES; (B) THE LIQUIDATION TRUSTEE
TO ENTER INTO AND PERFORM THE OBLIGATIONS UNDER THE ASSIGNMENT
AND ASSUMPTION AGREEMENT; AND (C) GRANTING RELATED RELIEF**

Upon consideration of the *Motion Of The Liquidation Trustee For Entry Of An Order
Approving And Authorizing (A) The Sale Of The Debtor's Source Code Free And Clear Of All
Claims, Liens, Liabilities, Rights, Interest And Encumbrances; (B) The Liquidation Trustee To
Enter Into And Perform Its Obligations Under The Assignment and Assumption Agreement; And
(C) Granting Related Relief*, dated June 23, 2015 (the "Motion"),[1] and it appearing that proper
and adequate notice has been given and that no other or further notice is required; and after due
deliberation thereon; and sufficient cause appearing therefore; it is hereby

**ORDERED** that the Motion is granted as set forth herein, and it is further

**ORDERED** that the Assignment and Assumption Agreement between the Debtor and
Sapodilla Holdings Incorporated attached as **Exhibit B** to the Motion is approved in all respects,
and it is further

**ORDERED** that the Sale and Assignment of the Source Code to Sapodilla is authorized
and approved in all respects, and it is further

---

[1] Capitalized terms not otherwise defined in this Order shall bear the meaning ascribed thereto in the Motion,
the Sapodilla Agreement, or the Bidding Procedures Order, as applicable.

**ORDERED** that the Liquidation Trustee is authorized to sell the Debtor's interests in the Source Code to Sapodilla free and clear of all claims, liens, liabilities, rights, interests and encumbrances; *provided*, *further*, that Sapodilla shall not have any responsibility for (a) any liability or other obligation of the Debtor related to the Source Code (including, without limitation, the Claims) or (b) any remaining Claims against the Debtor or any of its predecessors or affiliates. Except as expressly provided in the Sapodilla Agreement, Sapodilla shall have no liability whatsoever with respect to the Debtor's (or its predecessors' or affiliates') respective businesses or operations or any of the Debtor's (or its predecessors' or affiliates') obligations (as described herein, "Successor or Transferee Liability") based, in whole or in part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Source Code prior to the Assignment to the fullest extent possible under applicable law. *See In re Gen. Motors Corp.*, 407 B.R. 463, 508 (Bankr. S.D.N.Y. 2009) ("When you are talking about free and clear of liens . . . . It doesn't absolve you from compliance with the law going forward.") (quoting tr. of hr'g, *In re Magnesium Corp. of Am.*, No. 01-14312, 2002 WL 32772333 (Bankr. S.D.N.Y. June 4, 2002)); and it is further

**ORDERED** that this Court shall retain jurisdiction to determine any and all disputes concerning the interpretation or implementation of this Order or the Sale.

New York, New York
Date: _____, 2015

_____
The Honorable Sean H. Lane
United States Bankruptcy Judge

## **EXHIBIT B**


### **SAPODILLA AGREEMENT**

61940799

FINAL 5/27/2015 accepted with no changes from DRAFT of 5/22/2015

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement") is entered as of May _27_, 2015, by and between Aereo, Inc., a New York corporation ("Assignor"), and Sapodilla Holdings Incorporated, a [_British Columbia, Canada, Corporation_] ("Assignee").

WHEREAS, pursuant to the terms and conditions set forth herein, Assignor will sell, transfer, convey, assign and deliver to Assignee, and Assignee will purchase from Assignor, all of the assets listed in **Exhibit A** attached hereto (the "Assets");

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.    <u>Assignment and Assumption</u>. Effective as of the Closing, Assignor hereby sells, assigns, transfers and sets over (the "Assignment") to Assignee all of Assignor's rights, title, benefits, privileges and interest in and to the Assets, free and clear of encumbrances (to the maximum extent permitted under Sections 105 and 363 of the U.S. Bankruptcy Code and other applicable law).  The purchase price for the Assets (the "Purchase Price") shall consist of cash in an amount of one hundred and twenty-five thousand dollars ($125,000).  Subject to the terms set forth herein, assignee hereby accepts the Assignment.

2.    <u>Obligations Not Assumed</u>. Assignee assumes no debts, liabilities or obligations of Assignor by this Agreement, and it is expressly understood and agreed that all debts, liabilities and obligations not assumed hereby by Assignee shall remain the sole obligation of Assignor and its successors and assigns.

3.    <u>Disclaimer of Warranties</u>. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assets or any portion thereof.  Accordingly, Assignee will accept the Assets at the Closing "AS IS," "WHERE IS," and "WITH ALL FAULTS."  Without limiting the generality of the immediately foregoing, Assignor hereby expressly disclaims and negates any representation or warranty, express or implied, at common law, by statute, or otherwise, relating to the Assets.

4.    <u>Confidentiality</u>. Unless and until the Closing has been consummated, Assignee shall hold, and shall cause its affiliates, counsel, independent certified public accountants and appraisers to hold in confidence any confidential data or information made available to Assignee in connection with this Agreement.  If the Assignment is not consummated, Assignee agrees that it shall return or cause to be returned to Assignor all written materials and all copies thereof that were supplied to Assignee by Assignor and that contain any such confidential data or information.

5.    <u>Closing</u>.

(a)    Within 24 hours of the execution of this Agreement, Assignee shall place

1



FINAL 5/27/2015 accepted with no changes from DRAFT of 5/22/2015

the Purchase Price in escrow pursuant to instructions attached hereto as **Exhibit B**. Within three (3) business days from the receipt of the Purchase Price into escrow, the Assignor shall provide the Assignee with access to the Assets to inspect and examine ("Inspection").

(b)    Within three (3) business days of the receipt of the Assets for Inspection, Assignee shall confirm in writing by returning to the Assignor the form of written confirmation attached hereto as **Exhibit C** (the "Written Confirmation") that the Assets assigned pursuant to the Assignment are accurately represented as set forth in Schedule A hereto.

(c)    As soon as practicable after the Assignor receives the Written Confirmation, the Assignor shall submit a motion (the "Sale Motion") to the Southern District of New York (the "Bankruptcy Court") seeking approval of the transaction contemplated by this Agreement (the "Sale").

(d)    Within forty-eight (48) hours from the entry of the Sale Order, (i) the Purchase Price shall be released from escrow to the Assignor, and (ii) the Assignor shall deliver to Assignee the Assets.  The closing of the Assignment (the "Closing") shall occur following the release of the Purchase Price to the Assignor and the delivery of the Assets to the Assignee.

6.    Conditions for Closing.  The obligation of each of Assignee and Assignor to consummate the Closing is subject to the satisfaction or waiver at or before the Closing, of each of the following conditions:

(a) The Bankruptcy Court shall have entered the Sale Order, and such Sale Order shall not have been stayed;

(b) The Purchase Price shall be released from escrow to the Assignor; and

(c) Assignor shall deliver to Assignee the Assets.

7.    Tax Matters.  To the extent not exempt in accordance with Section 1146 of the Bankruptcy Code, all transfer, documentary, excise, sales, use, recording, value-added, stamp, registration, conveyance, and other similar taxes, fees, or charges (including penalties and interest in respect thereof), if any, payable in connection with the assignment shall be borne by Assignee and paid when due.  Assignee and Assignor shall furnish or cause to be furnished to each other, as promptly as reasonably practicable, such information in their possession and assistance relating to the Assets as is reasonably necessary for the preparation and filing of any tax return, claim for refund or other filings relating to tax matters, or in connection with any tax audit or other tax proceeding.

8.    Termination.  This Agreement may be terminated at any time prior to the Closing:

(a)    by mutual written consent of Assignor and Assignee;



2

FINAL 5/27/2015 accepted with no changes from DRAFT of 5/22/2015

(b)    by Assignor or Assignee, if a governmental authority of competent jurisdiction shall have issued an order or taken any other action, in each case, having the effect of permanently making the Assignment illegal or otherwise permanently restraining or prohibiting consummation of the Assignment;

(c)    by Assignor, in the event of any material breach of any of Assignee's covenants or agreements contained in this Agreement;

(d)    by Assignee, in the event of any material breach of any of Assignor's covenants or agreements contained in this Agreement;

(e)    by Assignor, if the Assignor's chapter 11 bankruptcy case before the Bankruptcy Court, No. 14-13200 (the "Chapter 11 Case") shall be converted into a case under Chapter 7 of the Bankruptcy Code or dismissed; or

(f)    by Assignor, if Assignee fails to submit the Written Approval to Assignee within three (3) business days of execution of this Agreement.

9.    Remedies.

(a)    Notwithstanding any termination right granted in Section 8, in the event of the non-fulfillment of any condition by Assignee of its closing obligations, Assignor may elect to do the following:

(i)    proceed to close despite the non-fulfillment of any closing condition (to the extent legally permissible), it being understood that consummation of the Closing by each party shall be deemed a waiver of each breach of any representation, warranty or covenant of the other party and of such party's rights and remedies with respect thereto;

(ii)    decline to close, terminate this Agreement as permitted by Section 8 above, and thereafter seek any other legal or equitable right or remedy, including monetary damages, and Assignor shall also be entitled to recover its costs and expenses which are incurred in pursuing its rights and remedies (including reasonable attorneys' fees); or

(iii)    seek specific performance by Assignee of Assignee's obligations hereunder which it has failed to perform so that the Closing may proceed (it being acknowledged and agreed that Assignor would be damaged irreparably, the remedies available at law to Assignor would be inadequate, and the performance of Assignee's obligations under this Agreement may be specifically enforced).

(b)    Notwithstanding any termination right granted in Section 8, in the event of the non-fulfillment of any condition by Assignor of its closing obligations, Assignee may elect to do the following:

(i)    proceed to close despite the non-fulfillment of any closing condition

3



FINAL 5/27/2015 accepted with no changes from DRAFT of 5/22/2015

(to the extent legally permissible), it being understood that consummation of the Closing by each party shall be deemed a waiver of each breach of any representation, warranty or covenant of the other party and of such party's rights and remedies with respect thereto;

(ii)    decline to close, terminate this Agreement as permitted by Section 8 above, and thereafter seek any other legal or equitable right or remedy, including monetary damages, and Assignee shall also be entitled to recover its costs and expenses which are incurred in pursuing its rights and remedies (including reasonable attorneys' fees); or

(iii)    seek specific performance by Assignor of Assignor's obligations hereunder which it has failed to perform so that the Closing may proceed (it being acknowledged and agreed that Assignee would be damaged irreparably, the remedies available at law to Assignee would be inadequate, and the performance of Assignor's obligations under this Agreement may be specifically enforced).

10.    <u>Confidential Information</u>. Notwithstanding anything to the contrary in this Agreement or in the confidentiality agreement executed by Assignor prior to the Inspection (the "<u>Confidentiality Agreement</u>"), the parties agree that the Assets are "Confidential Information" as that terms is defined in the Confidentiality Agreement, and is subject to the protections and treatment of Confidential Information as described in the Confidentiality Agreement.

11.    <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

12.    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with federal bankruptcy law, to the extent applicable, and, where state law is implicated, the internal laws of the State of New York, without giving effect to any principles of conflicts of law. Without limiting any party's right to appeal any order of the Bankruptcy Court, the parties agree that if any dispute arises out of or in connection with this Agreement or any of the documents executed hereunder or in connection herewith, the Bankruptcy Court shall have exclusive personal and subject matter jurisdiction and shall be the exclusive venue to resolve any and all disputes relating to the Assignment. Such court shall have sole jurisdiction over such matters and the parties affected thereby and Assignor and Assignee each hereby consent and submit to such jurisdiction; <u>provided, however</u>, that if the Assignor's Chapter 11 Case has closed and cannot be reopened, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the district in which the Bankruptcy Court is located and any appellate court thereof, for the resolution of any such claim or dispute.

[remainder of page intentionally left blank]



4

FINAL 5/27/2015 accepted with no changes from DRAFT of 5/22/2015

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of May ___, 2015.

**ASSIGNOR:**

AEREO, INC.

By_____

Name: Lawton Bloom

Title: Chief Restructuring Officer

**ASSIGNEE:**

**SAPODILLA HOLDINGS INCORPORATED**

By_____

Name: Jeff Campbell

Title: President

5

FINAL 5/27/2015 accepted with no changes from DRAFT of 5/22/2015

## EXHIBIT A

The "Assets" shall mean all of its worldwide right, title, and interest in and to the following intellectual property of the Assignor:

(a)  The "Works", which means all versions, regardless of state of completion, of the following:

   (i)  All software and other intellectual property owned by the Assignor and contained in the Assignor's GitHub repositories;

   (ii)  to the extent readily available and reviewed by Assignee during the Inspection, software and hardware designs, computer programs, software prototypes, applications, interfaces, applets, software scripts, deployment automation codes, development tools, systems architecture, macros, firmware, programs, middleware, development tools, and other computer code, instructions or sets of instructions for computer hardware or software, in any form, including SQL and other query languages, hypertext markup language ("html"), wireless markup language, xml and other computer markup languages, in object code, source code, bytecode and other code format, and algorithms, makefiles, user interfaces, development tools, library functions, compilers, Internet websites, and in each case, the most recent version thereof readily available;

   (iii)  to the extent readily available and reviewed by Assignee during the Inspection, user interfaces, APIs, and mobile interfaces including but not limited to those for Mac, Windows, iOS, Android and Roku platforms, UX mockups, wireframes, designs, and technical and functional information; and

   (iv)  to the extent readily available and reviewed by Assignee during the Inspection, documentation related to the Works including instructions, drawings and manuals, and programmers notes; and

   (v)  to the extent readily available and reviewed by Assignee during the Inspection, inventions (whether or not patentable), industrial designs, electronic hardware designs, data sheets, integrated circuit topographies, circuit schematics and printed circuit board layouts, bills of materials, formulas, invention disclosures, technology, technical data or information, software and documentation therefor, objective code, source code (including all programmers' notes), works of authorship, and other documentation, data and information.

(b)  operational data related to the Works to the extent readily available in the Amazon Web Services cloud and reviewed by Assignee during the Inspection (the "Data");

FINAL 5/27/2015 accepted with no changes from DRAFT of 5/22/2015

(c)     all copyrights, registered and unregistered, in the Works and the Data, including, without limitation, the right to prosecute and maintain copyright applications and registrations for any such copyrights, and the right to sue and recover damages for past, present and future infringement of such copyrights (to the extent applicable law permits such rights to sue and recover damages to be assigned);

(d)     all other intellectual property and other proprietary rights in the Works and the Data, including, without limitation, all rights, claims and privileges pertaining thereto, and the right to sue and recover damages for past, present and future infringement of such intellectual property and proprietary rights; and

(e)     10 operating units of the physical BT2 transcoders.

The preceding list notwithstanding, parties acknowledge and agree that the Assets do not include (i) any intellectual property or other assets already sold in connection with a prior sale of the Debtor in the chapter 11 case; or (ii) any data or information that identifies end-users, customers, or prospective customers of the Assignor.

All of the Assets except for the BT2 transcoders noted in item (e) shall be delivered in their native electronic formats via file transfer methods mutually agreed by the parties.

FINAL 5/27/2015 accepted with no changes from DRAFT of 5/22/2015

## Exhibit B

**Remittance Address**
Brown Rudnick LLP
P.O. Box 52257
Boston, MA 02205

**Wire Instructions**
Citibank N.A.
153 E 53rd Street, Floor 23
New York, NY 10022
ABA Number:  021000089
SWIFT Code:  CITIUS33

**For Credit To**
Brown Rudnick LLP Deposit Account
Account Number:  4987322996



FINAL 5/27/2015 accepted with no changes from DRAFT of 5/22/2015

## Exhibit C

## WRITTEN CONFIRMATION

Pursuant to that certain Assignment and Assumption agreement dated as of May 27th, 2015 (the "Assignment and Assumption Agreement"), between Aereo, Inc. ("Assignor") and Sapodilla Holdings Incorporated ("Assignee"), Assignee hereby confirms that the Assets (as defined in the Assignment and Assumption Agreement) are accurately represented as set forth in Exhibit A to the Assignment and Assumption Agreement.

**SAPODILLA HOLDINGS INCORPORATED**, as Assignee

By _____

Name: Jeff Campbell

Title: President

Date: 16th day of June 2015

**OR**

**SAPODILLA HOLDINGS INCORPORATED**, as Assignee

By _____

Name: William Michael Bradley

Title: Secretary

Date: __, day of _____ 2015